# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| FROST SOLUTIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC, <br><br> Defendants. | Civ. Action No. 1:22-cv-00401-SE <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANT CHRISTOPHER LAREAU'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT
ON ONE ASPECT OF COUNT III (BREACH OF SEPARATION AGREEMENT)**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................... 1

II. STATEMENT OF MATERIAL UNDISPUTED FACTS ................................................ 2

    A. Lareau Accepts Frost Control Offer Letter ............................................. 2

    B. Lareau Resigns from Frost Control .......................................................... 2

    C. Lareau's Separation Agreement Has No Assignment Clause ................. 2

    D. Frost Solutions Purchases Certain Frost Control Asset from Frost Control's Lender, Including Lareau's Separation Agreement ................................. 4

    E. Defendants Notified Frost Solutions that Indiana Law Rendered Lareau's Non-Compete Unenforceable and Frost Solutions Continued to Pursue this Claim ................................................................................................ 5

III. ARGUMENT .......................................................................................................... 5

    A. Summary Judgment Standard ................................................................. 5

    B. Count III Fails Insofar as It Seeks to Enforce the Non-Compete Because the Non-Compete Is Unenforceable as a Matter of Law ........................ 7

    C. Pursuant to Indiana Code Section 34-52-1-1, the Court Should Award Lareau and the Other Defendants the Legal Fees and Costs Incurred as a Result of Having to Defend Against this Baseless Claim .............. 9

IV. CONCLUSION ..................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................6

*Boston Five Cents Sav. Bank v. Secretary of Dep't of Hous. and Urban Dev.*, 768
   F.2d 5 (1st Cir. 1985)...............................................................................................6

*Cadle Co. v. Hayes*,
   116 F.3d 957 (1st Cir. 1997).....................................................................................6

*Commercial Union Ins. Co. v. Walbrook Ins. Co.*,
   7 F.3d 1047 (1st Cir.1993)........................................................................................5

*Elliott v. S.D. Warren Co.*,
   134 F.3d 1 (1st Cir. 1998).........................................................................................6

*Tommy Hilfiger Retail, Inc. v. N. Conway Outlets LLC*,
   No. Civ. 99-C-147-B, 2000 WL 1480450 (D.N.H. Feb. 14, 2000) ......................5, 6

**State Cases**

*B&R Oil Co., Inc. v. Stoler*,
   77 N.E.3d 823 (Ind. Ct. App. 2017).........................................................................7

*First Community Bank v. Kelley, Hardesty, Smith & Co.*,
   663 N.E.2d 218 (Ind. Ct. App. 1996).......................................................................7

*Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*,
   870 N.E.2d 494, 501 (Ind. Ct. App. 2007)................................................................7

*Hart Conversions, Inc. v. Pyramid Seating Co.*,
   658 N.E.2d 129 (Ind. Ct. App. 1995)....................................................................7, 8

*Hess v. Gebhard & Co. Inc.*,
   570 Pa. 148, 167, 808 A.2d 912 (2002) ...................................................................8

*Jackson v. Luellen Farms, Inc.*,
   877 N.E.2d 848 (Ind. Ct. App. 2007).......................................................................1

*John M. Abbott, LLC v. Lake City Bank*,
   14 N.E.3d 53 (Ind. Ct. App. 2014)...........................................................................7

*Kitchell v. Franklin*,
   26 N.E.3d 1050 (Ind. Ct. App. 2015)..................................................................9, 10

*Landmark Legacy, LP v. Runkle*,
   81 N.E.3d 1107 (Ind. Ct. App. 2017)..................................................................................9

*Norlund v. Faust*,
   675 N.E.2d 1142 (Ind. Ct. App. 1997)............................................................................7, 8

*Reynolds & Reynolds Co. v. Hardee*,
   932 F. Supp. 149, 153 (E.D. Va. 1996), *aff'd*, 133 F.3d 916 (4th Cir. 1997)..........................8

*SDL Enterprises, Inc. v. DeReamer*,
   683 N.E.2d 1347 (Ind. Ct. App. 1997)........................................................................7, 8, 10

*Sisco v. Empiregas, Inc. of Belle Mina*,
   286 Ala. 72, 237 So. 2d 463 (1970)...................................................................................8

