# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| FROST SOLUTIONS, LLC,<br><br>                     Plaintiff,<br><br>     v.<br><br>PATRICK BAGLIEN, CHRISTOPHER LAREAU,<br>and VUE ROBOTICS, LLC,<br><br>                    Defendants. | Civ. Action No. 1:22-cv-00401-SE<br><br>**REQUEST FOR EXPEDITED TREATMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

## <u>DEFENDANTS' UNOPPOSED MOTION FOR LEAVE TO FILE COUNTERCLAIM</u>

Pursuant to Fed. R. Civ. P. 13(e), Defendants Patrick Baglien ("Baglien"), Christopher Lareau ("Lareau"), and Vue Robotics, LLC ("Vue Robotics") (collectively, "Defendants"), through counsel, respectfully move for leave to file the counterclaim attached hereto as Exhibit A (the "Proposed Counterclaim"). In support of this motion, Defendants state as follows:

1.  **The Court Should Grant Leave to File the Proposed Counterclaim under Fed. R. Civ. P. 13(e).** The "general rule [is that] counterclaims must be filed within twenty days after service of the summons and complaint." *Salomon S.A. v. Alpina Sports Corp.*, 737 F. Supp. 720, 721 (D.N.H. 1990). However, Fed. R. Civ. P. 13(e) provides that "[t]he court may permit a party to file a supplemental pleading asserting a counterclaim that *matured or was acquired by the party after serving an earlier pleading*." Fed. R. Civ. P. 13(e) (emphasis added); *see Bergquist v. Aetna U.S. Healthcare*, 289 F. Supp. 2d 400, 414 (S.D.N.Y. 2003) ("[u]nder Rule 13(e), leave is not proper if claims were ripe prior to the filing of the answer"). Courts have noted that "Rule 13 must be read in conjunction with Rule 15 of the Federal Rules of Civil Procedure." *See, e.g.*, *Bergquist*, 289 F. Supp. 2d at 414 (internal citations omitted). "Rule

15(d), which specifically deals with supplemental pleadings, only permits a 'party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.'" *Id.* at 414-15 (citing Fed. R. Civ. P. 15(d)) (emphasis omitted).

2.      As with Rule 13(e), "Rule 15(d) contains no standards at all to guide the district court's analysis; it merely authorizes the district court to permit service of a supplemental pleading 'on just terms.'" *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 7 (1st Cir. 2015) (citing case). "In an effort to fill this vacuum and in keeping with the overarching flexibility of Rule 15, courts customarily have treated requests to supplement under Rule 15(d) liberally." *Id.* (citing cases). "Leave to file a supplemental pleading pursuant to Rule 15(d), in general, should be freely granted, '[a]bsent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility.'" *Polansky v. Wrenn*, No. 12-CV-105-PB, 2013 WL 1165158, at *2 (D.N.H. Feb. 22, 2013), *report and recommendation adopted sub nom. Polansky v. NH Dep't of Corr.*, No. 12-CV-105-PB, 2013 WL 1155429 (D.N.H. Mar. 19, 2013) (citations omitted). This Rule 15(d) standard is appliable to Rule 13(e).

3.      Here, Defendants have not engaged in any undue delay, bad faith, or dilatory tactics.[1] Defendants are filing the Proposed Counterclaim at this time because the facts and events giving rise to the claims in the Proposed Counterclaims manifested long after Defendants' deadline to answer Frost Solutions' complaint. *See* Exh. A. For example, Frost Solutions' tortious interference with Defendants' insurance policy only happened in November and

---

[1] As detailed *infra*, in contrast, Frost Solutions has engaged in a pattern of dilatory discovery and litigation tactics – consuming much of the fact discovery period with bad-faith and time-wasting settlement efforts that effectively stalled the litigation.

December 2023 (and did not become known to Defendants until January 2024), more than a year after Defendants answered the complaint.  *Id.*  Additionally, it took many months of discovery and motion practice before Frost Solutions finally admitted that it failed to preserve critical evidence – including the contemporaneous Hubspot download files that are the centerpiece of Plaintiff's case and Baglien and Lareau's Frost Control laptops, which are expressly cited in the Complaint as containing damning evidence of wrongdoing.  In fact, only on December 19, 2023, in response to direct questioning by the Court, did Frost Control finally concede that it does not have Baglien and Lareau's Frost Control email archive.  ECF No. 45 at 37:19-38:3.

4.       Moreover, there will be no prejudice to Frost Solutions by the Court granting leave to file the Proposed Counterclaim.  Consistent with the unenthusiastic manner in which Frost Solutions has prosecuted this case from the beginning, *Frost Solutions has not yet taken a single deposition in this matter* and fact discovery remains ongoing.

