UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| FROST SOLUTIONS, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC,<br><br>                Defendants. | Civ. Action No. 1:22-cv-00401-SE |

**MOTION FOR ORDER TO SHOW CAUSE WHY PLAINTIFF FROST SOLUTIONS, LLC AND ITS PRINCIPAL MICHAEL KIRSH SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR FAILURE TO OBEY THE PROTECTIVE ORDER**

Pursuant to Fed. R. Civ. P. 26 and 37(b)(2) and the Court's inherent power, Defendants Patrick Baglien ("Baglien"), Christopher Lareau ("Lareau"), and Vue Robotics, LLC ("Vue Robotics") (collectively, "Defendants"), through counsel, respectfully move the Court to enter an Order to Show Cause as to Why Plaintiff Frost Solutions, LLC ("Frost Solutions") and Its Principal Michael Kirsh ("Kirsh") Should Not Be Held in Contempt of Court for Failure to Obey the Protective Order.

Defendants are cognizant of the seriousness of the relief they are requesting. They are undertaking this process not simply because Kirsh and Frost Solutions willfully violated the Protective Order (the "Protective Order," ECF No. 28) entered by the Court in this action (the "Action") but also because, as set forth herein, they took information designated "Confidential" under the Protective Order and deliberately used it for an impermissible, improper, and illegal purpose. Specifically, Kirsh and Frost Solutions used a "Confidential" document to glean the identity of Defendants' insurance carrier and then *knowingly disseminated false information to*

*that carrier for the purpose of inducing the carrier to revoke Defendants' coverage.*  While this outrageous and unlawful gambit has thus far proven unsuccessful (in no small part due to the discovery of Plaintiff's scheme), Kirsh and Frost Control should be held in contempt for their flagrant disregard of the Protective Order.

In support of this motion, Defendants further state as follows:

1. Pursuant to their obligations under Fed. R. Civ. P. 26(a)(1), Defendants produced on or about April 21, 2023 a copy of an insurance policy that may be used to satisfy all or part of a possible judgment in the Action (the "Insurance Policy").

2. The Insurance Policy contains Defendants' confidential commercial information, and thus they designated the Insurance Policy as Confidential Information pursuant to the Protective Order, which governs the confidentiality of information produced in this Action, by marking each page "Confidential."

3. As most protective orders do, the Protective Order in this action provides a procedure by which the parties can seek to challenge the designation of a particular document, which procedure Frost Solutions has previously employed in this Action.

4. Frost Solutions and Kirsh never challenged the "Confidential" designation of the Insurance Policy by invoking the procedure set forth in the Protective Order.  Instead, they unilaterally disregarded the document's "Confidential" designation so that they could set in motion their scheme to destroy a competitor by knowingly feeding false information to Defendants' insurance carrier, hoping to cause the carrier to revoke coverage.

5. The ultimate goal of this unseemly scheme was to ensure that Defendants – whose pockets are not deep – would be unable to defend themselves in the Action, thereby effectively putting a competitor out of business.

6. The Protective Order expressly provides that "Confidential Information or Highly Confidential Information under this Order shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in Paragraph 5(b) or (c) *for any purpose whatsoever other than to prepare for and to conduct discovery, hearings and trial in this action, including any appeal thereof.*" *See* ECF No. 28 at ¶ 5.a. (emphasis added).

7. On October 23 and November 27, 2023, the parties participated in two days of mediation, which did not succeed in resolving the Action.

8. Curiously, despite having received a copy of the Insurance Policy months earlier, just a few days after the first day of mediation, counsel for Frost Solutions began demanding that the Defendants produce a copy of the Insurance Policy and any reservation of rights letters issued by the insurance carrier. Frost Solutions' counsel began demanding this information – as well as the remaining limits on the policy – on October 27, 2023.

9. On November 1, 2023, counsel for the Defendants informed counsel for Frost Solutions that the Insurance Policy had been produced to them long ago, on April 21, 2023, and identified the production number assigned to the document.

10. Three days after the second day of mediation, on November 30, 2023, Defendants' insurance carrier received a phone call from a person who identified himself only as "Mike," and who called from the mobile number identified in the Proposed Counterclaim and Jury Demand (ECF 59-1 at ¶ 96)[1].

