UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| FROST SOLUTIONS, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC,<br><br>        Defendants. | Case No. 1:22-cv-00401-SE |

**PLAINTIFF'S OBJECTION TO
DEFENDANTS' MOTION FOR ORDER TO SHOW CAUSE**

Plaintiff Frost Solutions, LLC ("Frost"), strongly objects to Defendants' Motion for Order to Show Cause (Doc. 60). In their Motion to Show Cause, Defendants are asking this Court to issue a show cause order and hold Frost and its principal Michael Kirsh in contempt for allegedly violating the protective order in place in this litigation. Despite acknowledging the high burden to prove their serious allegations by clear and convincing evidence, Defendants have submitted no evidence to the Court in support of their motion. Instead, they repeat and cite to many of the allegations that appear in the proposed statement of counterclaims they recently moved for leave to file (*see* Docs. 59 & 59-1), a motion which Frost did not oppose. Thus, in effect, in their Motion to Show Cause, Defendants are asking this Court to grant them relief on the merits for the conduct alleged in their proposed Counterclaim.

The Court should reject Defendants' invitation to do the work of proving up their counterclaims for them and should deny Defendants' unsupported request for a contempt order and sanctions. Defendants also fail to identify any damages suffered as a result of the alleged conduct which, according to them, occurred months ago. Further, their request should be denied

because of their own unclean hands, as they violated their initial disclosure obligations regarding the insurance policy at issue here and repeatedly attempted to hide it from Frost. Finally, even taken on their own terms, Defendants' allegations do not establish a violation of the protective order. For these reasons, discussed more fully below, Defendants' Motion to Show Cause should be denied.

## LEGAL STANDARDS

"To prove civil contempt, a movant must show that (1) the alleged contemnor had notice of the order, (2) the order was clear and unambiguous, (3) the alleged contemnor had the ability to comply with the order, and (4) the alleged contemnor violated the order." *Hawkins v. Dep't of Health & Human Servs. for N.H., Comm'r*, 665 F.3d 25, 31 (1st Cir. 2012) (cleaned up). "The movant must prove each of these elements by clear and convincing evidence." *Id.* "'Clear and convincing' means that the party's contention is highly probable—substantially more likely to be true than untrue." *United States v. DeMauro*, 483 F. Supp. 3d 68, 79 (D.N.H. 2020), citing *Colorado v. New Mexico*, 467 U.S. 310, 316 (1986).

For an order to be "clear and unambiguous," it must leave "no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion." *In re Grand Jury Investigation*, 545 F.3d 21, 25 (1st Cir. 2008) (citation omitted). "[A]ny ambiguities or uncertainties in such a court order must be read in a light favorable to the person charged with contempt." *Id.* (citation omitted). "[E]ven if all of these conditions are satisfied, the trial court retains a certain negative discretion; that is, the court retains the authority to eschew the imposition of a contempt sanction if it deems such eschewal to be in the interests of justice in the particular case." *Id.*

**ARGUMENT**

**I.    Defendants Have Submitted No Evidence to Support Their Allegations and Thus Have Failed to Meet Their High Burden.**

Defendants declare that they "have demonstrated by clear and convincing evidence that Frost Solutions and Kirsh violated the Protective Order." (Motion to Show Cause at 8.) But they submit no evidence to support this conclusory assertion – no exhibits, no declarations, no testimony. Defendants' record cites in their motion are limited to the protective order itself and their own proposed statement of counterclaims. (*See id.* at 1, 3, 4, 8.) Neither of these provides proof of any conduct. Defendants' "mere allegations without proof are not evidence." *Lamb v. Citibank, N.A.*, No. 93 CIV. 2358 (MBM), 1994 WL 497275, *7 (S.D.N.Y. Sept. 12, 1994) (citations omitted), *aff'd*, 122 F.3d 1056 (2d Cir. 1995). This would not be enough to survive a motion for summary judgment, let alone prove sanctionable conduct by clear and convincing evidence. *See Lamb,* 1994 WL 497275, at *7. "It is not the burden of the Court to take vague allegations without proof and interpret them into concrete arguments replete with record cites." *United States v. Davidson*, No. 3:19-CR-36-GFVT-MAS, 2023 WL 2769515, at *5 (E.D. Ky. Mar. 7, 2023), (report and recommendation), *adopted*, 2023 WL 2759024 (E.D. Ky. Mar. 31, 2023).

