## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| FROST SOLUTIONS, LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC,<br><br>       Defendants. | Civ. Action No. 1:22-cv-00401-SE |

### [PROPOSED] REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR ORDER TO SHOW CAUSE WHY PLAINTIFF FROST SOLUTIONS, LLC AND ITS PRINCIPAL MICHAEL KIRSH SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR FAILURE TO OBEY THE PROTECTIVE ORDER

Carl Sandburg wrote that if the law and the facts are against you, "pound the table and yell like hell." This is the diversionary strategy Frost Solutions employed in its Opposition (ECF No. 68) to Defendants' Motion (ECF No. 60) – citing inapposite cases and decrying Defendants' "unclean hands" based on a purported failure to adequately disclose the 55-page insurance policy that Defendants included in their very first document production in April 2023 (at pages 66-120 of that production). Stripping away the torrent of over-the-top rhetoric, the key take-away from the Opposition is that Frost Solutions *never denies* that Michael Kirsh ("Kirsh") and Frost Solutions used information gleaned from Defendants' insurance policy (the "Insurance Policy") – marked as "Confidential" under the Protective Order – to knowingly disseminate false information to Defendants' insurance carrier for the purpose of inducing the carrier to revoke Defendants' coverage and put Defendants out of business. Accordingly, for the reasons set forth herein and in the Motion, Defendants request that the Court enter an Order to Show Cause and schedule an evidentiary hearing at its earliest opportunity.

Contrary to Frost Solutions' contention (ECF No. 68 at 3-4), the Motion sets forth a *prima facie* case to support a finding of contempt based on facts Frost Solutions does not even attempt to dispute in its Opposition, including:[1]

- The parties, including Kirsh, are bound by the Protective Order. ECF No. 28;

- Confidential Information cannot be used "*for any purpose whatsoever other than to prepare for and to conduct discovery, hearings and trial in this action, including any appeal thereof.*" ECF No. 28 at ¶ 5.a. (emphasis added);

- On April 21, 2023, Defendants produced to Frost Solutions their insurance policy (the "Insurance Policy"), designating it "Confidential" under the Protective Order. *See* Declaration of Gina M. McCreadie ("McCreadie Decl.") at ¶ 3;

- Frost Solutions never challenged the Insurance Policy's confidentiality designation. *Id.* at ¶ 5;

- On November 30, 2023, Defendants' insurance carrier received a phone call from a mobile phone number from a person who identified himself only as "Mike." *Id.* at 9;

- When Defendants' insurance carrier returned the call, "Mike" told them he was in litigation with Vue Robotics and was aware the Defendants had received a letter from "Frost" *dated January 5, 2022* accusing them of "bad stuff." *Id.* at ¶ 12 and Exh. 1;

---

[1] Given that Defendants have established a prima *facie case* for contempt based on facts Frost Solutions has not denied and that Frost Solutions is fully aware of the evidence Defendants would rely on in an evidentiary hearing on this issue, it is unclear what Frost Solutions hopes to gain from its argument that the Motion, which is not subject to any deadline, is not supported by evidence. ECF No. 68 at 3-4. Nevertheless, Defendants submit herewith the Declaration of Gina M. McCreadie in support of the facts relied upon to establish contempt. Certain of these facts are also supported by Exhibits F, H, and I attached to the Proposed Counterclaim (ECF No. 59-1), which are attached again to the declaration.

- The mobile number from which "Mike" called belongs to Michael Kirsh, a principal of Frost Solutions through his interest in Clashmore Ventures.[2] *Id.* at ¶¶ 10 and 11;

- On January 11, 2024, Frost Solutions' attorney sent a letter to Defendants' counsel stating, "As you know, your client was put on notice of this claim on January 5, 2022. It appears that the insurance company was not notified until sometime after. As such, there may be a coverage issue and we would like to know if that is the case. . . .," and *expressly* requested that his letter be shared with Defendants' insurance carrier *Id.* at ¶ 13; and

- Kirsh and Frost Solutions' counsel knew that the January 5, 2022 letter was completely unrelated to the claims asserted in this action based on Frost Solutions' interrogatory responses, verified by Kirsh, and documents produced by Frost Solutions in this action. As such, they *relayed information they knew to be false in an effort to strip Defendants of their insurance coverage*. *Id.* at ¶¶ 14-19 and Exh. 2-5.

These outrageous – and undisputed – facts provide ample basis for the Court to enter a show-cause order and hold an evidentiary hearing to determine why Frost Solutions and Kirsh should not be held in contempt for violating the Protective Order.[3]

Unable to deny its guilt, Frost Solutions predictably argues that despite the Insurance Policy being designated Confidential Information, the identity of Defendants' insurance carrier is not confidential and not protected by the Protective Order. ECF No. 68 at 7-8. This assertion

---

[2] In its Motion to Seal Portions of the Proposed Counterclaim, Frost Solutions concedes that paragraph 69 of the counterclaim contains Kirsh's mobile number. ECF No. 63 at ¶ 7.

