## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

FROST SOLUTIONS, LLC,

        Plaintiff,

    v.

PATRICK BAGLIEN, CHRISTOPHER
LAREAU, and VUE ROBOTICS, LLC,

        Defendants.

Case No. 1:22-cv-00401-SE

## PLAINTIFF'S OBJECTION TO DEFENDANT CHRISTOPHER LAREAU'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

### INTRODUCTION

Defendant Christopher Lareau ("Lareau") seeks partial summary judgment as to one "aspect" of Count III of Plaintiff Frost Solutions, LLC's Complaint, which asserts a claim of breach of contract against him for violation of the Separation Agreement he executed after resigning his employment.  Specifically, in his Motion for Partial Summary Judgment (Doc. 58), Lareau argues that the Agreement's non-compete provision is unenforceable because he claims he never consented to its assignment from Frost Control Systems, LLC ("Frost Control") to Plaintiff Frost Solutions, LLC ("Frost").

As demonstrated below, Lareau has failed to meet his burden to show he is entitled to summary judgment because the language of the Separation Agreement shows that the Parties to that Agreement contemplated—and Lareau thus consented to—subsequent assignment of Frost Control's contract rights.  (Frost argues in the alternative that additional discovery is needed pursuant to Fed. R. Civ. P. 56(d) regarding this issue because Lareau has prematurely brought his motion before Frost has been able to take a single deposition.)  Moreover, other factors examined

by Indiana courts regarding this issue all favor enforcing the Separation Agreement post-assignment.  Finally, Lareau's request for an award of fees should be denied because the Indiana statute under which he makes this request does not apply in federal court, and because he has not shown Frost's claim is "frivolous, unreasonable, or groundless."

For these reasons, explained more fully below, the Court should deny Lareau's Motion for Summary Judgment.

<b><u>STATEMENT OF MATERIAL DISPUTED FACTS</u></b>

For purposes of this Motion and Objection only, Frost does not dispute most of Lareau's Statement of Undisputed Material Facts (Doc. 58-1, pp. 2-5) ("SUMF"), with the following exceptions:

SUMF C:  Lareau incorrectly states that "the Separation Agreement does not contain an assignment clause."  The Separation Agreement does in fact contain a clause prohibiting Lareau from assigning claims covered by the general release of claims.  *See* Separation Agreement (Doc. 1-3) at 9.

SUMF E:  Frost disputes Lareau's statement that "Lareau also never consented to assignment of the Separation Agreement to Frost Solutions or any other party."  As discussed below, Lareau did consent to assignment based on the language of the Separation Agreement. (Doc. 1-3.)

SUMF E:  Frost disputes Lareau's statement that "Defendants put Frost Solutions on notice – with citations to supporting caselaw – that the Non-Compete is unenforceable as a matter of law because Lareau never consented to assignment of the Separation Agreement to Frost Solutions."  This is improper for a statement of undisputed material facts because it contains a legal conclusion.  And, as explained below, Lareau did consent to assignment, and the Separation Agreement's non-compete covenant is enforceable.  (Doc. 1-3.)

2

Frost also submits the attached Declaration of Todd Rowden in support of its alternative request for additional time to engage in discovery, as Lareau has prematurely filed this motion before Frost has been able to take a single deposition.

## LEGAL STANDARD

Summary judgment is appropriate only where the movant demonstrates that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  A fact is "material" where it has the potential to affect the outcome of the suit under applicable law.  *Reyes-Orta v. Puerto Rico Highway & Transp. Auth.*, 811 F.3d 67, 73 (1st Cir. 2016).  A dispute is "genuine" where a reasonable jury could resolve the point in the favor of the non-moving party.  *Id.*  In considering the evidence, the Court must draw all reasonable inferences in favor of Frost, the non-moving party.  *Id.* at 74.  In the context of contract interpretation, "if reasonable persons would find the contract susceptible to more than one construction, an ambiguity exists rendering summary judgment inappropriate and placing upon the trier of fact the responsibility to ascertain the extrinsic facts necessary to interpret the contract."  *Freiburger v. Bishop Dwenger High Sch.*, 569 N.E.2d 755, 758 (Ind. Ct. App. 1991).

