UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| FROST SOLUTIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC, <br><br> Defendants. | Civ. Action No. 1:22-cv-00401-SE |

**DEFENDANT CHRISTOPHER LAREAU'S REPLY IN FURTHER SUPPORT
OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT ON ONE ASPECT OF
<u>COUNT III (BREACH OF SEPARATION AGREEMENT)</u>**

Pursuant to LR 7.1(e)(1), Defendant Christopher Lareau ("Lareau"), through counsel, submits this reply in response to Plaintiff Frost Solutions, LLC's ("Frost Solutions") Objection to Lareau's Motion for Partial Summary Judgment (the "Objection") (ECF Nos. 58, 76).

Desperate to find a way to enforce the invalid non-compete provision contained in the Separation Agreement (the "Non-Compete"), Frost Solutions makes a series of arguments that range from strained to disingenuous and then seeks to delay the inevitable by claiming a need for additional discovery despite failing to take a *single* deposition during the already-extended fact discovery period. Frost Solutions' Objection is the latest installment of the vexatious manner in which Frost Solutions has approached this entire action and only serves to further support Lareau's request for attorneys' fees. The undisputed facts show that Lareau did not consent to assignment of the Non-Compete to Frost Solutions, as required by Indiana law, and thus the Court should rule in Lareau's favor on that issue and also award the attorneys' fees incurred defending against this baseless claim.

### A. The Language in the Separation Agreement Does Not Evidence Lareau's Consent to Subsequent Assignment of the Non-Compete to Frost Solutions.

When parties seek to authorize assignment of an agreement, they include an assignment provision within the agreement. Lareau's former employer, Frost Control Systems, Inc. d/b/a Frost Technologies ("Frost Control"), understood and embraced this basic principle, which is why it included the following (boilerplate) provision in co-defendant Patrick Baglien's Confidential Information and Invention Assignment Agreement:

> 12. **<u>Miscellaneous</u>**.
>
> . . .
>
> (c) **<u>Successors and Assigns</u>**. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives, and my successors and assigns, and will be for the benefit of the Company, its successors, and its assigns.

ECF No. 1 at Exh. B at ¶ 12(c).

It should be undisputed that Lareau's Separation Agreement does not contain an assignment provision or any language remotely suggesting that Lareau consented to his Non-Compete being assignable to Frost Solutions. Rather than concede the point, as it should, and acknowledge that the Non-Compete is unenforceable, which it is, Frost Solutions instead argues that the Court should not believe its eyes, positing that "[t]he language of the Separation Agreement shows that the parties to that [a]greement *contemplated assignment of it, which operates as consent by Lareau here.*" ECF No. 76 at 5 (emphasis added). The absurdity of this contention is demonstrated by Frost Solutions' "evidence" of contemplated assignment, namely, that the Separation Agreement: (1) lacks a provision that *prevents* its assignment by Frost Control; (2) includes a prohibition in the general release[1] that Lareau cannot assign or transfer

---

[1] Frost Solutions' reliance on the general release is surprising and unavailing. While the Separation Agreement (titled "Separation Agreement and Mutual Release") purports to contain a "Mutual General and Special Release," the release set forth therein is in fact *unilateral* and only

any claims against Frost Control, implying that Lareau contemplated "various types of assignments" and "chose [through silence] to prohibit only assignments of covered claims by Lareau"; (3) includes a reference to "assigns" in the general release, which demonstrates that "[Lareau] contemplated and consented to Frost Control's subsequent assignment of its rights under the Separation Agreement"; and (4) includes references to "affiliates" in provisions other than the Non-Compete, which evidences that Lareau contemplated and consented to assignment of Frost Control's rights in the Separation Agreement because Frost Solutions is an affiliate (a term not defined in the Separation Agreement). *Id.* at 5-6. Otherwise stated, while Frost Solutions can point to nothing in the Separation Agreement that constitutes Lareau's consent to assigning the Non-Compete to Frost Solutions (or anyone else), it would have the Court believe that his consent to the assignment of a personal services contract under Indiana law should be inferred despite its absence from the Separation Agreement and despite it being contradicted by Lareau's undisputed sworn testimony.

Indeed, these arguments fail to create a genuine issue of material fact sufficient to overcome Lareau's sworn statement that he did not consent to assignment of the Non-Compete.[2] *See* ECF No. 58-3 at ¶ 11. Moreover, the Separation Agreement contains a comprehensive integration clause, which provides, *inter alia*, that "[a]ny representation, promise or agreement not specifically included in this Agreement shall not be binding or enforceable against either party." *Id.* at Exh. 4 at ¶ 20. As such, any "contemplated assignment" based on understandings

---

benefits Frost Control, which renders the Separation Agreement invalid because there was no meeting of the minds.

