UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| FROST SOLUTIONS, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC,<br><br>        Defendants. | Case No. 1:22-cv-00401-SE |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
ITS MOTION TO DISMISS COUNTERCLAIMS**

Defendants' Counterclaim (Doc. 72), which involves allegations of conduct occurring during the pendency of this litigation, fail to state a claim upon which relief can be granted. Their counterclaim for tortious interference with contractual relations fails because they do not claim that the third party at issue (their insurer) ever breached the insurance agreement. Further, they fail to plausibly allege that any interference was "improper," as required under New Hampshire law, because Michael Kirsh's alleged statements to their insurer were all true and not misleading.

Defendants' counterclaim under the New Hampshire Consumer Protection Act ("NHCPA") fails because the alleged conduct by Plaintiff falls outside the scope of the unfair or deceptive trade practices prohibited by the statute. Specifically, the alleged conduct did not relate to Frost Solutions' business or any business transaction, was not directed toward any consumer, does not meet the "rascality test" required under New Hampshire law, and the allegations regarding the Kirsh phone call concern an isolated, one time transaction.

Finally, Lareau's counterclaim for negligent infliction of emotional distress fails because he does not plausibly allege that Frost Solutions, as an adversary in litigation, owed him a duty of care. For these reasons, discussed more fully below, the Court should grant Frost Solutions' motion and dismiss Defendants' counterclaims.

## BACKGROUND[1]

Defendants Baglien and Lareau are former senior employees of Frost Control Systems, LLC (the predecessor of Plaintiff Frost Solutions), a manufacturer of a proprietary weather-security product called the Advance Infrared Monitoring System ("AIMS") and provider of safe, reliable, and cost effective services for customers who use its AIMS technology. (Complaint, Doc. 1, ¶¶ 1-5, 17-20; *see* Counterclaim, ¶¶ 3, 13.) Frost Solutions alleges that Baglien and Lareau stole Frost Control's trade secrets and confidential information, resigned from Frost Control, and then, a few months later, co-founded, began working for, and solicited customers for Defendant Vue Robotics, LLC, a direct competitor of Frost Control (and later Frost Solutions). (Complaint, ¶ 1–5; *see* Counterclaim, ¶¶ 13, 15.) Frost Solutions has asserted claims of trade secret misappropriation against all Defendants, breach of contract against Baglien and Lareau (specifically, breach of Baglien's Confidentiality Agreement and Lareau's Separation Agreement), and breach of fiduciary duty against Baglien and Lareau. (Complaint, ¶¶ 53-94.)

Defendants' 175-paragraph counterclaim concerns events that allegedly occurred during the pendency of this litigation. It includes many factual allegations and legal arguments concerning Defendants' positions as to the merits of Frost Solutions' claims and the specifics of its acquisition of Frost Control's assets. (*E.g.*, Counterclaim, ¶¶ 16-38, 48-59.)

---

[1] Frost Solutions disputes many allegations contained in the Counterclaim; however, the Court must accept all well pleaded allegations as true. Frost Solutions similarly accepts such well pleaded allegations as true for purposes of this motion only.

Defendants allege that Michael Kirsh, a principal of Frost Solutions, attempted to strip Defendants of the insurance coverage that is financing their defense of this lawsuit by telephoning Defendants' insurer and providing it with information that Defendants' claim is false.[2] (*Id.*, ¶¶ 89-119.) Defendants' allegations here relate to a letter an attorney for Frost Control sent to Baglien on January 5, 2022. (*See* Doc. 72-1.) The letter stated that "a number of facts have come to the attention of our client indicating that you may have violated your duties of loyalty, care and good faith during your employment with Frost Control." (*Id.*). The letter further stated that such "acts include, but are not limited to, your use of corporate assets to benefit yourself and members of your team at the expense of and without benefit to the corporation or its shareholders," and made clear that Frost Control was "still in the early stages of investigating these issues." (*Id.*) Subsequent investigation revealed much more misconduct on Baglien's part, hence this lawsuit, which includes a claim for breach of fiduciary duty against Baglien. (Complaint, ¶¶ 87-94.)

