# EXHIBIT 1

NO. 217-2011-CV-332
States of New Hampshire MERRIMACK, SS SUPERIOR COURT

# GT Crystal Sys., LLC v. Khattak

Decided Jan 30, 2012

NO. 217-2011-CV-332

01-30-2012

GT Crystal Systems, LLC, and GT Solar Hong Kong Plaintiffs v. Chandra Khattak, Kedar Gupta and Advanced Renewable Energy Co., LLC Defendants Advanced Renewable Energy Co., LLC Counterclaim Plaintiff v. GT Crystal Systems, LLC, GT Solar Hong Kong, Ltd., GT Solar Inc and GT Solar International Inc. Counterclaim Defendants

Richard B. McNamara.

## **ORDER**

Plaintiffs in this case are GT Crystal Systems, LLC ("GT Crystal"), and GT Solar Hong Kong Ltd ("GT Hong Kong") collectively the "GT parties." GT Crystal Systems, LLC's sole member is GT Solar, Inc., a Delaware Corporation with a principal place of business in Merrimack, New Hampshire. GT Solar acquired Crystal Systems, Inc. ("CSI") in 2010. GT Crystal is the successor by merger to Crystal Systems, Inc., a Delaware Corporation which did business in Massachusetts and manufactured and sold crystal systems. GT Hong Kong is a company which has licensing agreements with GT Crystal. GT Solar Hong Kong sells crystals outside the United States. *2

2

The Defendants in this case are ARC Energy, which was founded in 2007 by the Defendants Dr. Kedar Gupta ("Gupta") and Chandra Khattak ("Khattak"), collectively "the ARC parties." The ARC parties move to dismiss Counts, II, III, V, VI, and VII on the ground that the various causes of action alleged are pre-empted by the New Hampshire Uniform Trade Secret Act ("NHUTSA"). The Defendants also move to dismiss Count III, which alleges unfair competition in violation of RSA 358-A, the Consumer Protection Act ("CPA"), alleging that the CPA does not cover transactions in the employment context. Khattak moves to dismiss Count IV, which alleges a violation of the non-compete signed by Khattak, alleging the employment contract is unenforceable. Finally all Defendants move to dismiss Count I on the grounds of collateral estoppel. For the reasons stated in this order: the Defendants' Motion to Dismiss Counts II, III, and V and VII is DENIED; the Motion to Dismiss Count VI is GRANTED WITHOUT PREJUDICE; the Defendants' Motion to Dismiss Count IV is DENIED; and the Defendants' Motion to Dismiss Count I is GRANTED with respect to GT Solar, Inc. only. Finally, the GT parties move to dismiss the Counterclaims against them for violation of the CPA. That Motion is GRANTED. The Defendants' proposed protective Order is APPROVED.

## I

The Plaintiffs allege that ARC and GT Crystal manufacture sapphire and beryllium crystals which are used in LED lighting. Gupta founded GT Solar and served as CEO until he retired in 2006. Dr. Khattak worked for CSI from 1977 through 2006 and GT Solar from 2006 until he was terminated in 2010. Plaintiffs allege that Khattak is subject to a 10 year non-compete which he entered into with CSI in 2006. After he left CSI, it was acquired by GT Solar and eventually

casetext
Part of Thomson Reuters

1

3  became GT Crystal. He also signed *3 confidentiality and non-disclosure agreements. He has been employed by ARC since 2010.

The Plaintiffs allege that CSI produced sapphire crystals for use in fabricating light emitting diodes which took 30 years to develop. They assert in their papers that neither Gupta nor ARC "could have discovered how to make high quality sapphire crystals without using CSI's trade secrets." The Defendants dispute that claim.

In ruling on the Motion to Dismiss, the Court must determine whether the Plaintiffs' allegations are "reasonably susceptible of a construction that would permit recovery." Bohan v. Ritzo, 141 N.H. 210, 212 (1996). This determination requires the court to test the facts contained in the complaint against the applicable law. Jay Edwards, Inc. v. Baker, 130 N.H. 41, 44 (1987). In rendering such a determination, the court assumes the truth of all well-pleaded facts alleged by the plaintiff and construes all inferences in the light most favorable to the plaintiff. Bohan, 141 N.H. at 213. "The plaintiff must . . . plead sufficient facts to form a basis for the cause of action asserted." Mt. Springs Water Co. v. Mt. Lakes Vill. Dist., 126 N.H. 199, 201 (1985).

