UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| FROST SOLUTIONS, LLC,<br><br>                      Plaintiff,<br><br>      v.<br><br>PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC,<br><br>                      Defendants. | Civ. Action No. 1:22-cv-00401-SE |

**PARTIAL OBJECTION TO PLAINTIFF'S
MOTION TO DISMISS COUNTERCLAIMS**

Christopher Lareau submits the following Partial Objection to Plaintiff's Motion to Dismiss Counterclaims (the "Motion"). See Doc. no. 92.[1]

**I.   Introduction.**

Frost Solutions, LLC ("Frost") is alleged to have taken information produced in this case under a confidentiality designation and the Court's protective order and used that information to feed Defendants' insurance carrier misleading statements in an effort to persuade the carrier to withdraw coverage. Although that attempt was ultimately unsuccessful, it had a predictable result. Mr. Lareau, a veteran who fought for his country in Iraq and Afghanistan, suffered emotional distress when he believed that the insurance carrier would withdraw coverage and effectively leave his company, Vue Robotics, LLC ("Vue"), without the means to defend itself, threatening the company's viability and Mr. Lareau's livelihood. In response to Frost's

---

[1] Defendants do not object to Frost's Motion to Dismiss as it pertains to Counts I-II of Defendants' Counterclaims.

deliberate misconduct, Lareau brought a counterclaim for negligent infliction of emotional distress.  See Doc. no. 72 at Count III.

Frost now moves to dismiss this counterclaim, arguing that Lareau has failed to adequately plead a claim for negligent infliction of emotional distress.  Specifically, Frost contends that it had no duty to Mr. Lareau to refrain from using information designated as confidential to contact Defendants' insurance carrier.  In doing so, Frost asks this Court to overlook the protective order it entered and the parties' stipulated procedures barring use of documents marked as confidential for any purpose other than litigating this action.  Frost also asserts that the Counterclaim should be dismissed because it was not foreseeable that the alleged conduct could cause Mr. Lareau emotional harm.

As discussed below, the Motion should be denied because Mr. Lareau has properly pled the elements of a negligent infliction of emotional distress claim.

## II.     Factual Background.

The facts in this section are taken from the facts alleged in Defendants' Counterclaim and documents referenced therein.  In April 2023, Defendants produced to Plaintiff an insurance policy that may be used to satisfy all or part of a possible judgment in this case (the "Insurance Policy").  Doc. no. 72 at ¶ 89.  Defendants designated the Insurance Policy as confidential under the Protective Order entered in this case.  Id. at ¶ 90.  Frost never challenged that designation. Id. at ¶ 91.  Given that confidential designation, the document was subject to certain protections, including the requirement that it "shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in Paragraph 5(b) or (c) for any purpose whatsoever other than to prepare for and to conduct discovery, hearings and trial in this action, including any appeal thereof."  See Doc. no. 28 at ¶ 5(a); Counterclaim at ¶¶ 90-92.  The Protective Order

issued in this case is both an Order issued by the Court, see doc. no. 28, and an agreement between the parties about how to handle documents designated as confidential or highly confidential, see doc. no. 26, doc. no. 28 at p. 1 (explaining that the "parties have agreed to the terms of this Agreed Protective Order").

Months later, shortly after the first day of mediation, Plaintiff's counsel demanded that Defendants produce a copy of the Insurance Policy, apparently unaware it had already been produced. Id. at ¶ 94. On November 1, 2023, Defendants' counsel informed Plaintiff's counsel that the Insurance Policy had already been produced. Id. at ¶ 95. On November 30, 2023, three days after the second day of the parties' mediation, Plaintiff's principal, Michael Kirsh, called Defendants' insurance carrier and made an unsuccessful attempt to persuade the carrier to drop Defendants' coverage. Id. at ¶¶ 96-103. Kirsh misleadingly insinuated to the carrier that Defendants had withheld material information relating to this lawsuit in its insurance application by failing to disclose a January 5, 2022 letter from Frost Control, even though Kirsch knew that letter concerned unrelated allegations about Baglien's conduct during his employment with Frost Control. Id. at ¶¶ 40-44, 76-88, 102-103, 106-108.[2] Kirsh violated the protective order by using information he obtained from the Insurance Policy for a purpose other than litigating this action—namely, to contact Defendants' insurance carrier. Id. at ¶ 105. Based on these allegations, the insurance carrier issued a letter to Defendants explaining that it was reconsidering its coverage decision. Id. at ¶¶ 106-107.

