UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| FROST SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC,<br><br>Defendants. | Civ. Action No. 1:22-cv-00401-SE |

**DEFENDANTS'/COUNTERCLAIM-PLAINTIFFS' MEMORANDUM OF LAW SUPPORTING THEIR ASSENTED-TO MOTION TO AMEND COUNTERCLAIMS**

Defendants Patrick Baglien, Christopher Lareau, and Vue Robotics, LLC (together, "Defendants") seek leave to amend their Counterclaims (Doc. 72) to assert new claims against Frost Solutions, LLC ("Frost Solutions") arising from events that have transpired in the last several months, but are similar to the matters in Frost Solutions' Complaint. Rather than compete lawfully in the marketplace, Frost Solutions has engaged in a multi-pronged campaign to harm Vue Robotics, LLC ("Vue") through illegal conduct. That campaign includes interfering with an important business relationship between Vue and its vendor, Traffic and Parking Control, Inc. ("TAPCO"), by inducing TAPCO to walk away from its contract with Vue months before it expires and using TAPCO (and the confidential information possessed by TAPCO) to target Vue's customers and prospective customers. In the last several months, Frost Solutions has also used its new Vice President of Commercial Operations to engage in corporate espionage – to misuse login credentials to gain surreptitious access to Vue's systems and gather intelligence about Vue's functionalities and other proprietary information so that Frost Solutions can garner an unfair advantage.

The facts underlying these new claims occurred in the last few months, so Vue could not have asserted these claims previously, but they relate to the same subject matter as the claims asserted by Frost Solutions. In the interest of litigating all of the claims between these parties in one litigation, Defendants/Counterclaim-Plaintiffs should be allowed to amend their Counterclaims to assert them in this action. Discovery of the parties' claims is ongoing and adding these claims, which are based on discrete events, will not materially complicate or significantly delay the litigation of the matter presently before the Court. Finally, the proposed amendment removes two previously-asserted counterclaims that Counterclaim-Plaintiffs no longer desire to pursue,[1] so the proposed amended counterclaim simplifies the pleading to which Frost Solutions will eventually respond.

## The Proposed Amendment is Consistent with Court Rules

Although the deadline to amend pleadings has passed, the Court may modify the discovery schedule and allow Counterclaim-Plaintiffs to amend their Counterclaims "for good cause" under Fed. R. Civ. P. 16(b)(4). Federal R. Civ. P. 15(a)(2) similarly allows a party to amend a pleading with the court's leave, which "[t]he court should freely give when justice so requires." *Sig Sauer, Inc. v. Freed Designs, Inc.*, No. 14-CV-461-SM, 2017 WL 4119046, at *2 (D.N.H. Mar. 17, 2017). "This good cause standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Id.* (citation omitted). "[I]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

---

[1] Counterclaim-Plaintiffs previously asserted three counterclaims: tortious interference with Vue's contract with its insurance carrier, violation of RSA 358-A for attempting to subvert Vue's insurance coverage, and negligent infliction of emotional distress. As Counterclaim-Plaintiffs noted in their Partial Objection to Motion to Dismiss Counterclaims (Doc. 94), Counterclaim-Plaintiffs did not object to dismissing Counts I and II of their counterclaims, but they continue to assert Count III for negligent infliction of emotional distress. The proposed amended counterclaims submitted by Counterclaim-Plaintiffs deletes the former Counts I and II but retains former Count III brought by Counterclaim Plaintiff Lareau for negligent infliction of emotional distress (renumbered as Count I).

2

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment… – the leave sought should, as the rules require, be freely given." *Stevens v. Liberty Mut. Group, Inc.*, Case No. 11-218, 2012 WL 176487 (D. N.H. Jan. 20, 2012).

