## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

---

FROST SOLUTIONS, LLC,

         Plaintiff,

      v.

PATRICK BAGLIEN, CHRISTOPHER
LAREAU, and VUE ROBOTICS, LLC,

        Defendants.

Case No. 1:22-cv-00401-SE

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
## MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM

### INTRODUCTION

The First Amended Counterclaim ("Am. Counterclaim") (Doc. 100) filed by Defendants Christopher Lareau ("Mr. Lareau") and Vue Robotics, LLC ("Vue") (collectively, "Defendants") concerns allegations of conduct during the pendency of this litigation.  As will be shown below, the Am. Counterclaim fails to state a claim upon which relief can be granted.  Count I, Mr. Lareau's claim for negligent infliction of emotional distress, fails because he does not plausibly allege that Frost Solutions, as an adversary in litigation, owed him a duty of care, nor was his alleged emotional distress resulting from a Frost Solutions principal allegedly contacting Defendants' insurer reasonably foreseeable.

Vue asserts several counterclaims for tortious interference, all of which fail and should be dismissed.  Count II, which alleges that Frost Solutions tortiously interfered with a contract Vue had with its former customer, TAPCO, fails because Vue does not allege any facts or circumstances that would amount to wrongful inducement.  All of the "wrongful" conduct Vue accuses Frost Solutions of occurred inside a separate, *bona fide* lawsuit Frost Solutions filed to

vindicate its rights and legitimate business interests. As such, this conduct fails to plausibly allege "wrongful" interference and is also protected First Amendment petitioning activity under the *Noerr-Pennington* doctrine.

Counts III and IV allege that Frost Solutions tortiously interfered with alleged contracts and prospective business relationships Vue claims to have had with actual and prospective customers. These counts fail to state a claim because Vue has provided no details regarding the alleged customers, contracts, business relationships, breaching activity by actual or prospective customers, or interference by Frost. Count IV fails for the additional reason that Vue does not allege *any* expectation of prospective customers materializing into actual customers.

Count V concerns Vue's contorted allegations of corporate espionage, claiming that a former employee of a Vue customer joined Frost Solutions as an employee and then used login credentials Vue had provided to the customer to access Vue's confidential information. Vue claims the former employee's alleged conduct constitutes a breach by the customer of an alleged contract with Vue. This claim fails because any conduct by this individual after he left his former employer cannot be attributed to that employer as a basic matter of agency law. Even if any conduct allegedly occurred while the individual was still an employee of Vue's customer, Vue fails to plausibly allege that the individual was acting within the scope of his employment with the customer (rather than in the separate, conflicting interest of Frost Solutions).

Finally, Count VI, which pleads civil conspiracy, fails because it cannot stand independently of the other claims, and because Vue names only Frost Solutions as a defendant and has not sued the alleged co-conspirator.

For these reasons, discussed more fully below, the Court should grant Frost Solutions' motion and dismiss Defendants' Amended Counterclaim.

## BACKGROUND[1]

Defendants Patrick Baglien ("Mr. Baglien") and Mr. Lareau are former senior employees of Frost Control Systems, LLC ("Frost Control," the predecessor of Plaintiff Frost Solutions), a manufacturer of a proprietary weather-security product called the Advance Infrared Monitoring System ("AIMS") and provider of safe, reliable, and cost effective services for customers who use its AIMS technology. (Complaint ("Compl.") (Doc. 1), ¶¶ 1–5, 17–20; *see* Am. Counterclaim, ¶¶ 2, 12.)  Frost Solutions alleges that Messrs. Baglien and Lareau stole Frost Control's trade secrets and confidential information, resigned from Frost Control, and then, a few months later, co-founded, began working for, and solicited customers for Vue, a direct competitor of Frost Control (and later Frost Solutions). (Compl. ¶¶ 1–5; *see* Am. Counterclaim, ¶¶ 12, 14.)  In its Complaint, Frost Solutions has asserted claims of trade secret misappropriation against all three Defendants, breach of contract against Messrs. Baglien and Lareau (specifically, breach of Mr. Baglien's Confidentiality Agreement and Mr. Lareau's Separation Agreement), and breach of fiduciary duty against both Mr. Baglien and Mr. Lareau. (Compl. ¶¶ 53–94.)

Defendants filed a counterclaim against Frost Solutions asserting claims for tortious interference with contractual relations, violation of the New Hampshire Consumer Protection Act, N.H. RSA § 358-A:1, *et seq.* ("NH CPA"), and (as to Mr. Lareau only) negligent infliction of emotional distress. (Doc. 72.)  Frost Solutions moved to dismiss each of the counterclaims. (Doc. 92.) Defendants conceded in their partial objection to the motion to dismiss that the tortious interference and NH CPA counterclaims should be dismissed. (Doc. 94 at 1 n.1)  Before the Court ruled on the motion to dismiss as to the sole remaining claim, Defendants Vue and Mr. Lareau moved for leave to file an amended counterclaim which kept the negligent infliction of

---

[1]    Frost Solutions disputes many allegations contained in the Am. Counterclaim, but accepts the plausibly pleaded facts as true solely for purposes of this Motion to Dismiss.

emotional distress claim, dropped the other two original claims, and asserted several new claims.[2] (Doc. 97.)  Frost Solutions did not oppose the motion for leave to file.

