# EXHIBIT E



1401 Lawrence Street, Suite 2300, Denver, CO, 80202 ▪ 303.572.9300

July 5, 2022

Richard M. Murray
(303) 583-8242
rmurray@polsinelli.com

**<u>Via Electronic Mail</u>**

Adam Arceneaux, Esq.
Ice Miller LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0200
Adam.Arceneaux@icemiller.com

Re:    **Frost Control Systems, Inc. v. Patrick Baglien, Christopher Lareau and Vue Robotics LLC**

Dear Mr. Arceneux:

As previously advised, Polsinelli PC represents Patrick Baglien, Christopher Lareau and Vue Robotics LLC (collectively, "Respondents") in regard to the matters addressed in your correspondence dated June 8, 2022, sent on behalf of Frost Control Systems, Inc. ("Frost" or "Claimant").

Your letter requests Messrs. Baglien and Lareau to return Frost documents and data, and accuses them of acts that you assert raise trade secret act implications. The information on which you base such accusations is inaccurate and any such claims would be misplaced. Messrs. Baglien and Lareau are not in possession of ***any*** Frost documents, data, contact lists, deal information, or any Frost devices. Upon their departures from Frost, Messrs. Baglien and Lareau returned their company laptops and did not transfer any Frost data to any personal device or account. The downloading of data from Hubspot was done in the ordinary course of their job responsibilities to inform weekly Board of Directors ("BOD") and sales updates. Frost's BOD should be aware as it was done at their direction and under the oversight of then CEO Ryan Kreager and his replacement Victor Gill. In the performance of their jobs with Frost, Messrs. Baglien and Lareau routinely downloaded data from Hubspot to be exported to Excel and, as part of an effort led by Victor Gill, transferred to a Google platform. This was a regular activity. All of the exports were done on and only onto company laptops, which were returned to the company upon Messrs. Baglien and Lareau's respective resignations. Nothing was retained by Messrs. Baglien and Lareau and they have nothing to return to Frost.

Atlanta    Boston    Chattanooga    Chicago    Dallas    Denver    Houston    Kansas City    Los Angeles    Miami    Nashville    New York
Overland Park    Phoenix    Raleigh    San Francisco    Seattle    Silicon Valley    St. Joseph    St. Louis    Washington, DC    Wilmington
Polsinelli PC, Polsinelli LLP in California



July 5, 2022
Page 2

Turning to the alleged breach of the Separation Agreement and Mutual Release ("Separation Agreement") signed by Mr. Lareau, there has been no actionable conduct giving rise to a breach, let alone any damages. As an initial matter, we dispute the enforceability of the one-sided Separation Agreement for several reasons. First, the "consideration" described in Section 1 consists of nothing more than wages earned by Mr. Lareau that Frost was already required to pay him. Therefore, the Separation Agreement lacks sufficient consideration to be enforceable.

Next, the Separation Agreement misleadingly states it includes a Mutual General and Special Release; however, much like the rest of the document, the provision is entirely one-sided and is only a release by "Employee" for claims against the "Employer" and "Releasees." This is another example of the deceptive nature of the document that Mr. Lareau was forced to sign in order to receive his already earned wages. *See*, *e.g.*, *Highhouse v. Midwest Orthopedic Inst.*, 782 N.E.2d 1006, 1014 (Ind. App. 2003) (citing *Wank v. Saint Francis College*, 740 N.E.2d 908, 912 (Ind. Ct. App. 2000) ("Deferred payment of compensation that accrued during an employee's tenure is a wage.")).

Further, the "Covenant Not to Compete" provision in Section 10 is unenforceable. As you know, "noncompetition covenants in employment contracts are disfavored in the law, and [the courts] will construe these covenants strictly against the employer and will not enforce an unreasonable restriction." *Clark's Sales & Serv., Inc. v. Smith*, 4 N.E.3d 772, 780 (Ind. Ct. App. 2014) (quoting *Cent. Indiana Podiatry, P.C v. Krueger*, 882 N.E.2d 723, 728-29 (Ind. 2008)) (alteration added). "Indeed, '[p]ost-employment restraints are scrutinized with particular care because they are often the product of unequal bargaining power and because the employee is likely to give scant attention to the hardship he may later suffer through loss of his livelihood.'" *Id.* (quoting Restatement (Second) of Contracts, § 188 cmt. G (1981)).

Here, the noncompetition covenant attempts to restrict Mr. Lareau from certain activities "in any locale in which the Employer conducts business or planned to conduct business as of Resignation Date." This vague and overly broad restriction is unenforceable as it is indecipherable as to what geographic location it could apply, and it could potentially apply to anywhere in the world, which would be an impermissible geographic scope. Further, the restriction is not limited to any specific service that Mr. Lareau provided to Frost during his employment and is therefore overly broad and unreasonable. *See id.* at 782 (concluding that "prohibition is not limited to restricting Smith from providing those services that he actually provided to Clark's" and is "overly broad and unreasonable").

Nevertheless, the Covenant Not to Compete excludes a position with a direct competitor if the services provided are not directly competing with Frost. Mr. Lareau's involvement with Vue Robotics satisfies this exception. As an initial matter, the covenant expired in April 2022, and Vue



July 5, 2022
Page 3

Robotics does not even have a commercially available product yet. The product in development does not have a single shared component or line of software code that is the same as Frost's product. Moreover, we understand that Frost no longer functions as a going concern, it has no employees, and it is in the process of winding down and trying to dispose of its assets. Thus, even if Vue Robotics could be viewed as a competitor, there is nothing to compete against given the apparent dissolution of Frost.

Based on the foregoing, the Respondents dispute there is any basis for "threatened litigation" by Frost, or any successor, and consider this matter closed. By providing this response, each of the Respondents does not waive, and expressly reserves, their respective claims, causes of action, defenses, rights, and arguments available at law, in equity, or under contract.

Sincerely,

Polsinelli PC

Richard M. Murray