## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

FROST SOLUTIONS, LLC,

                    Plaintiff,

          v.

PATRICK BAGLIEN, CHRISTOPHER
LAREAU, and VUE ROBOTICS, LLC,

                    Defendants.

Civil Action No. 1:22-cv-00401-SE

### DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants, Patrick Baglien, Christopher Lareau, and Vue Robotics, LLC, by and
through their attorneys, Sheehan Phinney Bass & Green, P.A., hereby answers Plaintiff, Frost
Solutions, LLC's, First Amended Complaint.  Anything not specifically responded to herein is
denied.

### NATURE OF THE ACTION

1.       This action seeks damages and injunctive relief arising from Defendants' theft of
Frost Solutions' valuable confidential information and trade secrets, and Baglien's and Lareau's
breach of fiduciary duties and breach of contract.

**ANSWER:  Paragraph 1 is a legal conclusion to which no response is required.  To the
extent a response is required, Defendants admit that Plaintiff seeks damages and injunctive
relief, but deny (1) that Plaintiff is entitled to such relief, (2) that Defendants stole Frost
Solutions' confidential information or trade secrets, and (3) that either Baglien or Lareau
breached any alleged fiduciary duties or any contractual obligations.**

2.    While working as top-level officers for Frost Control Systems, LLC, an Indiana limited liability company, and its successor Frost Control Systems, Inc., d/b/a Frost Technologies, a Delaware and Indiana-based company (collectively, "Frost Control"), Baglien and Lareau began stealing Frost Control's trade secrets, customer lists, and confidential information.

**ANSWER:  Mr. Baglien and Mr. Lareau admit that they previously worked for Frost Control.  Messrs. Baglien and Lareau deny the remainder of the allegations in Paragraph 2.  Vue Robotics lacks sufficient knowledge and information to admit or deny the allegations in Paragraph 2 and, therefore, denies the same.**

3.    Baglien and Lareau each executed a confidentiality agreement, which prohibited them from disclosing Frost Control's (or its successors') proprietary information.  Baglien executed a confidentiality agreement prior to, and as a condition of his employment with Frost Control.  Lareau executed a separation agreement, which also obligated him to forever protect Frost Control's (and its successors') confidential information and to not compete directly and unfairly with Frost Control and/or its successors for a duration of six months after his employment with the company had ended.

**ANSWER:  Mr. Baglien admits that he signed an agreement entitled, "Confidential Information and Invention Assignment Agreement," a copy of which is attached as Exhibit B to the First Amended Complaint and the content of which speaks for itself.  Mr. Baglien denies any characterizations of the "Confidential Information and Invention Assignment Agreement" inconsistent with the document itself.  Mr. Lareau admits that he signed an agreement entitled, "Separation Agreement and Mutual Release," a copy of which is attached as Exhibit C to the First Amended Complaint and the content of which speaks for**

itself.  **Mr. Lareau denies any characterizations of the "Separation Agreement and Mutual Release" inconsistent with the document itself.  Messrs. Baglien and Lareau deny the remainder of the allegations in Paragraph 3.  Vue Robotics lacks sufficient knowledge and information to admit or deny the allegations in Paragraph 3 and, therefore, denies the same.**

4.      Baglien and Lareau, both before and immediately after resigning from Frost Control, co-founded, began working for, and solicited customers for Vue Robotics, a direct competitor of Frost Solutions, successor to Frost Control.

**ANSWER:  Messrs. Baglien and Lareau admit that they resigned from Frost Control and now work for Vue Robotics, which they co-founded.  Defendants object to the term "direct competitor" as vague and undefined and therefore deny that they are direct competitors. Defendants admit that they are a competitor of Frost Solutions in some markets. Defendants deny the remaining allegations in Paragraph 4.**

5.      By using Frost Control's and its successor's trade secrets and confidential information to directly compete with Frost Solutions, and breaching their contractual commitments, Defendants are liable to Frost Solutions under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, and the New Hampshire Uniform Trade Secrets Act, RSA § 350-B *et seq.*, for trade secret misappropriation, and Baglien and Lareau are liable for breaching their fiduciary duties to, and contracts with, Frost Solutions and for tortiously interfering with Frost Solutions' contracts.

**ANSWER:  Defendants deny the allegations in Paragraph 5.**

## THE PARTIES

6.      Plaintiff Frost Solutions, LLC, is a Delaware limited liability company, with its

principal place of business in Illinois. The sole member of Frost Solutions is Clashmore

Ventures LLC, whose members in turn are Michael Kirsh and Michael Bott, who are both

residents of Illinois. Frost Solutions is therefore a citizen of Illinois.

**ANSWER: Defendants admit the first sentence of Paragraph 6. Defendants lack sufficient knowledge or information to admit or deny the second sentence of Paragraph 6 and, therefore, deny the same. The third sentence of Paragraph 6 is a legal conclusion to which no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to either admit or deny the third sentence of Paragraph 6.**

7.      Defendant Christopher Lareau is an individual and the former Vice President for

Frost Control. Upon information and belief, he is a resident of Portsmouth, New Hampshire.

Lareau is therefore a citizen of New Hampshire.

**ANSWER: Defendants admit the first and second sentences of Paragraph 7. The third sentence of Paragraph 7 is a legal conclusion to which no response is required. To the extent a response is required, Defendants admit the third sentence of Paragraph 7.**

8.      Defendant Patrick Baglien is an individual and former Chief Operating Officer

and President of Frost Control. Upon information and belief, he is a resident of Granger,

Indiana. Baglien is therefore a citizen of Indiana.

**ANSWER: Defendants admit the first and second sentences of Paragraph 8. The third sentence of Paragraph 8 is a legal conclusion to which no response is required. To the extent a response is required, Defendants admit the third sentence of Paragraph 8.**

9.      Defendant Vue Robotics is a limited liability company incorporated in Delaware,

with its business headquarters located in Portsmouth, New Hampshire. Upon information and

belief, Vue Robotics has two members, Lareau, who resides in New Hampshire, and Baglien, who resides in Indiana. Vue Robotics is therefore a citizen of New Hampshire and Indiana.

**ANSWER: Defendants admit the first and second sentences of Paragraph 10. The third sentence of Paragraph 10 is a legal conclusion to which no response is required. To the extent a response is required, Defendants admit the third sentence of Paragraph 10.**

### JURISDICTION AND VENUE

10.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (actions arising under the laws of the United States) as this action arises, in part, under the federal Defendant Trade Secrets Act, § 18 U.S.C. 1831 *et seq.*

**ANSWER: Paragraph 10 contains legal conclusions to which no response is required.**

11.    The Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction over claims relating to those for which the court has original jurisdiction) as each of the claims in this action are so closely related that they form part of the same case or controversy.

**ANSWER: Paragraph 11 contains legal conclusions to which no response is required.**

12.    Additionally, this Court has complete diversity under 28 U.S.C. § 1332(a), which provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between- (1) citizens of different States..." Complete diversity of citizenship exists between Frost Solutions and Defendants, and the matter in controversy exceeds the sum or value of $75,000, as the wrongful actions of Defendants have damaged Frost Solutions in an amount in excess of this sum.

**ANSWER: Paragraph 12 contains legal conclusions to which no response is required. To**

**the extent a response is required, Defendants deny that they have taken any wrongful actions or that Plaintiff is entitled to damages.**

13.     This Court has personal jurisdiction over Lareau, as he is a citizen of New Hampshire.  Lareau also committed actions in New Hampshire while and after working for Frost Control, in violation of the law and his owed fiduciary duties to Frost Solutions and Frost Control.

**ANSWER:  Paragraph 13 contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny that Mr. Lareau committed actions in violation of law and any alleged fiduciary duties.**

14.     This Court has personal jurisdiction over Baglien, as he had significant meaningful contacts with New Hampshire, including co-founding and working for Vue Robotics there, and by using Frost Solutions and Frost Control's trade secrets and confidential information in connection with his work with Vue Robotics in New Hampshire—all of which violated his contractual agreements with and fiduciary duties to Frost Solutions and Frost Control.

**ANSWER:  Paragraph 14 contains legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that Mr. Baglien co-founded and currently works for Vue Robotics, but denies that Mr. Baglien used Frost Solutions or Frost Control's alleged trade secrets and confidential information, violated any alleged contractual obligations, or violated any alleged fiduciary duties.  Defendants deny any remaining allegations in Paragraph 14.**

15.     This Court has personal jurisdiction over Vue Robotics, as it is a citizen of New Hampshire, and also because it had significant contacts with New Hampshire by using Frost Solutions and Frost Control's trade secrets and confidential information while in New

Hampshire.

**ANSWER:  Paragraph 15 contains legal conclusions about the Court's jurisdiction to which no response is required.  Defendants deny that Vue Robotics used/uses Frost Solutions and Frost Control's alleged trade secrets or confidential information.  Any other allegations in Paragraph 15 are denied.**

16.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial portion of the acts, omissions and transactions giving rise to Frost Solutions' injury occurred in this district.

