UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

FROST SOLUTIONS, LLC,

        Plaintiff,

        v.

PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC,

        Defendants.

Case No. 1:22-cv-00401-SE

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56(a), Plaintiff Frost Solutions, LLC, by and through its undersigned counsel, hereby moves for partial summary judgment as to the validity and enforceability of its contracts with Defendants Patrick Baglien and Christopher Lareau, and the restrictive covenants contained therein, as well as certain of their respective breaches thereof. The bases for this Motion are set forth more fully in the Memorandum of Law filed herewith. In summary, Plaintiff states as follows:

1. Rule 56(a) authorizes a party to move for summary judgment as to a "part of [a] claim or defense." Fed. R. Civ. P. 56(a).

2. The validity and enforceability of contracts and restrictive covenants contained therein are questions of law well suited to disposition at summary judgment.

3. The validity and enforceability of Lareau's Separation Agreement and Mutual Release (the "Lareau Agreement") with Plaintiff (and the restrictive covenants contained therein) is a discrete legal issue and an element of Count III (breach of contract) and Count VI (tortious interference with contract against Baglien).

4. The validity and enforceability of Baglien's Employee Confidential Information Invention Assignment Agreement (the "Baglien Agreement") with Plaintiff (and the restrictive covenants contained therein) is a discrete legal issue and an element of Count IV (breach of contract), Count VII (tortious interference with contract against Lareau), and Count VIII (declaratory judgment).

5. The Lareau Agreement is a valid contract. Offer, acceptance, consideration, and manifestation of mutual assent are demonstrated by the face of the contract and the parties' signatures. In consideration for agreeing to abide by the Agreement's terms (including the restrictive covenants), Frost paid Lareau $14,539.50 and allowed him to use seven paid vacation days through the date of resignation.

6. The Baglien Agreement is a valid contract. Offer, acceptance, consideration, and manifestation of mutual assent are demonstrated by the face of the contract and the parties' signatures. As for consideration, Baglien's offer of employment was expressly conditioned on signing the Baglien Agreement and agreeing to its terms (including the restrictive covenants), which is sufficient.

7. The non-compete, non-disclosure, and non-solicitation covenants at issue are valid and enforceable as a matter of law. First, they protect Frost's legitimate interests in maintaining the secrecy of its confidential business information and trade secrets, as well as its "goodwill," which includes the competitive advantage gained through personal contacts between its employees and customer when the products offered by competitors are similar, information derived from an employee's contacts with customers even if not confidential, and the time and resources invested in training and developing relationships with its distributors and employees.

8. The Lareau Agreement's non-compete covenant is "reasonable" in scope. The duration was only six months, well within reasonable limits. The geographic restriction is limited to

locales where Frost conducts or planned to conduct business as of the resignation date, which is justified given that Lareau downloaded "all contacts" and "all deals" from Frost's HubSpot platform days before his resignation. And the scope of prohibited activity is narrowly tailored, restricting only certain competitive roles while permitting employment in non-competing departments and certain passive ownership interests.

9. The Lareau Agreement's non-disclosure covenants are "reasonable" in scope. Covenants protecting against disclosure of trade secrets and confidential business information need not have geographic or temporal limitations. The supplied definition of "Confidential Information" establishes a reasonable three-part test requiring that information relates to Frost's activities, is not generally known outside Frost, and was disclosed through the employment relationship, with enumerated categories representing standard protectable interests that courts routinely uphold.

10. The Lareau Agreement's non-solicitation covenant is "reasonable" in scope. The covenant was only one year long, well within reasonable boundaries. It is limited to specifically identified classes of individuals and entities (current employees, sales representatives, distributors, agents, and consultants, plus individuals who were employees within the six months preceding certain soliciting activity), which substitutes for a geographic limitation. And the scope of prohibited activity (solicitation, hiring, interference, and inducement) is narrowly tailored to prevent only competitive activities that would directly threaten Frost's legitimate interests, and includes an exemption for general employment advertisements not directed at Frost employees.

11. The Baglien Agreement's non-disclosure covenant is "reasonable" in scope. It need not have a geographic or temporal limitation because it protects Frost's confidential business information. The definition of "Confidential Information" appropriately covers materials not generally known outside Frost and information entrusted to Frost in confidence by third parties, with enumerated categories (including technical data, trade secrets, customer information, supplier

3

relationships, and financial data) representing standard protectable interests that courts routinely uphold.

