**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

---

FROST SOLUTIONS, LLC,

               Plaintiff,

  v.

PATRICK BAGLIEN, CHRISTOPHER
LAREAU, and VUE ROBOTICS, LLC,

               Defendants.

---

Civil Action No. 1:22-cv-00401-SE

**ORAL ARGUMENT REQUESTED**

# PROVISIONALLY FILED UNDER SEAL

**DEFENDANTS CHRISTOPHER LAREAU'S AND PATRICK BAGLIEN'S**
**MEMORANDUM OF LAW  IN SUPPORT OF THEIR**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 3

II.     STATEMENT OF MATERIAL UNDISPUTED FACTS ....................................... 5

      A.    Lareau Accepts Frost Control Offer Letter .................................................. 5

      B.    Lareau Resigns from Frost Control ............................................................. 5

      C.    Lareau's Separation Agreement Has No Assignment Clause .................... 6

      D.    The Separation Agreement Provided No Additional Consideration to Lareau .......................................................................................................... 8

      E.    Frost Solutions Purchases Certain Frost Control Assets from Frost Control's Lender, Including Lareau's Separation Agreement .................. 8

III.    ARGUMENT ....................................................................................................... 9

      A.    Summary Judgment Standard ..................................................................... 9

      B.    Count III Fails Because the Non-Compete Is Unassignable as a Matter of Law ....................................................................................................... 11

            1.   The Language in the Separation Agreement Does Not Evidence Lareau's Consent to Subsequent Assignment of the Non-Compete to Frost Solutions .......................................................................................... 12

            2.   Indiana Law Supports a Finding that Lareau Did not Agree to the Assignment of the Non-Compete to Frost Solutions ................................. 13

            3.   The Non-Solicitation Restriction Fails Because it too is Unassignable and Because there is no Evidence of Breach ............................................. 16

            4.   The Separation Agreement is Unenforceable Because it is Unsupported by Adequate Consideration. ................................................. 19

IV.   CONCLUSION ................................................................................................. 21

Defendants Christopher Lareau ("Lareau") and Patrick Baglien ("Baglien"), through counsel, submit this memorandum of law in support of their motion for partial summary judgment to dismiss, as a matter of law, Count III (Breach of Separation Agreement) against Lareau and Count VI (Tortious Interference of Contract) against Baglien for alleged interference with Lareau's performance of Lareau's unenforceable Separation Agreement.

## I.     <u>INTRODUCTION</u>

In 2021, Christopher Lareau resigned from Frost Control Systems ("Frost Control") after its chief executive officer, Victor Gill, announced that the company was unlikely to survive a few more weeks without additional funding.  Less than a week later, Gill presented to Mr. Lareau a proposed separation agreement containing a covenant not to compete or to solicit certain business partners, in exchange for Frost Control paying Mr. Lareau roughly $14,000 of commissions he was ***already*** owed by the company and allowing him to use a portion of his ***already*** accrued vacation time.  Mr. Gill's draft agreement also prominently disclosed in several areas that it contained a "mutual release," even though it only contained a unilateral release running from Lareau to Frost Control.  Mr. Lareau ultimately executed a version of that draft agreement, so that he could receive the commissions Frost Control owed him.

Frost Solutions, LLC ("Frost Solutions") which purchased Frost Control's assets from its lender, brings this action seeking (among other things) to enforce the Separation Agreement. Specifically, in Count III, Frost Solutions alleges that Lareau breached the covenants not to compete and not to solicit business partners in the Separation Agreement with Frost Control, while in Count VI it alleges that Baglien interfered with Lareau's performance of the Separation Agreement.  As detailed in this memorandum, Lareau and Baglien are entitled to summary

judgment on these counts for multiple reasons, including that the Separation Agreement is unenforceable as a matter of law.

*First*, Frost Solutions was not a party to the Separation Agreement; instead, its rights under the Separation Agreement arise solely from a purported assignment of that agreement, an assignment to which Lareau did not consent. But under Indiana law (which governs by contract), personal contracts like the Separation Agreement cannot be assigned absent consent. *SDL Enters., Inc. v. DeReamer*, 683 N.E.2d 1347, 1349 (Ind. Ct. App. 1997).

*Second*, the entire Separation Agreement is also invalid because it lacks adequate consideration, as the stated consideration for the agreement is limited to commissions and vacation time that Frost Control already owed Lareau. Past consideration already owed an employee cannot serve as consideration for a new agreement. *Am Gen. LLC v. Armour*, 46 N.E.3d 436, 443 (Ind. 2015).

