# EXHIBIT 23



# CITY of WALKER

4243 REMEMBRANCE RD NW
WALKER MI 49534
Clerks Department
616-791-6865

June 5, 2025

RE: Freedom of Information Act (FOIA) Request

Dear Jennifer S. Tamkin,

This letter is in response to your Public Records Requests, dated May 29, 2025, to receive public records under Michigan's Freedom of Information Act, Act 442 of 1976 ("FOIA"). A copy of which is attached as Exhibit A.

Your request is granted with respect to existing, non-exempt records in the possession of the City of Walker that fall within the scope of your request. A copy of which is attached to the email that this letter accompanied.

This letter constitutes a certificate of the City's response, and we will consider request FOIA 45-2025 complete. If you have any questions, please contact the clerk's office.

**FOIA Policy:** The City of Walker Freedom of Information Act Policy and Guidelines  and other FOIA resources are available on the City of Walker website at:  https://walker.city/334/Freedom-of-Information-Form-FOIA

You are entitled, under Section 10 of the Freedom of Information Act to commence  an action in the Circuit Court to compel disclosure of the requested records if you  believe they are wrongfully withheld from disclosure. If you are successful in  asserting the right to inspect or to receive a copy of a public record or a portion  thereof, the court will award reasonable attorney fees, costs, and disbursements. If  you prevail in part of your action, the court may, in its discretion, award reasonable  attorney fees, costs and disbursements or an appropriate portion thereof.

Sincerely,


City of Walker Clerk's Office
616-791-6865

ATTACHMENTS:    May 29, 2025, FOIA Request.

VUE0194682

# EXHIBIT A

VUE0194683

| From: | Jennifer S. Tamkin |
|---|---|
| **To:** | Foia Request |
| **Subject:** | FOIA Request |
| **Date:** | Thursday, May 29, 2025 11:05:13 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | FOIA Request Form (S2983586-2x7A7A4).PDF |

You don't often get email from jtamkin@sheehan.com. Learn why this is important

Dear City Clerk's Office,

Please see attached a FOIA Request on behalf of this office's client, Vue Robotics, LLC.

Regards,

**Jennifer S. Tamkin, Esq.**



Sheehan Phinney Bass & Green PA
Boston / Concord / Manchester / Portsmouth / Upper Valley
1000 Elm Street, 17th Floor, Manchester, NH 03101

603.627.8239
jtamkin@sheehan.com

Connect With Us:

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and automatically archived by Mimecast.

VUE0194684



| City of Walker, Kent County, **Attn: City Clerk's Office** 4243 Remembrance Rd Walker, MI 49534 Tel: (616) 791-6865 Fax: (616) 791-6881 FOIArequest@walker.city | City of Walker, Kent County, **Police Department** 4343 Remembrance Rd Walker, MI 49534 Tel: (616) 791-6812 Fax: (616) 791-6811 PDrecords@walker.city | City of Walker, Kent County, **Fire Department** 4343 Remembrance Rd Walker, MI 49534 Tel: (616) 791-6840 Fax: (616) 791-6898 FDrecords@walker.city | **Request Form** *Note: Requestors are not required to use this form. The City may complete one for recordkeeping if not used.* |

# FOIA Request for Public Records
## Michigan Freedom of Information Act, Public Act 442 of 1976, MCL 15.231, *et seq.*

*For Office Use Only:*
**Request No.:** _____  Date Received: _____  Check if received via: ☐ **Email** ☐ **Fax** ☐ Other Electronic Method
Date delivered to junk/spam folder: _____
Date discovered in junk/spam folder: _____

*(Please Print or Type)*

| Name  Jennifer S. Tamkin | Phone  (603) 627-8239 |
| Firm/Organization  Sheehan Phinney, on behalf of Vue Robotics, LLC | Fax |
| Street  1000 Elm Street, 17th Floor | Email  jtamkin@sheehan.com |
| City  Manchester | State  NH | Zip  03101 |

**Request for:**   ☐ Copy   ☑ Certified copy   ☐ Record inspection   ☐ Subscription to record issued on regular basis

**Delivery Method:**   ☐ Will pick up   ☐ Will make own copies onsite   ☐ Mail to address above   ☑ Email to address above
☐ Deliver on digital media provided by the City: _____

*Note: The City is not required to provide records in a digital format or on digital media if the City does not already have the technological capability to do so.*

**Describe the public record(s) as specifically as possible.** You may use this form or attach additional sheets:

I request an opportunity to inspect or obtain copies of public records relating to any contract for products or services with Frost Solutions, LLC, Frost Control Systems, Inc., or Frost Technologies from January 1, 2020 to the present.  In addition to any responsive contracts, invoices, purchase orders, technical information about the products and services, marketing materials and other responsive documents, please include in your response any communications with the Frost entities and their representatives.  In some instances, the Frost entities used Traffic and Parking Control, Co., LLC ("TAPCO") to sell or distribute the products and services. If TAPCO was involved in the sale of Frost products and services, please include those documents as well. To the extent you can certify that these documents were created in the ordinary course of business, please do so.

| Requesting Person's Signature  *Jennifer Tamkin* | Date  5/29/2025 |

*(Complete both sides as needed)*

{06939-004-00040352.2}

VUE0194685

## Records Located on Website

If the City directly or indirectly administers or maintains an official internet presence, any public records available to the general public on that internet site at the time the request is made are exempt from any labor charges to redact (*separate exempt information from non-exempt information*).

If the FOIA Coordinator knows or has reason to know that all or a portion of the requested information is available on its website, the City must notify the requestor in its written response that all or a portion of the requested information is available on its website. The written response, to the degree practicable in the specific instance, must include a specific webpage address where the requested information is available. On the detailed cost itemization form, the City must separate the requested public records that are available on its website from those that are not available on the website and must inform the requesting person of the additional charge to receive copies of the public records that are available on its website.

If the City includes the website address for a record in its written response to the requesting person and the requesting person thereafter stipulates that the public record be provided to him or her in a paper format or other form, including digital media, the City  must provide the public records in the specified format (if the City  has the technological capability) but may use a fringe benefit multiplier greater than the 50%, not to exceed the actual costs of providing the information in the specified format.

### Request for Copies/Duplication of Records on City Website

I hereby stipulate that, even if some or all of the records are located on a City website, I am requesting that the City make copies of those records on the website and deliver them to me in the format I have requested above. I understand that some FOIA fees may apply.

| Requestor's Signature | *Jennifer Tamkin* | Date | 5/29/2025 |

### Overtime Labor Costs

Overtime wages shall not be included in the calculation of labor costs unless overtime is specifically stipulated by the requestor and clearly noted on the detailed cost itemization form.

### Consent to Overtime Labor Costs

I hereby agree and stipulate to the City using overtime wages in calculating the following labor costs as itemized in the following categories:

1. ☐ Labor to copy/duplicate     2. ☐ Labor to locate     3a. ☐ Labor to redact     3b. ☐ Contract labor to redact

6b. ☐ Labor to copy/duplicate records already on City 's website

| Requestor's Signature | *Jennifer Tamkin* | Date | 5/29/2025 |

### Request for Discount: Indigence

A public record search **must** be made and a copy of a public record **must** be furnished **without charge for the first $20.00 of the fee** for each request by an individual who is entitled to information under this act and who:

    **1)** Submits an affidavit stating that the individual is indigent and receiving specific public assistance, **OR**

    **2)** If not receiving public assistance, stating facts showing inability to pay the cost because of indigence.

If a requestor is ineligible for the discount, the public body shall inform the requestor specifically of the reason for ineligibility in the public body's written response. An individual is ineligible for this fee reduction if **ANY** of the following apply:

    **(i)** The individual has previously received discounted copies of public records from the same public body twice during that calendar year,

    **(ii)** The individual requests the information in conjunction with outside parties who are offering or providing payment or other remuneration to the individual to make the request. A public body may require a statement by the requestor in the affidavit that the request is not being made in conjunction with outside parties in exchange for payment or other remuneration.

**Office Use:**   ☐ Affidavit Received     ☐ Eligible for Discount     ☐ Ineligible for Discount

| I am submitting an affidavit and requesting that I receive the discount for indigence for this FOIA request: | Date: |
| Requestor's Signature: *Jennifer Tamkin* | 5/29/2025 |

### Request for Discount: Nonprofit Organization

A public record search **must** be made and a copy of a public record **must** be furnished **without charge for the first $20.00 of the fee** for each request by a nonprofit organization formally designated by the state to carry out activities under subtitle C of the Developmental Disabilities Assistance and Bill of Rights Act of 2000 and the Protection and Advocacy for Individuals with Mental Illness Act, if the request meets **ALL** of the following requirements:

    **(i)** Is made directly on behalf of the organization or its clients.

    **(ii)** Is made for a reason wholly consistent with the mission and provisions of those laws under section 931 of the Mental Health Code, 1974 PA 258, MCL 330.1931.

