## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

FROST SOLUTIONS, LLC,

        Plaintiff,

v.

PATRICK BAGLIEN, CHRISTOPHER
LAREAU, and VUE ROBOTICS, LLC,

        Defendants.

Civil Action No. 1:22-cv-00401-SE

### DECLARATION OF CHRISTOPHER LAREAU IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT ON ONE ASPECT OF COUNT III (BREACH OF SEPARATION AGREEMENT)

I, Christopher Lareau, do hereby declare and state the following:

1.      I am a named defendant in the above-captioned action.

2.      I submit this declaration in support of my *Motion for Partial Summary Judgment on One Aspect of Count III (Breach of Separation Agreement)* and memorandum of law in support thereof filed contemporaneously therewith.

3.      If called as a witness, I could and would testify competently to the information set forth in this declaration.

4.      On April 8, 2020, I accepted a written offer of employment with Frost Control Systems, Inc. d/b/a Frost Technologies ("Frost Control") as a Regional Vice President.  A true and accurate copy of my offer of employment containing the terms of my employment with Frost Control bearing production number FROST_0027849 is attached hereto as Exhibit 1.

5.      In or around May 2021, my position changed to Vice President of Sales.

6.      This position change did not result in a compensation increase or a change in commission structure or benefits.

1

7.      Throughout my tenure at Frost Control, the company struggled to remain viable.

8.      On or about September 23, 2021, ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████      A true and correct copy of the September 23, 2021 email ████████

████████████████████████      bearing productions numbers Frost 0037542-Frost-Frost_0037546 is attached hereto as Exhibit 2.

9.      On September 27, 2021, I notified Frost Control's Board of Directors that I was resigning from Frost Control effective October 11, 2021.  A true and correct copy of my notice of resignation bearing production numbers FROST_0028342 – FROST_0028343 is attached hereto as Exhibit 3.

10.     On September 30, 2021, I executed the version of the separation agreement attached hereto as Exhibit 4, which is a true and accurate copy of the fully executed separation agreement that was attached as Exhibit 3 to the complaint filed in this action.

11.     I never consented to assignment of the Separation Agreement from Frost Control to Plaintiff Frost Solutions, LLC or any other party.

12. After resigning from Frost Control, I was never rehired by Frost Control Systems, Inc. d/b/a Frost Technologies ("Frost Control") and I never worked for Plaintiff Frost Solutions, LLC ("Frost Solutions").

13. I did not learn until receiving the complaint filed by Frost Solutions against me and the other defendants in this action in or around October 2022 that the separation agreement I signed with Frost Control, *see* Exhibit 4, was purportedly sold to Frost Solutions.

3

I declare under penalty of perjury as provided by law that the statements contained in this declaration are true and correct to the best of my knowledge and belief.

EXECUTED this 17th day of February 2026.

Christopher Lareau

# EXHIBIT 1

# FILED UNDER SEAL

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

FROST SOLUTIONS, LLC,

                    Plaintiff,

          v.                                    Civ. Action No. 1:22-cv-00401-SE

PATRICK BAGLIEN, CHRISTOPHER LAREAU,
and VUE ROBOTICS, LLC,

                    Defendants.

## NOTICE OF CONVENTIONAL FILING

Please take notice that Patrick Baglien, Christopher Lareau, and Vue Robotics, LLC have conventionally filed the following attachment or exhibit:  Exhibit 1 to Declaration of Christopher Lareau in Support of His Motion for Partial Summary Judgment on One Aspect of Count III (Breach of Separation Agreement).

This attachment or exhibit has not been filed electronically because it is subject to Paragraph 6 of the Protective Order (Doc. 28).

                              Respectfully submitted,

                              PATRICK BAGLIEN, CHRISTOPHER LAREAU,
                              AND VUE ROBOTICS, LLC,

                              By their attorneys

                              Sheehan Phinney Bass & Green, P.A.