*Staff Source, LLC v. Wallace*,
   143 N.E.3d 996 (Ind. Ct. App. 2020)............................................................................9, 10

## State Statutes

Fl. Stat. § 542.335(1)(f)(2)...........................................................................................................8

Indiana Code § 34-52-1-1 ...............................................................................................2, 9, 10

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 56........................................................................................................................6, 7

I.     **INTRODUCTION**

Defendant Christopher Lareau ("Lareau"), through counsel, submits this memorandum of law in support of his motion for partial summary judgment to dismiss, as a matter of law, Count III (Breach of Separation Agreement) insofar as it alleges a breach of an unenforceable covenant not to compete.  Specifically, Count III alleges that Lareau breached the September 30, 2021 separation agreement (the "Separation Agreement") he entered into with his then employer Frost Control Systems, Inc. d/b/a Frost Technologies ("Frost Control") by, *inter alia*, violating the non-competition provision contained within the Separation Agreement (the "Non-Compete").  As detailed herein, under Indiana law (which governs the Separation Agreement), non-competition agreements are considered personal services contracts that cannot be assigned without the express consent of the employee.  Plaintiff Frost Solutions, LLC ("Frost Solutions") was not a party to the Separation Agreement, and thus its rights thereunder arise solely from a purported assignment of the Separation Agreement, an assignment to which Lareau did not consent.  Accordingly, the Non-Compete is unenforceable, and Lareau is entitled to judgment as a matter of law on that issue.[1]

Because Frost Solutions persists in its effort to enforce the Non-Compete – even after being presented with caselaw that leaves no room for reasonable debate about the baseless nature

---

[1] It should be noted that the *entire* Separation Agreement is invalid for other reasons.  For example, the Separation Agreement lacks adequate consideration, as the stated consideration for the contract is limited to commissions and vacation time that Frost Control *already owed* Lareau.  Past consideration already owed an employee cannot serve as consideration for a new agreement. *See*, *e.g.*, *Jackson v. Luellen Farms, Inc.*, 877 N.E.2d 848, 858 (Ind. Ct. App. 2007).  The Separation Agreement is also invalid because Frost Control misrepresented its import and thus there was no meeting of the minds.  Specifically, while the Separation Agreement (which is titled "Separation Agreement and Mutual Release") purports to contain a "Mutual General and Special Release," the release set forth therein is in fact *unilateral* and only benefits Frost Control.  In the interest of keeping this motion streamlined, Lareau will present these additional arguments to the Court at a future time.

of its claim – Lareau also seeks recovery of the fees and costs incurred in the defense of that claim.  *See* Ind. Code § 34-52-1-1.

## II.     STATEMENT OF MATERIAL UNDISPUTED FACTS

### A.     Lareau Accepts Frost Control Offer Letter

On April 8, 2020, Lareau accepted a written offer of employment with Frost Control as a Regional Vice President.  *Declaration of Christopher Lareau* ("Lareau Decl.") at ¶ 4 and Exh. 1.  The terms of Lareau's employment included, among other things, a $110,000 annual base salary (paid monthly), a commission structure, and four weeks of vacation.  *Id.*  In or around May 2021, Lareau's position changed to Vice President of Sales.  *Id.* at ¶ 5.  This position change did not result in a compensation increase or a change in commission structure or benefits.  *Id.* at ¶ 6.

### B.     Lareau Resigns from Frost Control

Frost Control struggled to remain viable throughout Lareau's tenure with the company. *Id.* at ¶ 7.  On or about September 23, 2021, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at ¶ 8 and Exh. 2.  On September 27, 2021, Lareau notified Frost Control's Board of Directors (the "Frost Control Board") that he was resigning from Frost Control effective October 11, 2021 (the "Notice of Resignation").  *Id.* at ¶ 9 and Exh. 3.

### C.     Lareau's Separation Agreement Has No Assignment Clause

On September 29, 2021, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Declaration of Gina M. McCreadie* ("McCreadie Decl.") at ¶ 3 and Exh. 1.  Specifically, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



*Id.* Ultimately, on September 30, Lareau executed the version of the separation agreement attached as Exhibit C to the complaint filed in this action. Lareau Decl. at ¶ 10 and Exh. 4.