5.       Indeed, Frost Solutions has squandered much of the entire fact discovery period by engaging Defendants in an extended period of bad-faith settlement discussions – including two days of wasteful mediation before a retired U.S. Magistrate Judge followed by an outrageous and fraudulent effort by Frost Solutions to persuade Defendants' insurance carrier to revoke the coverage that is funding Defendants' defense in this action.  Specifically, and as detailed in Paragraphs 89-119 of the Proposed Counterclaim, a principal of Frost Solutions violated the Protective Order by using a document Defendants designated as "Confidential" to identify Defendants' insurance carrier and then knowingly disseminated false information to that carrier – information that contradicted Frost Solutions' sworn interrogatory answers – for the purpose of

provoking an investigation into whether Defendants had omitted material information from their insurance application.[2]

6.       More recently and more egregiously, Frost Solutions consumed more than six weeks of the fact discovery period with a disingenuous "settlement" ploy.  Specifically, on January 26, 2024, Frost Solutions advised Defendants that it was generally receptive to a resolution based on the very specific framework proposed by Defendants (coupled with a "pencils down" armistice to avoid wasting further resources).  Then, after wasting more than six weeks cogitating on a proposal it had already embraced, abruptly announced discussions were over when Defendants rejected a proposal that was far higher – not even in the same proverbial ballpark – than what Frost Solutions had endorsed on January 26.  Frost Solutions seems self-amused by its Lucy Van Pelt routine of yanking the football away just as Charlie Brown prepares to kick it, but the Court should not countenance this conduct or exhibit any sympathy for the impact Frost Solutions' time-wasting gambit will now have on its ability to complete fact discovery.

7.       The prejudice that Defendants would suffer by not allowing this motion will far outweigh any potential prejudice to Frost Solutions.  Accordingly, the Court should permit Defendants to file the Proposed Counterclaim pursuant to Fed. R. Civ. P. 13(e) to remedy Frost Solutions' litigation abuse and the unlawful activities alleged therein.

8.       **The Court Has Supplemental Jurisdiction Over the Proposed Counterclaim**. When determining whether there is subject matter jurisdiction, the Court accepts well-pleaded allegations in a proposed counterclaim as true.  *See Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co.*, 215 F.3d 195, 197 (1st Cir. 2000).

---

[2] This conduct will be the subject of additional motion practice.

9.      "The decision whether to exercise supplemental jurisdiction is left to the sound

discretion of the district court." *Pejepscot Indus. Park, Inc.*, 215 F.3d at 206.

10.     28 U.S.C. § 1367(a) provides that, other than as provided in exceptions not

relevant here:

> in any civil action of which the district courts have original jurisdiction, the
> district courts shall have supplemental jurisdiction *over all other claims that are
> so related to claims in the action within such original jurisdiction that they form
> part of the same case or controversy under Article III of the United States
> Constitution.*

28 U.S.C. § 1367(a) (emphasis added).  "Article III's case-or-controversy standard is the

jurisdictional limit for counterclaims." *Glob. NAPs, Inc. v. Verizon New England Inc.*, 603 F.3d

71, 87 (1st Cir. 2010).  In deciding that "supplemental jurisdiction is somewhat broader than the

transaction-or-occurrence test," the First Circuit noted that "*Gibbs*, the Court's only decision

deciding the scope of an Article III 'case,' instead looked to whether the claims arose from a

'common nucleus of operative fact.'" *Id.* at 88 (quoting *United Mine Workers of Am. v. Gibbs*,

383 U.S. 715, 725 (1966)).  "Consequently, 'supplemental jurisdiction has [ ] been exercised

where the facts underlying the federal and state claims substantially overlap or where

presentation of the federal claim necessarily brings the facts underlying the state claim before the

court.'" *Coyne v. Trustees of Dartmouth Coll.*, No. 14-CV-517-SM, 2015 WL 1457900, at *1

(D.N.H. Mar. 30, 2015) (citations omitted).  In short, "supplemental jurisdiction is fairly far-

reaching." *Id.* (citing *Godin v. Schencks*, 629 F.3d 79 (1st 2010)); *see Glob NAPs, Inc.*, 603 F.3d

71 n.22 (acknowledging that the "Seventh Circuit, relying on *Gibbs*, held that a counterclaim

need only have a 'loose factual connection' between claims to satisfy §1367").

11.     Here, the facts supporting the claims in the Proposed Counterclaim are so
intertwined with the facts supporting Frost Solutions' claims to make supplemental jurisdiction
proper.

12.     The Proposed Counterclaim asserts tortious interference with contractual
relations, violation of the New Hampshire Consumer Protection Act, N.H. RSA § 358-A:1, *et
seq*., and negligent infliction of emotional distress, which all stem from the outrageous and anti-
competitive actions Frost Solutions has taken in pursuit of its claims, including actions that
reveal that Frost Solutions is using the underlying action to destroy a competitor rather than as a
venue for resolving a commercial dispute in good faith.  Specifically, the Proposed Counterclaim
alleges that Frost Solutions:  (1) failed to conduct an adequate pre-filing investigation prior to
commencing this litigation and engaged in such widespread spoliation that it is impossible for
Defendants to adequately defend themselves;[3] (2) violated the Protective Order to use
confidential information to "drop a dime" on Defendants by contacting their insurance carrier
and claiming – fraudulently – that Defendants had omitted information from their insurance
application to strip Defendants of their coverage for this litigation; and (3) is attempting to
enforce a non-competition agreement that is inarguably unenforceable as a matter of law;[4] and
(4) is using this litigation for improper purposes, namely, to harass, embarrass, disparage,
pummel, and/or otherwise interfere with Defendants and their business.