11. Because the Insurance Policy was marked "Confidential," Frost Solutions was barred from using the document "*for any purpose whatsoever other than to prepare for and*

---

[1] To limit the references to Kirsh's mobile number in court filings, Defendants are not including the number in this submission.

*conduct discovery, hearings and trial in this action, including any appeal thereof.*"  See ECF No. 28 at ¶ 5.a. (emphasis added).

12. Defendants' insurance carrier returned "Mike's" call. "Mike" told the insurance carrier that he was in litigation with Vue Robotics and that he was aware the Defendants had received a letter from "Frost" *dated January 5, 2022* accusing them of "bad stuff" (the "Jan 5 Letter").

13. The purpose of "Mike's" call was to fraudulently persuade the insurance carrier that Defendants had omitted material information from their insurance application (namely, the Jan 5 Letter), thereby triggering an investigation that would lead the carrier to revoke coverage for the Action.

14. As verified by publicly available information, the mobile number used by "Mike" belongs to Michael Kirsh, a principal of Frost Solutions through his interest in Clashmore Ventures.

15. There can be no reasonable doubt that Kirsh is the person who called Defendants' insurance carrier on or about November 30, 2023 and identified himself as "Mike."

16. However, contrary to what they told the insurance carrier, Frost Solutions and Kirsh knew that the Jan 5 Letter was entirely unrelated to the claims asserted in this Action. In fact, interrogatory answers verified by Kirsh in May and August 2023 confirm that Frost Solutions never suspected Baglien and Lareau had misappropriated confidential information and/or trade secrets until early June 2022 – five months after the Jan 5 Letter was sent.

17. Further details exposing that Frost Solutions and Kirsh knew they were misleading the insurance carrier are set forth in Paragraphs 89-119 of the Proposed Counterclaim (ECF No. 59-1).

18. Kirsh, an agent of Frost Solutions, called Defendants' insurance carrier and tried to strip Defendants of their coverage *by relaying information he knew to be false*.

19. Kirsh, an agent of Frost Solutions, violated the Protective Order by using the information he learned from the Insurance Policy – designated as Confidential Information – for a purpose unrelated to preparing for and conducting discovery, hearings, or trial in the Action.

20. On or about January 5, 2024, days after Kirsh contacted the insurance carrier, Defendants received a letter from their carrier indicating that their coverage may be in jeopardy because of the allegations raised in the Jan 5 Letter (the "Insurance Reconsideration Letter").

21. The first step of Kirsh's plan to destroy a competitor had worked. By knowingly providing the carrier with false information, Kirsh triggered an investigation into whether Defendants had withheld material information during the insurance application process.

22. However, Frost Solutions was unaware that Kirsh's plan had succeeded because no one was providing ongoing information to Frost Solutions about the status of Defendants' insurance coverage and whether the carrier had taken any action in response to Kirsh's call.

23. Apparently unsure whether Kirsh's "anonymous" telephone call had worked, Frost Solutions decided to again bring the Jan 5 Letter – and the fraudulent argument that that letter had put Defendants on notice of the claims of the Action – to the insurance carrier's attention. This time Frost Solutions would use one of its attorneys to peddle the false narrative.

24. On or about January 11, 2024, Frost Solutions, through one of its attorneys of record in the Action (the "Frost Solutions Attorney"), sent a letter to counsel for Defendants (the "Jan 11 Letter") in which he stated, "we have serious concerns as to the extent of coverage. We have requested any reservations of rights letter. *As you know, your client was put on notice of*

*this claim on January 5, 2022.*[2]  *It appears that the insurance company was not notified until sometime after.  As such, there may be a coverage issue and we would like to know if that is the case. . . ."*  (Emphasis added.)  The Frost Solutions Attorney also *expressly* requested that his Jan 11 Letter be shared with Defendants' insurance carrier.

25. The purpose of the Jan 11 Letter was to establish an indirect conduit to Defendants' insurance carrier so Frost Solutions could relay false information to provoke an investigation into whether Defendants withheld information from their insurance application and cause the carrier to revoke Defendants' insurance policy and coverage based on that false information.