Defendants also request that the Court hold an evidentiary hearing, apparently to determine whether there is evidence to support their bare allegations. (*See* Motion to Show Cause at 10.) "That, however, is not the Court's job; rather, the burden is on the claimant to adequately document and prove its claims." *King v. State Bd. of Elections*, No. 95 C 827, 2003 WL 22019357, at *4 (N.D. Ill. Aug. 26, 2003), *aff'd sub nom. King v. Ill. State Bd. of Elections*, 410 F.3d 404 (7th Cir. 2005). This concern is heightened by the fact that Defendants have moved for leave to file proposed counterclaims (*see* Docs. 59 & 59-1) based on this exact same

3

alleged conduct, to which they cite repeatedly in their motion. All in all, Defendants ask the Court to hold hearings, take testimony, gather evidence, marshal that evidence to conclude that Frost and Kirsh have violated the protective order, hold Frost and Kirsh in contempt, and award attorney's fees to Defendants for simply making allegations with no supporting evidence. Defendants then seek to use the Court's work a second time, to prove the allegations that underpin their proposed counterclaims. The Court should not entertain Defendants' attempt to shift their own obligations onto the Court.

Beyond that, Defendants' Motion to Show Cause includes "only a cursory request" for an evidentiary hearing. *Hawkins*, 665 F.3d at 36.[1] The only specific request they make on this issue is for the Court to order "Kirsh and another authorized representative of Frost Solutions, knowledgeable of the facts concerning this matter, to appear in person and provide testimony sufficient to allow the Court to determine whether they should be held in contempt for violating the Protective Order." (Motion to Show Cause at 10-11.) Defendants do not explain why such a hearing is needed or why Defendants have failed to submit any evidence to the Court to support their motion. "Where the moving party fails to indicate that it possesses *new* material evidence that it wishes to present to the court, an evidentiary hearing is not required." *Hawkins*, 665 F.3d at 36. Having failed to submit any evidence in support of their Motion to Show Cause, Defendants should not be rewarded with a hearing to make up for their lack of diligence, essentially requiring the Court to do Defendants' work for them.

---

[1] *Cf.* Local Rule 7.1(d), which provides that this Court will ordinarily decide motions without oral argument and that, if a party wants oral argument, it must submit a written statement "outlining the reasons why oral argument may provide assistance to the court."

## II.     Defendants' Motion to Show Cause is Barred by Their Own Unclean Hands.

"[A] movant's unclean hands can be a basis for denying the remedy of civil contempt." *L.J. ex rel. V.J. v. Audubon Bd. of Educ.*, No. CIV. 06-5350 (JBS), 2007 WL 3252240, at *11 (D.N.J. Nov. 5, 2007).  Defendants had an obligation to disclose at the outset of this case, as part of their initial disclosures, "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv).  This includes the Defendants' insurance policy that is the subject of the Motion to Show Cause.  When Defendants served their initial disclosures in this case on December 22, 2022, they failed to produce the insurance policy at issue or any information informing Frost that Defendants had an applicable insurance policy, despite having knowledge of its existence.  (*See* Defendants' Initial Disclosures, attached as <u>Exhibit 1</u>.)  Their vague statement – that "Defendants will make available for inspection and copying any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy the judgment" – failed to confirm or deny the existence of any such agreement.  *See* Exh. 1 at 4.)

Defendants then attempted to hide the very information they were obligated to disclose to Frost.  While Defendants eventually produced the insurance policy several months later, they did so unannounced, and buried it in a production of over 4000 pages of documents, perhaps hoping that Frost would not find it.  Producing it in this manner violated Defendants' obligation under Rule 26(a)(1)(A)(iv) to specifically disclose this document and information regarding their insurance rather than silently including it in a mountain of documents.  Further obscuring this information from Frost, Defendants redacted portions of documents they produced to Defendants

5

that referenced the insurance policy, despite having no legitimate basis to make such redactions. For example, Defendants produced a redacted version of their Annual Financial Statement, in which they redacted the reference to this litigation and its insurance coverage on page 6 but failed (one assumes by accident) to redact the same reference appearing on page 28. (*See* Annual Financial Statement, attached as Exhibit 2, at 6, 28.)[2]  Defendants have no legitimate reason or excuse for hiding the ball in this manner. And indeed, Defendants did not finally amend their initial disclosures until January 12, 2024, *after* Frost confronted Defendants about their failure to disclose the insurance policy, and over a year late. (*See* Amended Initial Disclosures, attached as Exhibit 3, at 19.)

Under the doctrine of unclean hands, while "equity does not demand that its suitors shall have led blameless lives as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy at issue." *Contour Design, Inc. v. Chance Mold Steel Co., Ltd.*, Civil No. 09-cv-451-JL, 2013 WL 3815659, *4 (D.N.H. July 22, 2013), quoting *Precision Instrument Mfg. Co. v. Auto. Maintenance Mach. Co.*, 324 U.S. 806, 814-15 (1945) (cleaned up). Defendants have been playing games and violating their discovery obligations from the very beginning of this case with respect to the exact document and information that is the subject of their Motion to Show Cause. Indeed, courts have found such conduct to be sanctionable under Rule 26(g). *See, e.g.*, *Sakakibara v. Spectrum Gaming Grp., LLC*, No. 2:09-CV-02000-HDM, 2010 WL 2947381, *2 (D. Nev. July 22, 2010) (sanctioning party that "did not provide its insurance policy with its initial disclosures" or for "two months thereafter"); *Aecon Bldgs., Inc. v. Zurich N. Am.*, No. C07-832MJP, 2008 WL 3927797, *11 (W.D. Wash. Aug. 21,

---

[2]  Because Defendants marked this document "Highly Confidential – For Attorneys' Eyes Only," Frost is provisionally filing it under seal, in accordance with the Protective Order in this case (Doc. 28), LR 83.12 and AP 3.3.