[3] The fact that Defendants has been granted leave to file their counterclaim (ECF No. 59-1) that includes these facts, ECF No. 68 at 3, is irrelevant. The counterclaim does not and cannot seek relief for contempt. The only issue before the Court on the Motion is whether Kirsh and Frost Solutions should be held in contempt for violating the Protective Order.

misses the point. Frost Solutions may not unilaterally decide that a document was improperly designated – that argument guts the essential purpose of a protective order and has been roundly rejected by courts. *See* ECF No. 60 at 8-9 at ¶¶ 34-35 (citing cases). Further, the violation is not just that Kirsh contacted Defendants' insurance carrier based on information gleaned from the Insurance Policy designated as Confidential Information; *it is that he used that information for a purpose other than to conduct discovery, hearings, and trial in this action in blatant violation of the Protective Order, namely, to induce the carrier to strip Defendants of their insurance coverage*. Frost Solutions also claims "no harm, no foul" because Defendants do not identify any damages resulting from its misconduct. ECF No. 68 at 8. This is false and irrelevant. Defendants were harmed (*see* Proposed Counterclaim (ECF No. 59-1)), but harm is not required for the Court to find that Kirsh willfully violated the Protected Order and that relief is warranted.

Frost Solutions then attempts to divert the Court's attention from Frost Solutions' undisputed contempt by concocting an argument that Defendants have "unclean hands" because they allegedly concealed the existence of the Insurance Policy. *Id.* at 5-7. This argument is risible. On November 7, 2022, Defendants alerted Frost Solutions to the existence of potential insurance coverage when their then attorney, Lawrence Gormley, moved for an extension to respond to the complaint based on ongoing discussions regarding the existence and scope of insurance coverage, indicating that if coverage exists, panel counsel would likely be appointed. ECF No. 9. Shortly thereafter, Nixon Peabody entered its appearance and filed a substitution of counsel, ECF Nos. 10-11, signaling that Defendants did, in fact, have insurance coverage.

Six weeks later, on December 22, 2022, Defendants served their Rule 26(a)(1)(A) initial disclosures, in which they stated they would make available for inspection and copying any applicable insurance agreement, again confirming the existence of insurance coverage. ECF No.

4

68 at Exh. 1.  Defendants then – as part of their *first* document production on April 21, 2023 (consisting of only 232 documents) – produced the 55-page Insurance Policy at VUE000066-120 (*66 pages into the production*).  McCreadie Decl. at ¶ 4.  Even if Frost Solutions chose not to review the first 67 pages of Defendants' production, Defendants produced *fully searchable documents* and, thus, the Insurance Policy could easily have been located by a simple search for "insurance" or "policy."[4]  *Id.*  Unable to whitewash its lack of diligence, Frost Solutions now seeks to weaponize it.  The Court should not countenance this ploy.[5]

Based on the foregoing, and as detailed in the Motion, Defendants respectfully request that the Court enter an Order in the form attached as Exhibit A to the Motion and, after an evidentiary hearing, award the other relief requested therein.  The Court should not abide the knowing violation of its clear and unambiguous Order.

---

[4] Frost Solutions also argues, bizarrely, that Defendants' Amended Initial Disclosures somehow evidence their wrongdoing.  ECF No. 68 at 5-6.  Defendants amended their disclosures to identify new individuals (including Kirsh) whom they learned during discovery had relevant information and, in doing so, updated the insurance section to accurately reflect the fact that the Insurance Policy had been produced.  McCreadie Decl. at ¶ 20; *compare* ECF No. 68 at Exhs. 1 and 3.  Similarly unpersuasive is Frost Solutions' claim that Defendants concealed the existence of the Insurance Policy based on a redaction contained in Defendants' Annual Financial Statement *produced months after the Insurance Policy*.  ECF No. 68 at 5-6.  Given that the same language appears (unredacted) later in the same document, this argument merely reinforces that Frost Solutions was told that Defendants had insurance coverage.  McCreadie Decl. at ¶ 21; ECF No. 68 at Exh. 2 at 28.  Moreover, Defendants produced *five versions of this financial statement, all of which state that Defendants' insurer engaged Nixon Peabody to defend them*.  McCreadie Decl. at ¶ 22.  Frost Solutions' contention that Defendants were trying to hide anything is disingenuous, at best.

[5] The cases Frost Solutions cites in support of its preposterous demand for sanctions, ECF No. 68 at 6-7, are inapposite given Defendants' production of the Insurance Policy in this case.  Should Frost Solutions follow through on its threat to seek sanctions on this issue, Defendants will request recovery of their fees.

Dated:  April __, 2024                    Respectfully submitted,

**PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC**

By their attorneys,

_____
Kierstan E. Schultz (N.H. Bar No. 20682)
NIXON PEABODY LLP
900 Elm Street, 14th Floor
Manchester, NH  03101
Tel: (603) 628-4031
Fax:  (603) 628-4040
Email:  kschultz@nixonpeabody.com

_____
Jason C. Kravitz (admitted *pro hac vice*)
Gina M. McCreadie (admitted *pro hac vice*)
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, Massachusetts  02109
Tel:  (617) 345-1000
Fax:  (617) 345-1300
Email:  jkravitz@nixonpeabody.com
          gmccreadie@nixonpeabody.com