## ARGUMENT

I.     **Lareau Fails to Show that Summary Judgment on the Non-Compete Aspect of Count III is Appropriate.**

A.     **The Language of the Separation Agreement Evidences Lareau's Consent to Subsequent Assignment of Frost Control's Contract Rights.**

The Separation Agreement at issue contains an Indiana governing law provision.  SUMF C.  "As a general matter, Indiana common law allows for the assignment of contractual rights absent an expression of contrary intent by the parties."  *Kuntz v. EVI, LLC*, 999 N.E.2d 425, 429 n.5 (Ind. Ct. App. 2013). Once an assignment occurs,

> a valid and unqualified assignment operates to transfer to the assignee all the right, title, or interest of the assignor in or to the property or property rights that are comprehended within the terms of the assignment. Such transfer confers a complete and present right in the subject matter to the assignee . . . An assignment vests in the assignee all rights, remedies, and contingent benefits which are incidental to the thing assigned, except those which are personal to the assignor and for his benefit only.

*Indianapolis-Marion Cty. Pub. Libr. v. Charlier Clark & Linard, PC*, 929 N.E.2d 838, 848 (Ind. Ct. App. 2010) (citation omitted). Following a valid assignment, the "assignee of rights under a contract stands in the shoes of the assignor and can assert any rights that the assignor could have asserted." *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012).

While it is true that, "as a general rule, personal services contracts are not assignable by the employer," *Norlund v. Faust*, 675 N.E.2d 1142, 1151 (Ind. Ct. App.), *as clarified on denial of reh'g*, 678 N.E.2d 421 (Ind. Ct. App. 1997), assigned service contracts will be enforced where the employee "acquiesce[s] in and consent[s] to the assignment of the contract." *Id.* This may occur in several different ways, for example, by continuing to accepting payments after the assignment or continuing his employment with knowledge of the assignment. *See id.* at 1151, 1152.

Another way to consent to assignment is through the language of the contract at issue. *See Kuntz*, 999 N.E.2d at 429; *Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 169 n.1 (Ind. Ct. App. 2008). "The ultimate goal of any contract interpretation is to determine the intent of the parties at the time that they made the agreement." *Citimortgage*, 975 N.E.2d at 813. "We begin with the plain language of the contract, reading it in context and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Id.* "A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation." *Fackler v. Powell*, 891 N.E.2d 1091, 1096 (Ind. Ct. App. 2008). "If the terms of the contract are unclear, ambiguous, or capable of more

4

than one interpretation," they are construed "to determine and give effect to the intent of the parties at the time they entered into the contract." *George S. May Int'l. Co. v. King*, 629 N.E.2d 257, 260 (Ind. Ct. App. 1994).

The language of the Separation Agreement shows that the parties to that Agreement contemplated assignment of it, which operates as consent by Lareau here.  First, the Separation Agreement does "not contain a specific provision that it could *not* be assigned by" the employer. *Norlund*, 675 N.E.2d at 1153 (emphasis added).  As discussed further below, Indiana courts consider this factor when evaluating the validity of a services contract post-assignment.

Second, the Agreement includes a narrow non-assignment provision prohibiting Lareau from assigning or transferring any claim he may have against Frost Control falling within the Agreement's general release.  (Doc. 1-3 at 9.)  The implication of this provision is that the parties to that Agreement considered various types of assignments that have occurred or may occur in the future and chose to prohibit only assignments of covered claims by Lareau.  *Cf. Prop. Owners Ins. Co. v. Cope*, 772 F. Supp. 1096, 1101 (N.D. Ind. 1991) (discussing a "negative implication" arising in the contract interpretation context).  This shows that the decision to leave out any "specific provision that [the Agreement] could not be assigned by" Frost Control was deliberate and consented to by Lareau.  *Norlund*, 675 N.E.2d at 1153.

Third, the Agreement's general release of claims explicitly includes the "assigns" of the employer, Frost Control. (Doc. 1-3 at 3.)  This further demonstrates that the Parties contemplated and consented to Frost Control's subsequent assignment of its rights under the Separation Agreement.