[2] Frost Solutions' objection focuses on whether the Separation Agreement – if valid – was assigned to Frost Solutions. That is not the issue before the Court. The issue here is whether Frost Solutions, as assignee, can enforce the Non-Compete against Lareau absent Lareau's consent. Indiana law bars its enforcement as a matter of law.

3

or musings *not* contained in the Separation Agreement is expressly prohibited by its terms.[3] Further, the words "assigns" and "affiliate" do not appear in the Non-Compete, *id.* at ¶ 10, so their meaning or interpretation is irrelevant to whether Lareau consented to assignment of the Non-Compete. If anything, the absence of these terms from the Non-Compete only strengthens Lareau's argument that he did not consent to its assignment to Frost Solutions. The integration clause guts Frost Solutions' "do as I mean, not as I say" argument.

      B.    *Norlund* **Does Not Support a Finding that Lareau Acquiesced to the Assignment of the Non-Compete to Frost Solutions**

Predictably, Frost Solutions takes issue with Lareau's reliance on *SDL Enterprises, Inc. v. DeReamer*, 683 N.E.2d 1347 (Ind. Ct. App. 1997), contending that *Norlund v. Faust*, 675 N.E.2d 1142, 1151 (Ind. Ct. App. 1997), controls in the face of any conflict between these two cases because it is earlier in time. ECF No. 76 at 7 n.1. Citing no authority for this proposition, Frost Solutions then relies on cherry-picked portions of *Norlund* to support the untenable contention that Lareau somehow consented to assignment of the Non-Compete to Frost Solutions. *Id.* at 7-9. The facts of *Norlund* are easily distinguished from this case, and thus even a cursory reading of *Norlund* reveals the disingenuous nature of this argument.

In *Norlund*, employee Norlund entered in an employment contract with his employer, Faust Eye Center, a sole proprietorship, containing a two-year non-compete. *Norlund*, 675 N.E.2d at 1147. Faust Eye Center subsequently incorporated as Faust Eye Center, P.C. ("Faust P.C."), and the prior owner remained the sole shareholder, officer, and director. *Id.* Norlund

---

[3] Frost Solutions' contention that it is somehow an affiliate of Frost Control is nonsensical. Frost Control and Frost Solutions are wholly separate entities. Frost Control did not sell its assets to Frost Solutions. Frost Control ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which assets were later acquired by Frost Solutions ▮▮▮▮▮▮▮▮▮. ECF No. 58-7 at Exh. 2; ECF No. 1 at ¶ 21. In any event, "affiliate" is not synonymous with "assignee," and Frost Solutions' effort to equate the two terms is specious.

4

continued to work for and receive compensation from Faust P.C. *Id.* Approximately a year later, Norlund asked Faust P.C. to renegotiate his employment contract. *Id.* When a year-long negotiation failed, Norlund sent Faust P.C. a written notice of nonrenewal of his employment agreement and, shortly thereafter, Faust P.C. accused Norlund of violating his non-compete. *Id.* at 1147-48. In response, Norlund asserted that Faust P.C. could not enforce his non-compete because his employment agreement was never assigned to Faust P.C. *Id.* at 1151.

Under the circumstances of that case, the court – acknowledging the general rule that under Indiana law "personal services contracts are not assignable by the employer" – found that Norlund acquiesced and consented to assignment of his employment agreement to Faust P.C. because Norlund had continued his employment with Faust P.C. *after* having knowledge of the assignment.[4] *Id.* at 1151-53. The court was unwilling to allow Norlund to escape his non-compete because he knowingly continued to work for a subsequent entity (which entity was owned by the same person) without objection – a textbook case of acquiescence. *Id.*

The facts are markedly different here. Unlike in *Norlund*, Lareau's Non-Compete is contained within a Separation Agreement, not an employment agreement, and it is undisputed that Lareau did not continue his employment with Frost Control after entering into the Separation Agreement and that he has never worked for Frost Solutions. *See* Second Declaration of Christopher Lareau ("Second Lareau Decl.") at ¶ 4. Moreover, unlike in *Norlund*, where a sole proprietor incorporated and essentially preserved the same entity, it is undisputed here that Frost

---

[4] Absent from the Objection, the *Norlund* court stated that continued employment alone is insufficient to find consent to assignment of a personal services contract. Rather, the employee must also have *knowledge of* the assignment because "[p]arties have the right to determine with whom they contract." 675 N.E.2d at 1152. "If an employee can be said to consent to the assignment of his contract without knowledge of that assignment, it defeats the aforementioned right. If[,] however, the employee is aware of the assignment and continues his employment knowingly, he may not thereafter successfully claim that he opposes said assignment." *Id.*