Defendants appear to admit that they never shared this January 5, 2022 letter with their insurer before Kirsh allegedly told the insurer in a phone call in November 2023 that: "(1) he was in litigation with Vue Robotics; (2) he was aware [Defendants] had received a letter from 'Frost' dated January 5, 2022 accusing them of 'bad stuff'; and (3) that the Jan 5 Letter was attached as an exhibit to the mediation brief." (Counterclaim, ¶ 98.) Defendants claim that this "triggered an investigation into whether [they] had withheld material information during the insurance application process," and that they "received a letter from their insurance carrier indicating that their coverage may be in jeopardy because of the allegations raised in the Jan 5

---

[2]   These allegations are also the subject of Defendants' recent motion for a show cause order requesting contempt and sanctions against Frost Solutions and Kirsh. (*See* Docs. 60, 68.)

Letter." (*Id.*, ¶¶106-107.) But Defendants do not allege that their insurer ever revoked coverage. In fact, Defendants' insurer continues to provide coverage under the policy and pay their legal expenses. (*See id.*, ¶ 119.)

Defendants also allege that an attorney for Frost Solutions sent a letter to Defendants' counsel on January 11, 2024, raising the possibility that "there may be a coverage issue" regarding Defendants' insurance and requesting that the letter be shared with the insurer. (*Id.* ¶ 111 (emphasis omitted).) But they do not allege that this alleged letter was ever actually shared with the insurer. (*See id.*, ¶¶ 111-119.)

Defendants' counterclaim also accuses Frost Solutions of engaging in all sorts of misconduct during this litigation. They claim that Frost Solutions has, among other things, filed this lawsuit "without performing a sufficient pre-filing investigation," "engaged in spoliation" of evidence, intended to "use the litigation process to embarrass, disparage, pummel, and, eventually, destroy . . . Vue Robotics," and "abused the discovery process . . . to bludgeon [Defendants]." (*Id* ,¶¶ 60, 117, 132, 142.) Defendants further allege several mundane events that they characterize as "unseemly practices": that a process server served Lareau with the complaint in this lawsuit in a public place, that Michael Bott, a principal of Frost Solutions, "verbally accosted" a former employee of Frost Control who is not a Vue Robotics employee, and that Frost Solutions has truthfully informed a third party about the existence of this lawsuit. (*Id.* ¶¶ 133–40.) Based on these allegations, Defendants assert counterclaims for tortious interference with contractual relations, violation of the NHCPA, and (as to Lareau only) negligent infliction of emotional distress. (*Id.* ¶¶ 143–75.)

**LEGAL STANDARD**

"District courts apply the same legal standard to motions to dismiss counterclaims pursuant to Rule 12(b)(6) as they do when reviewing motions to dismiss a complaint." *Lexington Luminance LLC v. Osram Sylvania Inc.*, 972 F. Supp. 2d 88, 91 (D. Mass. 2013); *see Unum Life Ins. Co. of America v. Schaffer*, Civil No. 02-342-JD, 2002 DNH 207 at 2 (D.N.H. Nov. 22, 2002). For a counterclaim to survive a motion to dismiss for failure to state a claim, it must provide the counter-defendant with "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up); *see* Fed. R. Civ. P. 8(a)(2). A counterclaim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Factual allegations are plausible if they "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss, the Court must accept all well pleaded facts as true and draw all permissible inferences in favor of the counterclaimant. *Lexington Luminance*, 972 F. Supp. 2d at 91. But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted). Rule 8 requires more than legal conclusions or "a formulaic recitation of the elements of a cause of action." *Id.*

**ARGUMENT**

**I.    Defendants' counterclaim for tortious interference with contractual relations should be dismissed because Defendants fail to allege any breach.**

Defendants plead a counterclaim against Frost Solutions for tortious interference with contractual relations. (Counterclaim, ¶¶ 143-152.) They claim that "Frost Solutions, through Kirsh, intentionally and improperly interfered with [Defendants'] contractual and economic relationship with their insurance carrier by misrepresenting the Jan 5 Letter Grievances in an