## II

The Defendants move to dismiss Counts II (civil conspiracy), III (unfair competition), V (interference with advantageous contractual relations), VI (unjust enrichment), and VII (injunctive relief) because the New Hampshire Uniform Trade Secret Act preempts these causes of action. The New Hampshire Uniform Trade Secret Act ("NHUTSA"), RSA 350-B, and specifically 350-B:7, "displaces conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." The preemption provision does not
4  affect contractual remedies, whether *4 or not based upon misappropriation of a trade secret, other civil remedies not based on misappropriation of a trade secret, or criminal remedies.

The New Hampshire Supreme Court has emphasized that the NHUTSA was established to create a uniform business environment that created more certain standards for protection of commercially valuable information. Mortgage Specialists, Inc. v. Davey, 153 N.H. 764, 775-76 (2006) (citation omitted). The preemption provision works "to preserve a single tort action under state law for misappropriation of a trade secret as defined in the statute and thus to eliminate other tort causes of action founded on allegations of misappropriation of information that may not meet the statutory standard for a trade secret." Id. at 776 (citations omitted). The Supreme Court has stressed a construction of the preemption provision that "effectuates the purpose of making uniform the law among states that have adopted the UTSA." Id. at 777. Thus, the provision is interpreted to preempt "claims that are based upon the unauthorized used of information, regardless of whether that information meets the statutory definition of a trade secret." Id. Save for the exceptions provided in RSA 350-B:7, II, "information is classified only as either a protected trade secret or unprotected general knowledge." Id. (citations and quotations omitted). Ultimately, then, a court need not make a "determination of whether the information at issue constituted a trade secret under the NHUTSA prior to determining whether . . . [the] common law claims are preempted." Id.

In order to determine whether the UTSA preempts a particular claim, the Court must consider "whether the claim 'conflicts' with the NHUTSA:" to determine what is in conflict, the Court must "examine[] the facts underlying the claim" and not just "the label attached to the claim." Id. at 778;
5  Onesky Family Trust v. Sullivan, 2012 WL *5 124739 *6 (D.N.H. January 17, 2012). A "claim is preempted when it is based solely on, or to the extent that it is based on, the allegations or the factual showings of unauthorized use of information or misappropriation of a trade secret." Mortgage Specialists, Inc., 153 N.H. at 778



Case 1:22-cv-00401-SE   Document 83-2   Filed 04/24/24   Page 4 of 9

GT Crystal Sys., LLC v. Khattak    NO. 217-2011-CV-332 (N.H. Super. Jan. 30, 2012)

(citations and quotations omitted); Stonyfield Farms, Inc. v. Agro-Farma, Inc., 2009 WL 3255218 (D.N.H. October 7, 2009). On the other hand, a "claim is not preempted where the elements of the claim require some allegation or factual showing in addition to that which forms the basis for a claim of misappropriation of a trade secret." Mortgage Specialists, Inc., 153 N.H. at 779.[1]

---

[1] The New Hampshire rule is called the "same elements test." It is more liberal than the "same proof test, which provides that claims are preempted under the UTSA if the claim "rises or falls based on whether the Defendant is found to have "misappropriated" a "trade secret" as those two terms are defined in the UTSA. Blueearth Biofuels, LLC v. Hawaiian Electric Co., 780 F.Supp. 1061, 1071 (D.Hawaii 2011).

---

First, the Defendants assert that Plaintiffs' Count II for Civil Conspiracy is preempted. The Writ alleges that the Defendants are liable for Civil Conspiracy because "[t]he Defendants . . . have wrongfully conspired to damage the Plaintiffs, including (without limitation) by conspiring to wrongfully obtain and utilize for the benefit of Gupta and ARC Energy CSI's proprietary trade secrets and other confidential technological and business information." The Plaintiffs maintain that while the Writ does not contain a specification of supporting facts other than misappropriation of confidential information, this claim is based on all of the factual allegations, including the violation of the non-compete, breach of contract, and unfair competition. The Court agrees that the claim for Civil Conspiracy can be supported with facts outside of misappropriation. Thus, to the extent that it is supported by more than misappropriation, the claim for Civil Conspiracy is not preempted.