As a result of this conduct, Defendants were forced to incur substantial additional defense counsel legal fees and to retain separate coverage counsel to counteract Frost Solutions' misleading statements to the carrier. Id. at ¶ 119. Additionally, the Insurance Policy is

---

[2] Mr. Baglien denies those allegations.

Defendants' (including Mr. Lareau's specifically) only means of vigorously defending against this lawsuit (id. at ¶ 122), and the prospect of losing that defense—and with it the viability of his business—caused Lareau to begin suffering from serious mental and emotional harm, accompanied by several serious symptoms, including physical symptoms. Id. at ¶¶ at 120-29. Mr. Lareau's emotional harm was also accompanied by anxiety, loss of appetite, loss of interest in activities, and insomnia. Id. at ¶ 123. Frost understood—or should have understood—that the prospect of Defendants losing insurance coverage, including in the context of Mr. Kirsh's blatant disregard of the parties' agreement and the Court's order, would threaten to put Defendants out of business and could cause severe emotional distress to Mr. Lareau. Id. at ¶¶ 103-104, 125-129.

### III. Lareau Has Properly Pleaded Negligent Infliction of Emotional Distress.

To allege a claim for negligent infliction of emotional distress, a party must allege "(1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms. Tessier v. Rockefeller, 162 N.H. 324, 342 (2011). The allegations in the Counterclaim satisfy this standard. Lareau has alleged that Frost used its confidentially designated information to negligently and improperly make misleading statements to Defendants' insurance carrier with the intent to strip Defendants of coverage and exert undue economic pressure. Lareau has further alleged that this imperiled the viability of Defendants' business, causing him severe and foreseeable emotional distress that has manifested in physical symptoms. These allegations plainly allege a claim for negligent infliction of emotional distress under New Hampshire law.

Yet, Frost contends that Lareau's negligent infliction of emotional distress claim must be dismissed because Lareau has failed to plausibly allege that (1) Frost owed it a duty or (2) that

4

Frost's conduct would foreseeably harm Lareau. See id. at pp.14-16. Both arguments are unavailing.

***Frost Owed Lareau a Duty of Care.*** Frost is correct that a duty is required to sustain a negligent infliction of emotional distress claim. See BK v. N.H. HHS, 814 F. Supp. 2d 59, 72-73 (D.N.H. Sept. 30, 2011). But Frost is wrong to contend that Lareau has not alleged such a duty in his counterclaim. To begin with, the New Hampshire Supreme Court has recognized the "general tort principle" that "one who voluntarily assumes a duty thereafter has a duty to act with reasonable care." Walls v. Oxford Mgmt. Co., 137 N.H. 653, 659 (1993) (citing Restatement (Second) of Torts) §§ 323-324). Here, there is no dispute that Frost undertook the duty to maintain the confidentiality of Defendants' information and to not use that information for any purpose other than litigating this action. Frost voluntarily undertook the duty by, among other things, agreeing to the Protective Order. Instead of complying with that duty, Frost used Defendants' information in a malicious manner with the goal of destroying Defendants' business and threatening Lareau's livelihood if the otherwise available insurance coverage evaporated.

Further, the New Hampshire Supreme Court has recognized that parties have a duty to not engage in improper conduct that will foreseeably cause emotional distress. See Tessier v. Rockefeller, 162 N.H. 324, 342 (2011). In Tessier, the New Hampshire Supreme Court concluded that a plaintiff had properly pled a claim for negligent infliction of emotional distress by alleging that the defendants' false representations had caused her to transfer significant assets to some of the defendants. Id. at 342. The Court rejected the defendants' argument that they owed no legal duty to the plaintiff, see id. at 329, and held that the plaintiff had properly alleged the elements of a negligent emotional distress claim based on the conduct underlying her

fraudulent misrepresentation claim. Id. at 342. In doing so, the Court relied on the conclusion that the alleged improper conduct foreseeably could cause emotional distress. Id. at 342.[3]

The same result should follow here. Frost promised to only use the information that Defendants produced with a confidential designation for the purposes of litigating this action. Doc. no. 28 at ¶ 5(a). And Frost—like the defendants in Tessier—violated its promise, using information Defendants had designated as confidential with the intent of stripping Defendants of their insurance and threatening the viability of their business and Lareau's personal finances. Moreover, Frost made deliberately misleading statements to Defendants' insurance carrier in a way that foreseeably could have caused Lareau emotional harm. Granting all reasonable inferences to Lareau, as the Court must at this stage, the Counterclaim properly alleges a duty arising out of Frost's representations and its assurances to Defendants about the use of information produced with a confidential designation.