Courts recognize that a valid reason for a motion to amend includes the discovery of new information. *See Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 37 (1st Cir. 2022); *Keefe v. Ausman*, No. 90-cv-191-S, 1991 WL 534918, at *3 (D.N.H. Aug. 16, 1991) (granting motion to amend "to assert the updated facts concerning events which have transpired" since the original complaint); *Bobba v. Patel*, No. 3:19-30171-MGM, 2021 U.S. Dist. LEXIS 85953, at *7 (D. Mass. May 4, 2021) ("[I]t is not unusual for a party to add claims, particularly claims that are related to those it has already asserted, based on information the party acquires in discovery."). As described below, the new counterclaims are based on recent facts, so there has been no undue delay, no unfair prejudice to Frost Solutions and good cause exists to allow Counterclaim-Plaintiffs to amend at this time. The proposed amendment also removes two counterclaims that Counterclaim-Plaintiffs no longer desire to pursue, which causes no possible prejudice to Frost Solutions or the Court.

In a similar vein, Fed. R. Civ. P. 15(d) permits "a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Much of the proposed amended Counterclaim does just that – it updates the events that have occurred since Counterclaim-Plaintiffs filed their initial Answer and Counterclaims. Rule 15(d) authorizes a district court to permit service of a supplemental pleading "on just term." *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 7 (1st Cir. 2015). Courts traditionally allow supplementation liberally. *Id*. Under the supplemental pleading rule,

the proposed Amended Counterclaim should be accepted so that the parties can litigate all matters between them in one trial.  *See Doe v. Comm'r, N.H. HHS*, 344 F.R.D. 57 (D.N.H. 2023).

## **Frost Solutions' Tortious Interference with Vue's Contract with TAPCO**

TAPCO serves an important role in selling Vue's products and services to public entities throughout the country.  TAPCO represents approximately 50% of Vue's sales in a given year.  In March 2024, TAPCO and Vue entered into a Sales Representation and Distribution Agreement (the "TAPCO Agreement").  Under the TAPCO Agreement, TAPCO was identified as Vue's preferred dealer for the government market (i.e. to public entities).  TAPCO agreed to market and sell Vue's products and services to public entity customers throughout the country.  In return, TAPCO would be paid a fee based on the Vue products and services sold.

In the TAPCO Agreement, which runs until February 25, 2025, TAPCO promised to use commercially reasonable efforts to market and promote Vue's products and services, to establish and maintain a sales and marketing organization sufficient to market and sell Vue's products and services, to keep secret Vue's confidential information, and to achieve certain minimum market and sales performance metrics.  TAPCO openly marketed Vue's products and services in the marketplace, and Frost Solutions knew that TAPCO had entered into an agreement with Vue under which TAPCO was marketing and selling Vue's products and services.

Frost Solutions has also levied allegations in litigation demonstrating that it was aware of the Vue/TAPCO relationship.  In parallel with this Action, Frost Solutions initiated a lawsuit against Corey Moore ("Moore"), another former Frost Controls employee who subsequently was employed by TAPCO, in the United States District Court for the Northern District of Illinois, *Frost Solutions, LLC v. Cory Moore*, 1:22-cv-06910 (the "Moore Action.").  Frost Solutions alleged in the Moore Action that Moore had stolen trade secrets and confidential information to

solicit Frost Solutions customers on behalf of TAPCO.  Frost Solutions eventually amended its complaint in the Moore Action to name TAPCO itself as a defendant and allege that TAPCO had tortiously interfered with Frost Solutions' contracts and prospective business relations.[2]  In its Second Amended Complaint in the Moore Action, Frost Solutions alleges that Moore improperly aided TAPCO in selling Vue products and services, which confirms that Frost Solutions knew of the Vue/TAPCO relationship when it tortiously interfered with it in October and November 2024.  *See* Doc. 105 in the Moore Action.

In late October or early November 2024, Frost Solutions settled the claims it asserted against Moore and TAPCO in the Moore Action ("Moore settlement").  Around that time, Vue learned that Moore's employment at TAPCO had been terminated, which Vue believes was a condition of the settlement.