Vue and Mr. Lareau's new 219-paragraph Counterclaim (Doc. 100) concerns events that allegedly occurred during the pendency of this litigation.  It also includes many factual allegations and legal arguments concerning Defendants' positions as to the merits of Frost Solutions' claims and the specifics of its acquisition of Frost Control's assets. (*E.g.*, Am. Counterclaim, ¶¶ 15–37, 59–69.)

Vue and Mr. Lareau allege that Michael Kirsh ("Mr. Kirsh"), a principal of Frost Solutions, attempted to strip Defendants of the insurance coverage that is financing their defense of this lawsuit by telephoning Defendants' insurer and providing it with information that Defendants claim is false. (*Id.* ¶¶ 88–118.)  Vue and Mr. Lareau's allegations here relate to a letter an attorney for Frost Control sent to Mr. Baglien on January 5, 2022. (*See* Doc. 100-1.) The letter stated that "a number of facts have come to the attention of our client indicating that you may have violated your duties of loyalty, care and good faith during your employment with Frost Control." (*Id.*).  The letter further stated that such "acts include, but are not limited to, your use of corporate assets to benefit yourself and members of your team at the expense of and without benefit to the corporation or its shareholders," and made clear that Frost Control was "still in the early stages of investigating these issues." (*Id.*)  Subsequent investigation revealed much more misconduct on Mr. Baglien's part, hence the present lawsuit, which includes a claim for breach of fiduciary duty against Mr. Baglien. (Compl. ¶¶ 87–94.)

---

[2]   The new claims for tortious interference asserted in the amended counterclaim are unrelated to the tortious interference claim asserted in the original counterclaim that Defendants conceded should be dismissed.

Vue and Mr. Lareau appear to admit that Defendants never shared this January 5, 2022 letter with their insurer before Mr. Kirsh allegedly told the insurer in a phone call in November 2023 that: "(1) he was in litigation with Vue Robotics; (2) he was aware [Defendants] had received a letter from 'Frost' dated January 5, 2022 accusing them of 'bad stuff'; and (3) that the Jan 5 Letter was attached as an exhibit to the mediation brief." (Am. Counterclaim, ¶ 97.)  Vue and Mr. Lareau claim that this "triggered an investigation into whether [Defendants] had withheld material information during the insurance application process," and that they "received a letter from their insurance carrier indicating that their coverage may be in jeopardy because of the allegations raised in the Jan 5 Letter." (*Id.* ¶¶ 105–06.)  But Vue and Mr. Lareau do not allege that Defendants' insurer ever revoked coverage.  In fact, the insurer continues to provide coverage under the policy and pay Defendants' legal expenses. (*See id.* ¶¶ 118.)

Vue and Mr. Lareau also allege that an attorney for Frost Solutions sent a letter to Defendants' counsel on January 11, 2024, raising the possibility that "there may be a coverage issue" regarding Defendants' insurance and requesting that the letter be shared with the insurer. (*Id.* ¶ 110 (emphasis omitted).)  But they do not allege that this alleged letter was ever actually shared with the insurer. (*See id.* ¶¶ 110–18.)

Vue and Mr. Lareau's Am. Counterclaim also accuses Frost Solutions of engaging in all sorts of misconduct during this litigation. They claim that Frost Solutions, among other things, filed this lawsuit "without performing a sufficient pre-filing investigation," "engaged in spoliation" of evidence, intended to "use the litigation process to embarrass, disparage, pummel, and, eventually, destroy . . . Vue Robotics," and "abused the discovery process . . . to bludgeon [Defendants]." (*Id.* ¶¶ 59, 116, 131, 141.)  Vue and Mr. Lareau further allege several mundane events that they characterize as "unseemly practices," *e.g.*, that a process server served Mr.

Lareau with the complaint in this lawsuit in a public place, that Michael Bott (a principal of Frost Solutions) "verbally accosted" a former employee of Frost Control, who is not a Vue employee, and that Frost Solutions has truthfully informed a third party about the existence of this lawsuit. (*Id.* ¶¶ 134, 137, 139.)