**ANSWER:  Paragraph 16 contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny that Frost Solutions has incurred injuries as a result of Defendants' alleged improper actions, omissions or transactions.**

## FACTUAL BACKGROUND

17.    Frost Solutions, and its predecessor Frost Control, is an innovative manufacturer of a proprietary weather-security product called the Advance Infrared Monitoring System ("AIMS").

**ANSWER:  Defendants admit only that Frost Control manufactured AIMS.  Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 17 as they relate to Frost Solutions' products, and therefore, those allegations are denied.  Defendants deny all other remaining allegations, including, but not limited to, the allegations that Frost Control and Frost Solutions are or were "innovative".**

18.    AIMS is a fully integrated, wireless, weather platform that empowers operators with the information needed about weather conditions so that they can make real-time operational decisions.  AIMS provides operators with high-definition imagery and night vision,

accurate weather atmospheric, forecasting, and pavement temperature.  AIMS is available from anywhere via mobile web or desktop applications, so operators can monitor road conditions throughout the country from virtually anywhere.

**ANSWER:  Defendants lack sufficient knowledge or information to either admit or deny the allegations in Paragraph 18 and, therefore, deny the same.**

19.    Frost Solutions sells its trusted weather monitoring products, including the proprietary AIMS technology, in twenty-six (26) states and two (2) Canadian provinces.

**ANSWER:  Defendants lack sufficient knowledge or information to either admit or deny the allegations in Paragraph 19 and, therefore, deny the same.**

20.    Frost Solutions also provides safe, reliable and cost-effective services for customers who use their AIMS technology, including by providing support, repairs, and analytics.

**ANSWER:  Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 20 and, therefore, deny the same.**

21.    Frost Control was formed in October 2017.  Frost Solutions was formed as a Delaware limited liability company on June 2, 2022, and became registered to conduct business in Illinois on July 12, 2022.  On August 9, 2022, Frost Solutions purchased all of the assets of Frost Control, including, without limitation, all contract rights, general intangibles, customer lists, claims, and intellectual property.  As such, Frost Solutions became a successor to certain assets and rights of Frost Control, including without limitation, all contract rights as well as all breach of contract and other claims that had accrued as of August 9, 2022.

**ANSWER:  Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 21 and, therefore, deny the same.**

22.     Frost Solutions and its predecessor, Frost Control, have spent years and millions of dollars on developing their business and expertise in the weather-security industry, and developing trade secrets and confidential information.  Such trade secrets and confidential information give Frost Solutions a competitive edge over its peers.

**ANSWER:  Defendants deny that Frost Control or Frost Solutions has trade secrets or confidential information relevant to the instant action.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 22 and, therefore, deny the same.**

23.     Frost Solutions' trade secrets include financial business, technical, economic, and customer information, including the identify of current, former, and prospective customers and non-public information related to their category interest, preferences, product and pricing feedback as well as longstanding customer relationships, customer purchasing history and financial information, work on development of new customers, and company marketing and sales strategies for economic growth.

**ANSWER:  Defendants deny that Frost Solutions has trade secrets relevant to the instant action.  To the extent Paragraph 23 implies anything further, Defendants lack sufficient knowledge or information to admit or deny and, therefore, deny the same.**

24.     Frost Solutions' trade secrets also include (i) proprietary technology, including AIMS; (ii) overall computer systems and software architecture associated with AIMS technology; (iii) information about product design and development; and (iv) information related to specific vendor and supplier performance, as that information relates to the reliability and efficacy of the components for Frost Solutions' specific products.

**ANSWER:  Defendants deny that Frost Solutions has trade secrets relevant to the instant action.  To the extent Paragraph 24 implies anything further, Defendants lack sufficient knowledge or information to admit or deny and, therefore, deny the same.**

25.     Frost Solutions' trade secrets also include (i) the AIMS 2.0 device, which included a solar powered, cellular-connected camera equipped with weather-detecting AI image recognition; (ii) the Frost Tech User Interface ("Frost Tech UI"), a platform for customers to utilize, manage, and gather data from the AIMS 2.0 device; and (iii) Frost Vision, a weather-detecting AI image recognition model ("Frost Vision"), all of which were in developmental stages when Messrs. Baglien and Lareau were at Frost and when they both left Frost in the fall of 2021.

**ANSWER:  Defendants deny that Frost Solutions has trade secrets relevant to the instant action.  To the extent Paragraph 25 implies anything further, Defendants lack sufficient knowledge or information to admit or deny and, therefore, deny the same.**

26.     The AIMS 2.0 device, its components, blueprints, specific technical requirements outlined in FROST_0018930, development history and testing, and marketing plans are all trade secrets of Plaintiff's.  Further, the Frost Vision and Frost Tech UI development plans, the strategy behind their development, their wireframes/blueprints, web design, use of data sourced from third-party cameras and sensors, as well as marketing plans are all trade secrets of Plaintiff.

**ANSWER:  Defendants deny that Frost Solutions has trade secrets relevant to the instant action.  To the extent Paragraph 26 implies anything further, it is denied.**

27.     Frost Solutions and its predecessor have taken reasonable measures to safeguard their trade secrets.  For instance, Frost Solutions and its predecessor implemented and utilized a confidentiality agreement that employees are required to execute at the start of their employment,

including, for example, the Confidentiality Agreement that Baglien entered into when he started with Frost Control.  (*See infra* ¶¶30-31.)  These confidentiality agreements require, among other provisions, the assignment of rights to any invention made during an employee's time at Frost Solutions, and non-disclosure of Frost Solutions' proprietary information.

**ANSWER:  Defendants deny that Frost Solutions has trade secrets relevant to the instant action.  Defendants further deny that Frost Control took reasonable measures to safeguard any confidential information or trade secrets it is alleged to have possessed.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 27 and, therefore, deny the same.**

28.    Frost Solutions and its predecessor also entered into non-disclosure and non-compete agreements with employees who leave the company, including, for example, the Separation Agreement that Lareau entered into when he resigned from Frost Control.  (*See infra* ¶¶ 38-39.)

**ANSWER:  Vue Robotics lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 28 and, therefore, denies the same.  Messrs. Lareau and Baglien admit that Mr. Lareau signed an agreement entitled, "Separation Agreement and Mutual Release," a copy of which is attached as Exhibit C to the First Amended Complaint and the content of which speaks for itself.  Defendants deny any characterizations of the "Separation Agreement and Mutual Release" inconsistent with the document itself. Messrs. Lareau and Baglien lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 28 and, therefore, deny the same.**

29.    Frost Solutions and its predecessor also implemented a policy of safeguarding their systems with password protections to further safeguard their trade secrets.  Specifically,

employees are required to maintain secret and secure network passwords to Frost entities' systems, which limit access to trade secrets and confidential information store on their systems to individual employees on a need-to-know basis.

**ANSWER:  Defendants lack sufficient knowledge or information to either admit or deny the allegations in Paragraph 29 and, therefore, deny the same.**

30.    Frost Solutions and its predecessor also implemented a policy of terminating access to confidential information at the conclusion of an individual's employment to further safeguard their trade secrets.

**ANSWER:  Defendants lack sufficient knowledge or information to either admit or deny the allegations in Paragraph 30 and, therefore, deny the same.**

### *Frost Control Hires Baglien and Lareau*

31.    In March 2019, Frost Control extended a written offer of employment to Baglien by way of an offer letter (the "Baglien Offer Letter").  A true and accurate copy of this letter is attached as **Exhibit A**.  The Baglien Offer Letter provided that Baglien, upon accepting Frost Control's offer, would become the "Head of Sales" for Frost Control.

**ANSWER:  Mr. Baglien admits that he received a written offer of employment by offer letter in March 2019, an unsigned copy of which is attached as Exhibit A to the First Amended Complaint, and the content of which speaks for itself.  Mr. Baglien denies any characterizations of the offer letter that is inconsistent with its contents.  To the extent that Paragraph 31 implies or alleges anything further, Mr. Baglien denies it.  Mr. Lareau and Vue Robotics lack sufficient knowledge or information to admit or deny the allegations in Paragraph 31 and, therefore, deny the same.**

32. As a condition of employment, Baglien was required to execute a "Confidential Information and Invention Assignment Agreement" (the "Confidentiality Agreement"). A true and accurate copy of this Confidentiality Agreement is attached as **Exhibit B**. The Confidentiality Agreement requires, among other provisions, the assignment of rights to any invention made during an employee's time at Frost Control, and non-disclosure of company proprietary information.

**ANSWER**: **Mr. Baglien admits that he signed an agreement entitled, "Confidential Information and Invention Assignment Agreement," a copy of which is attached as Exhibit B to the First Amended Complaint and the content of which speaks for itself. Mr. Baglien denies any characterizations of the "Confidential Information and Invention Assignment Agreement" that is inconsistent with its contents. To the extent that Paragraph 32 implies or alleges anything further, Mr. Baglien denies it. Mr. Lareau and Vue Robotics lack sufficient knowledge or information to admit or deny the allegations in Paragraph 32 and, therefore, deny the same.**

33. The Confidentiality Agreement also provided:

> In the event of the termination of the Relationship, I shall sign and deliver the "Termination Certification" attached hereto as Exhibit B; however, my failure to sign and deliver the Termination Certification shall in no way diminish my continuing obligations under this Agreement.