12. The Baglien Agreement's customer non-solicitation covenant is "reasonable" in scope. The covenant only applied during the term of Baglien's employment and its restrictions thus ended when Baglien resigned, making it much more limited than other covenants that courts have found reasonable. It is limited to specifically identified classes of individuals and entities (clients, licensors, licensees, or customers), which substitutes for a geographic location. And the scope of prohibited activity (influencing clients, licensors, licensees, or customers to refrain from purchasing Frost products or services, and soliciting or influencing any such party to purchase products or services from competing businesses) is narrowly tailored to target conduct that would constitute a breach of Baglien's fiduciary duty of loyalty as a Frost employee.

13. The Baglien Agreement's employee non-solicitation covenant is "reasonable" in scope. The covenant was only one year long, well within reasonable boundaries. It is limited to specifically identified classes of individuals and entities (Frost employees and consultants), which substitutes for a geographic limitation. And the scope of prohibited activity (solicitation, hiring, interference, and inducement) is narrowly tailored to prevent only competitive activities that would directly threaten Frost's legitimate interests.

14. Breach of the Lareau Agreement is an element of Count III and Count VI .

15. Breach of the Baglien Agreement is an element of Count IV and Count VII.

16. Certain of Lareau's breaches of his restrictive covenants are established as a matter of law. First, Lareau breached the non-compete covenant by co-founding and working for Vue, which directly competed against Frost in the road weather monitoring sector of the environmental sensing market, during the six-month restricted period, as well as through his prohibited solicitation actions. Second, Lareau violated the non-disclosure and non-solicitation covenants by using Frost's

4

confidential information and goodwill gained from working at Frost to target and partner with TAPCO, a major Frost distributor. Third, Lareau violated the non-disclosure and non-solicitation covenants by using confidential customer information that he downloaded from the Frost HubSpot platform to solicit Frost customers less than a year after resigning.

17. Certain of Baglien's breaches of his restrictive covenants are established as a matter of law. First, Baglien used confidential information and goodwill gained from working at Frost to target and partner with TAPCO. Second, Baglien breached his obligations under the non-disclosure and non-solicitation covenants, as well as the Termination Certification, by using confidential customer information to solicit Frost customers less than a year after resigning.

18. Frost intends to present at trial evidence of additional breaches by Lareau and Baglien that are not at issue in this Motion.

19. Resolution of these issues at summary judgment will streamline the trial of this case by eliminating matters wherein there is no genuine issue of fact and matters that are properly determined by the Court as a matter of law.

20. In further support of this Motion, Plaintiff submits the attached memorandum of law, exhibits, and declarations.

21. Pursuant to Local Rule 7.1(c), because this Motion is a dispositive motion, Plaintiff has not sought concurrence from Defendants before filing the Motion.

22. Pursuant to Local Rule 7.1(d), Plaintiff requests oral argument to further explain why the Court should grant partial summary judgment in Plaintiff's favor, and to answer any questions the Court may have regarding this motion.

Wherefore, Plaintiff respectfully requests that this Court:

A. Grant this motion and issue partial summary judgment in Plaintiff's favor as to:

    a. the element of a valid and enforceable contract with respect to Counts III, IV, VI, VII, and VIII, as discussed herein;

    b.   the element of valid and enforceable restrictive covenants within the contracts at issue with respect to Counts III, IV, VI, and VII, as discussed herein;

    c.   the element of breach of the contracts at issue with respect to Counts III, IV, VI, and VII, as discussed herein;

B.   Set Counts III and IV for trial on damages;

C.   Set Counts VI, VII, and VIII for trial on their remaining elements (and Counts I, II, and V on all their elements); and

D.   Grant such further and additional relief as the Court deems just and equitable.

Dated: February 17, 2026

Respectfully submitted,

**FROST SOLUTIONS, LLC,**

By its attorneys,

*/s/ Laura L. Carroll*
Laura L. Carroll (NH Bar No. 17444)
ARENTFOX SCHIFF LLP
800 Boylston Street, 32nd Floor
Boston, MA 02199
Tel:   (617) 973-6100
Email:  laura.carroll@afslaw.com

Todd A. Rowden (admitted *pro hac vice*)
James L. Oakley (admitted *pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Tel:   (312) 527-4000
Fax:   (312) 527-4011
Email:  trowden@taftlaw.com
          joakley@taftlaw.com

Amir R. Tahmassebi (admitted *pro hac vice*)
KONICEK & DILLON, P.C.
70 West Madison Street, Suite 2060
Chicago, IL 60602
Tel:   (312) 328-9166
Fax:   (630) 262-9659
Email:  amir@konicekdillonlaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this date, I electronically served copies of this Motion, Memorandum in Support, and Declarations of Michael Kirsh and James Oakley on all counsel of record via the Court's CM/ECF system, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: February 17, 2026                               /s/ *Laura L. Carroll*
                                                           Laura L. Carroll