*Third*, Frost Solutions' efforts to enforce the Separation Agreement's nonsolicitation covenant against Defendants for the supposed interference with TAPCO, a distributor, cannot survive summary judgment. By its terms, that covenant only bars interference with distributors with whom Frost Control was doing business. But the record is undisputed that in April 2022, well before any discussions between TAPCO and Defendants, TAPCO cancelled its business arrangement with Frost Control. The record is also clear that Frost Control representatives did not seek to maintain the distributorship relationship but instead informed TAPCO that it was liquidating Frost Control and inquired into TAPCO's interest in purchasing it.

Finally, the nonsolicitation restrictions are overbroad as written and unenforceable for this additional reason: the restriction applies, as example, to all distributors, not just those with whom Lareau and Baglien interacted or otherwise established goodwill. As such, it is written

too broadly, exceeding what is reasonably necessary to protect legitimate business interests. Accordingly, it cannot be enforced as written and would need to be reformed in order to be valid under Indiana law. But, "blue penciling" law in Indiana permits only striking overbroad provisions, not re-writing them. Because there is no way to make the non-solicit enforceable without re-writing it, it is void and unenforceable under Indiana law.

## II.    STATEMENT OF MATERIAL UNDISPUTED FACTS

### A.  Lareau Accepts Frost Control Offer Letter

On April 8, 2020, Lareau accepted a written offer of employment with Frost Control as a Regional Vice President. *Declaration of Christopher Lareau* ("Lareau Decl.") at ¶ 4 and Exh. 1. The terms of Lareau's employment included, among other things, a $110,000 annual base salary (paid monthly), a commission structure, and four weeks of vacation. *Id.* In or around May 2021, Lareau's position changed to Vice President of Sales. *Id.* at ¶ 5. This position change did not result in a compensation increase or a change in commission structure or benefits. *Id.* at ¶ 6.

### B.  Lareau Resigns from Frost Control

Frost Control struggled to remain viable through Lareau's tenure with the company. *Id.* at ¶ 7. On or about September 23, 2021, ████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████ *Id*. at ¶ 8 and Exh. 2. On September 27, 2021, Lareau notified Frost Control's Board of Directors (the "Frost Control Board") that he was resigning from Frost Control effective October 11, 2021 (the "Notice of Resignation"). *Id.* at ¶ 9 and Exh. 3. In his Notice of Resignation, Mr. Lareau also added that he had "accrued three weeks of vacation and earned $14,539.50 of unpaid commission." *Id.* at Exh. 3.

### C.  Lareau's Separation Agreement Has No Assignment Clause

On September 29, 2021, ███████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████. Exhibit to

Memorandum ("Mem. Exh.") Mem. Exh. 1.  Specifically, ████████████████

████████████████



*Id.*

Ultimately, on September 30, Lareau executed the version of the separation agreement attached

as Exhibit C to the complaint filed in this action.  Lareau Decl. at ¶ 10 and Exh. 4.

The Separation Agreement is governed by Indiana law.  Lareau Decl. at Exh. 4 at ¶ 18.

The Non-Compete clause (styled a "Covenant Not to Compete") provides as follows:

> Employee acknowledges that in the course of Employee's employment with
> or engagement by Employer, Employee has become familiar with the Trade
> Secrets and other Confidential Information of Employer and its customers
> and that Employee's services have been of special, unique and extraordinary
> value to the Employer.  Therefore, in further consideration of the agreements
> and the covenants of Employer contained herein, Employee agrees that, [sic]
> a period of six (6) months after the Resignation Date, Employee shall not,
> without the prior express written approval of Employer, directly or indirectly
> serve as a founder, co-founder, executive officer, manager, consultant, or
> employee for any enterprise engaged in the manufacture or development of
> sensors and computer systems built for the analysis and/or reporting of road

weather conditions (the "Business"); provided, however, that the foregoing restriction shall not prevent from seeking employment by any department within any of the foregoing that directly competes with the Business and does not provide services in the ordinary course of his employment in a manner that is directly competitive with the Business. Employee acknowledges and agrees that the provisions in this Paragraph 10 shall apply in any locale in which the Employer conducts business or planned to conduct business as of Resignation Date. Nothing set forth in this Paragraph 10 shall prohibit Employee from being a passive owner of not more than two percent (2%) of the outstanding securities of any publicly traded company engaged in the Business, so long as Employee has no active participation in the Business. Nothing in this Paragraph 10 shall invalidate or limit the provisions of Paragraphs 9 and 11.

*Id.* at Exh. 4 at ¶ 10.