    **(iii)** Is accompanied by documentation of its designation by the state, if requested by the City.

**Office Use:**   ☐ Documentation of State Designation Received     ☐ Eligible for Discount     ☐ Ineligible for Discount

| I stipulate that I am a designated agent for the nonprofit organization making this FOIA request and that this request is made directly on behalf of the organization or its clients and is made for a reason wholly consistent with the mission and provisions of those laws under section 931 of the Mental Health Code, 1974 PA 258, MCL 330.1931: | Date: |
| Requestor's Signature: *Jennifer Tamkin* | 5/29/2025 |

VUE0194686

# EXHIBIT B

{03637-004-00156130.3}

VUE0194687



**ORDER FORM**

**FROST SOLUTIONS, LLC & City of Walker, MI**

**PROPOSAL DATE: 9.23.22**

| **Frost Solutions Mini RWIS** |
|---|
| The Mini RWIS 12-month subscription includes a self-install hardware unit, access to the web application, service and support, and product replacement (if necessary). Frost Solutions maintains ownership of the hardware unit at all times. |

Hardware

Non-Invasive, Solar + Battery Powered, Infrared System and Camera, providing:

- Surface Temperatures
- Still Shot Images (Day & Night)
- Air Temperature
- Dew Point
- Humidity

Application Services

- On Demand Image Requests
- Surface Temperature Forecasting
- Freeze Warnings & Alerts
- Weather Data & Forecasting Services
- Reporting & Analytics
- Historical Data and Image Retrieval (Indefinitely for data points, limited for images)
- Mobile & Desktop Access (Unlimited Users)

| Description | Quantity | Item Cost | Total |
|---|---|---|---|
| Mini RWIS Annual Subscription – 11.15.22 to 11.14.23 | 3 | $2,200 | $6,600 |
| | | Total | $6,600 |

Terms & Conditions

This Order Form, in conjunction with the Master Service Agreement, which is incorporated herein by reference, establishes the commercial relationship between Frost Solutions, LLC and the Customer. The parties acknowledge that they have read, understand, and agree to the terms and conditions of this Order Form and the related Master Service Agreement that is either attached to this Order Form or was included with a prior Order Form. In the event of a discrepancy between the terms of this Order Form and the Master Service Agreement, the Master Service Agreement shall control.

Frost Solutions, LLC + City of Walker, MI | Mini RWIS MSA + Order Form v091422

VUE0194688

Payments/Refunds/Cancellation

Customer shall pay all fees specified in this Order Form without offset or deduction. Customer shall make all payments hereunder in U.S. Dollars on or before the due date set forth in this Order Form. Except as otherwise specified herein, (a) fees are based on services purchased and not actual usage or services provided; (b) payment obligations are non-cancelable; (c) fees paid are non-refundable; and (d) the services purchased cannot be decreased during the relevant Term.

Customer may terminate this Order Form at any time, however such termination shall not result in any refund of payments previously made or cancellation of any future payment(s) due as set forth in this Order Form to Frost Solutions, LLC during the current Term, but only results in the termination of automatic renewals and any future payments caused by such automatic renewals no longer being due to Frost Solutions, LLC.

| Effective Date | Term | Renewal Date | Payment Terms |
|---|---|---|---|
| 10-24-2022 | 1 Year | 11.15.2023 | Due per dates listed below |

| Invoice Details | | Customer & Billing Information | |
|---|---|---|---|
| Date Due | Amount | Primary Contact | Gary Postema |
| 11.15.2022 | $6,600 | Email | postema@walker.city |
| | | Phone # | 616-791-6854 |
| | | Billing Contact | Gary Postema |
| | | Address | 4243 Remembrance Walker MI 49534 |
| Shipment Information | | Email | publicworks@walker.city |
| | | Phone # | 616-791-6854 |
| | One Address | Purchase Order # | 22-056 |

| FROST SOLUTIONS, LLC | City of Walker, MI |
|---|---|
| *Mike Kirsh* | *Gary Postema* |
| Mike Kirsh<br>Owner[ | Printed Name  Gary Postema<br>Title   Director of Public Works |
| Date:  10-24-2022 | Date:  10-24-2022 |

Frost Solutions, LLC  + City of Walker, MI  |  Mini RWIS MSA + Order Form v091422

VUE0194689

# MASTER SERVICE AGREEMENT

This Master Service Agreement (together with any Order Form, the "**Agreement**") is entered into and made effective as of ___10-24-2022___ (the "**Effective Date**"), by and between Frost Solutions, LLC, a Delaware limited liability company ("**Frost Solutions**"), located at 276 E Deerpath Rd #627, Lake Forest, IL 60045, and City of Walker, MI ("**Customer**"), located at 4243 Remembrance Rd NW, Walker, MI 49534.

# RECITALS

**WHEREAS**, Customer desires to engage Frost Solutions to perform Services (as defined below) under the terms and conditions set forth herein; and

**WHEREAS**, Frost Solutions desires to perform such Services for Customer under the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the mutual covenants, terms, and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## 1.   DEFINITIONS

*"Agreement"* means, collectively, this Agreement, any Order Forms, Statements of Work, and any materials available on the Frost Solutions website specifically incorporated by reference herein, as such materials may be updated by Frost Solutions from time to time in its sole discretion.

*"Affiliate"* means any entity which directly or indirectly controls, is controlled by, or is under common control with the subject entity where control consists of the ownership of 50% or more of the equity securities of the relevant party.

*"Application Services"* means the online, internet-based software application(s) provided by Frost Solutions pursuant to one or more Order Forms and which is accessed by Customer via the Internet. Except as expressly provided to the contrary, the Hardware supplied by Frost Solutions for use in connection with the Application Services is included in the use of the Application Services.

*"Confidential Information"* means information in any form or medium (whether oral, written, electronic, or other) relating to any business, financial, operational or technical information provided by one party hereunder to the other party that is marked or otherwise identified as confidential or proprietary, or that the receiving party knows or should know is confidential or proprietary. In addition, the parties acknowledge and agree that the Frost Solutions name, the Frost Solutions logo, the Services and the terms of and pricing under this Agreement constitute Confidential Information of Frost Solutions.

*"Customer Data"* means all information, data, and other content, in any form or medium, that is submitted, posted, supplied, results from processing Customer Data in connection with the Application Services or is otherwise transmitted by or on behalf of Customer to Frost Solutions through the Application Services.

Document Ref: 32HEN-5QD6E-XFLIB-REQM7

VUE0194690

*"Hardware"* means any sensor, transmitter, storage or other tangible property that is provided by Frost Solutions to Customer for use in connection with the Application Services.

*"Order Form"* means an order form executed by the parties that defines access to the Application Services, use allowances, and/or Professional Services purchased by Customer and is part of this Agreement. The Order Form may contain allowances and limitations that may subject Customer to additional fees if use exceeds such allowances following written notice thereof by Frost Solutions and the reasonable opportunity to reduce use to permitted allowances.

*"Professional Services"* means services provided by Frost Solutions staff or contractors as set forth in the applicable Order Form.

*"Services"* means all of the services to be performed under one or more Order Forms executed by the parties, including Application Services, and/or Professional Services, and others.

*"Service Level Agreement"* means the Service Level Agreement attached hereto as **Exhibit A.**

*"User's Guide"* means Frost Solutions' online user documentation for the Application Services, as updated from time to time by Frost Solutions.

## 2. PROVISION OF SERVICES/RIGHTS OF USE

2.1    Subject to the terms and conditions of this Agreement and any Order Form, Frost Solutions hereby grants to Customer, and Customer hereby accepts from Frost Solutions, a non-exclusive, non-sublicensable, and non-transferable (except as set forth herein) license ("**License**"), to use the Application Services, including any updates thereto, as expressly stated in an Order Form, for the Term (as defined in this Agreement). Frost Solutions shall: (a) provide the Application Services in a manner consistent with general industry standards reasonably applicable to the provision thereof; (b) use commercially reasonable efforts to ensure that the Application Services perform in material compliance with the Specifications; (c) provide support to Customer as provided in the Order Form; (d) comply with all applicable laws and regulations in the performance of such services and the operation, hosting and maintenance of the Application Services; and (e) use reasonable safeguards consistent with industry standards in providing the Application Services hereunder to prevent security breaches and protect its servers from unauthorized access.