Dated:  February 17, 2026          By: /s/     Ryan Lirette
                                   David W. McGrath (# 9347)
                                   James P. Harris (# 15336)
                                   Ryan Lirette (# 19561)
                                   1000 Elm Street, P.O. Box 3701
                                   Manchester, NH 03105-3701
                                   603-627-8152
                                   dmcgrath@sheehan.com;
                                   jharris@sheehan.com;
                                   rlirette@sheehan.com

**CERTIFICATE OF SERVICE**

I hereby certify that this pleading was served on this date on all parties of record through the Court's electronic filing system.

*/s/ Ryan Lirette*
Ryan Lirette

# EXHIBIT 2

# FILED UNDER SEAL

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

FROST SOLUTIONS, LLC,

                Plaintiff,

           v.

PATRICK BAGLIEN, CHRISTOPHER LAREAU,
and VUE ROBOTICS, LLC,

                Defendants.

Civ. Action No. 1:22-cv-00401-SE

**NOTICE OF CONVENTIONAL FILING**

       Please take notice that Patrick Baglien, Christopher Lareau, and Vue Robotics, LLC have conventionally filed the following attachment or exhibit: <u>Exhibit 2</u> to Declaration of Christopher Lareau in Support of His Motion for Partial Summary Judgment on One Aspect of Count III (Breach of Separation Agreement).

       This attachment or exhibit has not been filed electronically because it is subject to Paragraph 6 of the Protective Order (Doc. 28).

                           Respectfully submitted,

                           PATRICK BAGLIEN, CHRISTOPHER LAREAU,
                           AND VUE ROBOTICS, LLC,

                           By their attorneys

                           Sheehan Phinney Bass & Green, P.A.

Dated:  February 17, 2026       By: <u>/s/     *Ryan Lirette*       </u>
                           David W. McGrath (# 9347)
                           James P. Harris (# 15336)
                           Ryan Lirette (# 19561)
                           1000 Elm Street, P.O. Box 3701
                           Manchester, NH 03105-3701
                           603-627-8152
                           dmcgrath@sheehan.com;
                           jharris@sheehan.com;
                           rlirette@sheehan.com

## CERTIFICATE OF SERVICE

I hereby certify that this pleading was served on this date on all parties of record through the Court's electronic filing system.

/s/ Ryan Lirette
Ryan Lirette

# EXHIBIT 3

# FILED UNDER SEAL

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

FROST SOLUTIONS, LLC,

                    Plaintiff,

        v.                                        Civ. Action No. 1:22-cv-00401-SE

PATRICK BAGLIEN, CHRISTOPHER LAREAU,
and VUE ROBOTICS, LLC,

                    Defendants.

**NOTICE OF CONVENTIONAL FILING**

        Please take notice that Patrick Baglien, Christopher Lareau, and Vue Robotics, LLC have conventionally filed the following attachment or exhibit:  Exhibit 3 to Declaration of Christopher Lareau in Support of His Motion for Partial Summary Judgment on One Aspect of Count III (Breach of Separation Agreement).

        This attachment or exhibit has not been filed electronically because it is subject to Paragraph 6 of the Protective Order (Doc. 28).

                            Respectfully submitted,

                            PATRICK BAGLIEN, CHRISTOPHER LAREAU,
                            AND VUE ROBOTICS, LLC,

                            By their attorneys

                            Sheehan Phinney Bass & Green, P.A.

Dated:  February 17, 2026          By: */s/    Ryan Lirette*
                            David W. McGrath (# 9347)
                            James P. Harris (# 15336)
                            Ryan Lirette (# 19561)
                            1000 Elm Street, P.O. Box 3701
                            Manchester, NH 03105-3701
                            603-627-8152
                            dmcgrath@sheehan.com;
                            jharris@sheehan.com;
                            rlirette@sheehan.com

## CERTIFICATE OF SERVICE

I hereby certify that this pleading was served on this date on all parties of record through the Court's electronic filing system.