The Separation Agreement is governed by Indiana law. Lareau Decl. at Exh. 4 at ¶ 18. The Non-Compete clause (styled a "Covenant Not to Compete") provides as follows:

> Employer acknowledges that in the course of Employee's employment with or engagement by Employer, Employee has become familiar with the Trade Secrets and other Confidential Information of Employer and its customers and that Employee's services have been of special, unique and extraordinary value to the Employer. Therefore, in further consideration of the agreements and the covenants of Employer contained herein, Employee agrees that, [sic] a period of six (6) months after the Resignation Date,[2] Employee shall not, without the prior express written approval of Employer, directly or indirectly serve as a founder, co-founder, executive officer, manager, consultant, or employee for any enterprise engaged in the manufacture or development of sensors and computer systems built for the analysis and/or reporting of road weather conditions (the "Business"); provided, however, that the foregoing restriction shall not prevent from seeking employment by any department within any of the foregoing that directly competes with the Business and does not provide services in the ordinary course of his employment in a manner that is directly competitive with the Business. Employee acknowledges and agrees that the provisions in this Paragraph 10 shall apply in any locale in which the Employer conducts business or planned to conduct business as of Resignation Date. Nothing set forth in this Paragraph 10 shall prohibit Employee from being a passive owner of not more than two percent (2%) of the outstanding securities of any publicly traded company engaged in the Business, so long as Employee has no

---

[2] The Separation Agreement defines the Resignation Date as October 11, 2021. *See* Lareau Decl. at Exh. 4 at Recitals. Accordingly, if it were enforceable, the term of the Non-Compete was intended to last from October 11, 2021 through April 11, 2022.

3

active participation in the Business. Nothing in this Paragraph 10 shall invalidate or limit the provisions of Paragraphs 9 and 11.

*Id.* at Exh. 4 at ¶ 10.

As indicated, the Separation Agreement does not contain an assignment clause. *Id.* at Exh. 4. It does, however, contain an integration clause, which makes clear that the document reflects the entire understanding between the parties:

> This instrument constitutes and contains the entire agreement and final understanding concerning [Lareau's] employment, termination from the same and other subject matters addressed herein between the Parties. It is intended by the Parties as a complete and exclusive statement of the terms of their agreement. It supersedes and replaces all prior negotiations and all agreements proposed or otherwise, whether written or oral, concerning the subject matter hereof. Any representation, promise or agreement not specifically included in this Agreement shall not be binding or enforceable against either party. This is a fully integrated agreement.

*Id.* at Exh. 4 at ¶ 20. Lareau also never consented to assignment of the Separation Agreement to Frost Solutions or any other party. *Id.* at Exh. 4 at ¶ 13.

### D. Frost Solutions Purchases Certain Frost Control Assets from Frost Control's Lender, Including Lareau's Separation Agreement



McCreadie Decl. at ¶ 4 and Exh. 2. ███████████████████████████████

██████████████████████████. *Id.* An entirely separate company, Frost Solutions, later purchased Frost Control's assets ████████████ on August 9, 2022. ECF No. 1 at ¶ 21; *see also* McCreadie Decl. at Exh. 2. Frost Solutions contends that its acquisition of Frost Control's "contract rights" made it a "successor" to Frost Control's rights and that as a result of Lareau's breach of the Separation Agreement, including the Non-Compete, "Frost Solutions has suffered harm, including the loss of business and the diminution in value of Frost Solutions'

confidential information, damaging Frost Solutions in an amount to be determined at trial."[3] ECF No. 1 at ¶¶ 21 and 74-79.

### E. Defendants Notified Frost Solutions that Indiana Law Rendered Lareau's Non-Compete Unenforceable, But Frost Solutions Continued to Pursue the Claim

On or about October 18, 2023, Defendants put Frost Solutions on notice – with citations to supporting caselaw – that the Non-Compete is unenforceable as a matter of law because Lareau never consented to assignment of the Separation Agreement to Frost Solutions. McCreadie Decl. at ¶ 5. Nearly five months later, Frost Solutions continues to pursue its Non-Compete claim against Lareau. *Id.* at ¶ 6.