---

[3] Though the spoliation issue will be presented to the Court formally during the pretrial process,
its obvious impact on these proceedings is undeniable.  Frost Solutions alleges at Paragraph 49 of
the Complaint that it imaged Baglien and Lareau's company laptops before commencing this
action, yet Frost Solutions does not have any idea where those laptops (or any forensic images)
are.

[4] Frost Control refused to voluntarily dismiss this claim, and thus Defendants have been forced to
move for summary judgment on this claim.  ECF No. 58.

13.    Frost Solutions' conduct in pursuit of its claims necessarily brings the facts underlying the claims in the Proposed Counterclaim before the Court, including:  (1) that Frost Solutions made false and/or misleading allegations in its Complaint regarding purportedly damning forensic evidence found on Baglien and Lareau's company laptops when discovery has revealed that *Frost Solutions has never been in possession of those laptops*; and (2) Frost Solutions brazenly disregarded the protective order in its effort to unlawfully strip Defendants of their insurance coverage and put a competitor out of business.  Defendants will rely on these facts in their defense of Frost Solutions' claims.  Frost Solutions has no laptop evidence.  Frost Solutions preserved emails from a variety of former Frost Control employees, but – curiously – it failed to do so for the two former employees it planned to sue.  Frost Solutions is attempting to enforce a non-competition agreement that is unenforceable as a matter of law.  The underlying litigation is designed to crush a competitor.  These are the allegations of the Proposed Counterclaim and they overlap and coincide with key defenses Defendants will raise at trial. Accordingly, the claims in the Proposed Counterclaim and Frost Solutions' claims are sufficiently intertwined, related, and connected to Frost Solutions' claims so as to form a common nucleus of operative fact, thereby authorizing the Court to exercise supplemental jurisdiction over the Proposed Counterclaim.

14.    Finally, The Proposed Counterclaim will not materially alter discovery.  The same witnesses will be relevant, and very few additional documents will need to be produced.

15.    **Request for Expedited Treatment**.  Pursuant to LR 7.1(f), Defendants respectfully request expedited consideration of this motion.  The close of the already-extended fact discovery period is April 19, 2024.  While there should be limited additional discovery

needed relating to the claims asserted in the Proposed Counterclaim, an expedited decision on this motion will ensure the parties can timely complete discovery.

16.     **Concurrence – No Objection**.  Pursuant to LR 7.1(c), counsel for Defendants sought concurrence from counsel for Frost Solutions via email on March 11, 2024.  Counsel for Frost Solutions responded on March 12, 2024 that Frost Solutions has no objection to Defendants filing a counterclaim now, but it reserves all substantive objections to the counterclaim.

17.     **No Memorandum of Law Needed**.  Pursuant to LR 7.1(a)(2), no memorandum of law is needed, as Defendants cite the applicable rules and caselaw herein and the relief requested is within the sound discretion of the Court.

18.     **Oral Argument Requested**.  Although Frost Solutions has no objection to Defendants filing the Proposed Counterclaim, pursuant to LR 7.1(d), Defendants request oral argument only to the extent that the Court wishes to hear from the parties on this motion.

**WHEREFORE**, Defendants respectfully request that the Court:

(1)     Grant Defendants' motion in its entirety,

(2)     Order that Defendants may file the Proposed Counterclaim attached hereto as Exhibit A; and

(3)     Grant all such other relief as the Court deems just and appropriate.

Dated:  March 13, 2024                  Respectfully submitted,

**PATRICK BAGLIEN, CHRISTOPHER LAREAU, AND
VUE ROBOTICS, LLC**

By their attorneys,

 */s/ Kierstan E. Schultz*
Kierstan E. Schultz (N.H. Bar No. 20682)
NIXON PEABODY LLP
900 Elm Street, 14th Floor
Manchester, NH  03101
Tel: (603) 628-4031
Fax:  (603) 628-4040
Email:  kschultz@nixonpeabody.com

Jason C. Kravitz (admitted *pro hac vice*)
Gina M. McCreadie (admitted *pro hac vice*)
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, Massachusetts  02109
Tel:  (617) 345-1000
Fax:  (617) 345-1300
Email:  jkravitz@nixonpeabody.com
        gmccreadie@nixonpeabody.com

## CERTIFICATE OF CONCURRENCE

Undersigned counsel certifies that counsel for Defendants sought concurrence of counsel for Frost Solutions regarding this motion via email on March 11, 2024.  Frost Solutions responded on March 12, 2024 indicating that Frost Solutions has no objection to Defendants filing a counterclaim, but reserved all substantive objections to the counterclaim.


Dated:  March 13, 2024                           */s/ Kierstan E. Schultz*
                                                 Kierstan E. Schultz, Esq.


## CERTIFICATE OF SERVICE

I, Kierstan E. Schultz, hereby certify that the foregoing *Defendants' Unopposed Motion for Leave to File Counterclaim* was filed through the ECF system and served electronically on the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: March 13, 2024

                                                 */s/ Kierstan E. Schultz*
                                                 Kierstan E. Schultz, Esq.