26. Just as Kirsh did, the Frost Solutions Attorney knew that his assertion that Defendants were put on notice of "this claim" – *i.e.,* the claims in the Action – on January 5 (based on the Jan 5 Letter) was false because he had access to all the same information as Kirsh, including the interrogatory answers that Kirsh had verified under oath confirming that Frost Solutions never suspected Defendants had misappropriated trade secrets and/or confidential information until June 2022 – five months after the Jan 5 Letter was sent.

27. The Frost Solutions Attorney, as an agent of Frost Solutions, misled the carrier through his Jan 11 Letter.

28. On or about January 15, 2024, Defendants' counsel responded to the Frost Solutions Attorney's Jan 11 Letter noting that reference to the Jan 5 Letter and a potential "coverage issue" suggested that someone may have taken steps to encourage the carrier to

---

[2] Tellingly, Frost Solutions' counsel sent two versions of the Jan 11 Letter.  The first asserted that "your client was put on notice of this claim on June 8, 2022," which refers to the letter attached as Exhibit D to the Complaint.  Shortly thereafter, a "corrected version" of the letter was sent that changed June 8, 2022 to January 5, 2022.  It would be difficult to imagine a more Freudian slip.

6

reconsider its coverage position (the "Jan 15 Letter").  Defendants' counsel also reiterated that the Jan 5 Letter has no bearing on the underlying litigation, other than to reinforce that Frost Control and Frost Solutions engaged in spoliation by failing to preserve critical evidence beginning in January 2022.  Defendants' counsel requested that Frost Solutions repair the damage it had caused by acknowledging in a stipulation that the Jan 5 Letter did not – and could not have – put Defendants on notice of any of the claims in the Action.

29. Frost Solutions refused to take any remedial action.  Instead, on or about January 24, 2024, Frost Solutions' counsel responded to the Jan 15 Letter accusing Defendants of trafficking in a *Through-the-Looking-Glass*-style "conspiracy theory," falsely denying that anyone from Frost Solutions had contacted Defendants' insurance carrier.  This denial is simply not credible given that:  (1) someone who identified himself as "Mike" called Defendants' insurance carrier from a mobile phone number associated with Michael Kirsh, a principal of Frost Solutions; and (2) "Mike" told the carrier that he was in litigation against Vue Robotics.

30. "The court has discretion under Rule 26, Rule 37, and its inherent power to determine the proper scope of discovery and to issue sanctions for violations of court orders." *Begley v. Windsor Surry Co.*, No. 17-CV-317-LM, 2020 WL 12991896, at *3 (D.N.H. Oct. 9, 2020) (Johnstone, M.J.) (citing *Poliquin v. Garden Way, Inc.*, 154 F.R.D. 29, 31 (D. Me. 1994) ("Federal Rule of Civil Procedure 37(b) grants federal courts wide discretion in patterning sanctions to respond to a party's failure to comply with discovery orders.  Discovery orders that can be enforced through Rule 37(b) include protective orders issued under Federal Rule of Civil Procedure 26(c)"); *see also* Fed. R. Civ. P. 37, Notes of Advisory Committee, 1970 Amendment, subdivision (b) ("Rule 37(b)(2) should provide comprehensively for enforcement of all [discovery] orders," including Rule 26(c) protective orders).  "Once it is determined that a party

has violated a discovery order, Rule 37(b) requires the disobedient party to show that its failure to comply is substantially justified or that other circumstances make an award of sanctions unjust." *Poliquin*, 154 F.R.D. at 31 (citing Fed. R. Civ. P. 37(b)).

31.     A complainant must prove civil contempt "by clear and convincing evidence . . . [and] the putative contemnor 'must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion.'" *Islamic Inv. Co. of the Gulf (Bah.) Ltd. v. Harper (In re Grand Jury Investigation)*, 545 F.3d 21, 25 (1st Cir. 2008) (quoting *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir. 1991)).

32.     There can be no reasonable dispute that the Protective Order is a clear and unambiguous order.  The Protective Order expressly limits what a party can do with confidential information:  "Confidential Information or Highly Confidential Information under this Order *shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in Paragraph 5(b) or (c) for any purpose whatsoever other than to prepare for and to conduct discovery, hearings and trial in this action, including any appeal thereof*."  *See* ECF No. 28 at ¶ 5.a. (emphasis added).

33.     Defendants have demonstrated by clear and convincing evidence that Frost Solutions and Kirsh violated the Protective Order by using the Insurance Policy to glean the identity of Defendants' insurance carrier in furtherance of its scheme to strip Defendants of their coverage by knowingly providing false information to the carrier.