2008) (granting motion for sanctions where a party "violated Federal Rule 26(a)(1)(A)(iv) when it did not disclose [relevant insurance] policies in its initial disclosures").

Defendants have engaged in sanctionable discovery abuses with respect to the exact document that is the subject of the instant motion.  While Frost chose not to move for sanctions regarding this conduct,[3] that decision does not make Defendants' actions consequence-free.  The doctrine of unclean hands bars them from seeking a contempt order and sanctions against Frost and Kirsh for alleged conduct directly related to disclosure of this information.  Thus, even if Defendants had offered evidence to support their bare allegations – as opposed to the zero evidence they have submitted to the Court – their motion would barred by their own misconduct.

**III.     In Any Event, Defendants' Allegations Fail on Their Own Terms.**

Even if the Court accepted Defendants' bare allegations as true, they would not support a contempt order.  The claimed "violation" of the protective order is exceedingly narrow and outside the scope of the order.  Defendants do not contend that Frost or Kirsh improperly disclosed any document or information marked confidential to any third party.  Rather, Defendants claim that Frost and Kirsh used a fact purportedly learned from reading a document that Defendants marked confidential (the insurance policy) to contact Defendants' insurer.  That fact is simply the identity of Defendants' insurer.  And it is not protected by the protective order.

The protective order itself provides that "[i]nformation or documents that are available in the public sector may not be designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY."  Defendants cannot show by clear and convincing evidence that the simple fact that they had insurance and their insurer's identity is confidential and nonpublic

---

[3]   If the Court is inclined to entertain Defendants' Motion to Show Cause, Frost reserves the right to file a motion for sanctions relating to Defendants' deficient initial disclosures, to ensure these related matters are fully presented to the Court.

7

information. Insured parties must disclose their insurance in a variety of contexts. Indeed, Defendants should have disclosed their insurer's identity to Frost at the beginning of this litigation but failed to do so. Defendants have not cited a single case in which a court has found the identity of a party's insurer to be confidential information protected by a protective order. Nor do they cite any case in which a court sanctioned or held in contempt a party for making use of such basic information. Defendants' argument is hypertechnical and, even if accepted at face value, does not show a violation.

Moreover, Defendants do not identify any damages as a result of the alleged conduct. It is Frost's understanding that Defendants' insurer continues to provide coverage under the policy and pay their legal expenses. And Defendants do not allege that any confidential information was disclosed to a third party that did not already know the allegedly confidential information being conveyed. That is, even if the identity of Defendants' insurer were confidential – which it is not – Defendants' insurer already knew it was Defendants' insurer and had knowledge of the policy. Accordingly, Defendants' unproven allegations, even if accepted as true, do not establish a violation of the protective order.

Finally, the protective order makes clear that a party's designation of a document as confidential under that order does not make it so. As the protective order expressly states:

> 13. <u>No Prior Judicial Determination</u>. This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any documents or information designated Confidential Information or Highly Confidential Information by counsel or the parties is subject to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

(Doc. 28 at 13.) This provides an additional reason for denying Defendants' Motion to Show Cause to the extent Defendants contend it is grounded in Rule 26(c). (*See* Motion to Show Cause at 1, 7.)

## CONCLUSION

As demonstrated above, Defendants' Motion to Show Cause should be denied.

Dated: March 28, 2024

Respectfully submitted,

**FROST SOLUTIONS, LLC,**

By its attorneys,

*/s/ Laura L. Carroll*
Laura L. Carroll (NH Bar No. 17444)
BURNS & LEVINSON LLP
125 High Street
Boston, MA 02110
Tel:   (617) 345-3000
Fax:   (617) 345-3299
Email: lcarroll@burnslev.com

Todd A. Rowden (admitted *pro hac vice*)
James L. Oakley (admitted *pro hac vice*)
T. Hudson Cross, IV (admitted *pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Tel:   (312) 527-4000
Fax:   (312) 527-4011
Email: trowden@taftlaw.com
       joakley@taftlaw.com
       hcross@taftlaw.com

Amir R. Tahmassebi (admitted *pro hac vice*)
KONICEK & DILLON, P.C.
70 West Madison Street, Suite 2060
Chicago, IL 60602
Tel:   (312) 328-9166
Fax:   (630) 262-9659
Email: amir@konicekdillonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically served copies of this document and exhibit thereto on all counsel of record via the Court's CM/ECF system, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

*/s/ Laura L. Carroll*
Laura L. Carroll