Fourth, the Separation Agreement makes no fewer than 14 references to "affiliates" of Frost Control.  Because that term is not defined in the Agreement, the Court must give it its "ordinary and generally accepted meaning." *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243,

247 (Ind. 2005). *Black's Law Dictionary* defines "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." "Affiliate," *Black's Law Dictionary* (11th ed. 2019). This capacious definition includes assignees. Frost became an "affiliate" of Frost Control when it purchased Frost Control's assets. The appearance of "affiliates"—a term that includes Frost—throughout the Separation Agreement thus provides additional evidence that the parties to that Agreement contemplated (and Lareau consented to) subsequent assignment of Frost Control's rights in the Separation Agreement. At the very least, Lareau has not shown that the term "affiliate" unambiguously *excludes* assignees like Frost. If the Court finds the term "affiliate" as it appears in the Separation Agreement is ambiguous, summary judgment must be denied. *Freiburger*, 569 N.E.2d at 758 ("[I]f reasonable persons would find the contract susceptible to more than one construction, an ambiguity exists rendering summary judgment inappropriate and placing upon the trier of fact the responsibility to ascertain the extrinsic facts necessary to interpret the contract."); *see Oxford Fin. Grp., Ltd. v. Evans*, 795 N.E.2d 1135, 1144 (Ind. Ct. App. 2003) (discussing latent ambiguity in contract interpretation). In this case, additional evidence is needed to ascertain the meaning of the terms of the Separation Agreement.

The plain language of the Separation Agreement shows that the Parties "anticipated the possibility that the contract may be assigned." *Kuntz*, 999 N.E.2d at 429. All of these facts taken together show that Lareau has failed to establish the absence of a genuine dispute of material fact regarding his consent to subsequent assignment of Frost Control's rights in the Separation Agreement. As such, the Court should deny his motion for summary judgment.

**B.**     **Additional Relevant Factors Support Finding That The Separation Agreement Is Assignable Here.**

Other considerations examined by Indiana courts support enforcing the non-compete covenant here.  The inquiry is much more nuanced and fact intensive than Lareau admits, making summary judgment even more inappropriate.

In *Norlund v. Faust*,[1] which Lareau cites in his brief, the Indiana Court of Appeals examined several factors before determining that an employment agreement containing a non-compete covenant was enforceable despite the fact that it had been assigned from a sole proprietorship to a professional corporation.  675 N.E.2d at 1151-53.  To begin, the court noted that the "contract did not contain a specific provision that it could not be assigned by Faust," the employer.  *Id.* at 1153.  The court also engaged in a prejudice inquiry, noting that "if an assignment results merely from a change in the legal form of ownership of a business, its validity depends upon whether it affects the interests of the parties protected by the nonassignability of the contract."  *Id.* at 1152 (emphasis omitted), *quoting Ruberoid Co. v. Glassman Constr. Co.*, 234 A.2d 875, 879 (Md. 1967).  In *Ruberoid*, the purpose of "the nonassignability of the contract was to protect Glassman's interest in having the work in question performed by a competent subcontractor," and that goal was not defeated by allowing the assignment to a materially identical company.  *Id.*  In *Norlund*, the goal of non-assignability "was based upon the principle that R. Norlund should be able to work for whomever he wished, i.e. Joseph Faust," and the court similarly found that "goal (of working for Faust) is not damaged by the assignment of the contract" because the assignor and assignee were "materially identical."  *Id.* at 1153.

---

[1]     Lareau heavily relies on *SDL Enterprises, Inc. v. DeReamer*, 683 N.E.2d 1347 (Ind. Ct. App. 1997), in his brief, but *Norlund* predates that decision.  Because both are published decisions of the Indiana Court of Appeals, an intermediate appellate court, *Norlund*, as the first in time to issue, controls in the face of any conflict between the two.