5

Solutions – an entirely separate company from Frost Control – was not a party to the Separation Agreement and only purportedly acquired the Separation Agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ECF No. 58-7 at Exh. 2; ECF No. 1 at ¶ 21. It was not until Frost Solutions filed the complaint in October 2022 – a year after execution of the Separation Agreement – that Lareau learned that his Separation Agreement had purportedly been sold to Frost Solutions. Second Lareau Decl. at ¶ 5. Indeed, the June 8, 2022 letter (attached as Exhibit D to the Complaint) alleging that Lareau breached the Non-Compete was sent by *Frost Control*, not Frost Solutions. ECF No. 1 at Exh. D. *Norlund* does not support the contention that Lareau consented to assignment of the Non-Compete to Frost Solutions, and the Court should reject Frost Solutions' misleading false equivalence. Read together, *Norlund* and *SDL Enterprises* support dismissal of Count III as it relates to breach of the Non-Compete.

    **C.**    **Ruling on Lareau's Motion for Partial Summary Judgment Is Not Premature, and the Court Should Reject Frost Solutions' Request for Additional Discovery Under Rule 56(d).**

Frost Solutions also claims that Lareau "filed this motion early in the discovery process, as Frost [Solutions] has yet to take a deposition in this case" and requests that it be allowed to take additional discovery pursuant to Rule 56(d). ECF No. 76 at 9. This is a puzzling and ill-conceived delay tactic. It is not *early* in the discovery process – *the parties are 16 months into the fact discovery period*. Fact discovery is set to close on April 19, 2024. Rather, Frost Solutions has taken every opportunity to *avoid* taking discovery. Frost Solutions was alerted to this argument on October 18, 2023 (in a mediation brief), ECF No. 58-7 at ¶ 5, and was not served with the Motion until March 12, 2024, ECF No. 58, and yet, rather than conduct the discovery it now claims to need, it chose to sit on its hands and do nothing. This is a problem of Frost Solutions' own making.

Regardless, Frost Solutions fails to establish, as required by Rule 56(d), through the Declaration of Todd Rowden, that Frost Solutions cannot present facts *essential* to justify its opposition without additional discovery. The Separation Agreement is a fully integrated contract, so Frost Solutions' claimed need to take oral testimony from Lareau and "Frost Control representatives who were involved with discussing, preparing, negotiating and signing the Separation Agreement at issue" relating to: (1) its "contemplated assignment" and purported subsequent agreement to assign the Separation Agreement to Frost Solutions; (2) the meaning of the term "affiliates;" (3) "discussions between Lareau and Frost Control representatives in connection with the contents of the Separation Agreement, as well as the context in which it was signed;" or (4) "discussions at the time of Lareau's separation from Frost Control as to the company's future prospects, including assignment of [Frost Control's] assets" is wholly irrelevant and cannot possibly create a genuine issue of disputed material fact relevant to Lareau's Motion. If these depositions are "essential," then Frost Solutions should have taken them already. The Court should reject this transparent ploy and rule on the Motion.

**D.    Frost Solutions' Continued Refusal to Concede that It Has No Basis to Enforce the Non-Compete Against Lareau Only Strengthens Lareau's Request for Attorneys' Fees.**

Notwithstanding Frost Solutions' dogged pursuit of its objectively baseless Non-Compete claim, including the flawed and misleading arguments asserted in its Objection, Frost Solutions contends that Lareau's claim for attorneys' fees under Indiana Code § 34-52-1-1(b) should be denied because this statute is merely procedural and does not apply in federal court under *Erie*, or alternatively, conflicts with Fed. R. Civ. P. 11 to the extent it is found to be a substantive and thus, Rule 11 prevails. ECF No. 76 at 11-13. Frost Solutions is incorrect in both instances.

Under First Circuit precedent (not cited by Frost Solutions), in a diversity case, a court "start[s] with the basic premise that the issue of attorneys' fees has long been considered for *Erie*

7

purposes to be substantive and not procedural, and so state-law principles normally govern the award of fees." [5] *In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 15 (1st Cir. 2012); *see*, *e.g.*, *IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 451 (1st Cir. 2010) ("[w]here, as here, the court's jurisdiction is based on diversity of the parties, a district court's award of attorneys' fees is governed by relevant state law. . . ."); *Fajardo Shopping Ctr., S.E. v. Sun All. Ins. Co. of Puerto Rico*, 167 F.3d 1, 14 (1st Cir. 1999) (applying Puerto Rico rules to determine award of attorneys' fees in diversity case); *Wells Fargo Bank v. Moskoff*, 17-CV-136-JL, 2021 WL 4798102, at *1 (D.N.H. Oct. 14, 2021) ("[i]n a diversity action such as this one that raises state law claims, 'state law governs the award of fees'" (citations omitted)).