5

effort to destroy a competitor." (*Id.*, ¶ 148.) To state a claim for tortious interference with contractual relations under New Hampshire law, Defendants must plausibly allege: (1) they had a contractual relationship with their insurer; (2) Frost Solutions knew of the contractual relationship; (3) Frost Solutions wrongfully induced the insurer to breach the contract; and (4) Defendants suffered damages that were proximately caused by Frost Solutions' interference. *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 229 F. Supp. 2d 70, 73 (D.N.H. 2002), *aff'd*, 374 F.3d 23 (1st Cir. 2004).

Defendants' counterclaim should be dismissed because it does not allege a breach of the contract at issue, *i.e.*, the insurance agreement. The New Hampshire Supreme Court has made clear that "where contractual obligations were performed, there can be no claim for tortious interference with contractual relations." *Tessier v. Rockefeller*, 162 N.H. 324, 337 (2011). This is so even in the face of an improper *attempt* at interference by the defendant. *See Alternative Sys.*, 229 F. Supp. 2d at 73 ("Because LEDA never breached its [letter of understanding] with ASC, Synopsys cannot be liable on ASC's interference with contractual relations claim, even if it improperly attempted to interfere with the relationship between LEDA and ASC."); *see Campbell v. CGM, LLC*, No. 15-CV-088-JD, 2017 WL 78474, at *15 (D.N.H. Jan. 9, 2017).

Defendants' insurer never revoked coverage and continues to finance their defense of this lawsuit (and presumably, their assertion of these counterclaims). Defendants merely allege that the insurer sent them a letter and briefly investigated the coverage issue. (*See* Counterclaim, ¶¶ 106–07.) Causing an insurer to "suspect" that there is a coverage issue falls far short of causing it to revoke coverage and refuse to perform its obligations under a contract of insurance. (*Id.*, ¶ 108.) This reason alone is sufficient grounds for dismissing Defendants' counterclaim for tortious interference with contractual relations.

Beyond that, Defendants do not plausibly allege "improper" interference. "Only improper interference is deemed tortious in New Hampshire." *Alternative Sys.*, 229 F. Supp. 2d at 73 (citation omitted). "Whether the alleged conduct is 'improper' requires an inquiry into the mental and moral character of the defendant's conduct." *City of Keene v. Cleaveland*, 167 N.H. 731, 738 (2015) (cleaned up). "Certain types of conduct such as fraud or threats of physical violence ordinarily will be sufficient to support a claim for interference with prospective contractual relationship, but the use of ordinary means of persuasion or the exertion of limited economic pressure will not, by itself, be sufficient." *Moulton v. Bane*, No. 14-CV-265-JD, 2015 WL 6738762, at *3 (D.N.H. Nov. 3, 2015) (cleaned up). Mere communications with a third party are not enough to show improper interference. *See, e.g.*, *Campbell*, 2017 WL 78474, at *15; *Ben's Auto Body, Inc. v. Progressive Direct Ins. Co.*, No. 07-CV-417-PB, 2009 WL 5174741, at *4 (D.N.H. Dec. 18, 2009).

Defendants assert that in the alleged phone call with their insurer, Kirsh "knowingly misrepresented the basis of the Jan 5 Letter for the purpose of inducing the carrier to withdraw coverage." (Counterclaim, ¶ 172.) Specifically, they allege that Kirsh stated: "(1) he was in litigation with Vue Robotics; (2) he was aware the [Defendants] had received a letter from 'Frost' dated January 5, 2022 accusing them of 'bad stuff'; and (3) that the Jan 5 Letter was attached as an exhibit to the mediation brief." (*Id.* ¶ 98.) These are all true statements. Frost Solutions, a company of which Kirsh is a principal, was and is in litigation with Vue Robotics. (*See generally* Complaint) Baglien did receive a letter from Frost Control dated January 5, 2022, accusing him of breaching his fiduciary duty to Frost Control; "bad stuff" is a fair characterization of this tort. (*See* Doc. 72-1.) And the January 5, 2022 letter was attached as an exhibit to a brief submitted in connection with a mediation the Parties participated in.