Second, the Defendants assert that Plaintiffs' *6 Count III for Unfair Competition or Unfair or Deceptive Acts or Practices in the Conduct of Trade or Commerce is preempted. The Writ alleges that the Defendants are liable under the Consumer Protection Act ("CPA") because "[i]n engaging in the acts alleged in the Complaint, [the Defendants] have engaged in unfair methods of competition vis-a-vis the plaintiffs or have engaged in unfair or deceptive acts or practices in the conduct of trade or commerce in New Hampshire, thereby damaging the plaintiffs." Defendants argue that New Hampshire courts dismiss unfair competition claims as pre-empted by the NHUSTA where those claims are based on allegations of the disclosure or use of confidential information, citing Mortgage Specialists Inc. and Stonyfield Farms, Inc. ARC's Memorandum in Support of Motion to Dismiss, at page 7. But a close reading of both cases does not support this view. In Stonyfield Farms, Inc., the parties agreed that the unfair competition claim could not be sustained. Stonyfield Farms Inc., 2009 WL 3255218 at *9. In Mortgage Specialists, Inc., the unfair competition claim survived because it was not based solely upon misappropriation. Mortgage Specialists, Inc. 153 N.H. 781; see also Onesky Litigation Trust v. Sullivan, 2012 WL 124739

Here the GT parties have made a CPA claim which is not based upon the Defendants' alleged misuse of the Plaintiffs' information alone. This claim is supported by the allegation that the Defendants' made misrepresentations to the Plaintiffs' potential customers about the Plaintiffs' product and the allegation that ARC and Gupta wrongfully induced Khattak to violate the non-compete. See Mortgage Specialists, Inc., 153 N.H. at 781. Thus, "to the extent that the CPA claim is supported by more than [misappropriation], it is not preempted." Onesky Litigation Trust, 2012 WL 124739 at *10. *7

Defendants also move to dismiss Count III, violation of the CPA, because it arises out of the employment relationship. The Plaintiff asserts that the New Hampshire Supreme Court has never expressly held that the CPA does not apply in the employment context, but it has applied the test to determine a violation of the CPA to a case

involving an employee/employer relationship. ACAS Acquisitions (Precitech) Inc. v. Hobert, 155 N.H. 381, 402 (2007). Thus, the Plaintiffs are not precluded from moving forward with their violation of the CPA claim and the Defendants' Motion to Dismiss Count III is denied.

Third, the Defendants assert that Plaintiffs' Count V, Interference with Advantageous Contractual Relations, is preempted. The Writ alleges that Gupta and ARC are liable for Interference with Contractual Relations because "Gupta and ARC Energy, with a full and complete awareness of the non-compete and non-disclosure restrictions to which Khattak was subject pursuant to the provisions of his agreements with CSI (including but not limited to the CSI/Khattak Separation Agreement), have wrongfully interfered with and induced the breach by Khattak of those restrictions, to the Plaintiffs' damage." The claim for Interference relies partially on facts alleged regarding the noncompete agreement and, thus, to the extent that it is supported by more than misappropriation, the claim for Interference with Contractual Relations is not preempted. Mortgage Specialists, Inc., 153 N.H. at 781.

Finally, the ARC Defendants assert that Plaintiffs' Count VI for Unjust Enrichment and Count VII for Injunctive Relief are preempted. The Plaintiffs do not allege that these claims are based on any additional facts outside of misappropriation. Instead, they allege that the claims must not be dismissed but rather "recharacterized" because *8 they are authorized as types of relief under the UTSA.

8

Unjust enrichment is generally not a separate cause of action, but a remedy where no cause of action exists. Plaintiffs have asserted a cause of action. General Insulation Co. v. Eckman, 159 N.H. 601, 611 (2009). Such claims are generally considered to be preempted by the NHUTSA. Onesky Litigation Trust v. Sullivan. 2012 WL 124739 *12; Digital Envoy, Inc. v. Google, Inc., 370 F.Supp.2d 1025, 1035 (N.D. Ca. 2005).