**Lareau Has Alleged Foreseeability.** Frost's contention that Lareau has failed to plausibly allege foreseeability is flawed. To allege foreseeability, Lareau need only allege facts from which "it could reasonably be found that it was foreseeable" that Frost's conduct would cause him to suffer emotional harm. Tessier, 162 N.H. at 342. In Tessier, the possibility that the plaintiff would lose substantial assets under false pretenses was sufficient to allege foreseeable emotional distress. Id.

The facts alleged in the Counterclaim satisfy this standard. Lareau alleges that Frost's principal, Michael Kirsch, contacted its insurance carrier because he "believed that Counterclaim-Plaintiffs would be unable to defend themselves in the Action and they would be

---

[3] See also Corso v. Merrill, 119 N.H. 647, 651, 659 (1979) (considering negligent emotional distress claims and reasoning that "[t]he key to applying a traditional negligence approach is the doctrine of foreseeability. Duty and foreseeability are inextricably bound together.").

driven out of business." Doc. no. 72 at ¶ 104; see also id. at ¶¶ 125-129. The Counterclaim further alleges that the only reason that Frost would undertake the alleged scheme to attempt to strip Defendants of coverage would be to "put Counterclaim-Plaintiffs out of business." Id. at ¶ 127. The Counterclaim also alleges that Kirsh and Frost appreciated this potential impact when they decided to contact Defendants' insurance carrier. Id. at ¶ 128. These facts, when taken in the light most favorable to Lareau, properly allege that the emotional harm Lareau suffered was foreseeable.

***There is No Litigation Exemption to Tort Duties.*** Frost also appears to contend that Lareau's counterclaim should be dismissed because no tort duty can exist between adverse parties in litigation. See Doc. no. 92-1 at 14 ("Frost Solutions certainly did not owe a duty to Lareau as an adverse party in litigation."). This argument is also flawed. Frost is alleged to have flagrantly violated this Court's order and to have also purposefully violated the agreed-upon confidentiality orders governing this case. While Frost cites to authority suggesting that attorneys owe no duties to adversary parties in ordinary contexts,[4] it has cited no New Hampshire case supporting the proposition that litigants owe no duties to comply with court orders and the very procedures that they have agreed to by stipulation. A contrary rule allowing an "anything goes" litigation environment would undermine the functioning of the court system and be contrary to public policy.

The New Hampshire Supreme Court recognized as much in Aranson v. Schroeder, 140 N.H. 359, 365-68 (1995). In Aranson, the Court concluded that an attorney who, acting as defense counsel, allegedly fabricated evidence during litigation could be liable in tort under a malicious

---

[4] See Chalifoux v. Chalifoux, 2017 N.H. Lexis 203, at **9-10 (dismissing negligence claim against attorney by opposing party for lack of duty when plaintiff failed to allege that attorneys did any affirmative wrong to him); Macmillan v. Scheffy, 147 N.H. 362, 364-65 (holding in malpractice case that attorney drafting deed owed no duty to non-client grantees of deed).

7

defense theory.  Id.  Far from excluding the possibility of tort liability between parties, the Aranson court specifically acknowledged the harm that the abuse of the litigation system can cause those embroiled in litigation.  Id. at 365-67.[5]  Simply put, there is no blanket exception insulating adversary litigants from tort liability simply because they are in litigation.

## CONCLUSION

For the foregoing reasons, the Court should deny Frost's Motion to Dismiss.

Respectfully submitted,

PATRICK BAGLIEN, CHRISTOPHER LAREAU, AND VUE ROBOTICS, LLC

*/s/ Ryan Lirette*

By their attorneys,
David W. McGrath (NH Bar No. 9347)
James P. Harris (N.H. Bar No. 15336)
Ryan P. Lirette (N.H. Bar No. 19561)
Sheehan Phinney Bass & Green, P.A.
1000 Elm Street, 17th Floor
Manchester, NH 03101
Tel: (603)627-8255
Fax: (603) 641-2349
dmcgrath@sheehan.com
jharris@sheehan.com
rlirette@sheehan.com

---

[5] In this regard, New Hampshire law differs from Kansas law, making the case OMI Holdings v. Howell, 260 Kan. 305 (1996), cited by Frost, inapposite.  See Doc. no. 92-1 at p. 16.

**CERTIFICATE OF SERVICE**

I hereby certify that on the date of this filing, I electronically served copies of this document on all counsel of record via the Court's CM/ECF system.

                              */s/ Ryan Lirette*
                                  Ryan Lirette