Within days of the Moore settlement, TAPCO sent an email and letter to Vue purporting to terminate the TAPCO Agreement with immediate effect.  TAPCO identified as the "primary basis" for the termination that TAPCO recently discovered that its now former employee, Moore, suffered from a conflict of interest because of an unspecified "financial relationship" with Vue.  TAPCO did not identify any clause in the TAPCO Agreement that prohibited or even addressed whether employees of TAPCO could have a "financial relationship" with Vue.  TAPCO failed to identify a contractual obligation breached by Vue or to allow Vue an opportunity to attempt to cure a breach (if one occurred, which it did not).  TAPCO did not identify or even suggest that it actually suffered any harm as a result of Moore's allegedly improper "financial relationship."  All of TAPCO's purported bases for terminating the TAPCO Agreement were pretextual and induced by Frost Solutions.  As such, TAPCO's attempted termination of the TAPCO

---

[2] In the Moore Action, Frost Solutions characterized TAPCO as a competitor, even though Frost Solutions characterized TAPCO as its customer in this litigation.

Agreement was ineffective, and TAPCO still remains obligated to fulfill the TAPCO Agreement until February 25, 2025, unless extended pursuant to this Court's equitable discretion beyond its natural expiration date.

Shortly after TAPCO transmitted its faulty November 6, 2024 termination notice, Vue learned that TAPCO was actively engaging with Frost Solutions in a campaign to cause customers to cease doing business with Vue. TAPCO targeted customers that were then under contract with Vue, those who recently renewed their contracts with Vue, those customers that are approaching renewal with Vue, and customers that submitted purchase orders for Vue services through TAPCO months earlier but about which TAPCO neglected to inform Vue. TAPCO attempted to induce those customers to not renew with Vue and to instead purchase equipment and services from Frost Solutions. Because TAPCO's attempted termination was ineffective and it remained obligated under the TAPCO Agreement at the time of these actions, TAPCO breached the TAPCO Agreement, with the inducement and assistance of Frost Solutions.

In the TAPCO Agreement, TAPCO promised to use commercially reasonable efforts to further the promotion, marketing, sale and distribution of Vue's products, but, as a result of Frost Solutions' inducement and interference, TAPCO has tried to steer customers away from Vue's products and to Frost Solutions' services. TAPCO promised to establish and maintain a sales and marketing organization sufficient to successfully market and sell Vue's products, but, as a result of Frost Solutions' interference, TAPCO abandoned its efforts to sell Vue's products and instead engaged its personnel to carry out a campaign to cause Vue harm in the marketplace. TAPCO promised not to make any materially misleading or untrue statements concerning Vue's products, but it has spread falsehoods as a result of Frost Solutions' interference and in a targeted effort to benefit Frost Solutions. Finally, TAPCO will not achieve the Minimum Market and

6

Sales Performance Levels set in the Agreement, due in part to Frost Solutions' interference.

Frost Solutions also induced TAPCO to share Vue's confidential information, information that TAPCO promised in the TAPCO Agreement not to share or use for the benefit of third parties. Frost Solutions has caused TAPCO to disclose and use for the benefit of Frost Solutions confidential information about Vue's customers and prospective customers. Frost Solutions has used this confidential information to steal business from Vue.

Frost Solutions therefore has unlawfully and without a privilege interfered with the TAPCO Agreement and with Vue's contracts and advantageous business relationships with the customers who had purchased or were going to purchase Vue's products and services through TAPCO. Frost Solutions also engaged in a conspiracy with TAPCO to cause harm to Vue. The proposed amended counterclaim seeks redress for these harms.

## **Frost Solutions' Corporate Espionage**

Frost Solutions' interference with the TAPCO relationship is not the only misconduct to arise recently. On November 26, 2024, Vue learned that Frost's Vice President of Commercial Operations had been misusing credentials to log into Vue's systems and thereby gain access to important information about Vue's functionalities and operations that would be useful to Frost Solutions' campaign to gain an unfair competitive advantage and otherwise improperly to disrupt Vue's business.