As part of the reason for their Amended Counterclaim, Vue and Mr. Lareau now raise alleged ramifications from another case that involved a former Frost Solutions employee, Cory Moore ("Mr. Moore"). *Frost Sols., LLC v. Moore*, U.S.D.C. (N.D. Ill) Case No. 1:22-cv-06910 (the "*Moore* Litigation").  Frost Solutions filed suit against Mr. Moore, and later added claims against Traffic and Parking Control Co., Inc. ("TAPCO") – at that time, Mr. Moore's new employer, Frost Solutions' former customer, and Vue's current customer – which focused on the theft and misuse of Frost's confidential business information and trade secrets, and Mr. Moore's and TAPCO's efforts to shift Frost customers over to Vue.  The *Moore* Litigation settled in the fall of 2024.

Now, Vue and Mr. Lareau allege that the settlement of the *Moore* Litigation interfered with an alleged distribution and sales representation agreement between Vue and TAPCO. (*Id.* ¶¶ 164–66, 186–202.)  Specifically, they allege that Frost Solutions forced TAPCO to terminate its contract with Vue. (*Id.* ¶ 166.)  But, as Defendants admit, TAPCO provided a termination notice to Vue providing two reasons why the alleged agreement was terminated. (*Id.* ¶¶ 168–69.) First, that Mr. Moore—the primary contact between Vue and TAPCO—had a secret financial relationship with Vue that constituted a conflict of interest. (*Id.*)  Second, that Vue violated the duty of good faith and fair dealing by failing to disclose this conflict of interest to TAPCO. (*Id.* ¶ 169.)  Vue and Mr. Lareau claim that both of these reasons were insufficient to terminate the alleged agreement between Vue and TAPCO. (*Id.* ¶ 171.)  Vue and Mr. Lareau further allege that

TAPCO breached its contract with Vue by failing to use commercially reasonable efforts to promote, market, sell, and distribute Vue's products. (*Id.* ¶ 173.)  However, TAPCO is not a party in the present litigation, and neither this Court nor Frost Solutions should be asked, let alone required, to deal with Vue's grievances against TAPCO.

The Am. Counterclaim also alleges that Frost Solutions induced TAPCO to share with Frost Solutions Vue's "confidential information about Vue's customers and prospective customers" and that Frost Solutions "used this confidential information to steal business away from Vue and otherwise to further its campaign to unlawfully crush a competitor and cause substantial harm, economic and emotional." (*Id.* ¶ 175.)  The Am. Counterclaim makes broadbrush allegations, with no attempt to identify or describe any alleged confidential information.  Vue and Mr. Lareau also allege that Frost Solutions has "unlawfully and without a privilege interfered . . . with Vue's contracts and advantageous business relationships with the customers who had purchased or were going to purchase Vue's products and services through TAPCO," without identifying or describing a single customer or prospective customer, or offering any information about Vue's alleged "contracts and advantageous business relationships" with them. (*Id.* ¶ 176.)

Vue and Mr. Lareau also allege that Jason Ostrander ("Mr. Ostrander"), a former employee of one of Vue's customers, East End Group, joined Frost Solutions and then used customer login credentials for Vue's online platform to access Vue's confidential business information and trade secrets. (*Id.* ¶¶ 142, 145, 147.)  Vue and Mr. Lareau allege that following his departure from East End Group, Mr. Ostrander retained his login credentials to Vue's online customer platform, and began logging into the platform while working for Frost Solutions. (*See id.* ¶¶ 146, 147, 150.)

Based on these allegations, Mr. Lareau asserts a counterclaim for negligent infliction of emotional distress, and Vue asserts multiple counterclaims for tortious interference and one claim of civil conspiracy, all solely against Frost Solutions. (*Id.* ¶¶ 177–219.)

## LEGAL STANDARD

"District courts apply the same legal standard to motions to dismiss counterclaims pursuant to Rule 12(b)(6) as they do when reviewing motions to dismiss a complaint." *Lexington Luminance LLC v. Osram Sylvania Inc.*, 972 F. Supp. 2d 88, 91 (D. Mass. 2013); *see Unum Life Ins. Co. of Am. v. Schaffer*, Civil No. 02-342-JD, 2002 DNH 207 at 2 (D.N.H. Nov. 22, 2002). For a counterclaim to survive a motion to dismiss for failure to state a claim, it must provide the counter-defendant with "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up); *see* Fed. R. Civ. P. 8(a)(2). A counterclaim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Factual allegations are plausible if they "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss, the Court must accept all well pleaded facts as true and draw all permissible inferences in favor of the counterclaimant. *Lexington Luminance*, 972 F. Supp. 2d at 91. But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted). Rule 8 requires more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at663.

**ARGUMENT**

**I.      Count I: Mr. Lareau's Counterclaim for Negligent Infliction of Emotional Distress Should Be Dismissed Because Frost Solutions Owed No Duty of Care to Mr. Lareau.**

In Count I, Mr. Lareau asserts a claim of negligent infliction of emotional distress against Frost Solutions. (Am. Counterclaim, ¶ 177–85.)  This claim is premised on the allegations that Mr. Kirsh phoned Defendants' insurance carrier and "knowingly misrepresent[ed] the basis of the Jan 5 Letter for the purpose of inducing the carrier to withdraw coverage." (*Id.* ¶ 181.)