Confidentiality Agreement, ¶ 6. The Termination Certification required, among other things, that Baglien shall not use Confidential Information to solicit or attempt to influence any Frost Control customer or any other person to purchase products or services from a competitor. *Id.* at Ex. B.

**ANSWER**: **Defendants admit that the quoted language in Paragraph 33 accurately quotes Paragraph 6 of the Confidentiality Agreement. The Confidentiality Agreement is a**

**document which speaks for itself. To the extent that Paragraph 33 implies anything**

**further or characterizes portions of the Confidentiality Agreement, those implications**

**and/or characterizations are denied. Mr. Lareau and Vue Robotics lack sufficient**

**knowledge or information to admit or deny the allegations in Paragraph 33 and, therefore,**

**deny the same.**

34.    Baglien accepted the offer and signed the Confidentiality Agreement. In March
2020, he was promoted to the role of Chief Operating Officer, and was later promoted to the role
of President. Baglien was also an investor in Frost Control.

**ANSWER:  Mr. Baglien admits the first sentence of Paragraph 34. Mr. Baglien further**

**admits that in or about March of 2020 Mr. Baglien was promoted to the role of Chief**

**Operating Officer. Mr. Baglien further admits that Mr. Baglien, through an investment**

**entity, invested in Frost Control. Mr. Baglien denies the remaining allegations of**

**Paragraph 34. Mr. Lareau and Vue Robotics lack sufficient knowledge or information to**

**admit or deny the allegations in Paragraph 34 and, therefore, deny the same.**

35.    As Chief Operating Officer and as President, Baglien's duties included, but were
not limited to the following: leading all customer-facing functions, including sales, direct sales,
development of customer-relationships, and business-development; establishing a market
strategy; managing and developing strategy to develop book of business; and managing post-sale
field operations, including the delivery, installation, and quality-control of the AIMS device.

**ANSWER:  Mr. Baglien admits that as Chief Operating Officer, he oversaw various**

**aspects of Frost Control but his duties in this position were never formalized or written**

**down. Mr. Baglien denies the remaining allegations of Paragraph 35. Mr. Lareau and Vue**

**Robotics lack sufficient knowledge or information to admit or deny the allegations in**

**Paragraph 35 and, therefore, deny the same.**

36.    In Baglien's roles as Head of Sales, Chief Operating Officer, and President, Baglien had access to and made use of Frost Control's confidential information and trade secrets, including customer and prospective customer information.  Baglien also provided customer feedback to Frost Control's engineering team and participated in Frost Control's efforts to develop new products and services, including AIMS 2.0, Frost Tech UI and the Frost Vis[i]on. Baglien also had access to Frost Control's longstanding customer relationships and internal business strategies.

**ANSWER:  Mr. Baglien admits that his roles included Head of Sales and Chief Operating**

**Officer of Frost Control.  Mr. Baglien admits that he occasionally provided customer**

**feedback relating to Frost Control's products.  Defendants deny that Frost Control has or**

**had trade secrets or confidential information relevant to the instant action.  Mr. Baglien**

**denies any remaining allegations in Paragraph 36.  Mr. Lareau and Vue Robotics lack**

**sufficient knowledge or information to admit or deny the remaining allegations in**

**Paragraph 36 not specifically denied herein and, therefore, deny the same.**

37.    On April 8, 2020, Lareau was hired as Regional Vice President at Frost Control, and he was eventually promoted to Vice President of Sales.

**ANSWER:  Messrs. Lareau and Baglien admits the allegations in Paragraph 37.  Vue**

**Robotics lacks sufficient knowledge or information to admit or deny the allegations in**

**Paragraph 37 and, therefore, denies the same.**

38.    Lareau's duties as Vice President of Sales included, but were not limited to the following: overseeing various aspects related to procurement of business, responses to requests

for proposals; solicitation and communication with customers; developing customer

relationships; and developing strategies and initiatives related to customer intake and retention.

**ANSWER:  Messrs. Lareau and Baglien admit that as Vice President of Sales, Mr. Lareau**

**oversaw various aspects of Frost Control relating to sales, but his duties in this position**

**were never formalized or written down.  Messrs. Lareau and Baglien deny the remaining**

**allegations in Paragraph 38.  Vue Robotics lacks sufficient knowledge or information to**

**admit or deny the allegations in Paragraph 38 and, therefore, denies the same.**

39.     In Lareau's employment role as the Vice President of Sales, he had access to and

made use of Frost Control's confidential information and trade secrets, including customer and

prospective customer information.  Lareau also provided customer feedback to Frost Control's

engineering team and participated in Frost Control's efforts to develop new products and

services, including AIMs 2.0, Frost Tech UI and the Frost Vision Camera.  Lareau also had

access to Frost Control's longstanding customer relationships and internal business strategies.

**ANSWER:  Messrs. Lareau and Baglien admit that Mr. Lareau's role was Vice President**

**of Sales.  Messrs. Lareau and Baglien admit that Mr. Lareau occasionally provided**

**customer feedback relating to Frost Control's products.  Defendants deny that Frost**

**Control has or had trade secrets or confidential information relevant to the instant action.**

**Messrs. Lareau and Baglien deny any remaining allegations in Paragraph 39.  Vue**

**Robotics lack sufficient knowledge or information to admit or deny the allegations in**

**Paragraph 39 and, therefore, denies the same.**

*__Baglien and Lareau Resign from Frost Control and Co-Found Vue Robotics, LLC__*

40.     On September 27, 2021, Lareau sent an e-mail to Frost Control's management,

including Baglien, stating that he intended to resign his employment with Frost Control effective

October 11, 2021.

**ANSWER**:  **Messrs. Baglien and Lareau admit the allegations in Paragraph 40.  Vue Robotics lack sufficient knowledge or information to admit or deny the allegations in Paragraph 40 and, therefore, denies the same.**

41.    Before he resigned from Frost Control, on or about September 30, 2021, Lareau executed a separation agreement and mutual release ("Separation Agreement").  A true and accurate copy of the Separation Agreement is attached hereto as **Exhibit C**.

**ANSWER**:  **Messrs. Lareau and Baglien admits that Mr. Baglien signed an agreement entitled, "Separation Agreement and Mutual Release," a copy of which is attached as Exhibit C to the First Amended Complaint and the content of which speaks for itself. Messrs. Lareau and Baglien deny any characterizations of the "Separation Agreement and Mutual Release" inconsistent with its contents.  To the extent that Paragraph 41 implies anything further, Messrs. Baglien and Lareau deny it.  Vue Robotics lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 40 and, therefore, denies the same.**

42.    In the time between Lareau's notice of resignation and his execution of the Separation Agreement, Baglien, acting on behalf of Frost Control, negotiated the terms of the Separation Agreement with Lareau.

**ANSWER**:  **Messrs. Baglien and Lareau admit that Mr. Baglien acted as the go-between relating to the Separation Agreement between Mr. Lareau and Frost Control, which was ultimately approved by the Frost Board of Directors.  Messrs. Baglien and Lareau deny the remainder of Paragraph 42.  Vue Robotics lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 42 and, therefore, denies the same.**

43.     The Separation Agreement includes a "Nondisclosure of Trade Secrets and Confidential Information" provision.  That provision states, in relevant part:

a)  At all times after the Resignation Date (for so long as the information in question remains a Trade Secret under applicable law), Employee will not directly or indirectly transmit or disclose any Trade Secret of the Company or its affiliates to any person, concern or entity, and shall not make use of any such Trade Secret, directly or indirectly, for Employee's own benefit or for the benefit of others, without the prior written consent of Company.

b)  For a period of one (1) years after the Resignation Date, Employee will not, directly or indirectly, transmit or disclose any Confidential Information to any person, concern or entity, or make any use of any such Confidential Information, directly or indirectly, for Employee's own benefit or for others, without the prior written consent of Company.

This Agreement also contained a "Covenant not to Compete," which states in relevant part:

a)  Employer acknowledges that in the course of Employee's employment with or engagement by Employer, Employee has become familiar with the Trade Secrets and other Confidential Information of Employer and its customers and that Employee's services have been of special, unique and extraordinary value to the Employer.  Therefore, in further consideration of the agreements and covenants of Employer contained herein, Employee agrees that, a period of six (6) months after the Resignation Date, Employee shall not, without the prior express written approval of Employer, directly or indirectly serve as a founder, co-founder, executive officer, manager, consultant, or employee for any enterprise engaged in the manufacture or development of sensors and computer systems built for the analysis and/or reporting of road weather conditions (the "Business"); provided, however, that the foregoing restriction shall not prevent from seeking employment by any department within any of the foregoing that directly competes with the Business and does not provide services in the ordinary course of his employment in a manner that is directly competitive with the Business.  Employee acknowledges and agrees that the provisions in this Paragraph 10 shall apply in any locale in which the Employer conducts business or planned to conduct business as of Resignation Date.