The relevant part of the non-solicitation clause provides as follows:

"[For a period of one year from resignation, Mr. Lareau shall not] induce … any distributor .. of Frost to cease doing business with Frost [or] interference in any way while the relationship between any such … distributor and the Employer …."

*Id*. at Exh. 4 at 11. The non-solicitation restriction does not include or apply to customers or

prospective customers. *Id*.[1]

As indicated, the Separation Agreement does not contain an assignment clause. *Id.* at Exh.

4. It does, however, contain an integration clause, which makes clear that the document reflects

the entire understanding between the parties:

This instrument constitutes and contains the entire agreement and final understanding concerning [Lareau's] employment, termination from the same and other subject matters addressed herein between the Parties. It is intended by the Parties as a complete and exclusive statement of the terms of their agreement. It supersedes and replaces all prior negotiations and all agreements proposed or otherwise, whether written or oral, concerning the subject matter hereof. Any representation, promise or agreement not specifically included in this Agreement shall not be binding or enforceable

---

[1]In April, 2022 ███████████████████████████████████████████████████

███████████████████████████████ Exh. 2, FROST_0291521, April 2022 email

chain. ████████████████████████.

against either party.  This is a fully integrated agreement.

*Id.* at Exh. 4 at ¶ 20.  Also, Lareau never consented to assignment of the Separation Agreement to Frost Solutions or any other party.  Lareau Decl. at ¶¶ 11-13.

### D.  The Separation Agreement Provided No Additional Consideration to Lareau

The Separation Agreement provided no additional consideration to Lareau.  Section II(1), recites the consideration Lareau received for entering into the Separation Agreement.  That provision identifies (1) the $14,539.50 of commissions that Lareau was already owed and (2) the ability to take 7 days of the three-weeks' vacation time that Lareau had already accrued to close out his Frost Control tenure.  Lareau Decl. at Ex. 4 at ¶ II(1).  And while the title of the Separation Agreement, the recitals, and the title of the release section *all* characterize the Separation Agreement as containing a "mutual release," the agreement, in fact, contains only a unilateral release that runs from Lareau to Frost.  *See* Lareau Decl., Ex. 4 at p. 1, ¶¶ I, II(2). Given the non-mutuality of these releases, the only consideration that Frost provided to support the agreement was compensation and benefits that it *already* owed Lareau.

### E.  Frost Solutions Purchases Certain Frost Control Assets from Frost Control's Lender, Including Lareau's Separation Agreement



. Mem.

Exh. 3. 

. *Id.* An entirely separate company, Frost Solutions, later purchased Frost Control's

assets              on August 9, 2022.  ECF No. 1 at ¶21; Mem. Exh. 3. Frost Solutions

contends that its acquisition of Frost Control's "contract rights" made it a "successor" to Frost Control's rights and that as a result of Lareau's breach of the Separation Agreement, including

the Non-Compete, "Frost Solutions has suffered harm, including the loss of business and the diminution in value of Frost Solutions' confidential information, damaging Frost Solutions in an amount to be determined at trial." ECF No. 1 at ¶¶ 21 and 74-79.

## III.    ARGUMENT

### A.  Summary Judgment Standard

"Summary judgment is appropriate if the record, viewed in the light most favorable to the non-moving party, shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law." *Tommy Hilfiger Retail, Inc. v. N. Conway Outlets LLC*, No. Civ. 99-C-147-B, 2000 WL 1480450, at *2 (D.N.H. Feb. 14, 2000) (citing Fed R. Civ. P. 56(c); *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 7 F.3d 1047, 1050 (1st Cir.1993)). "A material fact is one 'that might affect the outcome of the suit under the governing law' . . . [and] . . . [a] genuine factual issue exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Tommy Hilfiger Retail, Inc.*, 2000 WL 1480450, at *2 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Importantly, "establishing a genuine issue of material fact requires more than effusive rhetoric and optimistic surmise." *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997).  "If the evidence [adduced in opposition to the motion] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (quoting *Anderson*, 477 U.S. at 249-50).