2.2    Frost Solutions reserves all rights not expressly granted to Customer in this Agreement. Except for the limited rights and licenses expressly granted under this Agreement, nothing in this Agreement grants, by implication, waiver, estoppel, or otherwise, to Customer or any third party any intellectual property rights or other right, title, or interest in or to the intellectual property of Frost Solutions.

## 3. CUSTOMER RESPONSIBILITIES AND USE GUIDELINES

3.1    Customer shall use the Application Services as contemplated by this Agreement and Customer shall be responsible for its use of the Application Services.

3.2    Customer shall: (a) have sole responsibility for the accuracy, quality, integrity, legality, reliability, and appropriateness of all Customer Data (as hereinafter defined); (b) prevent unauthorized access to, or use of, the Application Services, and notify Frost Solutions promptly of any such unauthorized access or use; (c) review and, if acceptable, agree to any third party agreements or terms of service prior to using the Services in connection herewith and abide by the rules set forth therein; (d) comply with all applicable local, state, federal and foreign laws in using the Application Services including;

Frost Solutions, LLC  + City of Walker, MI  |  Mini RWIS MSA + Order Form v091422

VUE0194691

(e) not license, sublicense, sell, resell, rent, lease, transfer, assign, distribute, time share or otherwise commercially exploit or make the Application Services available to any third party except as set forth in this Agreement; (f) not transmit or store within the Application Services infringing, obscene, threatening, defamatory, fraudulent, abusive, or otherwise unlawful or tortious material, including material that is harmful to children or violates third party privacy rights; (g) not upload to, or store within the Application Services, any viruses, worms, time bombs, Trojan horses and other harmful or malicious code, files, scripts, agents or programs; (h) not interfere with or disrupt the integrity or performance of the Application Services or the data contained therein; (i) not attempt to gain unauthorized access to the Application Services or its related systems or networks, or access the same in order to build a competitive product or service, or to copy any ideas, features, functions or graphics of the Application Services; (j) not modify, copy or create derivative works based on the Application Services; (k) not frame or mirror any content forming part of the Application Services, other than on Customer's own intranets or otherwise for its own internal business purposes; and (l) not reverse engineer or decompile the Application Services. Customer shall not transfer or assign the License without Frost Solutions' written consent, provided, however, that if the Application Services include a license requiring third party interaction, Customer may grant access to the Application Services to those third parties who are authorized by Customer to supply data. Customer's obligations under clause (g) shall be deemed fulfilled if Customer uses reasonable methods to prevent transmission of elicit code and does not intentionally transmit any of the same to Frost Solutions or the Application Services.

## 4.    SERVICE LEVEL AND SUPPORT

Subject to the terms and conditions of this Agreement, Frost Solutions shall use commercially reasonable efforts to make the Application Services available in accordance with the service levels set out in **Exhibit A.**

## 5.    FEES AND PAYMENT

5.1    Customer shall pay all fees specified in an Order Form, via a physical invoice or an electronic invoice, without offset or deduction. Customer shall make all payments hereunder in U.S. Dollars on or before the due date set forth in such Order Form. Except as otherwise specified in an Order Form, (a) fees are based on Services purchased and not actual usage or Services provided; (b) payment obligations are non-cancelable; (c) fees paid are non-refundable; and (d) the Services purchased cannot be decreased during the relevant Term.

5.2    Frost Solutions shall invoice in advance and in accordance with the applicable Order Form. All invoices are due as stated on the invoice, but if not stated, physical invoices shall be due immediately upon receipt of the invoice, without any right of set-off or deduction. Frost Solutions may charge interest at the lesser of the maximum amount allowed by law or one and one-half percent (1.5%) per month on payments not timely made pursuant to the applicable invoice. In addition to any other rights or remedies of Frost Solutions, Frost Solutions may discontinue access to the Application Services provided to Customer without liability to Customer, if any invoice is not paid within thirty (30) days of the invoice date, until such amounts are paid in full. In any collection action relating to this Agreement, Frost Solutions shall be entitled to recover its costs of collection, including reasonable attorney's fees.

5.3    Unless otherwise stated, Frost Solutions' fees do not include any direct or indirect, local, state, federal or foreign taxes, levies, duties or similar governmental assessments of any nature or kind, including value-added, use or withholding taxes (collective, "**Taxes**"). Customer is responsible for all Taxes associated with its purchases hereunder, excluding any taxes imposed on Frost Solutions' income. If Frost Solutions has the legal obligation to pay or collect Taxes for which Customer is

responsible under this Section, the appropriate amount shall be invoiced to and paid by Customer, unless Customer provides Frost Solutions with a valid tax exemption certificate authorized by the appropriate taxing authority.

## 6.    CONFIDENTIAL INFORMATION

From time to time during the Term, either party may disclose or make available to the other party Confidential Information. The receiving party shall not disclose the disclosing party's Confidential Information to any person or entity, except to the receiving party's employees who have a need to know the Confidential Information for the receiving party to exercise its rights or perform its obligations hereunder, in which case such employees shall be made aware of the confidentiality provision of this Agreement, and will be required to abide by the terms thereof. Notwithstanding the foregoing, each party may disclose Confidential Information to the limited extent required (i) in order to comply with the order of a court or other governmental body, or as otherwise necessary to comply with applicable law, provided that the party making the disclosure pursuant to the order shall first have given written notice to the other party and made a reasonable effort to obtain a protective order; or (ii) to establish a party's rights under this Agreement, including to make required court filings. On the expiration or termination of the Agreement, the receiving party shall promptly return to the disclosing party all copies, whether in written, electronic, or other form or media, of the disclosing party's Confidential Information, or destroy all such copies and certify in writing to the disclosing party that such Confidential Information has been destroyed. Each party's obligations of non-disclosure with regard to Confidential Information are effective as of the Effective Date and will expire five (5) years from the date first disclosed to the receiving party; provided, however, with respect to any Confidential Information that constitutes a trade secret (as determined under applicable law), such obligations of non-disclosure will survive the termination or expiration of this Agreement for as long as such Confidential Information remains subject to trade secret protection under applicable law.

## 7.    INTELLECTUAL PROPERTY RIGHTS

7.1    Subject to the limited rights expressly granted hereunder, Frost Solutions reserves all rights, title and interest in and to the Application Services, including all related intellectual property rights. No rights are granted to Customer hereunder other than as expressly set forth herein. Frost Solutions shall own all rights, title and interest, including all intellectual property rights, in and to any improvements to the Application Services or any new programs, upgrades, modifications or enhancements developed by Frost Solutions or Customer in connection with rendering the Services to a Customer, even when refinements and improvements result from Customer's request, unless expressly set forth in an Order Form for custom development. To the extent, if any, that ownership in such refinements and improvements does not automatically vest in Frost Solutions by virtue of this Agreement or otherwise, Customer hereby transfers and assigns to Frost Solutions all rights, title, and interest which Customer may have in to such refinements and improvements.

7.2    As between Frost Solutions and Customer, Customer exclusively owns all rights, to data or information submitted by Customer for use in the Application Services ("**Customer Data**"). As such, Customer has the right to and hereby does grant to Frost Solutions the right to use Customer Data in connection with the Application Services and other services to be provided hereby by Frost Solutions. Customer acknowledges and agrees that Frost Solutions may collect, use, and sell to third parties data, information, or insights generated or derived from Customer's use of the Application Services and other services provided by Frost Solutions for business and commercial purposes, including without limitation industry analysis, benchmarking, analytics, marketing, developing, training and improving its products and services.

## 8.    WARRANTIES AND DISCLAIMERS

VUE0194693

8.1    Each Party represents and warrants that it has the legal power to enter into this Agreement; that the signatory hereto has the authority to bind the applicable organization; and when executed and delivered, this Agreement will constitute the legal, valid, and binding obligation of each Party, enforceable in accordance with its terms.

8.2    Frost Solutions warrants that the Application Services (excluding the Hardware) will conform in all material respects to the service levels set forth in **Exhibit A** when accessed and used in accordance with the User's Guide. Frost Solutions warrants that the Hardware will be free from material defects in materials or workmanship for the period from start date specified in a relevant Order Form and continues for the period specified in any Order Form to Customer; provided the Hardware is used in conformity with the operating instructions and the warranty expressly disclaims physical damage to the Hardware and damage from adverse weather or environmental sources. Frost Solutions does not make any representations or guarantees regarding uptime or availability of the Services unless specifically identified in **Exhibit A**.