/s/ Ryan Lirette
Ryan Lirette

# EXHIBIT 4

<u>SEPARATION AGREEMENT AND MUTUAL RELEASE</u>

This Separation Agreement and Mutual Release ("Agreement") is entered into and effective as of September 30, 2021 by and among Frost Control Systems, Inc. ("Employer" or the "Company") and Christopher Lareau ("Employee"). Employer and Employee are referred to herein as "the Parties."

## I.    RECITALS

WHEREAS, Employee is currently employed as Employer's Vice President of Sales;

WHEREAS, Employee has notified Employer that they will be resigning their position effective October 11th, 2021 (the "Resignation Date");

WHEREAS, Employee's last day of employment by Employer will be October 8th, 2021 (the "Final Work Date");

WHEREAS, the Parties are entering into this Agreement to provide Employee with certain benefits in exchange for the Parties' agreement to a mutual release of all claims against the Releasees (defined below) and Employee, including without limitation any claim related to Employee's employment with Employer or the termination of that employment;

WHEREAS, this Agreement does not constitute an admission by Employer of any violation of federal, state or local law, ordinance or regulation or of any violation of Employer's policies or procedures or of any liability or wrongdoing whatsoever;

WHEREAS, this Agreement and anything in this Agreement shall not be construed to be and shall not be admissible in any proceeding as evidence of liability or wrongdoing by Employer or the Releasees. This Agreement may be introduced, however, in any proceeding to enforce this Agreement. Such introduction shall be pursuant to an order protecting its confidentiality.

NOW THEREFORE, in consideration of the terms, conditions and agreements set forth below, Employer and Employee agree as follows:

## II.    AGREEMENTS

1.    <u>Consideration</u>. Provided that Employee executes this Agreement no later than seven (7) calendar days after this Agreement was provided to Employee, Employer and Employee will agree to the following:

    a.    The Company shall pay Employee $14,539.50 as compensation for sales commissions

    b.    Employee will use the remainder of their accrued vacation balance from the Effective Date of this agreement through the Final Work Date - 7 days of vacation time. This will consume all available vacation to Employee and there will be no accrued vacation unused by Employee.

1

2.    <u>Mutual General and Special Release.</u>

a.    <u>Release by Employee.</u>  In consideration of the covenants undertaken herein by Employer, and except for those obligations created by or arising out of this Agreement, Employee, on his own behalf and on behalf of his descendants, dependents, heirs, executors, administrators, assigns, predecessors and successors, does hereby covenant not to sue and acknowledges complete satisfaction of and to the fullest extent permitted by law hereby releases, absolves and discharges Employer and its parents, subsidiaries, divisions and affiliates, past and present, its and their respective trustees, directors, officers, shareholders, agents, attorneys, insurers, employees, representatives, assigns, and successors, past and present, and employee benefit plans and programs (and the trustees, administrators, fiduciaries and insurers of such plans and programs) (hereinafter collectively referred to as "Releasees"), with respect to and from any and all claims, demands, rights, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, debts, costs, expenses, attorneys' fees, damages, judgments, orders and liabilities of whatever kind or nature in law, equity or otherwise (collectively "Claims"), whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which he now owns or holds or has at any time heretofore owned or held as against said Releasees, or any of them, including specifically but not exclusively and without limiting the generality of the foregoing, any and all Claims, demands, agreements, obligations and causes of action, known or unknown, suspected or unsuspected by Employee: (i) arising out of or in any way connected to Employee's employment with Employer or the termination of that employment; (ii) arising out of or in any way connected with any other transactions, occurrences, acts or omissions or any loss, damage or injury whatever, known or unknown, suspected or unsuspected, resulting from any act or omission by or on the part of said Releasees, or any of them, committed or omitted prior to the date the Employee executes this Agreement.  This includes, but is not limited to, a release of all rights and claims the Employee may have related to:

    i.    **Anti-Discrimination Statutes,**  such as Title VII of the Civil Rights Act of 1964, § 1981 of the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Americans with Disabilities Act, § 503 and § 504 of the Rehabilitation Act of 1973, the Genetic Information and Non-Disclosure Act of 2008, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Indiana Civil Rights Act, the Hoosiers with Disabilities Act, and any other federal, state or local law or regulations prohibiting discrimination on the basis of race, color, national origin, gender identity, disability, age, marital status, sexual orientation, genetic information or any other protected characteristic;

    ii.    **Federal and State Employment Statutes,** such as the Family Medical Leave Act, the Fair Labor Standards Act, Indiana minimum wage and wage payment laws, or any other state or local statute or regulation that lawfully can be released relating to salary, commission, compensation, benefits or any other claims for any payments to which Employee claims he is entitled, the Worker Adjustment and Retraining Notification Act,