## III. ARGUMENT

### A. Summary Judgment Standard

"Summary judgment is appropriate if the record, viewed in the light most favorable to the non-moving party, shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law." *Tommy Hilfiger Retail, Inc. v. N. Conway Outlets LLC*, No. Civ. 99-C-147-B, 2000 WL 1480450, at *2 (D.N.H. Feb. 14, 2000) (citing Fed R. Civ. P. 56(c); *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 7 F.3d 1047, 1050 (1st Cir.1993)). "A material fact is one 'that might affect the outcome of the suit under the governing law' . . . [and] . . . [a] genuine factual issue exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Tommy Hilfiger Retail, Inc.*, 2000 WL 1480450, at

---

[3] Interestingly, Frost Solutions never alleges in the Complaint that the Separation Agreement is a valid and enforceable agreement or is supported by adequate consideration. *See* ECF No. 1. In contrast, Frost Solutions expressly alleges in Count IV (breach of confidentiality agreement against Defendant Patrick Baglien ("Baglien")) that, "[t]he Confidentiality Agreement is a valid and enforceable contract, and is supported by valuable consideration, including but not limited to hiring Baglien as Head of Sales for Frost Control." ECF No. 1 at ¶ 82.

5

\*2 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Importantly, "establishing a genuine issue of material fact requires more than effusive rhetoric and optimistic surmise."  *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997).  "If the evidence [adduced in opposition to the motion] is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).

Further, "summary judgment is an appropriate vehicle for resolving contract-interpretation disputes when the contract language is not infected by some material ambiguity."  *Elliott v. S.D. Warren Co.*, 134 F.3d 1, 9 (1st Cir. 1998); *see also Tommy Hilfiger Retail, Inc.*, 2000 WL 1480450, at \*2 ("[s]ummary judgment is appropriate to resolve a question of contract interpretation 'only if the meaning of the language is clear,' in light of the surrounding circumstances and the undisputed evidence of the parties' intent" (internal citations omitted)).  Importantly, "[a] dispute over the proper interpretation of the pertinent contract provision does not necessarily give rise to a 'genuine issue.'"  *Tommy Hilfiger Retail, Inc.*, 2000 WL 1480450, at \*2.  "If the words of the contract are so clear that 'reasonable people could not differ over their meaning,' the contract language is unambiguous and the court decides the issue of proper interpretation."  *Id.* (quoting *Boston Five Cents Sav. Bank v. Secretary of Dep't of Hous. and Urban Dev.*, 768 F.2d 5, 8 (1st Cir. 1985)).  "To prevail under these circumstances, the moving party must demonstrate that its interpretation of the unambiguous language is correct."  *Id.*

Fed. R. Civ. P. 56 expressly authorizes courts to enter summary judgment on a discrete issue.  *See* Fed. R. Civ. P. 56(a) ("[a] party may move for summary judgment, identifying each claim or defense – *or the part of each claim or defense* – on which summary judgment is sought") (emphasis added)).  Accordingly, this Court is empowered to grant the relief sought

herein, *i.e.,* partial summary judgment on one aspect of Count III.  Indeed, this relief will serve to streamline the issues remaining for discovery and, ultimately, trial.

Indiana law governs the Separation Agreement.  Lareau Decl. at Exh. 4 at ¶ 18.  Under Indiana law, "[i]nterpretation and construction of contract provisions are questions of law. . . . As such, cases involving contract interpretation are particularly appropriate for summary judgment."  *B&R Oil Co., Inc. v. Stoler*, 77 N.E.3d 823, 827 (Ind. Ct. App. 2017) (citing *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014)).  In accordance with Indiana precedent, the Court should "review the contract as a whole, attempting to ascertain the parties' intent and making every attempt to construe the contract's language 'so as not to render any words, phrases, or terms ineffective or meaningless.'"  *Id.* (quoting *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 501 (Ind. Ct. App. 2007)).