34.     Parties are not empowered to unilaterally disregard court orders they find inconvenient.  Indeed, courts routinely sanction parties for unilaterally disclosing confidential information in violation of a protective order.  *See, e.g., Cleveland v. Ludwig Inst. for Cancer*

*Rsch. Ltd.*, No. 19-CV-02141-JM (JLB), 2021 WL 4993025, at \*\*10, 14 (S.D. Cal. Oct. 27, 2021) (awarding sanctions and finding "Plaintiffs were not permitted to unilaterally determine that . . . they did not need to comply" with protective order) (citing *Nishimoto v. Cnty. of San Diego,* No. 16-CV-1974-BEN-LL, 2019 WL 1242963, at \*3 (S.D. Cal. Mar. 18, 2019) (finding "Plaintiff's counsel could not simply unilaterally decide the materials were improperly designated") and *Brady v. Grendene USA, Inc*., No. 3:12-CV-0604-GPC-KSC, 2015 WL 3554968, at \*3 (S.D. Cal. June 5, 2015) (stating that whether a document "*should* be designated confidential is irrelevant to [a party's] obligation to comply with the Protective Order") (emphasis in original)).  The Court's analysis in *Cleveland* is particularly applicable here.  Specifically, the Court noted that once Plaintiffs determined that they wanted to use a confidential document in collateral litigation, they had "two permissible options" – they could follow the de-designation procedure laid out in the protective order or file a motion to modify the protective order.  *Cleveland*, 2021 WL 4993025, at \*7.  "For inexplicable reasons, Plaintiffs chose neither option. . . .  Instead, Plaintiffs make[] several post-hoc arguments in an attempt to justify their behavior.  None of these arguments is persuasive."  *Id.*

35.     Unsurprisingly, numerous other courts have similarly ruled that litigants do not have a right to unilaterally disregard confidentiality designations made pursuant to a protective order.  *See, e.g., Motogolf.com, LLC v. Top Shelf Golf, LLC*, No. 220-CV-00674-APG-EJY, 2021 WL 5761770, at \*2 (D. Nev. Dec. 3, 2021) (finding violation of protective order after Plaintiff made "unilateral decision that the document at issue was improperly designated as confidential and could therefore be filed in the public record without any discussion with Defendants or order from the Court"); *In re Roman Cath. Church of Archdiocese of New Orleans*, No. CV 22-4101, 2023 WL 4105655, at \*16 (E.D. La. June 21, 2023) (affirming

bankruptcy court's finding of violation of protective order where party "made the unilateral and knowing choice to subvert" the protective order's procedure for challenging a confidentiality designation); *Loc. Access, LLC v. Peerless Network, Inc.*, No. 617CV236ORL78EJK, 2021 WL 1819230, at **8-10 (M.D. Fla. Jan. 6, 2021), *report and recommendation adopted*, No. 6:17-CV-236-WWB-EJK, 2021 WL 8200193 (M.D. Fla. Oct. 4, 2021) (rejecting advice-of-counsel and inadvertence defenses and recommending finding of civil contempt where party had disseminated confidential materials in violation of protective order).

36. Parties cannot simply disregard court orders they find inconvenient. This is particularly so where, as here, a party deliberately violates a Protective Order to use information designated "Confidential" in furtherance of a fraudulent and unlawful scheme to put a competitor out of business.

37. For the foregoing reasons, Defendants respectfully request that the Court enter an Order to Show Cause Why Frost Solutions and Kirsh Should Not Be Held in Contempt of Court for Failing to Obey the Protective Order. A proposed Order is attached hereto as Exhibit A.

38. Pursuant to LR 7.1(c), counsel for Defendants sought concurrence from counsel for Frost Solutions via email on March 13, 2024 and follow-up email on March 14, 2024. Counsel for Frost Solutions responded via email on March 14, 2024 and stated that Frost Solutions does not consent.