Relatedly, the court cautioned against approaching this issue in an overly formalistic fashion, stating: "We do not feel that an employee, who freely enters into an employment agreement containing an enforceable covenant not to compete, should be relieved of his contractual obligations simply because his employer's name changed following a valid merger whereby the rights to the employment agreement are transferred." *Id.* at 1152, *quoting Peters v. Davidson, Inc.*, 359 N.E.2d 556, 562 (Ind. Ct. App. 1977). The court highlighted the fact that "Norlund has raised no concern which is relevant to Faust's incorporation," and that "[h]e appears to seek refuge in the mere technicality of Faust's incorporation to avoid the consequences of his covenant not to compete." *Id.* The court found that this fact favored enforcement of the covenant. *Id.*

All of these factors militate in favor of enforcing the non-compete covenant here. As in *Norlund*, the Separation Agreement does "not contain a specific provision that it could not be assigned by" Frost Control. *Id.* Moreover, as discussed above, the inclusion of a narrow non-assignment provision prohibiting only Lareau from assigning claims covered by the general release provides further support that the parties to that Agreement contemplated and consented to future assignment of Frost Control's contract rights.

Additionally, the purpose of any non-assignability is not frustrated by the assignment here, and Lareau suffered no prejudice as a result of it. Lareau does not claim that the business changed in any material fashion when Frost purchased the assets of Frost Control. For all relevant purposes, the entities are "materially identical." *Id.* Thus, the "goal (of working for [Frost]) is not damaged by the assignment of the contract." *Id.* And the risk of prejudice is much lower here than in *Norlund*, as Lareau resigned his employment before the asset purchase agreement was executed, so he had no interest in continuing to work for a similar business. The scope of the non-compete covenant did not change as a result of the asset purchase either, as its

terms remained the same and, in any event, Frost continued to run the same business in the same manner.

Ultimately, Lareau "has raised no concern which is relevant to" the transfer of assets from Frost Control to Frost, and "[h]e appears to seek refuge in the mere technicality of [that transaction] to avoid the consequences of his covenant not to compete." *Id.* Lareau having "freely enter[ed] into" the Separation Agreement should not be "relieved of his contractual obligations simply because his employer's name changed" after he resigned his employment. *Id.* at 1152. The Court should follow *Norlund* and reject Lareau's formalistic argument and his attempt to shirk his contractual obligations.

In sum, the language of the Separation Agreement shows that the parties to that Agreement contemplated and consented to subsequent assignment of Frost Control's contract rights, and every other factor examined by the Indiana Court of Appeals in *Norlund* supports enforcing the Agreement post-assignment here. Lareau thus fails to meet his burden to show the absence of any material fact and that he is entitled to judgment as a matter of law regarding Frost's breach of contract claim. The Court should deny his motion for partial summary judgment as a result.

### C.    Ruling on Lareau's Motion for Summary Judgment Would Be Premature.

Lareau filed this motion early in the discovery process, as Frost has yet to take a deposition in this case. Fed. R. Civ. P. 56(d) "protects a litigant who justifiably needs additional time to respond in an effective manner to a summary judgment motion." *Rutledge v. Elliot Health System*, Civil No. 17-cv-110-JD, 2018 DNH 062 at 2 (D.N.H. March 20, 2018), *quoting In re PHC, Inc. Shareholder Litigation*, 762 F.2d 138, 143 (1st Cir. 2014). As this Court has stated, "courts are expected to apply Rule 56(d) 'generously, holding parties to the rule's spirit rather than its letter.'" *Rutledge*, at 3, *quoting In re PHC*, 762 F.3d at 143.

Pursuant to Rule 56(d), Frost therefore requests that the Court allow additional discovery concerning the meaning, terms, and circumstances of the Separation Agreement before ruling on Lareau's motion.  In *Rutledge*, as in the present case, the parties "have been embroiled in prolonged discovery disputes" which, as this Court is well aware, have resulted in several motions to compel, discovery conferences and hearing.  *Id*. at 4.  Those disputes have concerned document production, with resulting delays in taking depositions in this case.  In addition, earlier this year, the Parties engaged in settlement discussions, deferring any discovery during that time, as described in greater detail in Frost's pending Motion for Extension of Fact Discovery Deadline (Doc. 65), which seeks a two-month extension so that discovery, including depositions can be completed.[2]

The purpose of Rule 56(d) "is to prevent 'railroading' the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery."  *U.S. ex rel. Fisher v. Network Software Assocs.*, 227 F.R.D. 4, 9 (D.D.C. 2005); *see Collison Communications, Inc. v. Nokia Solutions and Networks OY*, Civil No. 20-cv-949-JD, 2021 DNH 057 at 7 (D.N.H. March 24, 2021), *citing Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 884 (1990) (summary judgment appropriate "after adequate time for discovery").