Indeed, the U.S. Supreme Court has observed that "[i]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court . . . state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 260 n.31 (1975) (internal quotations omitted). Rather, it is:

> [o]nly when there is a conflict between state and federal substantive law are the concerns of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), at issue. As we explained in *Hanna v. Plumer*, 380 U.S. 460 (1965), the "outcome determinative" test of *Erie* and *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945), "cannot be read without reference to the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws."

*Chambers v. NASCO, Inc*., 501 U.S. 32, 52 (1991) (quoting *Hanna*, 380 U.S. at 468).

Here, Indiana Code § 34-52-1-1(b) awards attorneys' fees to a *prevailing party* as part of costs if a court makes certain findings based on, *inter alia*, the *conduct of the losing party* in

---

[5] Any argument by Frost Solutions that this argument should be rejected because this case is also based on federal question jurisdiction is a red herring. Frost Solutions expressly relied on diversity jurisdiction as a basis to bring its claims in federal court, ECF No. 1 at ¶ 12, and its claim for breach of the Non-Compete is governed by Indiana law. *Id.* at Exh. C at ¶ 18.

bringing that claim. Rule 11, in contrast, provides a procedure to award an appropriate sanction against *an attorney* who engages in certain conduct *with no prevailing party prerequisite*. Under First Circuit precedent, as guided by the U.S. Supreme Court, Indiana Code § 34-52-1-1-(b) is undeniably substantive and does not conflict with Rule 11. To rule otherwise would mean that Lareau is prohibited from relying on an Indiana statute to recover his fees as a prevailing party on a claim governed by Indiana law merely because Frost Solutions filed this action in federal court, which would undeniably encourages forum-shopping and creates inequitable administration of the laws, the very circumstances *Erie* and its progeny seek to avoid. *See Showan v. Pressdee*, 922 F.3d 1211, 1224 (11th Cir. 2019) (no conflict between Georgia statute awarding attorneys' fees and Rule 11 because "Rule 11 does not speak to whether a prevailing party is entitled to compensatory damages to remedy any injury inflicted on the prevailing party by the opposing party's frivolous or bad-faith claims and defenses"); *Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1280 (10th Cir. 2011) (failure to apply Oklahoma statute would result in "a state court defendant [having] an advantage that is unavailable to a defendant with an identical claim in federal court under diversity jurisdiction" and finding "[t]o do otherwise would undoubtedly result in an 'inequitable administration of the laws' and be contrary to the twin aims of *Erie*"). Accordingly, upon finding that Lareau is the prevailing party, the Court should award Lareau and the other defendants the legal fees and costs they have incurred in defending against that claim, including the fees and costs associated with preparing the Motion and this reply.[6]

---

[6] The Court also has the power to award attorneys' fees to Lareau and the other defendants under, *inter alia*, 28 U.S.C. § 1927 and the Court's inherent equitable power. *See Steyr Arms, Inc. v. SIG Sauer*, No. 17-CV-483-JD, 2020 WL 1957926, at *4 (D.N.H. Apr. 23, 2020). Under Fed. R. Civ. P. 54(d)(2), Lareau has fourteen (14) days after the date of judgment to file that fees motion.

9

Dated: April 18, 2024                    Respectfully submitted,

**CHRISTOPHER LAREAU**

By his attorneys,

 */s/ Kierstan E. Schultz*
David W. McGrath (N.H. Bar No. 9347)
Sheehan Phinney Bass & Green, P.A.
1000 Elm Street
Manchester, NH 03101
Tel: (603) 627-8255
Fax: (603) 641-2349
Email: dmcgrath@sheehan.com

Kierstan E. Schultz (N.H. Bar No. 20682)
NIXON PEABODY LLP
900 Elm Street, 14th Floor
Manchester, NH 03101
Tel: (603) 628-4031
Fax: (603) 628-4040
Email: kschultz@nixonpeabody.com

Jason C. Kravitz (admitted *pro hac vice*)
Gina M. McCreadie (admitted *pro hac vice*)
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109
Tel: (617) 345-1000
Fax: (617) 345-1300
Email: jkravitz@nixonpeabody.com
           gmccreadie@nixonpeabody.com

**CERTIFICATE OF SERVICE**

   I hereby certify that on this date, I electronically served copies of this document and exhibit thereto on all counsel of record via the Court's CM/ECF system, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated:  April 18, 2024       */s/ Kierstan E. Schultz*
                Kierstan E. Schultz