7

Additionally, Defendants' allegations that these statements were somehow misleading fall flat because the January 5, 2022 letter does in fact relate to the claims Frost Solutions asserts in this lawsuit. Frost Solutions asserts a claim of breach of fiduciary duty against Baglien. (Complaint, ¶¶ 87–94.) This exact claim is the subject of the January 5 letter sent by Frost Control's attorney to Baglien. (*See* Doc. 72-1.) The letter stated that "a number of facts have come to the attention of our client indicating that you may have violated your duties of loyalty, care and good faith during your employment with Frost Control." (*Id.*). The letter further stated that such "acts *include, but are not limited to*, your use of corporate assets to benefit yourself and members of your team at the expense of and without benefit to the corporation or its shareholders," and made clear that Frost Control was "still in the early stages of investigating these issues." (*Id.* (emphasis added).) Subsequent investigation revealed more misconduct on Baglien's part, hence this lawsuit. Despite Defendants' repeated assertions that the January 5, 2022 letter is "entirely unrelated" to this action, the letter speaks for itself. (Counterclaim, ¶¶ 84, 87, 102, 108, 115, 147, 172.) Moreover, because Defendants appear to admit that they never shared the January 5, 2022 letter with their insurer before the alleged Kirsh phone call, the call is consistent with the motive to prevent insurance fraud. Defendants thus fail to plausibly allege "improper" interference.

To the extent Defendants argue the alleged January 11, 2024 letter sent to Defendants' counsel by Frost Solutions' attorney supports this claim, this argument fails for these same reasons as above—and also because Defendants do not allege that the letter was ever actually shared with their insurer. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 686–87 (7th Cir. 2014) (affirming dismissal of a tortious interference claim where a defendant did not communicate with a third party); *Galinski v. Kessler*, 480 N.E.2d 1176, 1180 (Ill. App. Ct. 1985)

(rejecting tortious interference claim where "the interfering conduct complained of is directed towards the plaintiff as opposed to a third party"). Accordingly, the Court should dismiss Defendants' counterclaim for tortious interference.

## II. The Court should dismiss Defendants' counterclaim under the New Hampshire Consumer Protection Act because the alleged conduct falls outside the scope of the statute.

Defendants also assert a counterclaim against Frost Solutions under the NHCPA. (Counterclaim, ¶¶ 153–169.) Defendants allege a violation of this statute based on the same conduct alleged in their first counterclaim, that is, that "Frost Solutions, through Kirsh, knowingly violated the Protective Order in the Action to contact [Defendants'] insurance carrier to improperly interfere with their contractual relations – with the goal of depriving [Defendants] of their insurance coverage by misrepresenting the basis for the Jan 5 Letter." (*Id.*, ¶ 157.) Defendants seemingly assert that Frost Solutions has violated this statute based on its alleged conduct in this litigation, which, according to Defendants, includes "fail[ing] to conduct an adequate pre-filing investigation," "abus[ing] the discovery and civil litigation process to bludgeon a competitor," "continu[ing] to pursue its claim against Lareau for breach of the non-compete, and the entire Separation Agreement" after Defendants have argued that it is unenforceable, "assert[ing] claims in the Action that are frivolous, unreasonable, and/or groundless," and generally "us[ing] the Action to harass, embarrass, pummel, and/or otherwise interfere with [Defendants] and their business." (*Id.*, ¶¶ 159–67.)

This counterclaim fails because the alleged conduct on which it is based falls outside the scope of the unlawful acts described in RSA § 358-A:2. "The purpose of the Act is to ensure an equitable relationship between consumers and persons engaged in business." *Hughes v. DiSalvo*, 143 N.H. 576, 579 (1999) (cleaned up). To that end, the NHCPA outlaws various "unfair method[s] of competition [and] unfair or deceptive act[s] or practice[s] in the conduct of any

9

trade or commerce within this state." RSA § 358-A:2. The statute defines trade and commerce to

> include the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this state.