Accordingly, the unjust enrichment claim must be dismissed. Count VII which seeks injunctive relief is not technically a cause of action but an equitable remedy, available under the NHUTSA itself. Accordingly, it is not dismissed.

## III

Defendant Khattak also moves to dismiss Count IV, Breach of Contract, and asserts that a 10-year covenant not to compete is unenforceable as a matter of New Hampshire law. While it has not briefed the issue, Plaintiffs argue that the evidence will show that the employment contracts at issue in this case were executed in Massachusetts and assert that Massachusetts law applies. Further, the Plaintiffs state that "if the Court views the [Writ] as presently pleaded to be insufficient to permit the offering of such evidence, Plaintiffs request the Court to provide leave to amend in that regard." Plaintiffs' Objections to Defendants' Motion to Dismiss, p. 7 n.3. Under these circumstances, dismissal would be inefficient. Moreover, even if New Hampshire law is applicable, dismissal is not warranted on the allegations made. *9

9

Although New Hampshire "law does not look with favor upon contracts in restraint of trade or competition . . . [r]estrictive covenants are valid and enforceable if the restraint is reasonable, given the particular circumstances of the case." Syncom Industries, Inc. v. Wood, 155 N.H. 73, 78 (2007), citing Merrimack Valley Wood Products, Inc. v. Near, 152 N.H. 192, 200 (2005). Covenants not to compete should be narrowly construed and their reasonableness is a matter of law for this Court to decide. Syncom Industries, 155 N.H. at 78.

Defendant Khattak argues that the "ten-year restraint against competition contained in his agreement with CSI is unenforceable because it is not limited in duration to CSI's legitimate business interests." However, at this stage in litigation, the Court declines to decide whether the covenant is unreasonable as a matter of law—the factual determinations to inquire into the covenant's

Case 1:22-cv-00401-SE   Document 83-2   Filed 04/24/24   Page 6 of 9

GT Crystal Sys., LLC v. Khattak    NO. 217-2011-CV-332 (N.H. Super. Jan. 30, 2012)

reasonableness have not been made and the Plaintiffs' allegations as to the covenant are reasonably susceptible of a construction that would permit recovery. See Syncom Industries, 155 N.H. at 77-78 (determining a covenant not to compete was unreasonable after a trial on the merits); Ferrofleuridics v. Advanced Vacuum Components, Inc., 789 F.Supp 1201, 1211 (D.N.H. 1992) (applying New Hampshire law and holding a covenant not to compete reasonable after a modification to three years after a trial on the merits). Whether a covenant not to compete is enforceable is industry dependent. Moreover, the Plaintiffs allege that the non-compete in question was executed as a result of a severance agreement by which Khattak received $100,000. There is some authority for the proposition that such agreements should be construed more liberally. Centorr Vacuum Industries, Inc. v. Lavoie, 135 N.H.651, 654 (1992). *10

Further, if a covenant is unenforceable because it is unreasonable, the Court has "the power to reform overly broad restrictive covenants if the employer shows that it acted in good faith in the execution" of the contract. Merrimack Valley Wood Products, Inc., 152 N.H. at 200 (citations omitted); see Syncom Industries, 155 N.H. at 81 (determining that resolution of whether a covenant can be modified "require[s] factual determinations" and is for the trial court to decide). Such a decision could not be made until discovery was concluded. Thus, the Defendants' Motion to Dismiss Count IV, Breach of Contract, must be denied.

## IV

Last, the Defendants assert that Plaintiffs' Count I for Misappropriation of Trade Secrets must be dismissed because all the Plaintiffs are collaterally estopped from asserting that claim as a result of an adverse determination of the same claim in previous litigation. In support of this argument, Defendants assert that Khattak previously brought an action against GT Solar for breach of contract and GT Solar counterclaimed alleging, inter alia, the misappropriation of trade secrets. When Khattak moved to dismiss that claim, this Court (Nicolosi, J.) granted his motion for failure to state a claim. The Court granted 30 days leave for GT Solar to amend its writ to clarify the misappropriation claim but GT Solar did not submit an amended writ. Khattak v. GT Solar Inc., Hillsborough County Superior Court, No. 10-E-0331 (Order of April 7, 2011).