In October 2024, Frost Solutions hired Jason Ostrander as its Vice President of Commercial Operations. Mr. Ostrander was previously employed as Chief Operating Officer of East End Group, a Vue customer. East End Group agreed to Vue's terms and conditions as part of its purchase of Vue's ARC1 system and monitoring subscription. Among those terms and conditions was a promise by East End Group that it, among other things: (a) would use Vue's

products and services only as permitted by the terms and conditions; (b) would refrain from making Vue's products and services available to third parties for the third parties' business operations; (c) would refrain from reverse engineering any of Vue's products or services; and (d) would not disclose Vue's confidential information.  Solely in connection with his employment by East End Group, Vue allowed Mr. Ostrander to create unique log-in credentials so he could access the OmniVue, Vue's software platform supporting its ARC1 hardware.

According to publicly available information, including Mr. Ostrander's own LinkedIn profile, Mr. Ostrander departed East End Group and was hired as Frost Solutions' Vice President of Commercial Operations in October 2024.  On November 26, 2024, Vue learned that Mr. Ostrander, after leaving East End Group's employ and becoming Frost Solutions' Vice President of Commercial Operations, utilized his log-in credentials unlawfully to access surreptitiously Vue's platform and East End Group's confidential site information.

Upon discovering Mr. Ostrander's unauthorized and unlawful access, Vue examined log in data for his account and learned that Mr. Ostrander entered Vue's systems eight separate times in the 30 days prior to the discovery of his unlawful activities.  The logs also indicate that Mr. Ostrander accessed the Vue network in September 2024, with no apparent legitimate business purpose.

In the process of accessing Vue's systems, Mr. Ostrander ignored warnings appearing throughout Vue's systems that those who access the systems without authorization will be prosecuted.  Those warnings read:

> *"Application copyright © Vue Robotics. Platform copyright © ObjectSpectrum, LLC. All rights reserved worldwide. WARNING: Unauthorized access is prohibited. This system is for use only by authorized users for authorized purposes, and any unauthorized access will be prosecuted to the fullest extent of the law. All activity is monitored and logged for security and administrative purposes. By*

> *proceeding, you are acknowledging that you have read and understood this notice and that you consent to such monitoring. Version: 3.1.2 Build 3222"*

The logs indicate that Mr. Ostrander spent time rooting around in Vue's network and systems, during which time he was able to access key components of the OmniVue interface and functionalities of the ARC1 system. Ostrander's unauthorized access was intentional and premeditated. Ostrander breached both the desktop and mobile applications, executing a rapid and unauthorized exfiltration of data. He also had access to upgrades and new functionalities that Vue had delivered to its customers within the weeks prior to his unlawful entry into the system. Mr. Ostrander's new employer, Frost Solutions, can use that intelligence to gain an unfair advantage in modifying its own products and systems and when pitching its competitive products and services to potential customers.

There is no legitimate reason for Frost Solutions' Vice President of Commercial Operations to access Vue's proprietary systems – certainly not through login credentials provided pursuant to a subscription agreement with Mr. Ostrander's former employer. Mr. Ostrander's misuse of his login credentials is part of Frost Solutions' calculated, orchestrated corporate espionage campaign to seek an unfair advantage in the marketplace and otherwise improperly to disrupt Vue's business.

The clandestine access into Vue's systems was also intended to skirt the Protective Order issued by this Court to govern discovery. Vue has utilized the Protective Order as it was intended – to produce some materials marked as "Confidential" so they could be shared with Frost Solutions and other materials as "Highly Confidential – Attorneys' Eyes Only" so those materials could be produced to Frost Solutions' counsel but would not be shared with the principals of Frost Solutions. Mr. Ostrander's abuse of his log-in credentials allowed Frost