The elements of a claim for negligent infliction of emotional distress include: "(1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms." *O'Donnell v. HCA Health Servs. of N.H., Inc.*, 152 N.H. 608, 611 (2005).

"[A] claim for negligent infliction of emotional distress, like any other negligence claim, demands the existence of a duty from the defendant to the plaintiff." *BK v. N.H. Dep't of Health & Human Servs.*, 814 F. Supp. 2d 59, 72 (D.N.H. 2011).  Mr. Lareau asserts that "Frost Solutions has a duty to exercise reasonable care towards Counterclaim-Plaintiff Lareau," but include no factual allegations to support this bare legal conclusion, which the Court need not accept as true. (Am. Counterclaim, ¶ 180); *see Twombly*, 550 U.S. at 555.  Nothing in the Am. Counterclaim suggests, let alone identifies, the existence of any relationship that would give rise to Frost Solutions owing a duty of care to Mr. Lareau.  All of the conduct Frost Solutions is accused of in the counterclaim allegedly occurred long after Mr. Lareau resigned his employment with Frost Control.  Frost Solutions certainly did not owe a duty to Mr. Lareau as an adverse party in litigation.  *See Chalifoux v. Chalifoux*, No. 2016-0549, 2017 WL 4770563, at *3 (N.H. Sept. 19, 2017) (affirming dismissal of negligence claim against "the plaintiff's opposing counsel" who "owed him no duty of care"); *MacMillan v. Scheffy*, 147 N.H. 362, 365 (2001)

(declining to impose on an attorney "a duty of care to a non-client whose interests are adverse to those of the client"); *see also OMI Holdings, Inc. v. Howell*, 918 P.2d 1274, 1301 (Kan. 1996) ("Litigation is an adversarial process. A party . . . does not owe a duty to its adversary.").

Mr. Lareau also fails to plausibly allege foreseeability, as it is not reasonably foreseeable that a phone call to an insurance company would result in a principal of a company insured by that insurer suffering emotional distress. *See Wilder v. City of Keene*, 131 N.H. 599, 602–05 (1989).  Count I of the Am. Counterclaim thus fails for multiple reasons and should be dismissed.

## II.     Count II: Vue's Counterclaim for Tortious Interference with the TAPCO Agreement Should Be Dismissed Because Vue Fails to Plausibly Allege Wrongful Inducement.

Vue's first tortious interference counterclaim relates to an alleged Sales Representation and Distribution Agreement ("TAPCO Agreement") Vue had with its former customer TAPCO. (Am. Counterclaim, ¶¶ 186–91.)  Vue claims, upon information and belief, that when Frost Solutions settled with TAPCO in the *Moore* Litigation, "Frost Solutions required TAPCO to terminate the TAPCO Agreement with Vue, cease its dealings with Vue and commence a new relationship with Frost Solutions" as part of the settlement, and induced TAPCO to breach various provisions of the alleged TAPCO Agreement. (*Id.* ¶¶ 166, 189.)

To state a claim for tortious interference with contractual relations under New Hampshire law, Vue must plausibly allege: (1) it had a contractual relationship with TAPCO; (2) Frost Solutions knew of the contractual relationship; (3) Frost Solutions wrongfully induced TAPCO to breach the contract; and (4) Vue suffered damages that were proximately caused by Frost Solutions' interference. *See Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 229 F. Supp. 2d 70, 73 (D.N.H. 2002), *aff'd*, 374 F.3d 23 (1st Cir. 2004).

Here, Vue fails to plausibly allege the third element – that Frost Solutions tortiously

interfered with Vue's agreement with TAPCO.  In the *Moore* Litigation, Frost Solutions asserted

several claims against Mr. Moore, alleging that he had stolen Frost Control's confidential

business information and trade secrets, and then (after joining TAPCO) used that information to

compete with Frost Solutions (Frost Control's successor company), redirecting  customers to

Vue – essentially transforming TAPCO from Frost Solutions' customer into a competitor. (Am.

Counterclaim, ¶ 163)  Frost Solutions subsequently amended its complaint in the *Moore*

Litigation to add TAPCO as a defendant, asserting claims of tortious interference and civil

conspiracy against both TAPCO and Mr. Moore. (*Id.*)  Frost Solutions eventually settled with

both Mr. Moore and TAPCO. (*Id.* ¶ 164.)  Vue alleges "upon information and belief" that Frost

Solutions "required TAPCO to terminate the TAPCO Agreement with Vue" as part of TAPCO's

settlement with Frost Solutions in the *Moore* litigation. (*Id.* ¶¶ 165–66.)