This Agreement also contained a "Non-Solicitation" clause, as follows:

From the [] period of one (1) years after the Resignation Date, Employee shall not, directly or indirectly through another Person, (i) induce or attempt to induce any employee, sales representative, distributor, agent or consultant of any member of the Employer to cease doing business with the Employer, or in any way interfere with the relationship between any

18

such employee, sales representative, distributor, agent or consultant and the Employer (including, without limitation, by making any negative statements or communications about any member of the Employer or its officers or directors), (ii) induce or attempt to induce any employee of the Employer to leave the employ of Employer, or in any way interfere with the relationship between the Employer and any employee thereof (other than through general advertisements for employment not directed at employees of the Employer) or (iii) solicit to hire (other than through general advertisements for employment not directed at employees of the Employer) or hire any person who was an employee of the Employer at any time during the six (6) months preceding such solicitation or hiring.

**ANSWER: The Separation Agreement is a document which speaks for itself. To the extent a response is required, Defendants admit that the quoted language above is accurately quoted from the Separation Agreement. To the extent Paragraph 43 implies or alleges anything further or characterizes the Separation Agreement inconsistent with its terms, it is denied.**

44.    On October 11, 2021, Lareau resigned from his employment with Frost Control.

**ANSWER: Denied.**

45.    On October 6, 2021, Baglien sent an e-mail to Frost Control's management stating that he intended to resign from Frost Control effective October 20, 2021.

**ANSWER: Mr. Baglien admits the allegations in Paragraph 45.**

46.    On October 20, 2021, Baglien resigned from Frost Control.

**ANSWER: Denied.**

47.    During and immediately after their employment with Frost Control, Lareau and Baglien co-founded Vue Robotics to compete against Frost Control and its successor, Frost Solutions.

**ANSWER: Defendants admit that Mr. Lareau and Mr. Baglien co-founded Vue Robotics. The remaining allegations in Paragraph 47 are denied.**

48.     By October 8, 2021 or earlier, Baglien and Lareau had established Vue Robotics' domain name (https://vuerobotics.io).

**ANSWER:  Mr. Lareau admits that on or about October 8, 2021, Mr. Lareau registered the domain name vuerobotics.io.  Mr. Baglien denies that he registered the domain name vuerobotics.io.  Vue Robotics lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 48 and, therefore, denies the same.**

49.     By October 11, 2021 or earlier, Baglien and Lareau had established vuerobotics.io e-mail addresses for themselves, as well as Slack channel to facilitate Vue Robotics' related communications.

**ANSWER:  Mr. Lareau admits that on or about October 11, 2021, Mr. Lareau established vuerobotics.io email addresses for Mr. Lareau and Mr. Baglien and a Slack channel to facilitate communication.  Mr. Baglien denies that he established vuerobotics.io email addresses for Mr. Lareau and Mr. Baglien or a Slack channel.  Vue Robotics lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 49 and, therefore, denies the same.**

50.     In October 2021 or earlier, Defendants began developing, and engaging a third-party hardware agency to build, a weather-security product called ARC1, which is strikingly similar to Frost Solutions' AIMS product and that targets the same market.  During the same period, Baglien and Lareau began soliciting investors for Vue Robotics.

**ANSWER:  Denied.**

51.     Indeed, by October 19, 2021, Baglien and Lareau had developed, and were circulating to prospective manufacturers, an "Updated Product Requirements" document which

contained detailed requirements and specifications for the hardware and other requirements for its planned site monitoring device.

**ANSWER:  Messrs. Baglien and Lareau admit that they were working on a product requirements document on or around October 19, 2021.  Messrs. Baglien and Lareau deny the remaining allegations of Paragraph 51.  Vue Robotics lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 51 and, therefore, denies the same.**

52.    Upon information and belief, Vue Robotics immediately began soliciting Frost Control's customers, and it succeeded in obtaining the business of at least one of Frost Control's customers, which now obtains all of its weather-monitoring systems from Vue Robotics.

**ANSWER:  Defendants deny that "Vue Robotics immediately began soliciting Frost Control's customers[.]"  Defendants lack sufficient knowledge or information to either admit or deny the remainder of Paragraph 52 and, therefore, deny the same.**

53.    Baglien and Lareau officially formed the Vue Robotics limited liability company on or about January 24, 2022.  Baglien is the Chief Executive Officer of Vue Robotics, and Lareau is its Chief Operating Officer.

**ANSWER:  Defendants admit that the legal entity "Vue Robotics, LLC" was registered to do business in the state of Delaware on or about January 24, 2022, and that Mr. Baglien is the Chief Executive Officer of Vue Robotics and Mr. Lareau is the Chief Operating Officer.  Defendants deny the remainder of Paragraph 53.**

***Frost Control Discovers Defendants' Unlawful Actions***

54.    In June 2022, Frost Control learned from a press release that Baglien and Lareau had co-founded Vue Robotics and had developed the ARC1 technology.  Frost Control suspected

that Defendants may have misappropriated Frost's trade secrets and confidential information in order to develop the technology and to solicit Frost Control's customers.

**ANSWER:  Defendants deny that Frost Control has/had trade secrets or confidential information relevant to the instant action.  Defendants deny that they misappropriated Frost Control's alleged trade secrets or confidential information.  Defendants lack sufficient knowledge or information to either admit or deny the remaining allegations in Paragraph 54 and, therefore, deny the same.**

55.    Frost Control then discovered evidence that on September 28, 2021—less than two weeks before his employment ended—Lareau had downloaded a list containing a significant amount of Frost Control's proprietary and confidential customer and prospective customer information—including customer list and email correspondence history—from Frost Control's cloud-based CRM (customer relationship management) database.

**ANSWER:  Defendants deny that Frost Control has/had proprietary or confidential information relevant to the instant action.  Defendants deny that Mr. Lareau improperly downloaded any information while employed at Frost Control.  Defendants lack sufficient knowledge or information to either admit or deny the remaining allegations in Paragraph 55 and, therefore, deny the same.**

56.    Frost Control also learned that Baglien, less than a month before his employment at Frost control ended, had downloaded from Frost Control's CRM database a confidential and proprietary list containing all of Frost Control's information regarding current and pending deals with customers.

**ANSWER:  Defendants deny that Frost Control has/had proprietary or confidential information relevant to the instant action.  Defendants deny that Mr. Baglien improperly**

downloaded any information while employed at Frost Control.  **Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 56 and, therefore, deny the same.**

57.     On June 8, 2022, counsel for Frost Control sent Baglien and Lareau a letter demanding that they cease using any trade secrets or confidential information belonging to Frost Control.  This letter is attached hereto as **Exhibit D.**

**ANSWER:  Admitted that Mr. Baglien and Mr. Lareau received a letter from counsel for Frost on or about June 8, 2022, which is attached to the First Amended Complaint as Exhibit D and which is a document that speaks for itself.  To the extent Paragraph 57 implies anything further or characterizes the letter inconsistent with its contents, it is denied.**

58.     On July 5, 2022, counsel for Baglien and Lareau sent a letter to Frost Control stating that Defendants never took any of Frost Control's trade secrets or confidential information, and that they were not in possession of any such information.  This letter is attached hereto as **Exhibit E.**

**ANSWER:  Admitted that counsel for Mr. Baglien and Mr. Lareau sent a letter to Frost Control on or about July 5, 2022, which is attached to the First Amended Complaint as Exhibit E and which is a document that speaks for itself.  To the extent Paragraph 58 implies anything further or characterizes the letter inconsistent with its contents, it is denied.**

59.     Around this time, in June 2022, Frost Solutions was formed.  On August 9, 2022, Frost Solutions purchased the assets of Frost Control.

**ANSWER:  Defendants lack sufficient knowledge or information to admit or deny the**

**allegations in Paragraph 59 and, therefore, deny the same.**

60. Through its counsel, Frost Solutions then retained a forensics consultant to perform a forensic analysis on Frost Solutions' and Frost Control's cloud-based systems to determine what else, if anything, was taken by Baglien and/or Lareau.

**ANSWER:  Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 60 and, therefore, deny the same.**

61. Through this investigation, which is still continuing, Frost Solutions confirmed that weeks before his departure from Frost Control, Lareau had downloaded the entire list of Frost Control's contacts from its CRM database, and Baglien had downloaded a complete list of all Frost Control's agreements with clients.

**ANSWER:  Defendants deny that either Mr. Baglien or Mr. Lareau improperly downloaded any information while employed at Frost Control.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 61 and, therefore, deny the same.**

62. The fact that shortly before leaving Frost Control, Lareau and Baglien had downloaded lists [of] all of Frost Control's customer information and deal information, that Vue Robotics had worked with a third-party developer to build a strikingly similar product to AIMS and which included significant elements of AIMs 2.0, Frost Tech UI and the Frost Vision, in the span of only a few months, and that Vue Robotics is a direct competitor of Frost Solutions and has already stolen at least one of its customers, together illustrate that Defendants misappropriated trade secrets, wrongfully obtained and utilized confidential information, and breached their contracts and their fiduciary duties to Frost Solutions.