Further, "summary judgment is an appropriate vehicle for resolving contract-interpretation disputes when the contract language is not infected by some material ambiguity." *Elliott v. S.D. Warren Co.*, 134 F.3d 1, 9 (1st Cir. 1998); *see also Tommy Hilfiger Retail, Inc.*, 2000 WL 1480450, at *2 ("[s]ummary judgment is appropriate to resolve a question of contract interpretation 'only if the meaning of the language is clear,' in light of the surrounding

circumstances and the undisputed evidence of the parties' intent" (internal citations omitted)). Importantly, "[a] dispute over the proper interpretation of the pertinent contract provision does not necessarily give rise to a 'genuine issue.'" *Tommy Hilfiger Retail, Inc.*, 2000 WL 1480450, at *2. "If the words of the contract are so clear that 'reasonable people could not differ over their meaning,' the contract language is unambiguous and the court decides the issue of proper interpretation." *Id.* (quoting *Boston Five Cents Sav. Bank v. Secretary of Dep't of Hous. and Urban Dev.*, 768 F.2d 5, 8 (1st Cir. 1985)). "To prevail under these circumstances, the moving party must demonstrate that its interpretation of the unambiguous language is correct." *Id.*

Fed. R. Civ. P. 56 expressly authorizes courts to enter summary judgment on a discrete issue. *See* Fed. R. Civ. P. 56(a) ("[a] party may move for summary judgment, identifying each claim or defense – *or the part of each claim or defense* – on which summary judgment is sought") (emphasis added)). Accordingly, this Court is empowered to grant the relief sought herein, *i.e.,* partial summary judgment on one aspect of Count III and the related interference claim in Count VI. Indeed, this relief will serve to streamline the issues remaining for trial.

Indiana law governs the Separation Agreement. Lareau Decl. at Exh. 4 at ¶ 18. Under Indiana law, "[i]nterpretation and construction of contract provisions are questions of law. . . . As such, cases involving contract interpretation are particularly appropriate for summary judgment." *B&R Oil Co., Inc. v. Stoler*, 77 N.E.3d 823, 827 (Ind. Ct. App. 2017) (citing *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014)). In accordance with Indiana precedent, the Court should "review the contract as a whole, attempting to ascertain the parties' intent and making every attempt to construe the contract's language 'so as not to render any words, phrases, or terms ineffective or meaningless.'" *Id.* (quoting *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d

494, 501 (Ind. Ct. App. 2007)).

**B.  Count III Fails Because the Non-Compete Is Unassignable as a Matter of Law**

Under Indiana law, "[c]ovenants not to compete are of 'a personal nature.'" *SDL Enters., Inc. v. DeReamer*, 683 N.E.2d 1347, 1349 (Ind. Ct. App. 1997) (quoting *Jones v. Servel, Inc.*, 135 Ind. App. 171, 181, 186 N.E.2d 689, 694 (1962)).  "As a general rule, personal service contracts are not assignable." *Id.* (citing *Norlund v. Faust*, 675 N.E.2d 1142, 1151 (Ind. Ct. App. 1997) (finding that employers may generally not assign covenants not to compete), *reh'g denied*, 678 N.E.2d 421; *see First Community Bank v. Kelley, Hardesty, Smith & Co.*, 663 N.E.2d 218, 223 (Ind. Ct. App. 1996) (claims arising out of personal service contracts are generally not assignable).  "Moreover, a personal right cannot be assigned." *SDL Enters., Inc.*, 683 N.E.2d at 1349 (citing *Hart Conversions, Inc. v. Pyramid Seating Co.*, 658 N.E.2d 129, 131 (Ind. Ct. App. 1995)); *see Rasp v. Hidden Valley Lake, Inc.*, 519 N.E.2d 153, 158 (Ind. Ct. App. 1988) (noting that "[a]n assignment vests in the assignee all rights, remedies, and contingent benefits which are incidental to the thing assigned, except those which are personal to the assignor and for his benefit only").  The only recognized exception to this rule is where the employee *expressly consents* to assignment of the contract. *SDL Enters., Inc.*, 683 N.E.2d at 1350 (citing *Norlund*, 675 N.E.2d at 1151).[2]

---

[2] Though Indiana is among a minority of states whose law prohibits enforcement of non-competes without express consent of the employee, it is far from alone. Similar law exists in Florida, Pennsylvania, Virginia, and Alabama, among others. *See, e.g.*, Fl. Stat. § 542.335(1)(f)(2) ("court shall not refuse enforcement of a restrictive covenant on the ground that the person seeking enforcement is . . . an assignee or successor to a party to such contract, provided . . . the restrictive covenant expressly authorized enforcement by a party's assignee or successor"); *Hess v. Gebhard & Co. Inc.*, 570 Pa. 148, 167, 808 A.2d 912, 922 (2002) (holding "that a restrictive covenant not to compete, contained in an employment agreement, is not assignable to the purchasing business entity, in the absence of a specific assignability provision, where the covenant is included in a sale of assets"); *Reynolds & Reynolds Co. v. Hardee*, 932 F. Supp. 149, 153 (E.D. Va. 1996), aff'd, 133 F.3d 916 (4th Cir. 1997) ("[u]nder Virginia law, contracts for personal services are not assignable, unless both parties agree to the assignment" and ruling on a motion to dismiss that plaintiff assignee has no standing to enforce non-compete against a former employee who did not consent); *Sisco v. Empiregas, Inc. of Belle Mina*, 286 Ala. 72, 76, 237 So. 2d 463, 466 (1970) ("personal service contracts are not assignable" unless the employee consents through an assignment clause and/or the employee