8.3    Customer's exclusive remedies for breach of the warranties provided herein shall be the repair or replacement of the non-conforming Application Services, Hardware or Professional Services. Any claim for breach of warranty shall be made by providing written notice thereof to Frost Solutions together with a detailed explanation of the purported error. If repair or replacement is not possible within forty-five (45) days following Frost Solutions' receipt of written notice of a breach of the warranty, Customer may terminate the license to the defective Application Services (excluding Hardware) by providing written notice of the same to Frost Solutions. Customer shall then be entitled to receive a refund of the fees paid by Customer for the Application Services that are pre-paid and unused, for the period after termination.

8.4    EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED HEREIN AND TO THE MAXIMUM EXTENT PERMITTED BY LAW, EACH PARTY EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES, CONDITIONS, REPRESENTATIONS, AND GUARANTEES WITH RESPECT TO THEIR OBLIGATIONS HEREUNDER, WHETHER EXPRESS OR IMPLIED, ARISING BY LAW, CUSTOM, PRIOR ORAL OR WRITTEN STATEMENTS, OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. NO REPRESENTATION OR OTHER AFFIRMATION OF FACT, INCLUDING, WITHOUT LIMITATION, STATEMENTS REGARDING CAPACITY, SUITABILITY FOR USE OR PERFORMANCE OF THE SERVICES, NOT CONTAINED IN THIS AGREEMENT SHALL BE DEEMED TO BE A WARRANTY BY EITHER PARTY. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE FACE HEREOF. EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED HEREIN, FROST SOLUTIONS MAKES NO WARRANTY OF ANY KIND THAT THE APPLICATION SERVICES, PROFESSIONAL SERVICES, OR ANY PRODUCTS OR RESULTS OF THE USE THEREOF, WILL MEET CUSTOMER'S OR ANY OTHER PERSON'S REQUIREMENTS, OPERATE WITHOUT INTERRUPTION, ACHIEVE ANY INTENDED RESULT, BE COMPATIBLE OR WORK WITH ANY SOFTWARE, SYSTEM OR OTHER SERVICES, OR BE SECURE, ACCURATE, COMPLETE, FREE OF HARMFUL CODE, OR ERROR FREE.

9.    **LIMITATION OF LIABILITY**

EXCEPT FOR LIABILITY ARISING FROM THE PARTIES INDEMNIFICATION OBLIGATIONS IN THIS AGREEMENT, IN NO EVENT WILL EITHER PARTY BE LIABLE UNDER OR IN CONNECTION WITH THIS AGREEMENT UNDER ANY LEGAL OR EQUITABLE THEORY, INCLUDING BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, AND OTHERWISE, FOR ANY: (a) CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY, SPECIAL, ENHANCED, OR PUNITIVE DAMAGES; (b) INCREASED COSTS, DIMINUTION IN VALUE OR LOST BUSINESS, PRODUCTION, REVENUES, OR PROFITS; (c) LOSS OF GOODWILL OR REPUTATION; (d) USE, INABILITY TO USE, LOSS, INTERRUPTION, DELAY OR RECOVERY OF

VUE0194694

ANY DATA, OR BREACH OF DATA OR SYSTEM SECURITY; OR (e) COST OF REPLACEMENT GOODS OR SERVICES, IN EACH CASE REGARDLESS OF WHETHER THE PARTIES WERE ADVISED OF THE POSSIBILITY OF SUCH LOSSES OR DAMAGES OR SUCH LOSSES OR DAMAGES WERE OTHERWISE FORESEEABLE. IN NO EVENT WILL FROST SOLUTIONS' AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT UNDER ANY LEGAL OR EQUITABLE THEORY, INCLUDING BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, AND OTHERWISE EXCEED AMOUNTS ACTUALLY PAID OR PAYABLE BY CUSTOMER HEREUNDER IN THE TWELVE (12) MONTHS PRECEDING THE INCIDENT GIVING RISE TO LIABILITY.

## 10.   INDEMNIFICATION

10.1    Frost Solutions will defend, indemnify and hold Customer harmless against any and all losses, damages, liabilities, costs (including reasonable attorneys' fees) (the "**Losses**") incurred by Customer in connection with any actions, suits, proceedings, or claims made or brought by a third party against Customer alleging that the Application Services (excluding Hardware) infringes any U.S. intellectual property right of any third party, provided that Customer (a) gives prompt written notice of any such claim to Frost Solutions; (b) gives to Frost Solutions sole control of the defense and resolution of such claim; and (c) provides reasonable information and assistance to Frost Solutions in defending such claim.

10.2    If the Application Services (excluding Hardware) is held to infringe, or in Frost Solutions' opinion the Application Services is likely to be held to infringe any Intellectual Property rights of a third party, Frost Solutions may at its sole discretion and expense, either: (a) secure the right for Customer to continue use of the infringing Application Services; (b) replace or modify the infringing Application Services to make it non- infringing, provided such Application Services contains substantially similar functionality; or (c) terminate the licenses to the infringing Application Services modules granted hereunder. If Frost Solutions elects to terminate the Application Services Subscription under the foregoing provision, as Customer's sole and exclusive remedy, Frost Solutions shall refund to Customer any unused, prepaid license fees for the infringing Application Services modules indicated on the related Order Form. This Section 10.2 shall not apply to the extent that the alleged infringement arises from (x) use of the Services in combination with data, software, hardware, equipment, or technology not provided by Frost Solutions or authorized by Frost Solutions in writing; (y) modifications to the Services not made by Frost Solutions; or (z) Customer Data.

10.3    Customer shall indemnify, hold harmless, and, at Frost Solutions' option, defend Frost Solutions from and against any Losses resulting from any actions, suits, proceedings, or claims made or brought by a third party against Frost Solutions (a) that the Customer Data, or any use of the Customer Data in accordance with this Agreement, infringes or misappropriates such third party's intellectual property rights or (b) based on Customer's or any authorized user's (i) negligence or willful misconduct; (ii) use of the Services in a manner not authorized by this Agreement; (iii) use of the Services in combination with data, software, hardware, equipment or technology not provided by Frost Solutions or authorized by Frost Solutions in writing; or (iv) modifications to the Services not made by Frost Solutions, provided that Customer may not settle any third-party claim against Frost Solutions unless Frost Solutions consents to such settlement, and further provided that Frost Solutions will have the right, at its option, to defend itself against any such third-party claim or to participate in the defense thereof by counsel of its own choice.

10.4    THIS SECTION 10 SETS FORTH CUSTOMER'S SOLE REMEDIES AND FROST SOLUTIONS' SOLE LIABILITY AND OBLIGATION FOR ANY ACTUAL, THREATENED, OR ALLEGED CLAIMS THAT THE SERVICES

VUE0194695

INFRINGE, MISAPPROPRIATE, OR OTHERWISE VIOLATE ANY INTELLECTUAL PROPERTY RIGHTS OF ANY THIRD PARTY.

## 11.    TERM AND TERMINATION

11.1    This Agreement commences on the start date specified in a relevant Order Form and continues for the period specified in any Order Form unless sooner terminated as provided in this Agreement (the "**Initial Term**"). At the end of the Initial Term or any then-current Term (as defined below), unless either party notifies the other party upon written notice of its intent not to renew at least thirty (30) days prior to the expiration of the Initial Term or the then-current Term, this Agreement and applicable Order Form will automatically renew for the same period of time as the initial Order Form (each a "**Renewal Term**"). Collectively, the Initial Term and any Renewal Terms are referred to as "Term." In addition, prior to the expiration of any Term, Frost Solutions shall have the right to change the terms and conditions of this Agreement and any Order Form for any subsequent Renewal Term, in which case it shall notify Customer of such intent by written notice at least thirty (30) days prior to the expiration of the then-current Term and the parties shall enter into re-negotiation.

11.2    Either Customer or Frost Solutions may terminate this Agreement and any or all Order Forms as a result of a material breach of this Agreement by the other party, if (a) such party provides written notification to the other party of the material breach, and (b) such material breach is not cured or resolved within thirty (30) days of notification, or, in the case of a failure to pay fees in a timely manner by Customer, the material breach is not cured or resolved in a fifteen (15) day period.

11.3    Customer may terminate any Order Form at any time, however termination pursuant to this Section 11.3 shall not result in any refund of payments made or payable to Frost Solutions during the current Term, but only results in the termination of automatic renewals and any future payments caused by such automatic renewals no longer being due to Frost Solutions.