2

FROST_0015589

the Employee Retirement Income Security Act (ERISA), the Uniformed Services Employment and Reemployment Rights Act, the Occupational Safety and Health Act, the Sarbanes-Oxley Act, the False Claims Act, the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act"), the Fair Credit Reporting Act, or any claim for severance pay, pension or other retirement benefits, sick leave, holiday pay, life insurance, health or medical insurance or any other fringe benefit, or disability benefits;

iii.  **Other Laws and Claims**, such as breach of implied or express employment contract claims, intentional or negligent infliction of emotional distress, wrongful discharge, tort claims, retaliatory discharge claims, negligent hiring, retention or supervision claims, violation of any public policy or statute (including any local or municipal laws, regulations, or ordinances), violation of any meal or rest break statutes, violation of any statutes or rules regulating wage statements, any state or local statute relating to unfair competition, any state or local statute or regulation relating to private enforcement of state labor codes, invasion of privacy claims, intentional interference with contract claims, negligence claims, detrimental reliance claims, any covenant of good faith and fair dealing claims, loss of consortium claims, promissory estoppel claims, personal injury claims, common law claims, claims for compensatory or punitive damages, claims for back pay, or any other claim, however styled, relating to or arising out of Employee's relationship with Employer or its affiliates prior to the execution date of this Agreement.

iv.  **Benefit Plans**, such as any of Employer's stock option, bonus, incentive compensation, commission, profits interest, medical, dental, life insurance, retirement, disability, other compensation, any employee benefit plan, program, or policy, or Employee's entitlement to any benefit under any plan, program or policy, or any rights employee may have to the continued receipt of health or life insurance-type benefits plans.

3.  No Pursuit of Released Claims.  Employee agrees never to sue Employer other in any forum for any claim covered by the above waiver and release language in Paragraph 4 of this Agreement.  If either Party violates this General Release and Waiver by suing any of the Releasees and should such litigation be found to violate the provisions of this Agreement, then the non-prevailing party shall be liable to the prevailing party for their costs and attorneys' fees in prosecuting or defending such litigation.

If Employee files or is included in any administrative charge or investigation or becomes a member of a class after the effective date of this Agreement, Employee agrees to waive any right to monetary recovery should any administrative or governmental agency (such as the Equal Employment Opportunity Commission ("EEOC"), the National Labor Relations Board ("NLRB"), or any state or local agencies), or any other person or entity, pursue any claims on Employee's

3

behalf against the persons or entities covered by the release in this Agreement or any other government-administered whistleblower award program for providing information directly to a government agency.

**Nothing in this paragraph or Agreement is intended to limit in any way Employee's future right or ability to:  (a) file any charge or claim of discrimination with or cooperate in an investigation conducted by the NLRB or the EEOC; (b) communicate directly with the U.S. Securities and Exchange Commission ("SEC") about a possible securities law violation; or (c) file a charge or communicate directly with a comparable state or local agency, or any other governmental agency charged with enforcing anti-discrimination laws.**

4.      <u>Knowing and Voluntary Waiver</u>. Employee acknowledges that: (i) Employee has carefully read this Agreement and fully understands its meaning; (ii) Employee had up to 7 days after receiving this Agreement to decide whether to sign it before the offer contained herein expired; (iii) Employee is signing this Agreement, knowingly, voluntarily, and without any coercion or duress; and (iv) everything Employee is receiving for signing this Agreement is described in the Agreement itself, and no other promises or representations have been made to cause Employee to sign it.