**B.     Count III Fails Insofar as It Seeks to Enforce the Non-Compete Because the Non-Compete Is Unenforceable as a Matter of Law**

Under Indiana law, "[c]ovenants not to compete are of 'a personal nature.'"  *SDL Enters., Inc. v. DeReamer*, 683 N.E.2d 1347, 1349 (Ind. Ct. App. 1997) (quoting *Jones v. Servel, Inc.*, 135 Ind. App. 171, 181, 186 N.E.2d 689, 694 (1962)).  "As a general rule, personal service contracts are not assignable."  *Id.* (citing *Norlund v. Faust*, 675 N.E.2d 1142, 1151 (Ind. Ct. App. 1997) (finding that employers may generally not assign covenants not to compete), *reh'g denied*, 678 N.E.2d 421; *see First Community Bank v. Kelley, Hardesty, Smith & Co.*, 663 N.E.2d 218, 223 (Ind. Ct. App. 1996) (claims arising out of personal service contracts are generally not assignable).  "Moreover, a personal right cannot be assigned."  *SDL Enters., Inc.*, 683 N.E.2d at 1349 (citing *Hart Conversions, Inc. v. Pyramid Seating Co.*, 658 N.E.2d 129, 131 (Ind. Ct. App. 1995)); *see Rasp v. Hidden Valley Lake, Inc.*, 519 N.E.2d 153, 158 (Ind. Ct. App. 1988) (noting that "[a]n assignment vests in the assignee all rights, remedies, and contingent benefits which are

7

incidental to the thing assigned, except those which are personal to the assignor and for his benefit only"). The only recognized exception to this rule is where the employee *expressly consents* to assignment of the contract. *SDL Enters., Inc.*, 683 N.E.2d at 1350 (citing *Norlund*, 675 N.E.2d at 1151).[4]

Here, the Separation Agreement – an integrated contract – does not contain an assignment clause or any other express statement that Lareau consents to assignment of the Separation Agreement to any party, including Frost Solutions. *See* Lareau Decl. at Exh. 4. Lareau also expressly confirms, by sworn statement, that he has never consented to assignment of the Separation Agreement to Frost Solutions or any other party. *Id.* at ¶ 11. Indeed, Frost Solutions has never alleged (nor could it) that Lareau consented to assignment of the Separation Agreement to Frost Solutions. Without Lareau's consent, the Non-Compete cannot be validly assigned, and Frost Solutions has no standing to enforce it. Accordingly, Count III must be dismissed insofar as it seeks the enforce the Non-Compete against Lareau.

---

[4] Though Indiana is among a minority of states whose law prohibits enforcement of non-competes without express consent of the employee, it is far from alone. Similar law exists in Florida, Pennsylvania, Virginia, and Alabama, among others. *See, e.g.,* Fl. Stat. § 542.335(1)(f)(2) ("court shall not refuse enforcement of a restrictive covenant on the ground that the person seeking enforcement is . . . an assignee or successor to a party to such contract, provided . . . the restrictive covenant expressly authorized enforcement by a party's assignee or successor"); *Hess v. Gebhard & Co. Inc.*, 570 Pa. 148, 167, 808 A.2d 912, 922 (2002) (holding "that a restrictive covenant not to compete, contained in an employment agreement, is not assignable to the purchasing business entity, in the absence of a specific assignability provision, where the covenant is included in a sale of assets"); *Reynolds & Reynolds Co. v. Hardee*, 932 F. Supp. 149, 153 (E.D. Va. 1996), *aff'd*, 133 F.3d 916 (4th Cir. 1997) ("[u]nder Virginia law, contracts for personal services are not assignable, unless both parties agree to the assignment" and ruling on a motion to dismiss that plaintiff assignee has no standing to enforce non-compete against a former employee who did not consent); *Sisco v. Empiregas, Inc. of Belle Mina*, 286 Ala. 72, 76, 237 So. 2d 463, 466 (1970) ("personal service contracts are not assignable" unless the employee consents through an assignment clause and/or the employee continues employment with the assignee).

8

### C. Pursuant to Indiana Code Section 34-52-1-1, the Court Should Award Lareau and the Other Defendants the Legal Fees and Costs Incurred as a Result of Having to Defend Against this Baseless Claim

Indiana Code Section 34-52-1-1(b) permits a trial court to:

award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

Ind. Code § 34-52-1-1(b).  Indiana Code Section 34-52-1-1(a) provides that, "the party recovering judgment shall recover costs, except in those cases in which a different provision is made by law."