39. Pursuant to LR 7.1(a)(2), no memorandum of law is needed, as Defendants cite the applicable rules and caselaw herein.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants respectfully request that the Court:

1. Enter an Order in the form attached hereto as Exhibit A to schedule an evidentiary hearing at the Court's earliest convenience, requiring Kirsh and another authorized representative of Frost Solutions, knowledgeable of the facts

       concerning this matter, to appear in person and provide testimony sufficient to allow the Court to determine whether they should be held in contempt for violating the Protective Order;

2. Enter an Order holding Kirsch and Frost Solutions in contempt for violating the Protective Order;

3. Preclude Kirsh and, based on evidence received during the evidentiary hearing, potentially other individuals from accessing information marked "Confidential" under the Protective Order (Kirsh is already precluded from accessing information marked "Highly Confidential – Attorneys' Eyes Only");

4. Require Kirsh and, based on evidence received during the evidentiary hearing, potentially other individuals to declare under oath that he/they have not disclosed "Confidential" information to any other third party or otherwise used "Confidential" information in a manner that is impermissible under the Protective Order;

5. Enter an Order authorizing Defendants to introduce as evidence at trial the Court's finding that Kirsh and Frost Solutions violated the Protective Order and were held in contempt;

6. Enter an Order requiring Frost Solutions and Kirsh to reimburse Defendants for the legal fees and expenses incurred in connection with their violation of the Protective Order, including all fees and expenses associated with the preparation of this motion and any associated proceedings; and

7. Award Defendants any additional relief the Court deems just and necessary

Dated:  March 14, 2024                    Respectfully submitted,

                                          **PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC**

By their attorneys,

*/s/ Kierstan E. Schultz*
Kierstan E. Schultz (N.H. Bar No. 20682)
NIXON PEABODY LLP
900 Elm Street, 14th Floor
Manchester, NH  03101
Tel: (603) 628-4031
Fax:  (603) 628-4040
Email:  kschultz@nixonpeabody.com

*/s/ Jason C. Kravitz*
Jason C. Kravitz (admitted *pro hac vice*)
Gina M. McCreadie (admitted *pro hac vice*)
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, Massachusetts  02109
Tel:  (617) 345-1000
Fax:  (617) 345-1300
Email:  jkravitz@nixonpeabody.com
          gmccreadie@nixonpeabody.com

## CERTIFICATE OF CONCURRENCE

      Undersigned counsel certifies that counsel for Defendants sought concurrence of counsel for Frost Solutions regarding the relief sought in this motion via email on March 13, 2024 and follow-up email on March 14, 2024.  Counsel for Frost Solutions responded via email on March 14, 2024 and stated that Frost Solutions <u>does not consent</u>.

Dated:  March 14, 2024                    */s/ Kierstan E. Schultz*
                                                  Kierstan E. Schultz, Esq.

Dated:  March 14, 2024                                    Respectfully submitted,

**PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC**

By their attorneys,

*/s/ Kierstan E. Schultz*
Kierstan E. Schultz (N.H. Bar No. 20682)
NIXON PEABODY LLP
900 Elm Street, 14th Floor
Manchester, NH  03101
Tel: (603) 628-4031
Fax:  (603) 628-4040
Email:  kschultz@nixonpeabody.com

*/s/ Jason C. Kravitz*
Jason C. Kravitz (admitted *pro hac vice*)
Gina M. McCreadie (admitted *pro hac vice*)
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, Massachusetts  02109
Tel:  (617) 345-1000
Fax:  (617) 345-1300
Email:  jkravitz@nixonpeabody.com
            gmccreadie@nixonpeabody.com

## CERTIFICATE OF CONCURRENCE

Undersigned counsel certifies that counsel for Defendants sought concurrence of counsel for Frost Solutions regarding the relief sought in this motion via email on March 13, 2024 and follow-up email on March 14, 2024.  Counsel for Frost Solutions responded via email on March 14, 2024 and stated that Frost Solutions <u>does not consent</u>.

Dated:  March 14, 2024                                    */s/ Kierstan E. Schultz*
                                                          Kierstan E. Schultz, Esq.

**CERTIFICATE OF SERVICE**

      I, Kierstan E. Schultz, hereby certify that the foregoing *Motion for Order to Show Cause Why Plaintiff Frost Solutions, LLC and Its Principal Michael Kirsh Should Not Be Held in Contempt of Court for Failure to Obey the Protective Order* was filed through the ECF system and served electronically on the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: March 14, 2024

                                              */s/ Kierstan E. Schultz*
                                              Kierstan E. Schultz, Esq.