Frost submits the Declaration of Todd Rowden, filed herewith, in accordance with Rule 56(d).  The Court should at least permit Frost to obtain some amount of oral discovery before ruling on Lareau's motion.  Lareau will suffer no prejudice from reasserting his arguments later at the proper time for dispositive motions: following the close of discovery.

---

[2]   In *Rutledge*, as in this case, the party opposing summary judgment was both arguing as to the merits of the summary judgment, as well as seeking to defer a ruling until further discovery had been completed.  2018 DNH. 062, at 3.  Such an apparently contradictory stance does not bar relief.  *Id*.  If this Court believes that the motion can be decided as a matter of law, it can do so.  If, however, the Court determines that there are factual determinations to be decided, any decision would be premature prior to the completion of discovery.

II.     **The Court Should Deny Lareau's Request for Attorney's Fees.**

Lareau also requests an award of attorney's fees and costs incurred in defending against the non-compete aspect of Count III pursuant to an Indiana statute that allows such an award to the prevailing party where a claim or defense has been found to be "frivolous, unreasonable, or groundless" or where the action was litigated in bad faith.  Ind. Code § 34-52-1-1(b).  But this statute does not apply in federal court.  And, in any event, Lareau fails to satisfy his high burden to show Frost's claim is "frivolous" or is being brought in bad faith.

A.     **The Indiana Statute Cited by Lareau Does Not Apply in Federal Court.**

An Indiana state statute, Ind. Code § 34-52-1-1(b), serves as the sole basis for Lareau's request for attorney's fees and costs.  *See* Doc. 58-1 at 13-16.  However, that statute contains a procedural rule and, pursuant to the *Erie* doctrine, it does not apply in federal court.  Beyond that, it conflicts with Fed. R. Civ. P. 11, and in the face of such a conflict, the federal rule prevails.

Where a federal court exercises supplemental jurisdiction over state law claims, "it must apply the substantive law of the state in which it sits."  *Bi-Rite Enters., Inc. v. Bruce Miner Co.*, 757 F.2d 440, 442 (1st Cir. 1985), *citing United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  The Separation Agreement's choice-of-law provision here modifies that default rule, so the applicable substantive law for Count III is Indiana law.  *See* Doc. 1-3 at 10.  But this does not change the fact that federal procedural law applies in federal court.  *Collision Communications, Inc. v. Nokia Solutions and Networks OY*, Civil No. 20-cv-949-LM, 2024 WL 531289, *2 (D.N.H. Feb. 9, 2024); *see Fertical Guayana, C.A. v. Maverick Equip. Mfg., Inc.*, No. CA 12-870-ML, 2014 WL 4384366, *11 (D.R.I. Sept. 3, 2014).

Ind. Code § 34-52-1-1(b) supplies a procedural rule.  As such, it does not apply in federal court.  In *State Farm Mutual Insurance Co. v. Tichenor*, No. 1:10-CV-950-RLY-DKL, 2012 WL

360155 (S.D. Ind. Feb. 2, 2012), a federal district court in Indiana denied a party's request for attorney's fees under Ind. Code § 34-52-1-1(b) for this reason.  *Id.* at *7.  The court found that this provision "is a rule of procedure in the Indiana state courts.  This court has diversity jurisdiction over this case, and thus, federal procedural law, and not state procedural law, applies."  *Id.*  Other federal courts have found that similar state rules are procedural under *Erie* and thus inapplicable in federal court.  *See, e.g.*, *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 529 (6th Cir. 2002) (holding that Ohio's frivolous litigation statute "is procedural in nature and, as such, under *Erie*, Rule 11 should govern the award of sanctions for frivolous conduct.").[3]