RSA § 358-A:1. The statute lists 17 specific acts that constitute "unfair or deceptive act or practice in the conduct of any trade or commerce." RSA § 358-A:2. None of them encompass the conduct alleged in Defendants' counterclaim. "In order for conduct not particularized by the enumerated categories in the CPA to qualify as an unfair or deceptive trade practice, that conduct must be of the same type as proscribed by the enumerated categories." *Lamont v. Furniture N., LLC*, No. 14-CV-036-LM, 2014 WL 1453750, at *5 (D.N.H. Apr. 15, 2014) (cleaned up).

The New Hampshire Supreme Court has "held that the scope of the CPA is narrower than its broad language may suggest, and that it does not encompass isolated sales or contracts that are not undertaken in the ordinary course of a trade or business." *Ellis v. Candia Trailers & Snow Equip., Inc.*, 164 N.H. 457, 465 (2012). "To determine whether the Consumer Protection Act applies to a particular transaction, we analyze the activity involved, the nature of the transaction, and the parties to determine whether a transaction is a personal or business transaction." *Hughes*, 143 N.H. at 578.

A precondition for the applicability of the Act, then, is the existence of a "transaction." *See* "Transaction," *Black's Law Dictionary* (11th ed. 2019) ("The act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract."). In other words, "[f]raudulent or deceptive conduct can be actionable under the [NHCPA] only if it occurs in a business setting involving the advertising or sale of a commodity or service as part of the day-to-day business of the defendant." *Green Mountain Realty Corp. v. Fifth Estate Tower, LLC*, 161 N.H. 78, 87 (2010) (citation omitted). None of the conduct alleged

in Defendants' counterclaim involves a transaction of any kind. Defendants do not allege that Frost Solutions (or Kirsh) was engaged in business transactions in allegedly phoning Defendants' insurer or allegedly committing the wide variety of litigation conduct Defendants vaguely accuse Frost Solutions of in their counterclaim.

Defendants also fail to plausibly allege that Defendants were engaged in, specifically, a business transaction. This Court has previously held that "making a misrepresentation in a legal proceeding . . . cannot serve as the basis for a CPA claim." *McCarthy v. WPB Partners, LLC*, No. 16-CV-081-LM, 2016 WL 4014581, at *6 (D.N.H. July 26, 2016). There, the plaintiff asserted a NHCPA claim based on alleged misrepresentations the defendant made to a bankruptcy court regarding the amount of its secured claim in moving for relief from an automatic stay. *Id.* The Court found that the defendant "was seeking to collect a business debt and/or enforce a judgment; it was not doing anything that falls under the definition of trade and commerce articulated in RSA 358-A:1, II." *Id.* Additionally, the alleged misrepresentations "were not directed toward a consumer" but rather the bankruptcy court. *Id.* Accordingly, the Court granted the defendant's motion to dismiss. *Id.*

Moreover, New Hampshire courts have rejected repeated attempts to assert NHCPA claims based on conduct inside litigation. *See, e.g.*, *Fat Bullies Farm, LLC v. Devenport*, 170 N.H. 17, 26 (2017) (finding a laundry list of alleged misconduct that included "pursuing a contentious litigation strategy" did not state a NHCPA claim); *Axenics, Inc. v. Turner Constr. Co.*, 164 N.H. 659, 676-77 (2013) (finding no NHCPA violation where the plaintiff alleged the defendant's litigation tactics were "unfair" and were "designed to further delay the adjudication of [the plaintiff's] claim and make the litigation prohibitively expensive"); *Turner v. Shared Towers VA, LLC*, 167 N.H. 196, 209 (2014) (finding no NHCPA violation in requiring the

plaintiff to honor his obligations under a loan agreement and promissory note, enforcing their rights under those documents by initiating a collection and foreclosure action upon default and rejecting the plaintiff's offer of compromise); *GT Crystal Sys., LLC v. Khattak*, No. 217-2011-CV-332, slip op. at 14 (N.H. Super. Ct. Jan. 30, 2012) ("Filing a lawsuit . . . is not the type of transaction the CPA aims to protect.").³ And for good reason, as a matter of public policy. Otherwise, a defendant in any litigation remotely related to business or commercial activity could file a counterclaim under the NHCPA (perhaps to attempt to push the plaintiff toward a favorable settlement) based simply on its opinion that the lawsuit has no merit and that the plaintiff has acted unfairly in some way.