"For collateral estoppel to apply:" (1) the issue subject to estoppel must be identical in each action; (2) the party to be estopped must have appeared as a party in the first action, or have been in privity with someone who did so; and (3) the first action must have resolved the issue finally on the merits. ERG, Inc. v. Barnes, 137 N.H. 186, 188 *11 (1993) (citations and quotations omitted). "These conditions must be understood, in turn, as particular elements of the more general requirement, that a party against whom estoppel is pleaded must have had a full and fair prior opportunity to litigate the issue or fact in question." Id. (citations and quotations omitted). There can be no serious dispute that the trade secrets at issue, at least between Khattak and GT Solar, are the same in both actions.

The third collateral estoppel prong is met because the original action resolved the claim finally on the merits. The law is clear in New Hampshire: dismissal for failure to state a cause of action is a dismissal on the merits because it "does not rest upon a purely procedural ground, but rather upon the conclusion of the trial judge that the cause alleged is without substantive merit." ERG, Inc., 137 N.H. at 189. Where leave to amend has been granted, a second action will be precluded where the Plaintiff fails to amend or the amendment fails to cure the deficiency. Id. "In each instance the plaintiff has been given two chances to state his case and is not entitled to burden the courts and opposing parties with further attempts." Id. (citations and quotations omitted). The critical

issue here is whether GT Solar Hong Kong, Ltd. and GT Crystal Systems, Inc. are bound by the judgment against GT Solar, Inc.

Relying upon the facts pled, the Defendants argue that all Plaintiffs, and not merely GT Solar, are estopped from bringing the claims for misappropriation because the trade secrets in each case are identical and GT Crystal Systems is in privity with GT Solar. "The relationship between party and non-party implied by a finding of privity in the estoppel context has been described as one of 'virtual representation' and 'substantial identity.'" Daigle v. City of Portsmouth, 129 N.H. 561, 571 (1987) (citations and *12 quotations omitted). These phrases imply a functional relationship "in which, at a minimum, the interests of the non-party were in fact represented and protected in the prior litigation." Id. (citations and quotations omitted).

Here, GT Solar, the counterclaim Defendant in the previous action, acquired Crystal Systems, Inc. ("CSI") in July 2010, and, subsequently, the company became a limited liability company, GT Crystal Systems, the Plaintiff in this action. Plaintiffs' Complaint at 9, n. 7. In GT Solar's Answer and Counterclaim, it asserted "[C]onsequently, after [July 2010] Khattak's prior obligations to CSI ran to GT Solar, as CSI's successor and/or assignee." GT Solar's Answer and Counterclaim, Hillsborough County South, 10-E-331, at 12 n. 5 (December 6, 2010). GT Solar filed the answer to Khattak's Writ and its counterclaims in December 2010, after it acquired CSI. Further, GT Crystal LLC's sole member is GT Solar.[2] Plaintiffs' Complaint at 2, ¶2. Count I in the Plaintiffs' instant Writ concerns the misappropriation of CSI's trade secrets. Pl. Compl. at 13, ¶41. Moreover, the instant Writ states: "ARC Energy is already producing such crystals using CSI's proprietary trade secrets and other confidential technological information provided to it by Khattak, in breach of his several non-compete and nondisclosure obligations to CSI and GT Solar Incorporated." (emphasis added).

---

2  The Court notes that "[t]he judgment in an action by or against the holder of ownership in the corporation is conclusive upon the corporation," Restatement (Second) of Judgments, Ch. 4, §59(3)(b), and,"[u]nless otherwise provided in a limited liability company agreement, each member and manager has the authority to bind the limited liability company." DEL. CODE ANN. tit. 6, §18-402 (2010).

--------

Nonetheless, the Plaintiffs argue that GT Crystal and GT Hong Kong assert their own right to recovery based on misappropriation of trade secrets improperly taken from their own predecessor and assignor, CSI. GT Solar Hong Kong, Ltd. and GT Crystal Systems Inc. Objection to Defendants' Motion to Dismiss, p. 12. In its Surreply to the *13 Motion to Dismiss, GT Crystal argues that its subsidiary GT Solar simply made an erroneous statement. It correctly notes that judicial estoppel does not apply to the statement, since GT Solar did not obtain some advantage in making the statement. Kelleher v. Marvin Lumber and Cedar Co., 152 N.H. 813, 848 (2005).