Solutions to get access to information that is similar to, if not identical to, information that Vue has or will designate in discovery as "Highly Confidential – Attorneys' Eyes Only." In this way, by using Mr. Ostrander's log-in credentials to allow Frost Solutions' new employee, Mr. Ostrander, to gain access to information that otherwise would have been limited to just their attorneys. Frost Solutions has once again engaged in a form of self-help to avoid the limitations to which it agreed when the Protective Order was submitted to the Court

Within days of discovering that a Frost Solutions Vice President had abused his log-in credentials, Vue, through counsel, sent a letter dated November 27, 2024 to counsel for Frost Solutions demanding that Frost Solutions cease all efforts to hack into Vue's systems. Vue also requested that Frost Solutions preserve information relating to Mr. Ostrander's access and cooperate in employing a forensic technical specialist to search for and remove any information or files that Ostrander obtained during his unlawful entry into Vue's systems. When Frost Solutions responded through its counsel, Frost Solutions admitted that Mr. Ostrander accessed Vue's systems after he was hired as Frost Solutions' Vice President of Commercial Operations. Frost Solutions neither denied that it had received information about Vue's systems as a result of Mr. Ostrander's access nor provided any assurances that it would refrain from using information Mr. Ostrander accessed. Instead, Frost Solutions, through counsel, offered only that Mr. Ostrander was still a "W-2 employee" of East End Group, while employed at Frost Solutions, implying vaguely and unpersuasively that this technicality somehow altered Frost Solutions' legal responsibility.

The proposed amended counterclaims asserts a claim against Frost Solutions for tortiously interfering with East End Group's contractual obligations to Vue, including, but not limited to East End Group's promises to : (a) use Vue's products and services only as permitted

10

by the terms and conditions; (b) refrain from making Vue's products and services available to third parties for the third parties' business operations; (c) refrain from reverse engineering any of Vue's products or services; and (d) not disclose Vue's confidential information.

### The Procedural Posture Militates in Favor of Allowing the Amendment

Although this case has been pending for some time, much of the discovery remains to be completed. The parties are concluding their exchange of paper and electronic discovery. Only two depositions have been completed, and those were of third parties. None of the depositions of the principals have been scheduled at this time. Under the discovery order last approved by the Court, discovery does not close until May 15, 2025 and trial is not scheduled until November 18, 2025. There is, therefore, no practical obstacle to completing the discrete discovery associated with Frost Solutions' interference with the TAPCO relationship or Mr. Ostrander's unlawful entry into Vue's systems along with the many remaining discovery tasks to complete. Counterclaim-Plaintiffs respectfully assert that their request to add these newly discovered claims should be allowed. *See, e.g.*, *Sig Sauer*, 2017 WL 4119046, at *4 (finding no prejudice to defendant where "motion was neither filed on the eve of some significant deadline nor should have come as a surprise" to defendant); *Keefe v. Lendus, LLC*, No. 20-cv-195-JD, 2021 U.S. Dist. LEXIS 253919 (D.N.H. May 12, 2021) (granting a motion to amend counterclaims where discovery was still ongoing).

WHEREFORE, Defendants/Counterclaim-Plaintiffs respectfully request that the Court issue an order:

A. Granting them leave to amend their counterclaims and to file into the docket the proposed amended counterclaim submitted with their Motion; and

B. Granting such further and additional relief as the Court deems just and equitable.

Respectfully submitted,

**PATRICK BAGLIEN, CHRISTOPHER LAREAU, AND VUE ROBOTICS, LLC,**

By their attorneys

Sheehan Phinney Bass & Green, P.A.

Dated: February 5, 2025        By: */s/ James P. Harris*
David W. McGrath (# 9347)
James P. Harris (# 15336)
Ryan Lirette (# 19561)
1000 Elm Street, P.O. Box 3701
Manchester, NH 03105-3701
603-627-8255
dmcgrath@sheehan.com
jharris@sheehan.com
rlirette@sheehan.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically served copies of this document on all counsel of record via the Court's CM/ECF system, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: February 5, 2025         */s/ James P. Harris*
James P. Harris