"Only improper interference is deemed tortious in New Hampshire." *Alternative Sys.*, 229

F. Supp. 2d at 73 (citation omitted); *Unity Sch. Dist. v. Vaughn Assocs., Inc.*, No. 15-CV-155-

SM, 2016 DNH 062, at *5 (D.N.H. Mar. 23, 2016).  "Mere interference, in itself, is legally

insufficient to state a claim." *Kilty v. Worth Dev. Corp.*, 184 F. App'x 17, 19 (1st Cir. 2006).  It

is Vue's burden to plausibly allege that Frost's conduct as "wrongful." *Anheuser-Busch, Inc. v.

Caught-on-Bleu, Inc.*, No. CIV. 02-196-JD, 2003 DNH 127, at *5 (D.N.H. July 22, 2003), *aff'd*,

105 F. App'x 285 (1st Cir. 2004).

"Whether the alleged conduct is 'improper' requires an inquiry into the mental and moral

character of the defendant's conduct." *City of Keene v. Cleaveland*, 167 N.H. 731, 738 (2015)

(cleaned up).  Mere communications with a third party are not enough to show improper

interference.  *See, e.g.*, *Campbell v. CGM, LLC*, No. 15-CV-088JD, 2017 DNH 004, at *15

(D.N.H. Jan. 9, 2017); *Ben's Auto Body, Inc. v. Progressive Direct Ins. Co.*, No. 07-CV-417-PB, 2009 DNH 193, at *4 (D.N.H. Dec. 18, 2009). "Certain types of conduct such as fraud or threats of physical violence ordinarily will be sufficient to support a claim for interference with prospective contractual relationship, but the use of ordinary means of persuasion or the exertion of limited economic pressure will not, by itself, be sufficient." *Moulton v. Bane*, No. 14-CV-265-JD, 2015 DNH 204, at *3 (D.N.H. Nov. 3, 2015) (cleaned up).

"New Hampshire law provides that certain conduct, which would otherwise amount to tortious interference with contractual relations, is justified where an employer has acted to protect its own legitimate interests." *Tsiatsios v. Anheuser-Busch, Inc.*, No. CIV. 07-CV-003-JL, 2009 DNH 009, at 14 (D.N.H. Jan. 16, 2009). New Hampshire courts regularly look to the *Restatement of Torts* regarding this issue. *Id.* Section 773 provides:

> One who, by asserting in good faith a legally protected interest of his own . . . intentionally causes a third person not to perform an existing contract . . . does not interfere improperly with the other's relation if the actor believes that his interest may otherwise by impaired or destroyed by the performance of the contract or transaction.

*Id.* at 15 (quoting *Restatement (Second) of Torts* § 773). For example, protecting one's own legitimate business interests by enforcing a valid restrictive covenant does not constitute improper interference. *Id.* at 14-15; *Emery v. Merrimack Valley Wood Prods., Inc.*, 701 F.2d 985, 989 (1st Cir. 1983) (enforcing former employee's covenant not to compete); *Donovan v. Digital Equip. Corp.*, 883 F. Supp. 775, 788 (D.N.H. 1994) (same); *Nat'l Emp't Serv. Corp. v. Olsten Staffing Serv.*, 145 N.H. 158, 160 (2000) (enforcing restrictive covenant); *Roberts v. Gen. Motors Corp.*, 138 N.H. 532, 541(1994) (recognizing franchisor's legitimate interest in selecting its franchisees); *Technical Aid Corp. v. Allen,* 134 N.H. 1, 10 (1991).

Frost Solutions initiated the *Moore* Litigation to do exactly that, *i.e.*, to enforce the restrictive covenants in the Confidentiality Agreement Mr. Moore signed as an employee of

Frost Control.  See Second Amended Complaint, ¶¶ 60-70, *Frost Sols., LLC v. Moore*, No. 1:22-cv-06910 (N.D. Ill. Oct. 7, 2024) (Doc. 105).[3]  Frost Solutions amended its complaint in that lawsuit to add TAPCO as a defendant to protect Frost Solutions' legitimate interest in its contracts and business relationships with customers and prospective customers. *See id.* ¶¶ 75–93.  Vue's allegations here make clear that they are based solely on conduct occurring inside the *Moore* Litigation.  Vue does not claim that the *Moore* Litigation was a sham or that Frost Solutions litigated (and eventually settled) that suit for any reason other than to vindicate Frost Solutions' rights and legitimate business interests.  Vue does not plausibly allege that Frost Solutions acted improperly by way of threats, fraud, illegal means, or in any other way.  *See Judge v. Moving Into Maths*, No. CIV. 93-213-JD, 1994 WL 262883, at *4 (D.N.H. Jan. 11, 1994).  Vue therefore fails to plausibly allege that any alleged interference by Frost Solutions was improper under New Hampshire law.