**ANSWER:  Denied.**

63.     Given the above, coupled with the fact that Baglien's and Lareau's roles for Vue Robotics include responsibilities nearly identical to their previous roles for Frost Control, it is inevitable that Baglien and Lareau have disclosed Frost Solutions' confidential information and trade secrets, and will continue to do so during the course of their job duties for Vue Robotics.

**ANSWER:  Denied.**

<u>**COUNT I**</u>

**Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*
(Against All Defendants)**

64.     Frost Solutions incorporates by reference all of the allegations contained in Paragraphs 1-63 as if alleged in this Paragraph.

**ANSWER:  Defendants re-allege and incorporate by reference the answers contained in the preceding paragraphs as if set forth herein.**

65.     The Defend Trade Secrets Act prohibits the misappropriation of trade secrets.

**ANSWER:  Paragraph 65 states a legal conclusion to which no response is required.**

66.     Frost Solutions has developed and owns valuable trade secrets related to its products and services that are used in, or intended for use in, interstate or foreign commerce.

**ANSWER:  Defendants deny that Frost Solutions has or owns trade secrets relevant to the instant action.  The remainder of Paragraph 66 states a legal conclusion to which no response is required.  To the extent a response is required, the remaining allegations of Paragraph 66 are denied.**

67.     Frost Solutions' trade secrets have value because they are not generally known to the public and are not readily ascertainable.

**ANSWER:  Defendants deny that Frost Solutions has trade secrets relevant to the instant action.  The remainder of Paragraph 67 states a legal conclusion to which no response is**

required.  To the extent a response is required, the remaining allegations of Paragraph 67 are denied.

68.  Frost Solutions' trade secrets include financial business, technical, economic and customer information, including the identity of current, former, and prospective customers and non-public information related to longstanding customer relationships, work on development of new customers, and company marketing and sales strategies for economic growth.  Frost Solutions' trade secrets also include customer bid information, pricing models, proposal response strategies and other information related to the procurement of customer contracts, as well as design features of their proprietary weather-monitoring technology, including AIMs 2.0, Frost Tech UI and Frost Vision.

**ANSWER**:  **Defendants deny that Frost Solutions has trade secrets relevant to the instant action.  The remainder of Paragraph 68 states a legal conclusion to which no response is required.  To the extent a response is required, the remaining allegations of Paragraph 68 are denied.**

69.  Frost Solutions has taken reasonable measures to safeguard its trade secrets.  For instance, Frost Solutions' predecessor, Frost Control, implemented a confidentiality agreement that employees with access to confidential information must execute as a condition of employment.  This confidentiality agreement expressly prohibits disclosure of confidential business information and trade secrets to third parties without Frost Control's, and now Frost Solutions' authorization.  Baglien executed a confidentiality agreement as a condition of his employment.  Lareau executed a confidentiality agreement as part of a Separation Agreement when he resigned from Frost Control.

**ANSWER**:  **Defendants deny that Frost Solutions has trade secrets relevant to the instant**

action.  **Defendants admit that Mr. Baglien signed an agreement entitled, "Confidential Information and Invention Assignment Agreement," a copy of which is attached as Exhibit B to the First Amended Complaint and the content of which speaks for itself.  Defendants admit that Mr. Lareau signed an agreement entitled, "Separation Agreement and Mutual Release," a copy of which is attached as Exhibit C to the First Amended Complaint and the content of which speaks for itself.  Defendants deny any characterizations of the "Confidential Information and Invention Assignment Agreement" inconsistent with the document itself.  The remaining allegations of Paragraph 69 are denied.**

70.    Frost Solutions has also implemented a policy of safeguarding its systems with password protections to further safeguard its trade secrets.  Specifically, Frost Solutions employees are required, and its predecessor Frost Control's employees were required to maintain secret and secure network passwords to Frost systems, which limit access to trade secrets and confidential information stored on those systems to individual employees on a need-to-know basis.

**ANSWER:  Defendants deny that Frost Solutions has trade secrets or confidential information relevant to the instant action.  Defendants further deny that Frost Solutions has reasonable measures to safeguard any confidential information or trade secrets it is alleged to possess.  Defendants lack sufficient knowledge or information to either admit or deny the remaining allegations in Paragraph 70 and, therefore, deny the same.**

71.    Frost Solutions, as well as its predecessor, Frost Control, also implemented a policy of terminating access to confidential information at the conclusion of an individual's employment to further safeguard its trade secrets.

**ANSWER:  Defendants deny that Frost Solutions has trade secrets or confidential**

**information relevant to the instant action. Defendants lack sufficient knowledge or information to either admit or deny the remaining allegations in Paragraph 71 and, therefore, deny the same.**

72.    Defendants have obtained an economic benefit from the theft of Frost Solutions' trade secrets, including the stealing of Frost Solutions' existing and prospective customers and business opportunities.

**ANSWER: Denied.**

73.    Defendants used improper means to acquire and use Frost Solutions' trade secrets while knowing that the acquisition and use was improper.

**ANSWER: Denied.**

74.    As a result of Defendants' unlawful actions, Frost Solutions has suffered harm, including the loss of business, the loss of customer goodwill, and the lost value derived from Frost Solutions' and its predecessor's investment of a large amount of time and resources to develop proprietary and confidential information that gives Frost Solutions an advantage over its competitors, in an amount to be determined at trial.

**ANSWER: Denied.**

## COUNT II

**Violation of the New Hampshire Uniform Trade Secrets Act, N.H. RSA § 350-B *et seq.*
(Against All Defendants)**

75.    Frost Solutions incorporates by reference all of the allegations contained in Paragraphs 1-74 as if alleged in this Paragraph.

**ANSWER: Defendants re-allege and incorporate by reference the answers contained in the preceding paragraphs as if set forth herein.**

76.    The New Hampshire Uniform Trade Secrets Act prohibits misappropriation of

28

trade secrets.

**ANSWER:  Paragraph 76 states a legal conclusion to which no response is required.**

77.    Frost Solutions, and its predecessor, have developed and own valuable trade secrets related to Frost Solutions' products and services that are used in, or intended for use in, interstate or foreign commerce.

**ANSWER:  Defendants deny that Frost Solutions, or its predecessor, developed or owns trade secrets relevant to the instant action.  The remainder of Paragraph 77 states a legal conclusion to which no response is required.  To the extent a response is required, the remaining allegations in Paragraph 77 are denied.**

78.    Frost Solutions' trade secrets have value because they are not generally known to the public and are not readily ascertainable.

**ANSWER:  Defendants deny that Frost Solutions has trade secrets relevant to the instant action.  The remainder of Paragraph 78 states a legal conclusion to which no response is required.  To the extent a response is required, the remaining allegations of Paragraph 78 are denied.**

79.    Frost Solutions' trade secrets include financial business, technical, economic and customer information, including the identity of current, former, and prospective customers and non-public information related to longstanding customer relationships, work on development of new customers, and company marketing and sales strategies for economic growth.  Frost Solutions' trade secrets also include customer bid information, pricing models, proposal response strategies and other information related to the procurement of customer contracts, as well as design features of their proprietary weather-monitoring technology, including AIMs 2.0, Frost Tech UI and the Frost Vision Camera.

**ANSWER:  Defendants deny that Frost Solutions has trade secrets relevant to the instant action.  The remainder of Paragraph 79 states a legal conclusion to which no response is required.  To the extent a response is required, the remaining allegations of Paragraph 79 are denied.**

80.    Frost Solutions has taken reasonable measures to safeguard its trade secrets.  For instance, Frost Solutions' predecessor, Frost Control, implemented confidentiality agreements that employees with access to confidential information must execute as a condition of employment.  These confidentiality agreements expressly prohibit disclosure of confidential business information and trade secrets to third parties without Frost Control's, and now Frost Solutions' authorization.  Baglien executed a Confidentiality Agreement as a condition of his employment.  Lareau executed a confidentiality agreement as a part of a Separation Agreement when he resigned from Frost Control.

**ANSWER:  Defendants deny that Frost Solutions has trade secrets or confidential information relevant to the instant action.  Defendants further deny that Frost Control took reasonable measures to safeguard any confidential information or trade secrets it is alleged to have possessed.  Defendants admit that Mr. Baglien signed an agreement entitled, "Confidential Information and Invention Assignment Agreement," a copy of which is attached as Exhibit B to the First Amended Complaint and the content of which speaks for itself.  Defendants admit that Mr. Lareau signed an agreement entitled, "Separation Agreement and Mutual Release," a copy of which is attached as Exhibit C to the First Amended Complaint and the content of which speaks for itself.  Defendants deny any characterizations of the "Separation Agreement and Mutual Release" inconsistent with the document itself.  The remaining allegations of Paragraph 80 are denied.**

81.    Frost Solutions has also implemented a policy of safeguarding its systems with password protections to further safeguard its trade secrets.  Specifically, Frost Solutions' employees are required, and its predecessor Frost Control's employees were required to maintain secret and secure network passwords to Frost systems, which limit access to trade secrets and confidential information stored on its systems to individual employees on a need-to-know basis.