Here, the Separation Agreement – an integrated contract – does not contain an assignment clause or any other statement that Lareau consents to assignment of the Separation Agreement to any party, including Frost Solutions. *See generally* Lareau Decl. at Exh. 4. Lareau also expressly confirms, by sworn statement, that he has never consented to assignment of the Separation Agreement to Frost Solutions or any other party. *Id.* at ¶ 11. Indeed, Frost Solutions has never alleged (nor could it) that Lareau consented to assignment of the Separation Agreement to Frost Solutions. In fact, Frost Solutions has no information to support that it ever sought on its own or encouraged others to obtain Lareau's consent to assignment. Mem. Exh. 4, Dep. Tr. Michael Bott (personally and on behalf of Frost Solutions) at 47-48 (explaining that he had no knowledge of Frost Solutions asking for Mr. Lareau's assent to obtain his Separation Agreement through assignment). Without Lareau's consent, the Non-Compete cannot be validly assigned, and Frost Solutions has no standing to enforce it. Accordingly, Count III must be dismissed insofar as it seeks to enforce the Non-Compete against Lareau.

1. **The Language in the Separation Agreement Does Not Evidence Lareau's Consent to Subsequent Assignment of the Non-Compete to Frost Solutions.**

When parties seek to authorize assignment of an agreement, they include an assignment provision within the agreement. Lareau's former employer, Frost Control, understood and embraced this principle, which is why it included the following (boilerplate) provision in co-defendant Patrick Baglien's Confidential Information and Invention Assignment Agreement:

12. **Miscellaneous**.

. . .

(c) **Successors and Assigns**. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives, and my successors and assigns, and will be for the benefit of the Company, its successors, and its assigns.

---

continues employment with the assignee).

ECF No. 1 at Exh. B at ¶ 12(c).

It should be undisputed that Lareau's Separation Agreement does not contain a similar assignment provision or any language that Lareau consented to his Non-Compete being assignable to Frost Solutions.  Rather than concede the point, as it should, and acknowledge that the Non-Compete is unenforceable, which it is, Frost Solutions instead persists in its unjustifiable efforts to enforce the unlawful Non-Compete.  And, while Frost Solutions can point to nothing in the Separation Agreement that constitutes Lareau's consent to assigning the Non-Compete to Frost Solutions (or anyone else), it could not credibly have the Court believe that Lareau's consent to the assignment of a personal services contract under Indiana law should be inferred despite its absence from the Separation Agreement and despite it being contradicted by his undisputed sworn testimony. Lareau Decl. at ¶ 11.

There is no genuine issue of material fact sufficient to overcome Lareau's sworn statement that he did not consent to assignment of the non-compete restriction.  *See* ECF No. 58-3 at ¶ 11.  Moreover, the Separation Agreement contains a comprehensive integration clause, which provides, *inter alia*, that "[a]ny representation, promise or agreement not specifically included in this Agreement shall not be binding or enforceable against either party."  *Id.* at Exh. 4 at ¶ 20.  As such, any "contemplated assignment" based on understandings or musings *not* contained in the Separation Agreement is expressly prohibited by its terms.

### 2.    Indiana Law Supports a Finding that Lareau Did not Agree to the Assignment of the Non-Compete to Frost Solutions

*SDL Enterprises, Inc. v. DeReamer*, 683 N.E. 2d 1347 (Ind. Ct. App. 1997) controls. In that case, a plaintiff travel agency, SDL, sought to enforce non-compete covenants against Clark, its former employee, and DeReamer, the business's former owner.  *Id.* at 1348.  SDL

purportedly received both covenants through assignment in connection with its purchase of the business from Grimm, who had purchased the business from DeReamer. *Id.* When both Clark and DeReamer began working at a competing travel agency, SDL brought suit to enforce both covenants. *Id.* The *SDL* court granted summary judgment to both DeReamer and Grimm, holding that the covenants were personal contracts that were therefore not assignable. *Id.* at 1350-51. In doing so, the *SDL* court concluded that because both covenants were not assignable, "SDL, as the assignee, had no right to enforce [the] covenants as a matter of law." *Id.*