11.4    Upon expiration of the Term or termination of this Agreement or any Order Form, Customer's access and use of the Application Services and all of Customer's licenses and rights under this Agreement and/or the relevant Order Forms shall cease immediately.

11.5    In the event of expiration or termination of this Agreement, Customer shall immediately return all Hardware to Frost Solutions and shall be responsible for any costs and expenses associated with returning the Hardware to Frost Solutions. If Customer fails to return any unit of Hardware or any unit of Hardware is damaged and requires replacement upon receipt by Frost Solutions, Customer shall be invoiced the amount for replacing such unit(s), which is four (4) times the annual contract price for such unit(s).

## 12.    PUBLICITY

Customer hereby agrees, subject to Customer's review and approval, which approval shall not be unreasonably withheld or delayed, to: (a) allow Frost Solutions to use Customer's name and logo in Frost Solutions' customer list, on Frost Solutions' web site, and in Frost Solutions' marketing materials; and (b) allow Frost Solutions to reference Customer in a press release that announces Customer's decision to use the Application Services.

## 13.    SURVIVING PROVISIONS

This Section 13 and Sections 1, 5, 6, 7, 8.4., 9, 10, and 14 survive any termination or expiration of this Agreement. No other provisions of this Agreement survive the expiration or earlier termination of this Agreement.

## 14.    MISCELLANEOUS

14.1    This Agreement constitutes the entire agreement between the parties with respect to the subject matter herein, supersedes all prior agreements and Customer purchase order terms, whether written or oral, and supersedes and merges all prior discussions between the parties. No modification, amendment, or waiver of any provision of this Agreement shall be effective unless in writing and signed by the party against whom the modification, amendment or waiver is to be asserted. To the extent of any conflict or inconsistency between the provisions in the body of this Agreement and any Exhibit or Order Form, the terms of this Agreement shall prevail unless expressly stated otherwise in the applicable Exhibit or Order Form. Notwithstanding any language to the contrary therein, no terms or conditions stated in any other Customer order documentation (excluding Order Forms and Statements of Work) or in any Frost Solutions documentation shall be incorporated into or form any part of this Agreement, and all such terms or conditions shall be null and void. The language used in this Agreement shall be deemed to be language chosen by both parties hereto to express their mutual intent, and no rule of strict construction against either party shall apply to rights granted herein or to any term of condition of this Agreement.

14.2    All notices under this Agreement shall be in writing. Notices to Frost Solutions shall be addressed to the attention of its President and shall be deemed to have been given upon the second (2nd) business day after sending email to contracts@frostsolutions.io. Notices to Customer shall be addressed to Customer's signatory of this Agreement unless otherwise designated on the signature page, and shall be deemed to have been given upon (a) personal delivery; (b) the second (2nd) business day after mailing; (c) the second (2nd) business day after sending by confirmed facsimile; or (d) the second (2nd) business day after sending by email.

14.3    The parties are independent contractors. Nothing in this Agreement creates a partnership, franchise, joint venture, agency, fiduciary, or employment relationship between the parties.

14.4    In no event shall either party be liable to the other party, or be deemed to have breached this Agreement, for any failure or delay in performing its obligations under this Agreement (except for any obligations to make payments), if and to the extent such failure or delay is caused by any circumstances beyond such party's reasonable control, including but not limited to acts of God, flood, fire, earthquake, explosion, war, terrorism, invasion, riot or other civil unrest, strikes, labor stoppages or slowdowns or other industrial disturbances, or passage of law or any action taken by a governmental or public authority, including imposing an embargo.

14.5    Neither party may assign any of its rights or obligations hereunder, whether by operation of law or otherwise, without the prior written consent of the other party (not to be unreasonably withheld, conditioned or delayed). Notwithstanding the foregoing, either party may assign this Agreement in its entirety (including all Order Forms and SOWs), without consent of the other party, to an Affiliate or in connection with a merger, acquisition, corporate reorganization, or sale of all or substantially all of its assets not involving a direct competitor of the other party or to an Affiliate of such competitor. Any attempt by a party to assign its rights or obligations under this Agreement in breach of this Section shall be void and of no effect. Subject to the foregoing, this Agreement shall bind and inure to the benefit of the parties, their respective successors and permitted assigns.

14.6    No failure or delay by either party in exercising any right under this Agreement shall constitute a waiver of that right. Other than as expressly stated herein, the remedies provided herein are in addition to, and not exclusive of, any other remedies of a party at law or in equity.

VUE0194697

14.7    If any provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability will not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the parties shall negotiate in good faith to modify this Agreement so as to effect their original intent as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

14.8    This Agreement is governed by and construed in accordance with the internal laws of the State of Michigan without giving effect to any choice or conflict of law provision or rule that would require or permit the application of the laws of any jurisdiction other than those of the State of Michigan.

14.9    This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will be deemed to be one and the same agreement. Counterparts may be delivered via facsimile, electronic mail (including PDF or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method, and any counterpart so delivered will be deemed to have been duly and validly delivered and be valid and effective for all purposes.

*(Signature page follows)*

VUE0194698

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

**FROST SOLUTIONS, LLC**

By:_*Mike Kirsh*_____

Name: Mike Kirsh

Title: Owner

**Customer:City of Walker, MI**

By:_*Gary Postema*_____

Name:   Gary Postema

Title:   Director of Public Works

Frost Solutions, LLC  + City of Walker, MI | Mini RWIS MSA + Order Form v091422

VUE0194699

## EXHIBIT A

SERVICE LEVEL AGREEMENT

AVAILABILITY

Frost Solutions shall use commercially reasonable efforts to make the Application Services generally available twenty four (24) hours a day, seven (7) days a week at a rate of 75% uptime, ("**Uptime Commitment**") except for: (i) planned downtime, which shall be any period for which Frost Solutions provides at least eight (8) hours' notice that the Application Services will be unavailable; (ii) any unavailability caused by circumstances beyond Frost Solutions' reasonable control, including without limitation, computer or telecommunications failure or delays involving hardware or software not within Frost Solutions' possession or reasonable control, and network intrusions or denial of service attacks; (iii) any period of unavailability lasting sixty (60) minutes or less; or (iv) a disruption in the connection between the server on which Application Services is located based on a failure of Customer's connection to the public Internet or a general failure of the public Internet not related specifically to Application Services' infrastructure. If Frost Solutions fails to meet the Uptime Commitment for two (2) consecutive calendar months or fails to meet the Uptime Commitment for any three (3) calendar months within any twelve (12) month period, then by notice given within thirty (30) days after the end of the month which triggered Customer's right of termination, Customer may terminate this Agreement, and receive a refund of any pre-paid fees for periods after the effective date of termination. The provisions of this Service Level Agreement state Customer's sole and exclusive remedy for any service level deficiencies of any kind.

SUPPORT

Frost Solutions will use commercially reasonable efforts to provide Application Services support to Customer comprised of (i) on-line access to the Frost Solutions support at support@frostsolutions.io; and (ii) Frost Solutions' telephone support at 312-767-9423. Frost Solutions will use commercially reasonable efforts to respond to Customer's inability to access the Application Services or a component of the Application Services which had previously performed as expected within the guidelines laid out above.

# Signature Certificate

Reference number: 32HEN-5QD6E-XFLIB-REQM7

| Signer | Timestamp | Signature |
|---|---|---|
| **Gary Postema**<br>Email: gpostema@walker.city<br>Shared via link | | *Gary Postema* |
| Sent:<br>Viewed:<br>Signed: | 23 Sep 2022 15:24:31 UTC<br>23 Sep 2022 15:25:25 UTC<br>24 Oct 2022 17:04:42 UTC | IP address: 184.175.130.124<br>Location: Byron Center, United States |
| **Mike Kirsh**<br>Email: kirsh@frostsolutions.io | | *Mike Kirsh* |
| Sent:<br>Viewed:<br>Signed: | 23 Sep 2022 15:24:31 UTC<br>23 Sep 2022 16:01:36 UTC<br>24 Oct 2022 17:42:37 UTC | IP address: 174.211.100.171<br>Location: Tampa, United States |

Document completed by all parties on:
24 Oct 2022 17:42:37 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature
solution trusted by 30,000+ companies worldwide.