5.      <u>Claims Not Affected by Release</u>.  This Agreement does not affect Employee's right to apply for unemployment or disability compensation to which Employee may be entitled under law or his rights to purchase continuation coverage under Employer's group health plan which will be offered in accordance with the provisions of COBRA.  This Agreement also does not affect any pension or insured benefits, if any, for which Employee is eligible pursuant to the terms of any employee benefit plan in which Employee is, or has been, a participant (subject to the terms, conditions and restrictions of such governing plan).  This Agreement does not affect any claims that may arise after Employee signs this Agreement, and/or which cannot be released by private agreement.

FROST_0015591

**Nothing in this Agreement prevents Employee from filing a charge or complaint with or from participating in an investigation or proceeding conducted by any federal, state or local agency charged with the enforcement of any employment laws, including, but not limited to the EEOC or a comparable state or local agency or the NLRB, although by signing this release Employee expressly agrees to waive his right to individual relief based on claims asserted in any such charge or complaint.**

**Additionally, nothing in this Agreement precludes Employee from communicating directly with the U.S. Securities and Exchange Commission ("SEC") about any possible securities violations. Employee promises never to seek or accept any damages, remedies or other relief for himself personally (any right to which Employee hereby waives and promise never to accept), other than a benefit or remedy pursuant to Section 922 of the Dodd-Frank Act, with respect to any claim included in this Agreement, in any proceeding, including but not limited to, any NLRB or EEOC proceeding**.

6.    Other Pending Claims.  Employee represents and warrants that Employee has no pending claims, lawsuits, charges, grievances or causes of action of any kind against the Company and/or the Releasees, and that, to the best of the Employee's knowledge, the Employee possesses no claims (including claims under the Fair Labor Standards Act ("FLSA") and workers' compensation claims).  Employee further represents and warrants that the Employee has received any and all compensation to which the Employee may have been entitled (including overtime), and that Employee is not aware of any facts or circumstances constituting a violation by the Company and/or the Releasees of the FLSA, Indiana minimum wage and wage payment laws, or any federal, state, or local law regarding the payment of wages, overtime compensation or minimum wage.

7.    Confidentiality of Agreement.  Subject to the exceptions stated in Paragraph 7, Employee shall keep confidential the fact and existence of the Agreement, the terms and conditions of the Agreement, and all communications made during the negotiation of this Agreement (collectively referred to as the "Confidential Information" in this Paragraph 9), and shall not directly or indirectly, whether orally, in writing, by signal, gesture, or any other means, disclose such Confidential Information to any person or entity (including, but not limited to, any current or former employee, agent, partner, or contractor of Employer) or in any way respond to, participate in or contribute to, whether orally, in writing, by signal, gesture, or any other means, any inquiry, discussion, notice, or publicity concerning any aspect of the Confidential Information.  The only exceptions to the obligations imposed by this paragraph are that Employee may disclose Confidential Information to: (a) professional accountants and tax advisers, but only such portion as essential for the provision of such professional accounting or tax services; (b) attorneys, but only such portion as essential for the provision of such professional legal services; and (c) a governmental agency.  Nothing in this paragraph shall be construed to preclude Employee from complying with a lawful court order or process requiring disclosure, written, oral or otherwise, of any Confidential Information, provided that Employee gives immediate written notice to Employer by hand delivery at its business address, of such court order or process and cooperates fully with

5

FROST_0015592

and supports through all reasonable means all efforts by Employer to oppose any such disclosure of Confidential Information. Employee agrees that disclosure by him or any of his permitted recipients of Confidential Information shall constitute and shall be treated as a material breach of this Agreement by Employee.