Section 34-52-1-1(b) "places an obligation on litigants to investigate the legal and factual basis of the claim *when filing* and to *continuously evaluate* the merits of claims and defenses asserted throughout litigation."  *Staff Source, LLC v. Wallace*, 143 N.E.3d 996, 1008 (Ind. Ct. App. 2020) (quoting *Landmark Legacy, LP v. Runkle*, 81 N.E.3d 1107, 1116-17 (Ind. Ct. App. 2017)) (emphasis added).  Under Section 34-52-1-1(b), "[a] claim is 'unreasonable' if, based on the totality of the circumstances, including the law and facts known at the time, no reasonable attorney would consider the claim justified or worthy of litigation."  *Kitchell v. Franklin*, 26 N.E.3d 1050, 1057 (Ind. Ct. App. 2015).  "A claim or defense is 'groundless' if no facts exist that support the legal claim relied on and presented by the losing party."  *Id.*

Here, there can be no serious dispute that Frost Solutions failed to investigate the legal and factual basis of the claim *when filing* and also failed to *continuously evaluate* the merits of claims and defenses asserted throughout litigation.  The law of Indiana concerning the

9

unenforceability of non-compete agreements absent express consent to their assignment has been well established for decades.  *See SDL Enters., Inc.*, 683 N.E.2d at 1349-50 (and cases cited therein).  Had Frost Solutions done even a modicum of legal research before seeking to enforce Lareau's clearly unenforceable Non-Compete, it would have known that the claim was both unreasonable and groundless under Indiana law.

Frost Solutions' decision to continue to enforce the unenforceable Non-Compete became even more egregious in October 2023, when Defendants put Frost Solutions on notice – with citations to supporting caselaw – that its Non-Compete claim against Lareau violated Indiana law.  McCreadie Decl. at ¶ 5.  Yet, five months later, the claim remains in the case, *id.* at ¶ 6, forcing Lareau to file this partial motion for summary judgment.

The Court should not countenance Frost Solutions' abuse of the litigation process and its cavalier attitude towards its obligation to vet claims before asserting them.  This is precisely the type of conduct that Indiana Code Section 34-52-1-1(b) is designed to protect against.  *See, e.g., Kitchell*, 26 N.E.3d at 1057.  Accordingly, the Court should award Lareau and the other defendants the legal fees and costs they have incurred in defending against that claim, including the fees and costs associated with this motion.[5]  *See*, *e.g.*, *Staff Source, LLC*, 143 N.E.3d at 1011 (trial court did not abuse its discretion by awarding fees to defendant under Ind. Code § 34-52-1-1 where plaintiff pursued claims based on an expired and backdated employment agreement).

## IV.     CONCLUSION

For the foregoing reasons, Defendant Christopher Lareau respectfully requests that the Court:  (1) determine that Frost Solutions cannot enforce the Non-Compete against him; (2)

---

[5] The defendants will provide the Court with an itemized statement of the fees and costs reasonably associated with Frost Solutions' baseless Non-Compete claim.

dismiss Count III of the Complaint insofar as it seeks to enforce the Non-Compete; and (3) award him and the other defendants the attorneys' fees and costs they have incurred defending against this baseless claim that should never have been brought.

Dated: March 12, 2024    Respectfully submitted,

**CHRISTOPHER LAREAU**

By his attorneys,

 */s/ Kierstan E. Schultz*
Kierstan E. Schultz (N.H. Bar No. 20682)
NIXON PEABODY LLP
900 Elm Street, 14th Floor
Manchester, NH  03101
Tel: (603) 628-4031
Fax:  (603) 628-4040
Email:  kschultz@nixonpeabody.com

Jason C. Kravitz (admitted *pro hac vice*)
Gina M. McCreadie (admitted *pro hac vice*)
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, Massachusetts  02109
Tel:  (617) 345-1000
Fax:  (617) 345-1300
Email:  jkravitz@nixonpeabody.com
           gmccreadie@nixonpeabody.com

**CERTIFICATE OF SERVICE**

      I, Kierstan E. Schultz, hereby certify that the foregoing *Defendant Christopher Lareau's Memorandum of Law on Support of His Motion for Partial Summary Judgment on One Aspect of Count III (Breach of Separation Agreement)* was filed through the ECF system and served electronically on the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: March 12, 2024

                                                        */s/ Kierstan E. Schultz*
                                                        Kierstan E. Schultz, Esq.