Additionally, where a state law conflicts with a federal rule, the federal rule governs.  *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398-400 (2010).  This provides an independent basis for why Ind. Code § 34-52-1-1(b) does not apply here.  *See Hartford Underwriters*, 307 F.3d at 529 ("Even if Hartford were correct and Ohio Revised Rule § 2323.51 must be considered substantive in nature, the Court concludes that this state rule conflicts with Fed. R. Civ. P. Rule 11's safe harbor provision and, therefore, should not be applied in federal court.").  In that case, the Sixth Circuit found that Ohio's frivolous litigation statute conflicted with Rule 11 because it lacked a safe harbor provision, which "is intended to provide notice and give parties the opportunity to correct their allegedly violative conduct."  *Id.* Ind. Code § 34-52-1-1(b) similarly lacks a safe harbor provision and thus conflicts with Rule 11 in the same way.

---

[3]   If the Court determines that there is uncertainty regarding whether Ind. Code § 34-52-1-1(b) is substantive or procedural, First Circuit precedent makes clear that the federal rule prevails. Where a rule, when applied in a particular context, "falls within the uncertain area between substantive and procedure [that is] rationally capable of classification as either," the federal rule governs.  *Knightly v. Gula*, No. 16-CV-124-AJ, 2017 WL 2634156, *3 (D.N.H. June 19, 2017), *quoting United States v. Walsh*, 75 F.3d 1, 6 (1st Cir. 1996).

For these reasons, Ind. Code § 34-52-1-1(b) does not apply in federal court.  Lareau offers no other basis for his request for attorney's fees and costs.  Accordingly, the request should be denied.

**B.      In any Event, the Court Should Deny Lareau's Request for Attorney's Fees and Costs on the Merits.**

Even if the Court were to find that Ind. Code § 34-52-1-1(b) applies in federal court, Lareau has not shown an award under this statute is warranted.  First, as discussed above, Lareau has not established that he is entitled to summary judgment on the merits, and his motion is premature and should not be ruled on until Frost has been allowed adequate time for discovery.  Second, Defendants have not shown that Frost's claim to enforce the Separation Agreement's non-compete covenant is "frivolous, unreasonable, or groundless."[4]  Frost has advanced meritorious arguments for why the Separation Agreement remains enforceable post-assignment.  Indeed, the inquiry is much more nuanced than Lareau's brief lets on.  That Lareau disagrees with Frost's arguments does not make them frivolous.

<u>**CONCLUSION**</u>

For the reasons discussed above, Lareau's motion for partial summary judgment should be denied.

---

[4]    Lareau does not appear to argue that Frost has "litigated this action in bad faith." If he does, he submits no evidence to support it (and none exists that would).

Dated:  April 11, 2024

Respectfully submitted,

**FROST SOLUTIONS, LLC,**

By its attorneys,

*/s/ Laura L. Carroll*
Laura L. Carroll (NH Bar No. 17444)
BURNS & LEVINSON LLP
125 High Street
Boston, MA 02110
Tel:    (617) 345-3000
Fax:    (617) 345-3299
Email: lcarroll@burnslev.com

Todd A. Rowden (admitted *pro hac vice*)
James L. Oakley (admitted *pro hac vice*)
T. Hudson Cross, IV (admitted *pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Tel:    (312) 527-4000
Fax:    (312) 527-4011
Email: trowden@taftlaw.com
        joakley@taftlaw.com
        hcross@taftlaw.com

Amir R. Tahmassebi (admitted *pro hac vice*)
KONICEK & DILLON, P.C.
70 West Madison Street, Suite 2060
Chicago, IL 60602
Tel:    (312) 328-9166
Fax:    (630) 262-9659
Email: amir@konicekdillonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically served copies of this document and declaration submitted therewith on all counsel of record via the Court's CM/ECF system, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: April 11, 2024

*/s/ Laura L. Carroll*
Laura L. Carroll