None of the various acts Defendants accuse Frost Solutions of committing inside this litigation involve business transactions or are at all related to Frost Solutions' business. Additionally, the alleged acts were "not directed toward a consumer" but rather another company and its principals. *McCarthy*, 2016 WL 4014581, at *6. Defendants impliedly admit the tenuous connection on this point by claiming only that harm to "New Hampshire residents and consumers" has occurred "by extension." (Counterclaim, ¶ 165.)

Defendants' allegations regarding Kirsh phoning their insurer similarly do not state a cause of action under the NHCPA. First, making a phone call in an attempt to strip Defendants of their insurance coverage does not fall under "trade and commerce" as defined by the NHCPA, just as "seeking to collect a business debt and/or enforce a judgment" does not. *McCarthy*, 2016 WL 4014581, at *6. Neither Frost Solutions nor Kirsh are in the insurance business or anything close to it. Second, Defendants allege only "an isolated, one time transaction"—a single phone

---

³ Frost Solutions has attached a copy of this state court decision as **Exhibit 1**.

call.[4] *Ellis*, 164 N.H. at 465 (citation omitted). "The CPA, therefore, does not apply because involvement in a single transaction is insufficient to constitute engagement in trade or commerce." *Id.* at 465–66. Third, the alleged misrepresentation was "not directed toward a consumer" but rather an insurance company. *McCarthy*, 2016 WL 4014581, at *6.

Finally, the conduct alleged in the counterclaims does not meet the "rascality test." "Under the rascality test, the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Fat Bullies Farm*, 170 N.H. at 24 (citation omitted). As this Court has explained:

> The New Hampshire Supreme Court has held that similar, arguably worse, conduct does not satisfy the rascality test. For example, in *Fat Bullies Farm*, there was undisputed evidence that a party: (1) showed up unannounced at another party's property with an attorney and a draft option agreement to discuss the sale of the property; (2) did not explain the meaning of the language in the draft agreement; (3) attempted to negotiate a sale price on the spot; (4) misrepresented facts about his intent to use the property after the sale; and (5) did not recommend that the prospective seller obtain legal counsel before signing the agreement. After the seller tried to renege on the agreement, the buyer threatened to sue the seller (both verbally and in demand letters) and cost the seller thousands of dollars in legal fees, told the seller that it would own the property within 24 hours, and impliedly threatened harm in another face-to-face encounter by stating to the seller, "I know where you live . . . You can run by you cannot hide." In the resulting litigation, the buyer pursued a "contentious litigation strategy." 170 N.H. at 20-23, 28. Viewing all of this conduct together, the court still held that it did not satisfy the rascality test. *Id.* at 28.

*Rubygold Main Holdings, LLC v. Brian Gardner Carpentry, LLC*, No. 20-CV-1006-JL, 2021 WL 2784822, at *14 (D.N.H. July 2, 2021).

The alleged Kirsh phone call does not rise to the level of "rascality" because, as discussed in Section I, *supra*, (1) the alleged statements to the insurer were all true, (2) the January 5, 2022

---

[4] To the extent Defendants argue the alleged January 11, 2024 letter from Frost Solutions' attorney to Defendants' counsel supports this claim, this argument fails for these same reasons, and also because Defendants do not allege that the letter was ever actually shared with their insurer.

letter Defendants discuss does in fact relate to a claim Frost Solutions asserts in this lawsuit, and (3) Defendants did in fact fail to share that letter with their insurer. The conduct that Defendants accuse Frost Solutions of committing inside this litigation does not meet the "rascality" test either. As noted in the cases cited above, seeking to vindicate one's rights by filing a lawsuit does not give rise to a NHCPA claim, even if a party's litigation conduct includes zealous advocacy, or, far beyond that, misleading statements. Defendants' allegations in this regard are broad, vague, and encompass nearly every stage of this litigation. Airing grievances about an adversary in litigation does not show "rascality."