GT Solar Hong Kong, Ltd. and GT Crystal Systems would have the right to amend their writ even if the Court dismissed it. Under the circumstances, it is appropriate to treat the representations made in the pleadings as an amendment, and allow the parties to litigate whether or not there is privity between GT Solar, GT Crystal Systems, and GT Solar Hong Kong after discovery is had. Accordingly, the Motion to Dismiss must be granted as to GT Solar and denied as to GT Solar Hong Kong and GT Crystal Systems, Inc.

## V

Plaintiffs have moved to dismiss the Defendant ARC's counterclaim for violation of New Hampshire's CPA. The CPA makes it "unlawful for any person to use any unfair method of competition ... in the conduct of any trade or

commerce within this state." RSA 358-A:2. In support of this claim, ARC alleges that GT Solar initiated the lawsuit "in bad faith in order to chill competition." The Plaintiffs argue that ARC's counterclaim should be dismissed because it is nothing more than a malicious prosecution claim that cannot be brought until ARC is successful in the underlying litigation. The Court agrees.

In the first place, the CPA does not apply to isolated, personal transactions. Hughes v. DiSalvo, 143 N.H. 576, 578-79 (1999). The purpose of the CPA "is to ensure an equitable relationship between consumers and persons engaged in business." Id. *14 (quoting McGrath v. Mishara, 434 N.E.2d 1215, 1222 (Mass. 1982)). The CPA makes it unlawful for "any person to use any unfair method in the competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." RSA 358-A:2. Filing a lawsuit, as here, is not the type of transaction the CPA aims to protect.

But more importantly, the Defendant's counterclaim in this case is better characterized as a malicious prosecution claim. As a general rule, malicious prosecution and malicious defense actions are considered to be premature until an action terminates in a parties' favor. See, e.g. Aranson v. Schroeder, 140 N.H. 359, 368 (1995). Such a rule has the common sense effect of eliminating unnecessary litigation, protecting the litigation privilege, and avoiding inconsistent verdicts. Id. Even if the counterclaim is viable it can most efficiently be litigated after this case is resolved. Accordingly, the counterclaim must be dismissed without prejudice.

## VI

Finally, the parties have agreed that a protective order is necessary to facilitate discovery and to protect confidential information but the Plaintiffs argue that the protective order should extend to attorneys only. The Plaintiffs assert that if they disclose their trade secrets to the Defendant, they will not be able to "unring the bell" and the Defendants will know their trade secrets. The Defendants object to the Plaintiffs' order and suggest a protective order under which one designated in-house counsel and one designated employee will be able to review the discovery materials. The Defendants assert that the Plaintiffs' proposed order would prejudice the Defendants' ability to defend the case—"the defenses in this case will depend on technical comparisons of the parties' sapphire furnaces and ARC Energy's separate development of those *15 furnaces." Finally, the Defendants assert that attempting to hire and educate outside experts would be prohibitively expensive to a start-up company and just as prejudicial.

The Court has discretion in determining whether to issue protective orders and to what extent. As to the protection of information and trade secrets, the UTSA provides:

> In an action under this chapter, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in-camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval.

RSA 350-B:5. The most reasonable and efficient way to protect the parties' information in this case is to issue the Defendants' proposed protective order. The Defendants would certainly be prejudiced in preparing their defense without being able to assist their own counsel with the comparisons of each company's designs, plans, and methods. Further, the crux the Plaintiffs' claims is that the Defendant already possesses this information: thus, the Plaintiff could not be any more prejudiced when one designated in-house counsel and one designated employee have access to the discovery materials. Finally, the Plaintiff will also have access to the Defendants'



information in the same manner. For these reasons, the Court will approve the Defendants' proposed protective order to facilitate the discovery process.

SO ORDERED.

_____

Richard B. McNamara,

Presiding Justice
RBM/mrs

casetext
Part of Thomson Reuters