Vue's claim is also barred by the *Noerr-Pennington* doctrine, which prohibits civil liability when the wrongful act in a claim is First Amendment petitioning activity, including petitioning the courts by filing and litigating a lawsuit.  *See Green Mountain Realty Corp. v. Fifth Estate Tower, LLC*, 161 N.H. 78, 84 (2010). The New Hampshire Supreme Court has held that *Noerr-Pennington* applies to bar claims brought under NH CPA. *Id.* at 86-87.  And "[c]ourts across the country have . . . applied the doctrine to other causes of action, including common law torts such as tortious interference, that could chill the constitutional right of petition." *Alifax*

---

[3]    *Available at* https://storage.courtlistener.com/recap/gov.uscourts.ilnd.424316/gov.uscourts.ilnd.424316.105.0.pdf. In the context of motion to dismiss, "a court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Jeranian v. Dermenjian*, No. CV 18-652JJM, 2019 WL 6117991, at *2 n.3 (D.R.I. Nov. 15, 2019) (cleaned up).

*Holding SPA v. Alcor Sci. Inc.*, No. CV 14-440 WES, 2019 WL 13091790, at *11 (D.R.I. Mar. 26, 2019) (collecting cases); *see Saint Consulting Grp., Inc. v. Endurance Am. Specialty Ins. Co.*, 699 F.3d 544, 548 (1st Cir. 2012); *Friends of Rockland Shelter Animals, Inc. (FORSA) v. Mullen*, 313 F. Supp. 2d 339, 343 (S.D.N.Y. 2004). Because Vue's tortious interference counterclaim is based on Frost Solutions' alleged conduct inside the *Moore* Litigation, *Noerr-Pennington* applies and the counterclaim should therefore be dismissed.

Finally, to the extent that Vue's claim is based on TAPCO's notice to Vue that it would not be renewing its agreement with Vue after its expiry, refusal to renew is not a breach of contract required for a tortious interference claim. *See Gould v. N. Human Servs.*, No. 2015-0698, 2016 WL 5831602, at *2 (N.H. Aug. 22, 2016) (affirming ruling that the defendant "did not, in fact, breach the contract, but merely decided not to renew it, [and thus] there could be no liability for tortious interference with contractual relations").

## III. Counts III and IV: Vue Has Failed to Plausibly Allege Counterclaims for Tortious Interference.

In Counts III and IV, Vue has asserted counterclaims of tortious interference with "contractual relations with customers" and with "prospective business relations," respectively, against Frost Solutions. (Am. Counterclaim ¶¶ 192–97, 198–202.)  Both of these claims are based solely on Vue's allegations that Frost Solutions "induced TAPCO to share Vue's confidential information" and then misused such information to interfere with "Vue's contracts and advantageous business relationships with the customers who had purchased or were going to purchase Vue's products and services through TAPCO." (*Id.* ¶¶ 175–76.)

Vue's vague and conclusory allegations fail to state a claim upon which relief can be granted.  Vue does not specify anything about the nature of the alleged confidential information at issue – what it was, what it said, or how it was confidential business information that Vue

would have a legitimate interest in protecting.  Further, Vue does not identify or describe a single customer or prospective customer with which Vue allegedly had a contract or prospective business relationship.  Vue does not identify any alleged contracts nor provide any information about the contents of any such contract.  Vue does not explain what contractual obligations were allegedly contained therein, or what any specific Vue customer did or did not do to breach any specific contract with Vue.  Nor does Vue specify how Frost Solutions allegedly interfered with any alleged contracts and business relationships with customers Vue has not identified.

Vue "fails to provide any further details about th[e] [alleged] contracts." *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 538 (1st Cir. 2023).  "Even under the lenient plausibility standard, a plaintiff must furnish enough detail about the obligations of the alleged contracts to allow a reasoned determination as to whether the second element – breach of contract – is alleged." *Id.* (affirming dismissal of similarly sparse claim for tortious interference).  Here, Vue provides nothing more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. The Court need not accept as true Vue's bare legal conclusions. *Twombly*, 550 U.S. at 555.

Count IV should also be dismissed because Vue fails to sufficiently allege a reasonable expectation of future business.  *See Alternative Sys.*, 229 F. Supp. 2d at 73 (stating the elements of this claim under New Hampshire law).  "When the alleged improper interference is with a prospective rather than established contractual relationship, the relationship between the plaintiff and third party must give rise to a reasonable expectation of economic advantage."  *Planet Fitness Int'l Franchise v. JEG-United, LLC*, 633 F. Supp. 3d 484, 501 (D.N.H. 2022) (cleaned up).  The prospective relationship must be "sufficiently concrete" to be reasonable; mere hope for a future successful negotiation that might result in a contract is not sufficient. *Id.*