**ANSWER:  Defendants deny that Frost Solutions has trade secrets relevant to the instant action.  Defendants lack sufficient knowledge or information to either admit or deny the remaining allegations in Paragraph 81 and, therefore, deny the same.**

82.    Frost Solutions and its predecessor, Frost Control, also implemented a policy of terminating access to confidential information at the conclusion of an individual's employment to further safeguard trade secrets.

**ANSWER:  Defendants deny that Frost Solutions has trade secrets or confidential information relevant to the instant action.  Defendants lack sufficient knowledge or information to either admit or deny the remaining allegations in Paragraph 82 and, therefore, deny the same.**

83.    Defendants used improper means to acquire and use Frost Solutions' trade secrets while knowing that the acquisition and use was improper.

**ANSWER:  Denied.**

84.    As a result of Defendants' unlawful actions, Frost Solutions has suffered harm, including the loss of business, the loss of customer goodwill, and the lost value derived from Frost Solutions' and its predecessor's investment of a large amount of time and resources to develop proprietary and confidential information that give Frost Solutions an advantage over its competitors, in an amount to be determined at trial.

**ANSWER**:  **Denied.**

## COUNT III

### Breach of Separation Agreement
### (Against Lareau)

85.     Frost Solutions incorporates by reference all of the allegations contained in

Paragraphs 1084 as if alleged in this Paragraph.

**ANSWER**:  **Defendants re-allege and incorporate by reference the answers contained in the**

**preceding paragraphs as if set forth herein.**

86.     On September 30, 2021, Frost Control and Lareau entered into the Separation

Agreement, which contained a "Nondisclosure of Trade Secrets and Confidential Information"

clause, a six-month covenant not to compete, and a one-year non-solicitation clause.

**ANSWER**:  **Defendants admit that Mr. Lareau signed an agreement entitled, "Separation**

**Agreement and Mutual Release," a copy of which is attached as Exhibit C to the First**

**Amended Complaint and the content of which speaks for itself.  Defendants deny any**

**characterizations of the "Separation Agreement and Mutual Release" inconsistent with the**

**document itself.  To the extent Paragraph 86 implies anything further, it is denied.**

87.     In the Separation Agreement, Lareau agreed that any breach of the Separation

Agreement would entitle Frost Control to seek damages and injunctive relief in a court of law.

Specifically, the Agreement states that in the event of breach, the following will occur:

> Employee [Lareau] will be responsible for any losses or costs incurred by Employer
> and/or its affiliates to the extent permitted by law, including attorneys' fees and
> costs incurred by Employer and/or its affiliates in enforcing the terms of this
> Agreement...

Further, in the event that Lareau breached specifically the confidentiality or non-disclosure

provisions of the Agreement, the following will occur:

the Parties agree that: (a) Employer's obligation to make any payments to Employee under Paragraph 1 shall cease as of the date of Employee's breach; (b) Employee shall repay to Employer any and all amounts that Employer previously paid to Employee [according to this Agreement].

**ANSWER: Defendants admit that Mr. Lareau signed an agreement entitled, "Separation Agreement and Mutual Release," a copy of which is attached as Exhibit C to the First Amended Complaint and the content of which speaks for itself. Defendants deny any characterizations of the "Separation Agreement and Mutual Release" inconsistent with the document itself. Defendants further admit that the quoted language in Paragraph 87 is accurately quoted from the Separation Agreement and Mutual Release. To the extent Paragraph 87 implies anything further, it is denied.**

88.    Notwithstanding the Separation Agreement's confidentiality, non-disclosure, non-competition and non-solicitation clauses, and in breach thereof, within six months of Lareau's resignation from Frost Control, he co-founded and became an officer of Vue Robotics, whereupon he used Frost Control's (now Frost Solutions') trade secrets and confidential information, as well as revealed confidential information to third-party developers in order to build the ARC1 technology and to solicit Frost Control's (now Frost Solutions') current and prospective customers.

**ANSWER: Defendants admit that Mr. Lareau co-founded and became an officer of Vue Robotics. Defendants deny the remaining allegations of Paragraph 88.**

89.    Lareau's actions caused the unlawful diversion of distributors, customer business, prospective future customer business, profits and opportunities from Frost Control (and now Frost Solutions) to Vue Robotics.

**ANSWER: Denied.**

90.     As a direct result of Lareau's breach of the Separation Agreement, Frost Solutions

has suffered harm, including the loss of business and the diminution in value of Frost Solutions'

confidential information, damaging Frost Solutions in an amount to be determined at trial.

**ANSWER:  Denied.**

## COUNT IV

### Breach of Confidentiality Agreement
### (Against Baglien)

91.     Frost Solutions incorporates by reference all of the allegations contained in

Paragraphs 1-90 as if alleged in this Paragraph.

**ANSWER:  Defendants re-allege and incorporate by reference the answers contained in the**

**preceding paragraphs as if set forth herein.**

92.     On or around March 15, 2019, as a condition of his employment with Frost

Control, Baglien entered into the Confidentiality Agreement.

**ANSWER:  Defendants admit that on or about March 15, 2019, Mr. Baglien signed an**

**agreement entitled, "Confidential Information and Invention Assignment Agreement," a**

**copy of which is attached as Exhibit B to the First Amended Complaint and the content of**

**which speaks for itself.  Defendants deny any characterizations of the "Confidential**

**Information and Invention Assignment Agreement" inconsistent with the document itself.**

**To the extent Paragraph 92 implies anything further, it is denied.**

93.     The Confidentiality Agreement is a valid and enforceable contract, and is

supported by valuable consideration, including but not limited to hiring Baglien as Head of Sales

for Frost Control.

**ANSWER:  Paragraph 93 states a legal conclusion to which no response is required.  To**

**the extent a response is required, Paragraph 93 is denied.**

94.     In the Confidentiality Agreement, Baglien agreed to assign to Frost Control the rights to any invention he made during his employment, and not to disclose Frost Control's proprietary information.

**ANSWER:  Paragraph 94 states a legal conclusion to which no response is required.  To the extent a response is required, Paragraph 94 is denied.**

95.     In the Confidentiality Agreement, Baglien also agreed to sign and deliver the Termination Certification and to be bound by its terms.  Baglien breached the Confidentiality Agreement by failing to sign and deliver the Termination Certification upon ceasing employment with Frost Control.  Baglien is, nonetheless, bound by the terms of the Termination Certification.

**ANSWER:  Defendants deny any characterizations of the "Confidential Information and Invention Assignment Agreement" inconsistent with the document itself.  Paragraph 95 states a legal conclusion to which no response is required.  To the extent a response is required, Paragraph 95 is denied.**

96.     Notwithstanding the Confidentiality Agreement's non-disclosure provision, and in breach thereof, immediately prior to or shortly after Baglien's resignation from Frost Control, he co-founded and became an officer of Vue Robotics, whereupon he used Frost Control's (now Frost Solutions') trade secrets and confidential information, as well as revealed confidential information to third-party developers in order to build the ARC1 technology and to solicit Frost Control's (now Frost Solutions') current and prospective customers.

**ANSWER:  Defendants admit that Mr. Baglien co-founded and became an officer of Vue Robotics.  Defendants deny the remaining allegations of Paragraph 96.**

97.     Baglien also breached the terms of the Termination Certification in the Confidentiality Agreement by, among other things, using Frost Control's Confidential

Information to "solicit or influence or attempt to influence" Frost's customers, clients and other persons, to purchase products or services elsewhere.

**ANSWER**:  **Denied.**

98.    Baglien's actions have caused the unlawful diversion of customer business, prospective future customer business, profits and opportunities from Frost Solutions to Vue Robotics.

**ANSWER**:  **Denied.**

99.    As a direct result of Baglien's breach of the Confidentiality Agreement, Frost Solutions has suffered harm, including the loss of business and the diminution in value of Frost Solutions' confidential information, damaging Frost in an amount to be determined at trial.

**ANSWER**:  **Denied.**

## COUNT V

### Breach of Fiduciary Duties
### (Against Lareau and Baglien)

100.    Frost Solutions incorporates by reference all of the allegations contained in Paragraphs 1-99 as if alleged in this Paragraph.

**ANSWER**:  **Defendants re-allege and incorporate by reference the answers contained in the preceding paragraphs as if set forth herein.**

101.    As President and Vice President of Sales, Baglien and Lareau respectively were senior employees and agents of Frost Control, charged with important job duties regarding Frost Control's sales strategies, customer relationships, and procurement plans.