Another Indiana case, *Norlund v. Faust*, 67 S.N.E. 2d 1442, 1551 (Ind. Ct. App. 1997), serves as an instructive foil for the controlling decision in *SDL*. In *Norlund*, employee Norlund entered in an employment contract with his employer, Faust Eye Center, a sole proprietorship, containing a two-year non-compete. *Norlund*, 675 N.E.2d at 1147. Faust Eye Center subsequently incorporated as Faust Eye Center, P.C. ("Faust P.C."), and the prior owner remained the sole shareholder, officer, and director. *Id.* Norlund continued to work for and receive compensation from Faust P.C. *Id.* Approximately a year later, Norlund asked Faust P.C. to renegotiate his employment contract. *Id.* When a year-long negotiation failed, Norlund sent Faust P.C. a written notice of nonrenewal of his employment agreement and, shortly thereafter, Faust P.C. accused Norlund of violating his non-compete. *Id.* at 1147-48. In response, Norlund asserted that Faust P.C. could not enforce his non-compete because his employment agreement was never assigned to Faust P.C. *Id.* at 1151.

Under the circumstances of that case, the court – acknowledging the general rule that under Indiana law "personal services contracts are not assignable by the employer" – found that Norlund acquiesced and consented to assignment of his employment agreement to Faust P.C. because Norlund had continued his employment with Faust P.C. *after* having knowledge of the

assignment. *Id.* at 1151-53. The court was unwilling to allow Norlund to escape his non-compete because he knowingly continued to work for a subsequent entity (which entity was owned by the same person) without objection – a textbook case of acquiescence. *Id.* Importantly, the *Norlund* court stated that continued employment alone is insufficient to find consent to assignment of a personal services contract. Rather, the employee must also have knowledge of the assignment because "[p]arties have the right to determine with whom they contract." 675 N.E.2d at 1152. "If an employee can be said to consent to the assignment of his contract without knowledge of that assignment, it defeats the aforementioned right. If[,] however, the employee is aware of the assignment and continues his employment knowingly, he may not thereafter successfully claim that he opposes said assignment." *Id.*

The facts are markedly different here. Unlike in *Norlund*, Lareau's Non-Compete is contained within a Separation Agreement, not an employment agreement, and it is undisputed that Lareau did not continue his employment with Frost Control after entering into the Separation Agreement and that he has never worked for Frost Solutions. *See* Lareau Decl. ¶ 12. Moreover, unlike in *Norlund*, where a sole proprietor incorporated and essentially preserved the same entity, it is undisputed here that Frost Solutions – an entirely separate company from Frost Control – was not a party to the Separation Agreement. Lareau Decl., Ex. 4 at p. 1 (noting that agreement was entered into between Frost Control and Lareau). It was not until Frost Solutions filed the complaint in October 2022 – a year after execution of the Separation Agreement – that Lareau learned that his Separation Agreement had purportedly been sold to Frost Solutions. Lareau Decl. Lareau Decl. at ¶¶12-13. Indeed, the June 8, 2022 letter (attached as Exhibit D to the Complaint) alleging that Lareau breached the Non-Compete was sent by *Frost Control*, not Frost Solutions. ECF No. 1 at Exh. D. *Norlund* does not support the contention that Lareau

consented to assignment of the Non-Compete to Frost Solutions. In contrast, *SDL Enterprises* does support dismissal of Count III.

### 3. The Non-Solicitation Restriction Fails Because it too is Unassignable and Because there is no Evidence of Breach

As part of the breach of contract claim in Count III of the Amended Complaint, Plaintiff asserts that Defendant Lareau breached the non-solicitation restriction in section 11 of the Separation Agreement.  Specifically, the provision purports to restrict Mr. Lareau for a period of one year from " induc[ing] any employee, sales representative, distributor, … of [Frost] to cease doing business with [Frost] and interfere[ing] in any way with the relationship between any such employee, sales representative, distributor, … and [Frost] ….."  Lareau Decl., Ex. 4 at ¶ 11.