VUE0194701

**Frost Control Systems, Inc.**
1400 E Angela Blvd
IN US
finance@frostcontrolsys.net

# Invoice


**FROST CONTROL SYSTEMS**

BILL TO
Walker, MI

| INVOICE # | DATE | | | DATE | TERMS | ENCLOSED |
|---|---|---|---|---|---|---|
| 1070 | 10/14/2021 | | | 11/13/2021 | Net 30 | |

P.O. NUMBER
21049

| SERVICE | DESCRIPT | | QTY | RATE | AMOUNT |
|---|---|---|---|---|---|
| Services | Advanced Infrared Metering System 2021 Contract | | 3 | 2,200.00 | 6,600.00 |
| | | BALANCE DUE | | | **$6,600.00** |

Department # _202-463-726_
Line Item #

_11/22/21_

VUE0194702



## Invoice I00017

| | |
|---|---|
| **Date:** | 10/01/2020 |
| **Customer:** | City of Walker, MI |
| **Address:** | 4243 Remembrance Road NW<br>Walker, MI 49534 |
| **Account Manager:** | Cory Moore |
| **Network Engineer:** | Rusty Enderle |

| | |
|---|---|
| **Vendor:** | Frost Control Systems, Inc. |
| **Address:** | 1400 E Angela Blvd<br>Suite 119<br>South Bend, IN 46617 |
| **Payment details:** | Net 30 |
| **Due date:** | 10/30/2020 |
| **ACH Information:** | Account Name: Frost Control Systems, Inc<br>Routing Number: 071212128<br>Account Number: 10311819<br>Checking Account |

| | Part # | Name | Quantity | Price per UoM | Subtotal |
|---|---|---|---|---|---|
| 1 | 20A000004 | RWIS MINI 1.2 ASSEM, DP<br>1 Year Contract | 2 pcs. | $ 1,000.00 | $ 2,000.00 |
| 2 | 20A000001 | RWIS MINI 1.2 ASSEMBLY,<br>STANDARD<br>1 Year Contract | 1 pcs. | $ 1,000.00 | $ 1,000.00 |
| | **Total:** | | 3 pcs. | | $ 3,000.00 |
| | **Tax:** | | | 0.00% on $ 3,000.00 | $ 0.00 |
| | **Total including tax:** | | | | **$ 3,000.00** |

**Note:** If you have any questions about this invoice please contact Heather Hough, 574.993.4400, hhough@frostcontrolsys.com

*For detecting road conditions*

Department # _202-463-726_

Line Item # _____

Fund # _____

P.O # _____

Authorized Signature

Approval for Payment

Date _10/21/20_

VUE0194703



# CITY OF WALKER

4243 Remembrance Rd. N.W.
Walker, MI 49534
616-791-6854 fax 616-791-6791

**P.O. No. DPW 19-056**

## PURCHASE ORDER

**To:**

| | | | | |
|---|---|---|---|---|
| Name | Frost Control Systems | | | |
| Address | Suite 239 A - 1400 E Angela Blvd | | | |
| City | South Bend | State IN | ZIP 46617 | |
| Phone | 574-340-6226 | | | |

| | |
|---|---|
| Date | 9/18/2019 |
| Ship To: | |
| Attn: | |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| 1 | 3 - Frost Control Systems @ $2,200.00 | $6,600.00 | $6,600.00 |
| | Certificate of Liability Insurance showing additionally insured upon payment of invoice | | |
| | **Please put purchase order on Invoice and supply W-0** | | |
| | Requested by: Gary Postema | | |
| | Dept. and Use: DPW | | |
| | *Gary Postema* | | |
| | Approved by: (signature) | | |
| | **Approved** | | |
| | | SubTotal | $6,600.00 |
| | | **TOTAL** | $6,600.00 |

**Tax Exempt ID #38-1705421W**

- ○ Cash
- ◉ Check
- ○ Credit Card

Expires _____

CC: Finance Office, DPW

*Please put Purchase Order number on the Invoice and Packing Slip.*

VUE0194704



**KCRC**

## KENT COUNTY ROAD COMMISSION BID TABULATION

Tabulation of Bids for:  **Contract #19-61:  Purchase of Road Weather Information Systems (RWIS) in a joint bid with the City of East Grand Rapids, City of Grand Rapids, City of Grandville, City of Kentwood, City of Walker, City of Wyoming and the Montcalm County Road Commission**

Date:  **June 27, 2019 8:30 AM**

| Bidder | Cost Per Unit | Total Cost 60 Units |
|---|---|---|
| **Frost Control Systems** | **2,200** | **$132,000.00** |
| Narwhal Group | 3,950 | $237,000.00 |
| Boschung America | 15,244.16 | $914,649.60 |

F:\PURCHASE\BID\19-61 road weather systems

VUE0194705



**Kent County
Road Commission**

## INVITATION TO BID

Sealed bids will be received by the Kent County Road Commission, 1500 Scribner Avenue NW, Grand Rapids, Michigan 49504 until **Thursday, June 27, 2019, 8:30 AM deadline**, at which time they will be publicly opened and read in the H.T. Conference Room for:

### Contract #19-61:  Purchase of Road Weather Information Systems

All bids are to be in sealed envelopes and plainly marked as to the equipment, material, or service being bid upon and the name of the Bidder.

The Board reserves the right to reject any and all Proposals or to waive irregularities therein, and to accept any Proposals which, in the opinion of the Board, may be most advantageous and to the best interest of the County.

> BOARD OF COUNTY ROAD COMMISSIONERS
> OF THE COUNTY OF KENT
>
> By: Mark E. Rambo, Chair

---------------------------------------------------------------------------------------------------

**PLEASE ACKNOWLEDGE RECEIPT OF THIS INVITATION TO BID AND FAX BACK TO 616.242.6980 OR EMAIL purchasingdept@kentcountyroads.net**

Company _____

Authorized Signature _____ _____

Date _____

VUE0194706



**Kent County
Road Commission**

## INSTRUCTION TO BIDDERS

Sealed bids will be publicly opened at the offices of the Board of County Road Commissioners of the County of Kent, State of Michigan, located at 1500 Scribner Avenue NW, Grand Rapids, MI 49504.

Refer to the **INVITATION TO BID** for the exact timing and for the identification of the bids as related to furnishing materials, services, equipment, work and/or supplies with the terms, conditions, specifications, drawings, plans, and special provisions as stated herein and hereto attached.

The Board's normal practice is to open and read the bids then refer the file to Staff for tabulation and analysis. During this period, the files are closed until this action is complete. Generally, this involves three or four days depending upon the nature of the bid. Copies of the bid tabulations are made available only after this time and upon request to the Purchasing Department, by mail or phone (616) 242-6928.

1. All bids must be submitted on the Board's bid blank form when provided. The bid shall be legibly prepared in ink or typewriter. Erasures or alterations must be initialed by the bidder.

2. **Specifications and plans should not** be returned with bid unless otherwise stated herein.

3. Bid shall be mailed or delivered. It shall be in a sealed envelope and identified on the outside as to the bid concerned. If a printed label is enclosed, bidders are requested to complete it and attach it to the envelope.

4. Bids will not be accepted after the time designated for the opening of the bids. The bidder shall assume full responsibility for delivery of bids prior to the appointed hour for opening same and shall assume the risk of late delivery or non-delivery regardless of the manner he/she employs for the transmission thereof. **Bids will be accepted at the Purchasing Department** on behalf of the Board at any time during normal business hours only, said hours being 7:30 AM to 4:00 PM Mondays through Fridays, legal holidays excepted.

5. It is understood that the Board of County Road Commissioners is a Governmental unit and as such, is exempt from the payment of all State and Federal taxes, except as allowed by the regulatory agencies to be included in the cost of materials and services.

6. The bidder, by execution of the bid proposal, thereby declares that the bid is made without collusion with any other person, firm, or corporation, and agrees to furnish all bid items in strict adherence with all Federal regulatory measures.

7. The Board reserves the right to reject any and all bids, to waive any irregularities therein, and to accept any bid which, in the opinion of the Board, may be most advantageous and to the best interest of the County. In case of error in the extension of prices in the bid or other arithmetical error, the unit prices will govern.

VUE0194707

**Specifications for
Contract #19-61:
Road Weather Information Systems**

**General Specifications**

It is the intent of the Kent County Road Commission to purchase road weather information systems (RWIS) and related technical support in a joint bid with participating agencies.

The Kent County Road Commission shall act as the lead agency and will represent the participating agencies in the administration of the contract. Hereafter, reference to the "Road Commission" shall be understood to include participating agencies.

**General Specifications**

A.  **Item:**

Road weather information systems (RWIS) that provides regional road/weather information to support transportation related decisions within Kent County, Michigan.