8.      Non-Disparagement. Employee agrees that he shall not, directly or indirectly, publish, disseminate or communicate in any way, to the media or any member of the public (whether an individual or entity), information that is critical, derogatory or otherwise intended to Disparage Employer, its affiliates, or its and their respective businesses, products, business affairs or employees. Employee further agrees that he shall not, directly or indirectly, communicate in any way to the employees, customers, and vendors of the Company or its affiliates, any information that is critical, derogatory or otherwise intended to Disparage Employer, its affiliates, or its and their respective businesses, products, business affairs or employees. "Disparage" for purposes of this Paragraph shall mean to make oral or written remarks (in physical or electronic form), comments, or statements that impugn the character, integrity, honesty, morality, business acumen, or abilities of an individual or entity. Nothing in this Agreement shall prohibit the Employee from reporting possible violations of law or regulation to any governmental agency or entity or making any other disclosures that are protected under the whistleblower provisions of federal or state law.

9.      Nondisclosure of Trade Secrets and Confidential Information.

a.      At all times after the Resignation Date (for so long as the information in question remains a Trade Secret under applicable law), Employee will not directly or indirectly transmit or disclose any Trade Secret of the Company or its affiliates to any person, concern or entity, and shall not make use of any such Trade Secret, directly or indirectly, for Employee's own benefit or for the benefit of others, without the prior written consent of Company.

b.      For a period of one (1) years after the Resignation Date, Employee will not, directly or indirectly, transmit or disclose any Confidential Information to any person, concern or entity, or make any use of any such Confidential Information, directly or indirectly, for Employee's own benefit or for others, without the prior written consent of Company.

c.      Nothing in this Agreement shall limit or supersede any rights or remedies otherwise available to Company under federal, state, or local law but instead shall be cumulative with any such rights and/or remedies. Nothing in this Agreement waives or otherwise alters any additional or prior rights of Employer or obligations of Employee to maintain the confidentiality of Confidential Information and/or Trade Secrets, all of which are expressly reserved.

d.      Defend Trade Secrets Act Notice. An individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made in confidence to a federal, state, or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law. An individual shall not be held

6

FROST_0015593

criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal; and does not disclose the trade secret, except pursuant to court order.

    e.    For purposes of this Section, the following terms are defined as follows:

    i.    **"Trade Secrets"** has the meaning set forth in applicable statutory or common law.

    ii.    **"Confidential Information"** in this Paragraph 9 means information in any form whatsoever, other than Trade Secrets, which: (1) relates to Company, Company's activities, Company's business or Company's suppliers or customers; (2) is not generally known by persons not employed by Company (the term "Company" as used in the foregoing clauses (1) and (2) shall include the Company and its affiliates); and (3) is or has been disclosed to Employee, or of which Employee became aware, as a consequence of or through Employee's relationship with Employer and its affiliates. "Confidential Information" includes, but is not limited to, technical or non-technical data, a formula (including cost and/or pricing formula), pattern (including cost and/or pricing methods, marketing programs and operating methods), technique, drawing, process, financial data, or list of actual or potential customers or suppliers. "Confidential Information" shall not include information that has become generally available to the public by the act of one who has the right to disclose such information without violating any legal right of Company or its affiliates.

10.    <u>Covenant Not to Compete</u>. Employer acknowledges that in the course of Employee's employment with or engagement by Employer, Employee has become familiar with the Trade Secrets and other Confidential Information of Employer and its customers and that Employee's services have been of special, unique and extraordinary value to the Employer. Therefore, in further consideration of the agreements and the covenants of Employer contained herein, Employee agrees that, a period of six (6) months after the Resignation Date, Employee shall not, without the prior express written approval of Employer, directly or indirectly serve as a founder, co-founder, executive officer, manager, consultant, or employee for any enterprise engaged in the manufacture or development of sensors and computer systems built for the analysis and/or reporting of road weather conditions (the "Business"); provided, however, that the foregoing restriction shall not prevent from seeking employment by any department within any of the foregoing that directly competes with the Business and does not provide services in the ordinary course of his employment in a manner that is directly competitive with the Business. Employee acknowledges and agrees that the provisions in this Paragraph 10 shall apply in any

FROST_0015594

locale in which the Employer conducts business or planned to conduct business as of Resignation Date. Nothing set forth in this Paragraph 10 shall prohibit Employee from being a passive owner of not more than two percent (2%) of the outstanding securities of any publicly traded company engaged in the Business, so long as Employee has no active participation in the Business. Nothing in this Paragraph 10 shall invalidate or limit the provisions of Paragraphs 9 and 11.