Because the conduct alleged by Defendants falls outside the ambit of the NHCPA, their counterclaim under this statute should be dismissed.

### III.     Lareau's counterclaim for negligent infliction of emotional distress should be dismissed because Frost Solutions owed no duty of care to Lareau.

Lareau asserts a common law counterclaim of negligent infliction of emotional distress against Frost Solutions, stemming from the allegations that Kirsh phoned Defendants' insurance carrier and "knowingly misrepresent[ed] the basis of the Jan 5 Letter for the purpose of inducing the carrier to withdraw coverage." (Counterclaim, ¶ 172.) The elements of a claim for negligent infliction of emotional distress include: "(1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms." *O'Donnell v. HCA Health Servs. of N.H., Inc.*, 152 N.H.608, 611 (2005).

"[A] claim for negligent infliction of emotional distress, like any other negligence claim, demands the existence of a duty from the defendant to the plaintiff." *BK v. N.H. Dep't of Health & Hum. Servs.*, 814 F. Supp. 2d 59, 72 (D.N.H. 2011). Defendants claim that "Frost Solutions has a duty to exercise reasonable care towards Counterclaim-Plaintiff Lareau," but include no factual allegations to support this bare legal conclusion, which the Court need not accept as true.

(Counterclaim, ¶ 171); *see Twombly*, 550 U.S. at 555. Nothing in Defendants' counterclaim suggests the existence of any relationship that would give rise to Frost Solutions owing a duty of care to Lareau. All of the conduct Defendants accuse Frost Solutions of in their counterclaim allegedly occurred long after Lareau resigned his employment with Frost Control. Frost Solutions certainly did not owe a duty to Lareau as an adverse party in litigation. *See Chalifoux v. Chalifoux*, No. 2016-0549, 2017 WL 4770563, at *3 (N.H. Sept. 19, 2017) (affirming dismissal of negligence claim against "the plaintiff's opposing counsel" who "owed him no duty of care"); *MacMillan v. Scheffy*, 147 N.H. 362, 365 (2001) (declining to impose on an attorney "a duty of care to a non-client whose interests are adverse to those of the client"); *see also OMI Holdings, Inc. v. Howell*, 918 P.2d 1274, 1301 (Kan. 1996) ("Litigation is an adversarial process. A party . . . does not owe a duty to its adversary."). Lareau also fails to plausibly allege foreseeability, as it is not reasonably foreseeable that a phone call to an insurance company would result in a principal of a company insured by that insurer suffering emotional distress.

## CONCLUSION

For the reasons discussed above, the Court should grant Frost Solutions' motion and dismiss Defendants' counterclaim in its entirely.

Dated: April 24, 2024                    Respectfully submitted,

FROST SOLUTIONS, LLC,

By its attorneys,

/s/ *Laura L. Carroll*
Laura L. Carroll (NH Bar No. 17444)
BURNS & LEVINSON LLP
125 High Street
Boston, MA 02110
Tel:   (617) 345-3000
Fax:   (617) 345-3299
Email: lcarroll@burnslev.com

Todd A. Rowden (admitted pro hac vice)
James L. Oakley (admitted pro hac vice)
T. Hudson Cross, IV (admitted pro hac vice)
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Tel:   (312) 527-4000
Fax:   (312) 527-4011
Email: trowden@taftlaw.com
       joakley@taftlaw.com
       hcross@taftlaw.com

Amir R. Tahmassebi (admitted pro hac vice)
KONICEK & DILLON, P.C.
70 West Madison Street, Suite 2060
Chicago, IL 60602
Tel:   (312) 328-9166
Fax:   (630) 262-9659
Email: amir@konicekdillonlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically served copies of this document and exhibit thereto on all counsel of record via the Court's CM/ECF system, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: April 24, 2024                    */s/ Laura L. Carroll*
                                         Laura L. Carroll