There is "no authority for the proposition that a plaintiff may bring an action for tortious interference with prospective contractual relations based solely on a plaintiff's potential for capturing a share of a given market." *Beckwith Builders, Inc. v. Depietri*, No. 04 CV 282 SM, 2006 DNH 106, at *4 (D.N.H. Sept. 15, 2006) (citation omitted). Statements "about a potential economic relationship, without identification of any terms or scope of the relationship, are insufficient to create a reasonable expectation of consummating an economically advantageous transaction." *Planet Fitness*, 633 F. Supp. 3d at 503, citing *Sindi v. El-Moslimany*, 896 F.3d 1, 25 (1st Cir. 2018). Moreover, "[t]he scope of actionable conduct is narrower in a case involving a prospective contractual relationship than an existing contractual relationship." *Planet Fitness*, 633 F. Supp. 3d at 501 (cleaned up). The use of ordinary means of persuasion or the exertion of limited economic pressure will not, by itself, be sufficient to establish tortious interference with a prospective contractual relationship. *Id.*; *see also Wilcox Indus. Corp. v. Hansen*, 870 F. Supp. 2d 296, 307 (D.N.H. 2012) (noting that conduct such as "fraud or threats of physical violence" may be sufficient to support a claim for interference with a prospective contractual relationship, but not "persuasion or economic pressure").

In *Beckwith*, the court dismissed for failure to state a claim the plaintiff's claim for intentional interference with prospective contractual relations where it alleged only "speculative prospective contractual relations . . . with whom [the plaintiff] had not yet developed a relationship." 2006 DNH 106, at *5. Like *Beckwith*, Vue fails to sufficiently allege a reasonable expectation of prospective contractual relations with the purported "prospective customers" mentioned here. Vue alleges that Frost Solutions interfered with prospective customers and business relations, but does not identify any such prospective customers or allege any facts that Vue had a reasonable expectation that such prospective customers would develop into actual

customers and relationships. (Am. Counterclaim ¶¶ 163, 175, 199–202.)  Vue's allegations lead

to only speculation regarding the existence of such prospective relationships.  Without any

details regarding the identity or expectation of business from such purported prospective

customers, Vue also cannot and has not alleged any facts to support actionable interference that

goes beyond mere persuasion for this claim. *Planet Fitness*, 633 F. Supp. 3d at 501.

**IV.    Count V: Vue's Counterclaim for Tortious Interference Related to East End Group
    Should Be Dismissed Because Vue Fails to Plausibly Allege any Breach.**

In Count V, Vue asserts another claim of tortious interference with contract against Frost

Solutions. (Am. Counterclaim, ¶¶ 203-212.)  This counterclaim concerns Vue's grandiose and

contorted allegations of a "calculated, orchestrated corporate espionage campaign to seek an

unfair advantage in the marketplace" by Frost Solutions. (*Id.* ¶ 151.)  Vue alleges that it sold its

ARC1 system and monitoring services to a customer, East End Group, and that East End Group

tacitly agreed to certain "terms and conditions" as part of this purchase. (*Id.* ¶ 142.)  Vue asserts

that Mr. Ostrander, a former East End Group employee, joined Frost Solutions as an employee

and then used login credentials Vue had provided to East End Group to access Vue's software

platform. (*Id.* ¶¶ 143-147.)

The only claim Vue asserts related to these allegations is one against Frost Solutions for

tortious interference with contract.  Vue claims that Frost Solutions induced East End Group to

breach its alleged promises to "use Vue's products and services only as permitted by the terms

and conditions," "refrain from making Vue's products and services available to third parties for

the third parties' business operations," "refrain from reverse engineering any of Vue's products

or services," and "not disclose Vue's confidential information." (*Id.* ¶¶ 144, 206.)  For each of

these alleged terms and conditions, Vue claims that Frost Solutions "tortiously interfered with

East End Group's contractual promises" by "utilizing Mr. Ostrander, Frost Solutions' Vice

President, to obtain access to Vue's systems." (*Id.* ¶¶ 207–10.)

This counterclaim should be dismissed because it does not plausibly allege that *East End Group* breached the alleged contract at issue. Vue does not allege it had a contract with either Frost Solutions or Mr. Ostrander. The New Hampshire Supreme Court has made clear that "where contractual obligations were performed, there can be no claim for tortious interference with contractual relations." *Tessier v. Rockefeller*, 162 N.H. 324, 337 (2011). This is so even in the face of an improper attempt at interference by the defendant. *See Alternative Sys.*, 229 F. Supp. 2d at 73; *see Campbell*, 2017 DNH 004, at *15.

The problem for Vue here is one of agency. Vue specifically alleges that "Mr. Ostrander, *after* becoming Frost Solutions' Vice President of Commercial Operations and *his employment with East End Group ended*, utilized his log-in credentials to surreptitiously access Vue's platform and East End Group's confidential site information." (Am. Counterclaim ¶ 147 (emphases added).) "Once an agency relationship ceases, a former agent may, in general, act freely for any other party . . ." *Petition of Contoocook Valley Paper Co.*, 129 N.H. 528, 534 (1987). Since Mr. Ostrander was no longer an employee of East End Group at the time that he allegedly accessed Vue's platform, his actions cannot be attributed to East End Group. That is, Ostrander was not acting on behalf of East End Group or with its authority when he allegedly accessed Vue's platform. Vue thus fails to allege any breach by East End Group.