**ANSWER**:  **Defendants admits that Mr. Lareau was Vice President of Sales at Frost Control.  Defendants deny the remaining allegations of Paragraph 101.**

36

102.    As senior employees and agents of Frost Control, Baglien and Lareau had a duty to not use Frost Control's (and now Frost Solutions') trade secrets, confidential information, and other property for their own purposes.

**ANSWER:  Defendants deny that Frost Control has or had trade secrets, confidential information, or other legally-protected property relevant to the instant action.  The remainder of Paragraph 102 states a legal conclusion to which no response is required.  To the extent a response is required, the remaining allegations in Paragraph 102 are denied.**

103.    As senior employees and agents of Frost Control, Baglien and Lareau had a duty to not acquire a material benefit from existing or prospective customers at the expense of Frost Control, and now Frost Solutions.

**ANSWER:  Paragraph 103 states a legal conclusion to which no response is required.  To the extent a response is required, Paragraph 103 is denied.**

104.    As senior employees and agents of Frost Control, Baglien and Lareau had a duty to not take steps to unlawfully compete against Frost Control, or its successor, Frost Solutions.

**ANSWER:  Paragraph 104 states a legal conclusion to which no response is required.  To the extent a response is required, Paragraph 104 is denied.**

105.    Baglien and Lareau breached their fiduciary duties to Frost Control while employed by Frost Control by: a) working together to create the business that would become Vue Robotics, a direct competitor to Frost Control; b) reserving a domain name and e-mail addresses for Vue Robotics; c) establishing a Signal account through which Vue Robotics' co-founders and others could communicate regarding plans for developing Vue Robotics' business to directly compete with Frost Control using Frost Control's Confidential Information; and d)

downloading Confidential Information of Frost Controls, which including contract information of its current customers and prospects.

**ANSWER:  Paragraph 106 states a legal conclusion to which no response is required.  To the extent a response is required, Paragraph 106 is denied.**

106.    Baglien and Lareau, in the months immediately following their resignation from Frost Control, breached their fiduciary duties to Frost Control by secretly usurping Frost Control's business opportunities, strategies, customers and valuable property, and using these assets to compete against their former employer, and now Frost Solutions, through Vue Robotics.

**ANSWER:  Paragraph 106 states a legal conclusion to which no response is required.  To the extent a response is required, Paragraph 106 is denied.**

107.    Baglien's and Lareau's actions were not conducted in good faith.

**ANSWER:  Paragraph 107 states a legal conclusion to which no response is required.  To the extent a response is required, Paragraph 107 is denied.**

108.    Baglien's and Lareau's actions were intentional and malicious and, as a result, Plaintiff should be awarded punitive damages.

**ANSWER:  Paragraph 108 states a legal conclusion to which no response is required.  To the extent a response is required, Paragraph 108 is denied.**

109.    As a direct result of Baglien's and Lareau's actions, Frost Solutions has suffered harm, including the loss of business and the diminution in value of Frost Solutions' confidential information, damaging Frost Solutions in an amount to be determined at trial.

**ANSWER:  Denied.**

## COUNT VI

**Tortious Interference with Contract
(Against Baglien)**

110.    Frost Solutions incorporates by reference all of the allegations contained in Paragraphs 1-109 as if alleged in this Paragraph.

**ANSWER:  Defendants re-allege and incorporate by reference the answers contained in the preceding paragraphs as if set forth herein.**

111.    Lareau's Separation Agreement with Frost Control is a valid and enforceable contract.

**ANSWER:  Paragraph 111 states a legal conclusion to which no response is required.  To the extent a response is required, Paragraph 111 is denied.**

112.    Baglien was at all relevant times aware of the existence of the Separation Agreement because he acted on behalf of Frost Control and negotiated its terms with Lareau, prior to resigning from Frost Control.

**ANSWER:  Admitted that Mr. Baglien was aware of the existence of Mr. Lareau's Separation Agreement and that Mr. Baglien acted as the go-between relating to the Separation Agreement between Mr. Lareau and Frost Control, which was ultimately approved by the Frost Board of Directors.  Defendants deny any remaining allegations in Paragraph 112.**

113.    Baglien intentionally induced Lareau to breach the Separation Agreement by working with him using Frost Control's Confidential Information to: a) co-found Vue Robotics, b) develop Vue Robotics' ARC-1 product using Frost Controls' trade secrets and Confidential Information, c) solicit investors in Vue Robotics, d) solicit prospective and existing customers of Frost Control for Vue Robotics, and e) solicit TAPCO to become a Vue Robotics distributor.

**ANSWER:  Denied.**

114.    Baglien had no justification for inducing Lareau to breach the Separation

Agreement, particularly where doing so also constituted a breach of Baglien's duties under his

own Confidentiality Agreement as well as his duties under the Defend Trade Secrets Act and the

New Hampshire Uniform Trade Secrets Act.

**ANSWER:  Mr. Baglien denies that he induced Mr. Lareau to allegedly breach the**

**Separation Agreement.  Defendants further deny that Mr. Lareau breached the Separation**

**Agreement.  The remainder of Paragraph 114 states a legal conclusion to which no**

**response is required.  To the extent a response is required, the remaining allegations in**

**Paragraph 114 are denied.**

115.    Baglien's actions were intentional and malicious and, as a result, Plaintiff should

be awarded punitive damages.

**ANSWER:  Paragraph 115 states a legal conclusion to which no response is required.  To**

**the extent a response is required, Paragraph 115 is denied.**

116.    As a direct result of Baglien's actions, Frost Solutions has suffered harm,

including the loss of business and the diminution in value of Frost Solutions' confidential

information, damaging Frost Solutions in an amount to be determined at trial.

**ANSWER:  Denied.**

<u>**COUNT VII**</u>

**Tortious Interference with Contract**
**(Against Lareau)**

117.    Frost Solutions incorporates by reference all of the allegations contained in

Paragraphs [1-]116 as if alleged in this Paragraph.

**ANSWER:  Defendants re-allege and incorporate by reference the answers contained in the**

preceding paragraphs as if set forth herein.

118.    Baglien's Confidentiality Agreement with Frost Control is a valid and enforceable contract.

**ANSWER:  Paragraph 118 states a legal conclusion to which no response is required.  To the extent a response is required, Paragraph 118 is denied.**

119.    Lareau was at all relevant times aware of the existence of the Confidentiality Agreement.

**ANSWER:  Denied.**

120.    Lareau intentionally induced Baglien to breach the Confidentiality Agreement by working with him using Frost Control's Confidential Information to: a) co-found Vue Robotics and develop Vue Robotics' ARC-1 product using Frost Controls' trade secrets and Confidential Information, b) solicit investors in Vue Robotics, c) solicit prospective and existing customers of Frost Control for Vue Robotics, and d) solicit TAPCO to become a Vue Robotics distributor.

**ANSWER:  Denied.**

121.    Lareau had no justification for inducing Baglien to breach the Separation [sic] Agreement, particularly where doing so also constituted a breach of Lareau's duties under his own Separation Agreement as well as his duties under the Defend Trade Secrets Act and the New Hampshire Uniform Trade Secrets Act.

**ANSWER:  Mr. Lareau denies that he induced Mr. Baglien to allegedly breach the Confidentiality Agreement.  Defendants further deny that Mr. Baglien breached the Confidentiality Agreement.  The remainder of Paragraph 121 states a legal conclusion to which no response is required.  To the extent a response is required, the remaining allegations in Paragraph 121 are denied.**

122.    Lareau's actions were intentional and malicious and, as a result, Plaintiff should be awarded punitive damages.

**ANSWER:  Paragraph 122 states a legal conclusion to which no response is required.  To the extent a response is required, Paragraph 122 is denied.**

123.    As a direct result of Lareau's actions, Frost Solutions has suffered harm, including the loss of business and the diminution in value of Frost Solutions' confidential information, damaging Frost Solutions in an amount to be determined at trial.

**ANSWER:  Denied.**

## COUNT VIII

### Declaratory Judgment – ALTERNATIVE
### (Against All Defendants)

124.    Frost Solutions incorporates by reference all of the allegations contained in Paragraphs 1-123 as if alleged in this Paragraph.

**ANSWER:  Defendants re-allege and incorporate by reference the answers contained in the preceding paragraphs as if set forth herein.**

125.    Pleading in the alternative, to the extent Defendants claim the devices marketed by Vue Robotics since its formation ("Vue Products"), or some portion thereof, are unique from Frost Solutions' products and not based on Frost Solutions' confidential information or trade secrets, the Vue Products are an "invention" owned by Frost Solutions pursuant to Baglien's Confidentiality Agreement.

**ANSWER:  Paragraph 125 states a legal conclusion to which no response is required.  To the extent a response is required, Paragraph 125 is denied.**

126.    The Confidentiality Agreement signed by Baglien broadly defines "Inventions":

(c)    **Inventions**.  I understand that "Inventions" means discoveries, developments, concepts, designs, ideas, know how, modifications, improvements, derivative works, inventions, trade secrets and/or original works of authorship, whether or not patentable, copyrightable or otherwise legally protectable.  I understand this includes, but is not limited to, any new product, machine, article of manufacture, biological material, method, procedure, process, technique, use, equipment, device, apparatus, system, compound, formulation, composition of matter, design or configuration of any kind, or any improvement thereon.  I understand that "Company Inventions" means any and all Inventions that I may solely or jointly author, discover, develop, conceive, or reduce to practice during the period of the Relationship or otherwise in connection with the Relationship, except as otherwise provided in Section 4(g) below.