This claim fails.  As stated above, under Indiana Law Lareau's Separation Agreement constitutes a non-assignable personal services agreement, including particularly as relates to the post-employment non-compete and non-solicit restrictions in sections 10 and 11.  Also, the fact that section 11 is styled as a "non-solicitation" restriction does not in any way change or affect this incontrovertible fact because like the "non-compete" in section 10, the non-solicitation restrictions significantly purports to impede Mr. Lareau's freedom to perform services with other businesses.  *Heraeus Med., LLC v. Zimmer, Inc*., 135 N.E.3d 150, 153 (Ind. 2019) (treating employee non-solicitation covenant as a "Noncompetition" provision); *SDL Enters, Inc*., 683 N.E.2d at 1349; *USI Ins. Servs*. at 12-18 (analyzing employment agreement containing nonsolicitation restriction, but no non-compete restriction, as a "non-competition" agreement consistent with the assignability analysis in *SDL Enters)*.

Further, even if the Agreement contained an assignability clause (which it does not) or if Lareau assented or acquiesced to the assignment (which he did not), the claim would still fail

because Frost cannot adduce any evidence that Lareau breached the "non-solicitation"
restriction. The restriction does not apply in any conceivable way to customers or prospective
customers.  Lareau Decl. at Ex. 4, Separation Agreement ¶ 11. Instead, upon information and
belief, Frost will attempt to argue that Mr. Lareau violated the covenant by engaging in
discussions with TAPCO, a third-party public entity acting as a one-time, non-exclusive,
distributor for Frost's failed products with TAPCO's public entity members.  However, those
communications occurred well after the TAPCO and Frost Control relationship had already come
to an end.  Specifically, in April, 2022 TAPCO ████████████████████████████████
███████████  Mem. Exh. 2, FROST_0291521, April 2022 email chain; Mem. Exh. 5, Blanket
Purchase Order.  ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████  *See* Mem.
Exh. 6, Resolutions of the Stockholders of Frost Control Systems, Inc. at p. 1.  When asked at
deposition, Bryan Everard, a TAPCO manager, confirmed that TAPCO had decided to look for
other companies to offer a RWIS because TAPCO had "disappeared for months."  Mem. Exh. 7,
Everard Dep. Tr. at 32-33.[3]

Months later, in July 2022, ████████████████████████████████████████
████████████████████████████████████  Mem. Exh. 8, July 2022 email chain (setting up

---

[3] Q: Okay.  And when Mike Bott and Mike Kirsh reached out to you, you were receptive to speaking with them,
right?  A: To speak with them, yes.  Q: And TAPCO wanted to continue to do business with them, correct? A: No.
Not necessarily, no. Q: Why not? A: They had disappeared for months. Q: Just so I understand, Mr. Everard, and
I'm going to show you the document in a second, you were interested in continuing to have TAPCO do business
with Frost when Mr. Kirsh and Mr. Bott reached out to you, yes or no?  A: Was interested in learning about the
company.  We were deciding what product to bring on since the previous Frost had disappeared."

meeting to discuss ████████████████████████ Therefore, there can be no viable claim that Lareau in July 2022 induced TAPCO to "cease doing business with Frost" or interfered with the distributor relationship between TAPCO and Frost that had already ended in April 2022.  Ex. 4 at ¶ 11.

Finally, the non-solicitation clause fails as a matter of law for another reason.  As it is overbroad and incapable of being reformed under Indiana "blue penciling" law, it is unenforceable as written and void.  Under Indiana law, non-solicitation restrictions, like non-compete restrictions must be  tailored only to protect legitimate business interests, like goodwill. *Heraeus Med.*, 135 N.E.3d 150, 153 (Ind. 2019) (finding non-solicitation covenant overbroad because it applied to all of the company's employees and refusing to reform it); *see USI Ins. Serv. LLC v. Ryan at 16* (finding restrictive covenant prohibiting competition with any past or present customer vague, overbroad and unenforceable as written.)*; see also Clerk's Sales and Service, Inc. v. Smith*, 4 N.E.3d 772 (Ind. Ct. Ap. 2014) (same). Restrictions written without due care, which extend beyond protection of legitimate business interests are unenforceable, unless "blue penciled".  *Id.; see also Norlund* 675 N.E.2d at 1155.

In Indiana, courts may excise offending restrictive covenant language but may not rewrite or add to them. *Hereaus Med.* at 153, 154 ("The [blue pencil doctrine in Indiana] does not allow a court to add language to an overbroad restrictive covenant and … the … doctrine applies to all restrictive covenants… not just prohibitions against working for a competitor"); *Cent. Ind. Podiatry, P.C. v. Kruger*, 882 N.E.2d 723, 730 (Ind. 2008); *Burke v. Heritage Food Service Equipment, Inc*., 737 N.E.2d 803, 811 (Ind. Ct. App. 2000) (holding that an Indiana court "may not create a reasonable restriction under the guise of interpretation since this would subject the parties to an agreement they have not made" (internal citations, quotations omitted)).