B.  **Quantity:**

60 systems

C.  **Participating Agencies:**
Participating agencies in this contract shall issue their agency's Contract Agreement and or Purchase Order for their requirements and must be invoiced accordingly.

1.  Kent County Road Commission
    Jerry Byrne, Deputy Managing Director – Operations
    Phone: 616-242-6950, jbyrne@kentcountyroads.net

2.  City of East Grand Rapids
    Doug Lafave
    Phone: 616-949-2210, dlafave@eastgr.org

3.  City of Grand Rapids
    James Hurt
    Phone: 616-456-3312, jhurt@grand-rapids.mi.us

4.  City of Grandville
    Charles Sundblad
    Phone: 616-538-1990, sundbladc@cityofgrandville.com

5.  City of Kentwood
    John Gorney
    Phone: 616-554-0824, gorneyj@ci.kentwood.mi.us

VUE0194708

4

6.  City of Walker
    Gary Postema
    Phone: 616-791-6868, gpostema@walker.city

7.  City of Wyoming
    Aaron Vis
    Phone: 616-530-7264, avis@wyoming.mi.gov

8.  Montcalm County Road Commission
    Mark Christensen
    Phone: 989-831-5285, mark@montcalmroads.com

**D.    Award:**

1.  The Road Commission reserves the right to award this bid to the contractor/vendor that can provide the system and support as specified, and is in the best interest of the Rood Commission and participating agencies.

2.  The right is reserved by the Kent County Road Commission for other governmental agencies to piggyback upon award.

**E.    Insurance Requirements:**

1.  To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Kent County Road Commission and its agents and employees from and against all claims, damages, losses and expenses including, but not limited to, attorneys' fees arising out of or resulting from the performance of this Contract including claims, damages, losses and expenses attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property, but only to the extent caused by the fault, negligent acts, or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage loss or expense is caused in part by the parties indemnified hereunder. This obligation does not include an obligation to indemnify the parties, indemnified hereunder for their sole negligence and shall not be construed to negate or modify other rights or obligations of indemnity that otherwise exist as to the parties or persons described herein, arising out of and during the progress and to the completion of work all in accordance with Public Act 468 of 2012 and the 2012 Michigan Department of Transportation's "Standard Specifications for Construction", Division 1, paragraph 1.07.10 with the following minimum requirements:

    Workman's Compensation  Statutory Coverage

    Bodily Injury and Property Damage Other Than Automobile:
    Each Occurrence          $1,000,000
    Aggregate                $2,000,000
    Bodily Injury Liability and Property Damage Liability Automobile:
    Bodily Injury Liability $500,000 Each Person, Each Occurrence $1,000,000
    Property Damage Liability   $1,000,000 Each Occurrence

VUE0194709

Combined Single Limit for Bodily Injury and Property Damage Liability
Each Occurrence             $2,000,000

Insurance Certificate declaring Kent County Road Commission as additional insured, not certificate holder, must be issued and shall become part of the contract.

2.    Contractor shall maintain current up-to-date insurance coverage during the term of the contract and failure to do so shall result in termination of said contract.

3.    Certificate must be submitted within fifteen days upon notification of award of Contract and prior to Contract signing.

**F.    Renewal Options:**

The Road Commission, at its option, reserves the right to negotiate the extension of the contract for up to five additional years, in one year increments, upon mutual agreement of both parties.

**G.**    Submission of bid will be construed as a conclusive presumption that the Contractor is thoroughly familiar with the bid requirements and specifications and that he/she understands and agrees to abide by each and all of the stipulations and requirements contained therein.

**H.**    "The KCRC, in accordance with Title VI of the Civil Rights Act of 1964, 78 Stat. 252, 42 USC 2000d to 2000d-4 and Title 49, Code of Federal Regulations, Department of Federally-assisted programs of the Department of Transportation issued pursuant to such Act, hereby notifies all bidders that it will affirmatively insure that in any contract entered into pursuant to this advertisement, minority business enterprises will be afforded full opportunity to submit bids in response to this invitation and will not be discriminated against on the grounds of gender, disability, race, color, or national origin in consideration for an award."

During the performance of this contract, the contractor, for itself, its assignees and successors in interest (hereinafter referred to as the "contractor") agrees as follows:

1.    **Compliance with Regulations:**  The contractor shall comply with the Regulations relative to non-discrimination in Federally-assisted programs of the Department of Transportation, Title 49, code of Federal Regulations, Part 21 as they may be amended from time to time, (hereinafter referred to as the Regulations), which are herein incorporated by reference and made a part of this contract.

2.    **Non-discrimination:**  The contractor, with regard to the work performed by it during the contract, shall not discriminate on the grounds of race, color, or national origin in the selection and retention of subcontractors, including procurements of materials and leases of equipment.   The contractor shall not participate either directly or indirectly in the discrimination prohibited by section 21.5 of the Regulation, including employment practices when the contractor covers a program set forth in Appendix B of the Regulations.

3.    **Solicitations for Subcontracts, Including Procurements of Materials and Equipment:** In all solicitations either by competitive bidding or negotiation made by the contactor for work to be performed under a subcontract, including procurements of materials or leases

VUE0194710

Case 1:22-cv-00401-SE    Document 131-28    Filed 03/19/26    Page 31 of 37

of equipment, each potential subcontractor or supplier shall be notified by the contractor of the contractor's obligations under this contract and the Regulations relative to non-discrimination on the grounds of race, color, or national origin.

4. **Information and Reports:**  The contractor shall provide all information and reports required by the Regulations, or directives issued pursuant thereto, and shall permit access to its books, records, accounts, other sources of information, and its facilities as may be determined by the Kent County Road Commission to be pertinent to ascertain compliance with such Regulations or directives.  Where any information required of a contractor is in the exclusive possession of another who fails or refuses to furnish this information, the contractor shall so certify to the State highway department, or the Federal Highway Administration as appropriate, and shall set forth what efforts it has made to obtain the information.

5. **Sanctions for Non-compliance:**  In the event of the contractor's non-compliance with the non-discrimination provisions of this contract, the Kent County Road Commission shall impose such contract sanctions as it or the Federal Highway Administration may determine to be appropriate, including, but not limited to:

   (a)    Withholding of payments to the contractor under the contract until the contractor complies, and/or

   (a)    Cancellation, termination or suspension of the contract, in whole or in part.

6. **Incorporation of Provisions:**  The contractor shall include the provisions of paragraphs (1) through (6) in every subcontract, including procurement of materials and leases of equipment, unless exempt by the Regulations, or directives issued pursuant thereto.  The contractor shall take such action with respect to any subcontract or procurement as the Kent County Road Commission may direct as a means of enforcing such provisions including sanctions for non-compliance:  Provided, however, that, in the event a contractor becomes involved in, or is threatened with, litigation with a subcontractor or supplier as a result of such direction, the contractor may request the Kent County Road Commission to enter into such litigation to protect the interests of the County, and, in addition, the contractor may request the State highway department to enter into such litigation to protect the interests of the State and/or the United States to enter into such litigation to protect the interests of the United States.

VUE0194711

    4.      Humidity (measures 0 to 100 percent)

b.    Accuracy of the temperature sensors shall be 0.5 degrees Fahrenheit when the sensor is 50 feet or less from the ground surface, and 1.0 degrees Fahrenheit when the sensor is between 50 and 100 feet of the ground surface.

c.    Sensors utilizing lasers shall ensure that they are eye-safe, Class 1 lasers as defined by the International Electrotechnical Commission.

d.    Each sensor must take a reading at least every 10 minutes for externally powered devices, and 15-20 minutes for internally powered devices.

2.    Power:

The vendor shall provide sensor units that are either internally or externally powered. For externally powered units, each community shall provide power 120V AC power, standard 14 AWG cabling to the sensor, and installation of a vendor-provided locking plug and boot. For power provided from traffic signal cabinets, a 15 amp breaker must be installed on the power feed to the sensor. Each unit shall draw no more than 15 watts.

3.    Communications:

Each sensor unit shall have an integrated remote processing unit, capable of transmitting information over a cellular or LoRa environment. Modems must be capable of transmitting information in an environment ranging from -30 to 120 degrees Fahrenheit. For sensing units directly powered with electricity, each sensing unit must relay information to the host at least every 10 minutes. For battery powered devices, information must be transmitted to the host at least once every 15 to 20 minutes. All transmitted information must include all complete information collected since the last transmission.