11.     <u>Non-Solicitation</u>.  From the a period of  one (1) years after the Resignation Date, Employee shall not, directly or indirectly through another Person, (i) induce or attempt to induce any employee, sales representative, distributor, agent or consultant of any member of the Employer to cease doing business with the Employer, or in any way interfere with the relationship between any such employee, sales representative, distributor, agent or consultant and the Employer (including, without limitation, by making any negative statements or communications about any member of the Employer or its officers or directors), (ii) induce or attempt to induce any employee of the Employer to leave the employ of Employer, or in any way interfere with the relationship between the Employer and any employee thereof (other than through general advertisements for employment not directed at employees of the Employer) or (iii) solicit to hire (other than through general advertisements for employment not directed at employees of the Employer) or hire any person who was an employee of the Employer at any time during the six (6) months preceding such solicitation or hiring.

12.     <u>Non-Assignment of Claims</u>. Employee warrants and represents that he has not heretofore assigned or transferred to any person not a party to this Agreement any released matter or any part or portion thereof and Employee shall defend, indemnify and hold harmless Employer and its affiliates from and against any Claim (including the payment of attorneys' fees and costs actually incurred whether or not litigation is commenced) based on or in connection with or arising out of any such assignment or transfer made, purported or claimed.

13.     <u>Ownership of Intellectual Property; Works for Hire</u>. The Employee acknowledges and agrees that all patents, trademarks, copyrights, works of authorship or other intellectual property, in any format or medium, created wholly or in part by the Employee, whether alone or jointly with others, in the course of performing the Employee's duties for the Employer, or while using the facilities or money of the Employer, whether or not during the Employee's work hours, are works made for hire ("Works"), as defined under United States copyright law, and that the Works (and all rights arising in the Works) are owned exclusively by the Employer. To the extent any such Works are not deemed to be works made for hire, the Employee agrees, without compensation beyond that provided in this Agreement, to execute an assignment to the Employer or its nominee of all right, title and interest in and to such Works.

14.     <u>Continued Cooperation</u>. Employee acknowledges that Employer may need to consult with Employee from time to time on a reasonable basis after Employee's Resignation Date on matters that Employee worked on prior to the Resignation Date.  Employee agrees to cooperate with Employer and to provide any such information as is reasonably requested by Employer in any matters, litigation or proceedings with which Employee was involved, or relating to any work with which Employee was involved or had knowledge, during Employee's employment with Employer.

15.     <u>Breach of Agreement</u>.  If Employee violates the promises contained in this Agreement, Employee will be responsible for any losses or costs incurred by Employer and/or its

8

affiliates to the extent permitted by law, including attorneys' fees and costs incurred by Employer and/or its affiliates in enforcing the terms of this Agreement and/or defending against any claim involving this Agreement. Employee further acknowledges and agrees that the obligations set forth in Paragraphs 2, 3, 7, 8, and 9 are essential and material terms of this Agreement and that without such terms Employer would not have agreed to provide the consideration to Employee described in Paragraphs 1 or 2.b. In the event Employee breaches any term or obligation set forth in Paragraphs 2, 3, 7, 8, or 9, the Parties agree that: (a) Employer's obligation to make any payments to Employee under Paragraph 1 shall cease as of the date of Employee's breach; (b) Employee shall repay to Employer any and all amounts that Employer previously paid to Employee under Paragraph 1; and (c) all other terms and obligations set forth in this Agreement shall remain enforceable.

16.    Return of Property. Employee warrants and represents that he has returned to Employer all files, computers, telephones, beepers, records, keys, access cards, credit cards, discs, software, and other property of Employer and its respective affiliates and clients (whether maintained in tangible form or in computer memory or other medium) in his possession or under his control which Employee received from Employer or its affiliates in the course of his employment, or which reflect in any way confidential information in the possession or under the control of Employee.