To the extent Vue alleges Mr. Ostrander accessed Vue's systems while still employed by East End Group, Vue does not plausibly allege that Mr. Ostrander was acting within the scope of his employment with East End Group, leading to the same result. Under the *Restatement of Agency*, conduct of a servant is within the scope of employment, if, and only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space

limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master. *May v. Dartmouth Hitchcock Med. Ctr.*, No. CIV. 02-371-B, 2003 DNH 111, at *1 (D.N.H. June 24, 2003) (quoting *Restatement (Second) of Agency* § 228 (1958)).  Moreover, "conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id*.  As the comments to the *Restatement* explain, "employment" means the subject matter as to which the master and servant relation exists. *Id.* (comment a).

Here, Vue's allegations make clear that Mr. Ostrander was not motivated to serve East End Group when he allegedly accessed the Vue platform.  Instead, Vue alleges that he accessed the platform for Frost Solutions' benefit, so Frost Solutions could "use that intelligence to gain an unfair advantage in modifying its own products and systems and when pitching its competitive products and services to potential customers." (Am. Counterclaim ¶ 150.) Accordingly, even if Vue does allege that Mr. Ostrander accessed Vue' systems while still an employee of East End Group, Vue fails to plausibly allege facts showing that this conduct is attributable to East End Group as a matter of law.  With no plausible allegations of breach by East End Group, this counterclaim fails.  !

## V.    Count VI: Vue's Civil Conspiracy Claim Cannot Stand Independently.

In Count VI, Vue asserts a claim of civil conspiracy against Frost Solutions, rehashing its allegations regarding Frost Solutions and TAPCO. (Am. Counterclaim, ¶¶ 213–19.)  TAPCO, however, is not named as a defendant.

"New Hampshire courts define civil conspiracy as a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." *Sykes v. RBS Citizens, N.A.*, 2 F. Supp. 3d 128, 138 (D.N.H.

2014) (citation omitted). The elements of civil conspiracy are:

> (1) two or more persons (including corporations); (2) an object to be accomplished (i.e. an unlawful object to be achieved by lawful or unlawful means or a lawful object to be achieved by unlawful means); (3) an agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. !

*Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 47 (1987).

First, Vue's civil conspiracy claim falls with its other claims. "There is no such thing in New Hampshire . . . as a civil action based upon conspiracy alone." *Univ. Sys. of N.H. v. U.S. Gypsum Co.*, 756 F. Supp. 640, 652 (D.N.H. 1991). "For a civil conspiracy to exist, there must be an underlying tort which the alleged conspirators agreed to commit." *Id.* Because Vue's other counterclaims regarding Frost Solutions and TAPCO fail to state a claim, this counterclaim should be dismissed as well.

Second, "a conspiracy necessarily involves two or more persons." *Lath v. Oak Brook Condo. Owners' Ass'n*, No. 16-CV-463-LM, 2017 DNH 052, at *12 (D.N.H. Mar. 20, 2017); *see Jay Edwards*, 130 N.H. at 47. The counterclaim, however, names only Frost Solutions as a party. (Am. Counterclaim, ¶¶ 213–19.) Because Vue fails to name the other alleged co-conspirator as a defendant, its civil conspiracy claim against only Frost Solutions fails the first element.

## CONCLUSION

For the reasons demonstrated above, the Court should grant Frost Solutions' motion and dismiss Defendants' amended counterclaim in its entirely.

Dated: April 21, 2025

Respectfully submitted,

**FROST SOLUTIONS, LLC,**

By its attorneys,

/s/ *Laura L. Carroll*
Laura L. Carroll (NH Bar No. 17444)
ArentFox Schiff LLP
800 Boylston Street, 32nd Floor
Boston, MA 02199
Tel:    (617) 973-6100
Email: laura.carroll@afslaw.com

Todd A. Rowden (admitted pro hac vice)
James L. Oakley (admitted pro hac vice)
T. Hudson Cross, IV (admitted pro hac vice)
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Tel:    (312) 527-4000
Fax:    (312) 527-4011
Email: trowden@taftlaw.com
          joakley@taftlaw.com
          hcross@taftlaw.com

Amir R. Tahmassebi (admitted pro hac vice)
KONICEK & DILLON, P.C.
70 West Madison Street, Suite 2060
Chicago, IL 60602
Tel:    (312) 328-9166
Fax:    (630) 262-9659
Email: amir@konicekdillonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically served copies of this document and exhibit thereto on all counsel of record via the Court's CM/ECF system, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: April 21, 2025

/s/ *Laura L. Carroll*
Laura L. Carroll