**ANSWER**:  **Defendants admit that Mr. Baglien signed an agreement entitled, "Confidential Information and Invention Assignment Agreement," a copy of which is attached as Exhibit B to the First Amended Complaint and the content of which speaks for itself, but which does include the quoted language above.  To the extent Paragraph 92 implies anything further, it is denied.**

127.    Baglien agreed to assign to Frost Control any and all Company Inventions as defined above.  Exhibit B, paragraph 4(d).

**ANSWER**:  **Defendants admit that Mr. Baglien signed an agreement entitled, "Confidential Information and Invention Assignment Agreement," a copy of which is attached as Exhibit B to the First Amended Complaint and the content of which speaks for itself.  To the extent Paragraph 92 implies anything further, it is denied.**

128.    The Vue Products are based completely or in part on Frost Solutions' trade secrets and confidential information as alleged above, or pleading alternatively, are derived from or incorporate "discoveries, developments, concepts, designs, ideas, know how, modifications, improvements, derivative works, inventions, trade secrets and/or original works of authorship" by Baglien while employed by Frost Control.

**ANSWER**:  **Denied.**

129.    Accordingly, the Vue Products have been assigned to and are owned by Frost Solutions pursuant to paragraph 4(d) of the Confidentiality Agreement.  See Exhibit B.

43

**ANSWER**:  **Denied.**

130.    Defendants contend that Vue Robotics and not Frost Solutions, owns the Vue Products and, as a result, an actual controversy exists with respect to the ownership of Vue's Products.

**ANSWER**:  **Defendants admit that the Vue Products are owned by Vue Robotics and not Frost Solutions.  Defendants deny that Plaintiff is entitled to a declaratory judgment.**

131.    Frost Solutions respectfully requests that this Court declare that the Vue Products are comprised of or include "Inventions" of Baglien and, therefore, have been assigned to and are owned by Frost Solutions.

**ANSWER**:  **Paragraph 131 is a request for relief to which no response is required.  To the extent a response is required, Defendants request that the Court deny Plaintiff's request.**

## REQUESTS FOR RELIEF

FOR RELIEF, Plaintiff Frost Solutions, LLC, respectfully requests that this Court:

1.  Enter judgment in its favor against all Defendants under Count I, holding them liable for damages stemming from misappropriation of trade secrets under the Defend Trade Secrets Act, together with interest, costs, attorney's fees, and punitive damages; and enjoining Defendants from using or disclosing any of Frost Solutions' trade secrets;

2.  Enter judgment in its favor against all Defendants under Count II, holding them liable for damages stemming from misappropriation of trade secrets under the New Hampshire Uniform Trade Secrets Act, together with interest, costs, attorney's fees, and punitive damages; and enjoining Defendants from using or disclosing any of Frost Solutions' trade secrets;

3. Enter judgment in its favor against Defendant Lareau, holding him liable for damages stemming from breach of contract; together with interest, costs and attorney's fees; and enjoining Lareau from soliciting Frost Solutions' customers and prospective customers and from using Frost Solutions' confidential information;

4. Enter judgment in its favor against Defendant Baglien, holding him liable for damages stemming from breach of contract; together with interest, costs and attorney's fees; and enjoining him from soliciting Frost Solutions' customers and prospective customers and from using Frost Solutions' confidential information;

5. Enter judgment in its favor against Defendants Baglien and Lareau liable for damages stemming from breach of fiduciary duties, together with interest, costs, attorney's fees and punitive damages; and enjoining them from soliciting Frost Solutions' customers and prospective customers and from using Frost Solutions' confidential information;

6. Enter judgment in its favor against Defendant Baglien, holding him liable for damages stemming from his tortious interference with Lareau's Separation Agreement; together with interest, costs, attorney's fees and punitive damages; and enjoining him from soliciting Frost Solutions' customers and prospective customers and from using Frost Solutions' confidential information;

7. Enter judgment in its favor against Defendant Lareau, holding him liable for damages stemming from his tortious interference with Baglien's Confidentiality Agreement; together with interest, costs, attorney's fees and punitive damages; and enjoining him from soliciting Frost Solutions' customers and prospective customers and from using Frost Solutions' confidential information;

8. In the alternative, enter judgment in its favor and against all Defendants declaring that all devices and products marketed and sold by Vue Robotics were based on inventions owned by Frost Solutions and awarding Frost Solutions all profits derived from the past sale of such products as well as all rights to sell such products in the future; and

9. Grant such other relief this Court deems just and equitable.

**ANSWER:  The above is a request for relief to which no response is required.  To the extent a response is required, Defendants deny that Plaintiff is entitled to the relief it seeks.**

**DEFENDANTS' AFFIRMATIVE DEFENSES**

1. The First Amended Complaint fails to state a claim upon which relief may be granted.

2. Frost Solutions claims are barred, in whole or in part, for lack of standing because it did not acquire from Frost Control and/or does not own the claims asserted against Defendants herein.

3. Frost Solutions' claims are barred, in whole or in part, by estoppel.

4. Frost Solutions' claims are barred, in whole or in part, by waiver.

5. Frost Solutions' claims are barred, in whole or in part, by unclean hands.

6. Frost Solutions' trade secret misappropriation claims are barred, in whole or in part, because it fails to identify with specificity any alleged trade secrets purportedly misappropriated by Defendants.

7. Frost Solutions' trade secret misappropriation claims are barred, in whole or in part, because Frost Solutions' purported trade secrets and/or confidential information are not

protectable or enforceable as a "trade secret" under the Defend Trade Secrets Act, 18 U.S.C. §1836 *et seq.* and/or the New Hampshire Uniform Trade Secrets Act, N.H. RSA § 350-B, *et seq.*

8.     Without taking on the burden Frost Solutions must carry, its purported trade secrets are readily ascertainable, obvious, and generally known.

9.     Without taking on the burden Frost Solutions must carry, Frost Solutions (and its predecessor) failed to implement reasonable confidentiality measures to protect the purported trade secrets.

10.     Frost Solutions' trade secret misappropriation claims are barred, in whole or in part, because Defendants did not engage in any "misappropriation" under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* and/or the New Hampshire Uniform Trade Secrets Act, N.H. RSA § 350-B, *et seq.*

11.     Frost Solutions' breach of contract and tortious interference claims are barred, in whole or in part, for lack of consideration and/or because the contract asserted is unenforceable and/or illegal.

12.     Frost Solutions' breach of fiduciary duty claim is barred, in whole or in part, because no fiduciary duty was owed.

13.     Frost Solutions' claims constitute an attempted unlawful restraint on trade.

14.     Frost Solutions failed to mitigate any damages it allegedly suffered.

15.     With respect to Frost Solutions' claims of tortious interference, Defendants' actions were within the scope of their respective privileges.

16.     Frost Solutions' tort claims are preempted by applicable trade secret statutes.

17.     Without taking on the burden Frost Solutions must carry, some or all of the damages allegedly suffered were not caused by Defendants but were the product of Frost

Solutions' own acts or omissions and/or decisions made by third parties over whom Defendants exert no control.

18.    Defendants reserve the right to amend its Answer and plead additional or more specific defenses as warranted by the facts determined through the conclusion of this action.

## **DEFENDANTS' REQUEST FOR RELIEF**

WHEREFORE, Defendants respectfully request this Honorable Court:

A.  Dismiss the First Amended Complaint;

B.  Enter judgment in Defendants' favor on each of the Plaintiff's claims;

C.  Award Defendants their reasonable attorneys' fees, expenses and costs; and

D.  Grant such other and further relief as the Court deems just and equitable.

## **DEFENDANTS' JURY DEMAND**

Defendants demand a trial by jury on each and every claim and defense so triable.

Respectfully submitted,

PATRICK BAGLIEN, CHRISTOPHER LAREAU AND VUE ROBOTICS, LLC,

By their attorneys,

*/s/ David McGrath*
David W. McGrath (NH Bar No. 9347)
James P. Harris (NH Bar No. 15336)
Ryan P. Lirette (NH Bar No. 19561)
Abbygale Martinen Dow (NH Bar No. 272938)
SHEEHAN PHINNEY BASS & GREEN, P.A.
1000 Elm Street, 17th Floor
Manchester, NH 03101
Tel: (603) 627-8255
Email: dmcgrath@sheehan.com
Email: jharris@sheehan.com
Email: rlirette@sheehan.com
Email: adow@sheehan.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically served copies of this document on all counsel of record via the Court's CM/ECF system.

Dated:  December 5, 2025                 <u>*/s/ David McGrath*</u>
                                          David McGrath