Here, the non-solicitation restriction is overbroad because as written it extends beyond Frost Control's legitimate business interests. As written, it applies to all distributors with whom Frost Controls does business during the 12-month post-employment restrictive period, including those with whom neither Lareau nor Baglien ever interacted. *See supra* 16. As such, it applies to persons and entities with whom there could be no goodwill or any other legitimate business interest to support its enforcement, as written. Therefore, in order to be enforced it would need to be rewritten because there is no way to cure the overbreadth flaw by striking some part of the restriction. Thus, because it is overbroad as written and cannot, under Indiana law, be reformed by the Court, the entire restriction is void. For this reason, too, the non-solicitation claim should be dismissed.

**4.    The Separation Agreement is Unenforceable Because it is Unsupported by Adequate Consideration.**

The Separation Agreement is unenforceable because Lareau received no consideration for entering into it. Under Indiana law, "[c]onsideration is a requirement for a valid contract." *Jackson v. Luellen Farms, Inc.*, 877 N.E.2d 848, 857 (Ind. Ct. App. 2007) (internal citation omitted). Consideration is defined as "something of value . . . received by a promisor from a promise." *Id.* (internal citation omitted).

Past consideration, however, "can generally not support a new obligation or promise." *Id*. (citing *Field v. Alexander & Alexander of Ind., Inc*., 503 N.E.2d 627, 631 (Ind. Ct. App. 1987)). As Indiana courts have held, contractual terms added to an employee-employer agreement are not enforceable when the only consideration supporting them is a benefit already owed under the parties' original employment agreement.[4]

---

[4] *Buschman v. ADS Corp.*, 782 N.E.2d 423 (Ind. Ct. App. 2003) (concluding that employee's continued work with

For example, in *Am Gen. LLC v. Armour*, 46 N.E.3d 436, 442 (Ind. 2015), an employer breached its employment agreement with a former employee by failing to pay certain incentives to the agreement.  On appeal, the employer contested the trial court's summary judgment award of pre-judgment interest, arguing that the start date for the interest should have been later because the parties had entered into an oral agreement allowing payment of the incentives over time instead of the lump sum required under the employment contract.  *Id.* at 443.   The Indiana Supreme Court concluded that the employer's argument failed to raise a dispute issue of genuine material fact because any oral agreement was not supported by consideration.  As the Court explained, "consideration requires a bargained-for-exchange." *Id.*  The Court then reasoned that no consideration could exist because "AM General only agreed to do what it already had an obligation to do under the existing Employment Agreement; pay the full amount owed under the [incentive] provision." *Id.*

The same principle applies here.  The only consideration that Lareau received for signing the Separation Agreement was commission already owed to him and the ability to use already-accrued vacation.  Just as in *AM General*, Frost Control only agreed to do what it was already obligated to do: provide Lareau with already-earned compensation and benefits.  Accordingly, the Separation Agreement is unenforceable.

## C.  The Interference Claim Against Baglien Fails as a matter of law.

For all the reasons stated herein, the interference claim against Baglien in Count VI of the Amended Complaint relies on Lareau's unenforceable restrictive covenants, this claim should be dismissed.

---

employer could not constitute consideration for amendment to employment agreement because that was a term of the original agreement), *Hinkel v. Sataria Distribution & Packaging,* Inc., 920 N.E.2d 766 (Ind. Ct. App. 2010) (same).

**IV.    CONCLUSION**

For the foregoing reasons, Defendant Christopher Lareau respectfully requests that the
Court:  dismiss Count III of the Amended Complaint; and dismiss Count VI of the Amended
Complaint against Baglien.

Respectfully submitted,

**PATRICK BAGLIEN, CHRISTOPHER LAREAU, AND VUE ROBOTICS, LLC**

By their attorneys
Sheehan Phinney Bass & Green, P.A.

Dated:  February 17, 2026                          By: /s/ *Ryan Lirette*
                                                              David W. McGrath (# 9347)
                                                              James P. Harris (# 15336)
                                                              Ryan Lirette (# 19561)
                                                              1000 Elm Street, P.O. Box 3701
                                                              Manchester, NH 03105-3701
                                                              603-627-8255
                                                              dmcgrath@sheehan.com
                                                              jharris@sheehan.com
                                                              rlirette@sheehan.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically served copies of this document on all counsel of record via the Court's CM/ECF system, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated:  February 17, 2026                          /s/ *Ryan Lirette*
                                                              Ryan Lirette