4.    Hosting Requirements:

The following details the responsibilities of the vendor with regard to hosting the system:

a.    System needs to be accessible through a web browser with a secure login, on any desktop or mobile device. An application for both android and apple devices is preferred but not required. The system must be accessible by at least 40 logins.

b.    System shall include data from all sensors listed, updated with current information at intervals specified.

c.    Information shall be available in graphical format for all data collected, including the ability to view multiple locations and multiple sensor data at one time.

d.    Data must be exportable to Microsoft Excel.

e.    Users must have access to historical data through a user-defined date range search.

f.    System must be able to configure user-definable alarms that will notify (via email) one or more individuals based on weather setpoints.

VUE0194712

9

    g.     Vendor is expected to host data.  Up to 18 months of data must be available for searching.

    h.     Vendor is expected to provide training on system.

5.    Integration with Existing Weather Services:

The vendor shall include integration with Iteris, DTN and/or NOAA as part of the unit pricing.  Vendor shall provide a subcontract with either Iteris or DTN as a separate line item for consideration. This subcontract shall include MDSS spot pavement forecasting for at least 8 locations along with a list of services included in the subcontract. The subcontract shall also be subject to the hosting requirements with regard to the number of users.

## C.    Warranty

Vendor shall provide warranty information as part of bid submittal.  Warranty shall include at least a 75% uptime commitment and stipulate penalties for failing to meet uptime commitments.

## D.    Schedule

1.    The schedule for implementation will be prior to October 1, 2019, unless otherwise agreed to by participating agencies.

2.    Sensor unit calibration shall occur within one month of installation and shall be included in the unit cost.  If a multi-year contract is awarded, sensor calibration shall occur on an annual basis in the fall of each year.  Sensor calibration results shall be submitted to the participating agencies.

## E.    Term

Unit prices shall be provided for one, three, and five year terms as noted on the bid form.

NOTE:    Questions concerning specifications should be directed to Aaron Vis, Assistant Director of Public Works, City of Wyoming, at 616-530-7264 or Avis@wyomingmi.gov.

K:\Purchasing\SPEC\Road Weather Info Systems.doc2 - 6/13/19

VUE0194713

**Bid Form**
**Contract #19-61:**
**Road Weather Information Systems**

## Regional Road Weather Information System

| Number of Units | Per Unit Cost | Total Annual Cost |
| --- | --- | --- |
| 60 | $ | $ |
| | | |

## Forecasting Weather Service Integration

| Vendor | Total Annual Cost |
| --- | --- |
| NOAA | |
| Iteris | |
| DTN | |

State discount applied for three year term agreement: _____

State discount applied for five year term agreement: _____

Delivery date_____

Company name_____

Company address    _____

_____

Telephone number  _____Fax number _____

Email address    _____

Signature and Title of Authorized Agent: _____

Written

_____

Typed / printed

Date:  _____

Federal employer ID#: _____

VUE0194714

7

## Technical Specifications
## Road Weather Information systems

### A.  Introduction

1.  The Road Commission and its neighboring communities intend to establish a regional road weather information system. The goal of this system is to provide near real-time information about road conditions and weather so that road maintenance practices can be optimized and/or the level of service provided can be increased.  The system must include hardware, software and services that are easily installed, maintained and scalable as noted in the following specifications.  The system must be a turn-key system, including the hardware, network design, installation, software, and maintenance.

2.  It is the intent of the Road Commission to solicit bids for the proposed system.  The communities intending to cooperatively purchase and participate in this regional road weather information system include:  City of East Grand Rapids, City of Grand Rapids, City of Grandville, City of Kentwood, City of Walker, City of Wyoming and the Montcalm County Road Commission.

3.  Community Responsibilities:

    a.  Provide and pay for electric service where required
    b.  Provide 120V AC and cabling where required
    c.  Provide a pole, mast arm and/or similar structural support for mounting equipment
    d.  Provide installation of equipment and removal of equipment at conclusion of contract term.

4.  Vendor Responsibilities:

    a.  Provide and deliver hardware, including attachment devices
    b.  Provide and set up wireless communications from each site
    c.  Provide site commissioning, calibration documentation and testing of equipment
    d.  Provide technical support, documentation and training, as needed
    e.  Provide a hosted environment and data display dashboard
    f.  Provide any and all software updates, as required
    g.  Pick up devices at the end of the contract term.

### B.  Scope of Work

1.  Sensors:

    a.  The vendor shall provide a non-invasive (out of pavement) road weather information system that includes:

        1.  Pavement Temperature (measures -40 to 140 degrees Fahrenheit)
        2.  Air Temperature (measures -40 to 140 degrees Fahrenheit)
        3.  Dew Point Temperature (measures -40 to 140 degrees Fahrenheit)

VUE0194715



# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
11/1/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Jose Vargas | | |
|---|---|---|---|
| Jose Vargas Insurance Agency | PHONE (A/C, No, Ext): 5742332147 | | FAX (A/C, No): |
| 4122 W Western Ave | E-MAIL ADDRESS: jose@jvargasins.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| South Bend                IN  46619 | INSURER A : OHIO SECURITY INS CO | | 24082 |
| INSURED | INSURER B : OHIO CAS INS CO | | 24074 |
| Frost Control Systems | INSURER C : | | |
| 1400 E Angela Blvd | INSURER D : | | |
| | INSURER E : | | |
| South Bend                IN  46617 | INSURER F : | | |

## COVERAGES          CERTIFICATE NUMBER:                    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **X** COMMERCIAL GENERAL LIABILITY<br>☐ CLAIMS-MADE **X** OCCUR<br>**X** SPC<br><br>GEN'L AGGREGATE LIMIT APPLIES PER:<br>☐ POLICY ☐ PROJECT ☐ LOC<br>☐ OTHER: | Y | Y | BLS58995762 | 07/15/2019 | 07/15/2020 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 500,000 |
| | | | | | | | MED EXP (Any one person) | $ 15,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 3,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 3,000,000 |
| | | | | | | | | $ |
| | AUTOMOBILE LIABILITY<br>☐ ANY AUTO<br>☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS<br>☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | Y | Y | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | **X** UMBRELLA LIAB  **X** OCCUR<br>☐ EXCESS LIAB  ☐ CLAIMS-MADE<br>☐ DED **X** RETENTION $ 10,000 | Y | Y | USO58995762 | 07/15/2019 | 07/15/2020 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | AGGREGATE | $ 1,000,000 |
| | | | | | | | TRIA | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | Y | | | | ☐ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| CITY OF WALKER<br><br>4243 REMEMBRANCE RD NW<br><br>GRAND RAPIDS MI 49534 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br><br>*JOSE VARGAS* |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

VUE0194716


**Safe travels.**

# SALES INVOICE

Traffic and Parking Control Co., Inc.
5100 West Brown Deer Rd
Brown Deer, WI 53223
Phone No.:800-236-0112
E-Mail: customerservice@tapconet.com

| DATE |
|---|
| 2/20/2024 |
| **INVOICE NO.** |
| I772954 |
| **CUSTOMER NO.** |
| C39614 |

Page: 1

**BILL TO**

City of Walker
Gary Postema
4243 Remembrance Rd Nw
Walker, MI 49534-7502
United States of America

**SHIP TO**

City of Walker
Gary Postema
4243 Remembrance Rd Nw
Walker, MI 49534-7502
United States of America

| P.O. NO. | SHIP VIA | Order Number | SALESPERSON | DUE DATE | TERMS |
|---|---|---|---|---|---|
| 23-0043 | | SO741207 | Cory Moore | 3/21/2024 | Net 30 DAYS |
| | BEST RATE, BEST RATE | | | | |

| Item/Description | U/M | Order Qty | Quantity | Unit Price | Total Price |
|---|---|---|---|---|---|
| 149987 | Each | 3 | 3 | 2,250.00 | 6,750.00 |
| Lease,ARC1 RWIS Unit,Solar,Platform Michigan Pricing | | | | | |
| PO# 23-0043 | | | | | |
| 3200-0000 | | 1 | 1 | 149.97 | 149.97 |
| FREIGHT SALES | | | | | |

Department # 202-460-956.50
Line Item #
Fund #
P.O. #
Authorized Signature
Approved for Payment
Date 3/5/24

| | |
|---|---|
| Subtotal: | 6,899.97 |
| Invoice Discount: | 0.00 |
| Total Sales Tax: | 0.00 |
| **Total USD:** | **6,899.97** |
| **Payment Applied** | **0.00** |
| **Remaining Amount** | **6,899.97** |

Remittance Address:
P O Box 88229, Milwaukee, WI 53288-8229

All prices are listed in US Dollar (USD)
For terms and conditions, please visit https://tapconet.com/terms-conditions

VUE0194717