17.    Non-Admission. This Agreement shall not be construed as an admission by Employer of any liability or acts of wrongdoing or unlawful discrimination, nor shall it be considered to be evidence of such liability, wrongdoing, or unlawful discrimination.

18.    Governing Law. This Agreement shall be deemed to have been executed and delivered within the State of Indiana, and the rights and obligations of the Parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of Indiana without regard to principles of conflict of laws.

19.    Severability. Should any part of this Agreement be declared invalid, void or unenforceable, such determination shall not affect other provisions or applications of this Agreement which can be given effect without the invalid, void or unenforceable provisions or applications and to this end the provisions of this Agreement are declared to be severable.

20.    Entire Agreement. This instrument constitutes and contains the entire agreement and final understanding concerning Employee's employment, termination from the same and the other subject matters addressed herein between the Parties. It is intended by the Parties as a complete and exclusive statement of the terms of their agreement. It supersedes and replaces all prior negotiations and all agreements proposed or otherwise, whether written or oral, concerning the subject matters hereof. Any representation, promise or agreement not specifically included in this Agreement shall not be binding upon or enforceable against either party. This is a fully integrated agreement.

21.    Counterparts. This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the efficacy of a signed original. Photographic copies of such signed counterparts may be used in lieu of the originals for any purpose.

9

FROST_0015596

22.    <u>Additional Cooperation</u>.  The Parties agree to cooperate fully and to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force to the basic terms and intent of this Agreement and which are not inconsistent with its terms.

[*signature page to follow*]

10

FROST_0015597

**EMPLOYEE ACKNOWLEDGES THAT EMPLOYEE HAS READ THIS AGREEMENT, UNDERSTANDS IT AND IS VOLUNTARILY ENTERING INTO IT WITH THE INTENTION OF RELINQUISHING ALL CLAIMS AND RIGHTS UNLESS THE CLAIM OR RIGHT HAS BEEN SPECIFICALLY EXCEPTED FROM THE RELEASE OF CLAIMS IN THE AGREEMENT. EMPLOYEE ACKNOWLEDGES THAT THIS AGREEMENT CONTAINS A RELEASE OF ALL KNOWN AND UNKNOWN, SUSPECTED AND UNSUSPECTED CLAIMS.**

DocuSigned by:

*Christopher Lareau*

**Christopher Lareau**

E459E65709F7487...

**Accepted for Frost Control Systems, Inc.**

*patrick baglien*

BY: patrick baglien (Sep 30, 2021 18:13 EDT)

TITLE: vice president

11

FROST_0015598

# SeperationAgreement_ChristopherLareau_2021-09-30v2

Final Audit Report                                   2021-09-30

| | |
|---|---|
| Created: | 2021-09-30 |
| By: | patrick baglien (baglien28@yahoo.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAO3_BT40mSLWEM3f78PPkNXf5jK1if6aC |

## "SeperationAgreement_ChristopherLareau_2021-09-30v2" History

Document digitally presigned by DocuSign\, Inc. (enterprisesupport@docusign.com)
2021-09-30 - 8:09:40 PM GMT- IP address: 73.209.56.211

Document created by patrick baglien (baglien28@yahoo.com)
2021-09-30 - 8:25:43 PM GMT- IP address: 73.209.56.211

Document emailed to patrick baglien (pbaglien@frostcontrolsys.com) for signature
2021-09-30 - 8:26:33 PM GMT

Email viewed by patrick baglien (pbaglien@frostcontrolsys.com)
2021-09-30 - 8:27:00 PM GMT- IP address: 73.209.56.211

Document e-signed by patrick baglien (pbaglien@frostcontrolsys.com)
Signature Date: 2021-09-30 - 10:13:45 PM GMT - Time Source: server- IP address: 73.209.56.211

Agreement completed.
2021-09-30 - 10:13:45 PM GMT

 Adobe Sign

FROST_0015599