**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

|  |  |
|---|---|
| FROST SOLUTIONS, LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC,<br><br>          Defendants. | Case No. 1:22-cv-00401-SE |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANTS' AMENDED COUNTERCLAIM**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 7.1(e)(1), Plaintiff Frost Solutions, LLC

submits this Reply in Support of its Motion for Summary Judgment on Defendants' Amended

Counterclaim. As shown below, and in its moving papers (ECF No.115), Frost is entitled to

judgment as a matter of law that it did not negligently inflict emotional distress on Defendant

Christopher Lareau, did not tortiously interfere with any contracts or customers of Defendant Vue

Robotics, LLC (existing or prospective), and did not engage in civil conspiracy.

**INTRODUCTION**

Lareau and Vue forfeited their counterclaims by failing to replead them. Beyond that, Frost

has marshaled record testimony and documents establishing that no genuine dispute of material fact

exists as to any of the counterclaims. Defendants do not grapple with that record, instead offering

speculation as to what future testimony might show—arguments that carry no weight at summary

judgment. After exhaustive discovery, including numerous depositions and the production of tens of

thousands of documents, Defendants still cannot point to evidence supporting the essential

elements of their counterclaims. That failure is dispositive. Summary judgment is the moment for

proof, not possibilities, and Defendants have none. Because they have not come forward with

admissible evidence creating a triable issue of fact as to any of their counterclaims, the Court should grant this motion and enter summary judgment in Frost's favor.

**ARGUMENT**

**I.**    **Defendants forfeited their counterclaims when they did not reassert them in their answer to Frost's First Amended Complaint.**

The procedural history here is straightforward and undisputed. Earlier in this litigation, Defendants filed a Counterclaim and then an Amended Counterclaim. But after Frost filed its First Amended Complaint, Defendants did not assert *any* counterclaims in or with their answer. (*See* Frost Mem. in support of its summary judgment motion ("Pl.'s Br."), ECF No. 115-1, at SUMF ¶¶ 36–38; Defs.' Mem. in support of their objection ("Defs.' Br."), ECF No. 132, at 11.) An amended pleading takes precedence over an earlier pleading. *See* Wright, et al., *Fed. Prac. & Proc.* § 1476 (3d ed. 2010). While the First Circuit has not directly ruled on this issue, the Third and Federal Circuits have held that a defendant's failure to replead counterclaims in response to an amended complaint voids the counterclaims. *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 277 n.3 (3d Cir. 2019); *Gen. Mills, Inc. v. Kraft Foods Glob., Inc.*, 495 F.3d 1378, 1378–79 (Fed. Cir. 2007). Sixth Circuit precedent squares with this approach, and several other district courts, including one in this circuit, have followed it. (*See* Pl.'s Br. at 11 (collecting cases).) The widespread adoption of this interpretation of the Federal Rules (including these courts' refusal to engage in the prejudice analysis Defendants advocate) undercuts Defendants' assertion that it is "absurdly strict." (Defs.' Br. at 23.)

In attempting to distinguish *Par Pharmaceutical* and *General Mills*, Defendants point to only superficialities. (Defs.' Br. at 23–24.) They stress that the relevant holding in *Par Pharmaceutical* was in a footnote, citing no authority that a footnote carries any less weight than the body of court opinion. And their argument that it was *dicta* is wrong. In *Par Pharmaceutical*, the Third Circuit noted the defendant previously asserted patent counterclaims that "would have vested exclusive jurisdiction over this appeal with the Federal Circuit" by statute, and, as a result, divested the Third Circuit of

2

appellate jurisdiction. 764 F. App'x at 277 n.3. But because the defendant "decided to omit [the patent counterclaims] from its amended answer," the court found that "[t]he amended pleadings supersede the original pleadings and render them of no legal effect," allowing it to consider the appeal. *Id.* (cleaned up). That jurisdictional holding was necessary to the result and not *dicta*.

As for *General Mills*, Defendants acknowledge that the Federal Circuit "held that the counterclaims [at issue there] were not pending at the time of dismissal because they were not reasserted in response to the amended complaint." (Defs.' Br. at 24 n.15.) That holding supports Frost's position, regardless of whether that case was dismissed or a counterclaim was part of a responsive pleading, and Defendants fail to explain how these facts could make a difference with regard to the legal issue here.

Defendants point to cases from two other circuits that they suggest the Court should follow instead: *Davis v. White*, 794 F.3d 1008, 1016 (8th Cir. 2015), and *Sinclair Wyoming Refining Co. v. A&B Builders, Ltd.*, 989 F.3d 747, 775 (10th Cir. 2021). (Defs.' Br. at 23–24.) In *Sinclair*, the Tenth Circuit acknowledged the split of authority on this issue, observing that some courts "have held that a counterclaim to an original complaint falls away unless it is repleaded in later answers to amended complaints" because "an amended answer supersedes previous answers, rendering them of no legal effect." 989 F.3d at 775–76 (cleaned up). And the Eighth Circuit in *Davis* recognized that district courts have "discretion to grant or deny a motion to deem a counterclaim abandoned." 794 F.3d at 1015. For the reasons discussed in Frost's opening brief, the Court should exercise its discretion and follow the Third, Sixth, and Federal Circuits, the District of Massachusetts, and the Wright & Miller treatise, and hold that Defendants forfeited their counterclaims. (Pl.'s Br. at 10–11.)

II.      **Frost is entitled to judgment as a matter of law on Lareau's and Vue's counterclaims.**

On the merits, Defendants fail to show a genuine dispute of material fact as to each cause of action asserted in the Amended Counterclaim.

### A.    Lareau's counterclaim for NIED (Count I) fails as a matter of law.

Lareau cannot establish any element of his counterclaim for negligent infliction of emotional distress ("NIED"), and has failed to demonstrate that a genuine issue of material fact exists sufficient to survive summary judgment. *See O'Donnell v. HCA Health Servs. of N.H., Inc.*, 152 N.H. 608, 611 (2005).

First, Kirsh did not owe a duty of care to Lareau as a matter of law. Lareau's sole basis for asserting the existence of such a duty is the protective order in this case. He argues that Defendants designated the identity of their insurance carrier and their policy as confidential information under the order, and that Frost had a duty to maintain the confidentiality of that information and refrain from using it outside the litigation. (Defs.' Br. at 20–21.) But Lareau offers no applicable legal support for this theory, which conflates the requirements of a discovery order with a legal duty of care arising in tort law. Lareau misconstrues Frost's brief as arguing that "litigants owe no duties to comply with court orders" and procedures to which they have stipulated, and relies on *Tessier v. Rockefeller*, 162 N.H. 324, 342 (2011), and *Aranson v. Schroeder*, 140 N.H. 359, 365–68 (1995), for the proposition that tort liability can arise between parties in litigation. (Defs.' Br. at 20.) Neither case supports Lareau's argument. In *Tessier*, the NIED claim was anchored in a fraudulent misrepresentation claim, and the dispute involved attorneys whose duties were rooted in the Rules of Professional Conduct. 162 N.H. at 332. Kirsh is not an attorney and is not bound by those rules. Meanwhile, the *Aranson* case did not even involve an NIED claim. 140 N.H. at 366–67. The Court should decline Lareau's invitation to transform Rule 37 and litigation sanctions into tort duties, which would invite NIED claims every time someone is accused of violating a discovery order.

Even if such a duty existed, Kirsh's conduct would not have breached it. The scope of a defendant's duty is limited to risks that are "reasonably foreseeable." *Macie v. Helms*, 156 N.H. 222, 224–25 (2007). It was not reasonably foreseeable that a phone call to Vue's insurance carrier asking about insurance coverage options would cause Lareau severe emotional distress. When asked

whether the purpose of his call was to attempt to get Defendants' coverage cancelled, Kirsh responded: "Absolutely not . . . . I know for a fact I didn't go into [the call] thinking that they were going to open an investigation or something like that. I wanted to understand what kind of policy it was[.]" (Pl.'s Br., SUMF ¶ 30.) Kirsh had no way to know that Defendants had not already submitted the January 5 Letter as part of Vue's insurance application. For Lareau's claim to survive, Kirsh would have had to know that Vue had excluded this letter, and reasonably foresee both that his call would cause the insurer to open an investigation *and* that such an investigation would cause Lareau severe emotional distress. The connection between Kirsh's actions and Lareau's alleged "injury" is far too attenuated to be reasonably foreseeable.

Lareau fails to point to any evidence refuting Kirsh's testimony. He did not depose or obtain a declaration from anyone at Defendants' insurance carrier. Kirsh's testimony is thus undisputed, and controls here. *See Daley v. Mira, Inc.*, No. CV 18-10353-LTS, 2023 WL 7135175, at *4 (D. Mass. Oct. 30, 2023) (granting summary judgment where a defendant's "uncontradicted evidence leaves no genuine dispute about whether [a product] was defectively designed"). Lareau is left to reason backwards, theorizing that Kirsh's "words and actions and those of his legal team at the time cast real doubt on his explanation" and speculating on Kirsh's motives, without citing any record evidence. (Defs.' Br. at 21–22.) This speculation cannot save Lareau's claim, and it falls short of the "specific facts sufficient to deflect the swing of the summary judgment scythe." *Baum-Holland v. Hilton El Con Mgmt., LLC*, 964 F.3d 77, 87 (1st Cir. 2020) (cleaned up).

Lareau also fails to establish both causation and "significant" and "lasting" harm. *O'Donnell*, 152 N.H. at 611. New Hampshire courts consistently require claimants to demonstrate physical symptoms of severe emotional distress. *Id.* at 611–12. To ensure that an emotional injury is sufficiently serious as to warrant legal protection, expert testimony is required to prove physical symptoms suffered from alleged NIED. *In re Bayview Crematory, LLC*, 155 N.H. 781, 786 (2007). Lareau concedes, as he must, that "in the absence of a report, a plaintiff's treating physician cannot

testify to opinions based on information not learned during the course of treatment." (Defs.' Br. at 23). In other words, causation opinions must stem from the treatment alone. *Westerdahl v. Williams*, 276 F.R.D. 405, 408 (D.N.H. 2011) (cleaned up).

Lareau has designated his treating provider, Daniel Salazar, to testify. Salazar has not authored an expert report, been deposed, or submitted a declaration. Nevertheless, Lareau argues (again, without citing any caselaw in support) that Salazar can offer an opinion based on his examination and treatment of Lareau, and that Salazar is not limited to what is explicitly included in the medical records. (Defs.' Br. at 23.) Without testimony from Salazar, it is impossible to know what he would or would not testify to—that evidence is not in the record. What Lareau offers instead is more speculation based on his own interpretation of vague medical record entries from years ago. (*Id.* at 10, 22.) This conjecture does not meet the demanding standards of an NIED claim and does not create a genuine dispute of material fact.

For all of these reasons, Lareau cannot prove the required elements of NIED as a matter of law. Frost is therefore entitled to summary judgment on Count I.

### B. Vue cannot prevail on any of its tortious interference claims (Counts II–V).

#### 1. Vue cannot show Frost improperly interfered with Vue's relationship with TAPCO (Counts II, III, IV).

There is no genuine dispute of material fact that Frost did not *intentionally* and *improperly* interfere with Vue's relationship with TAPCO and current or prospective TAPCO customers. Vue thus cannot establish a requisite element of Counts II, III, and IV, which is fatal to these counterclaims. *Boyd v. Wells Fargo Bank, N.A.*, No. 18-cv-253-JL, 2018 DNH 102, at *2 (D.N.H. May 17, 2018) (citing *City of Keene v. Cleaveland*, 167 N.H. 731, 738 (2015)).

First, TAPCO terminated its contract with Vue because of Vue's own misconduct, pointing to legally enforceable justifications of conflict of interest and violation of the implied covenant of good faith and fair dealing. (Pl.'s Br., SUMF ¶ 15.) Second, Frost's assertion of its legally protected

interests through the Moore Litigation and settlement cannot provide a foundation for tortious interference. Use of the courts to protect one's own legitimate business interests by enforcing a valid restrictive covenant does not constitute improper interference. *Tsiatsios v. Anheuser-Busch, Inc.*, No. 07-CV-003-JL, 2009 DNH 009, at *5 (D.N.H. Jan. 16, 2009); *see* Pl.'s Br., SUMF ¶¶ 13, 16.

Vue has no evidence to support its bare assertion that Frost engaged in improper acts. It hypothesizes that Frost's "purportedly legitimate motives are pretext" because "communications between Frost and TAPCO and the timeline of events leading up to TAPCO's termination demonstrate . . . a motive to harm Vue." (Defs.' Br. at 13, 15.) But that argument relies solely on speculative assertions regarding the motivations of Frost, TAPCO, Bott, Moore, and Everard. (*Id.* at 3–5, 12–16.) Guesswork, conclusory allegations, and unsupported theorizing cannot manufacture a genuine dispute of material fact. *Baum-Holland*, 964 F.3d at 87.

Vue also asserts that TAPCO has not yet been deposed in this case, so  and thus TAPCO's "true motive" behind terminating its contract with Vue cannot be determined. (Defs.' Br. at 15.) Discovery has been open for years, however, and Vue could have deposed TAPCO, or submitted  a declaration signed by TAPCO. Vue did not do so, and the Court should not reward a lack of diligence. Vue cannot survive summary judgment by guessing at what TAPCO might have said if deposed. Vue's speculation does not provide a "reasonable inference" the Court must view in favor of Vue as the non-moving party. *Estate of Bennett v. Wainwright*, 548 F.3d 155, 165 (1st Cir. 2008).

Further, the fact that some of Vue's customers did not renew their relationships does not evidence tortious interference. (Defs.' Br. at 17); *see Gould v. N. Hum. Servs.*, No. 2015-0698, 2016 WL 5831602, at *2 (N.H. Aug. 22, 2016) ("because Northern did not, in fact, breach the contract, but merely decided not to renew it, there could be no liability for tortious interference").

Accordingly, the Court should grant summary judgment in favor of Frost on Counts II, III, and IV of Defendants' Amended Counterclaim.

7

### 2.    Vue cannot show improper interference or damages as to its tortious interference counterclaim involving East End Group (Count V).

Here as well, Vue must show *improper* interference with Vue's contractual relationship with East End Group by Frost, via Jason Ostrander, and that it suffered harm as a result. *Boyd, N.A.*, 2018 DNH 102, at *2 (citing *Cleaveland*, 167 N.H. at 738). Vue can do neither.

Vue does not dispute that Ostrander was authorized to access Vue's software platform during his employment with East End Group, that Ostrander remained employed by East End Group part-time until April 2025, or that his employment with East End Group and Frost overlapped for approximately seven months. (Pl.'s Br., SUMF ¶¶ 21–23.) Further, Lareau conceded at deposition that if Ostrander was working for East End Group when he accessed the Vue system, he would be able to log in. (Pl.'s Br., at SUMF ¶ 21.) Vue instead argues that even though Ostrander "properly possessed East End Group credentials" through his continued employment by East End Group, he nevertheless used those credentials for improper or unauthorized uses in violation of a warning that pops up whenever a user attempts to access Vue's system. (Defs.' Br. at 18.)

Once again, Vue has no evidence to refute Ostrander's testimony to the contrary. He testified that while he was a part-time employee of East End Group, he accessed Vue's software platform on certain dates in connection with his work for East End Group to check construction sites, monitor for labor issues, watch the time lapses, and communicate with construction folks. (Pl.'s Br., SUMF ¶ 24.) Vue attempts to manufacture a factual dispute by suggesting that Ostrander had an inherent conflict of interest that Frost exploited, pointing to two emails. In one, Ostrander forwarded Vue's promotional email sent to a subscription mailing list; in the other, he simply reflected that Vue had registered for a trade event. (Defs.' Br. at 19; Defs.' Exs. KK & LL.) These emails do not show or even suggest that "Frost induced Ostrander to use his East End Group credentials to access Vue's system for unauthorized purposes." (Defs.' Br. at 19.)

8

Moreover, Vue ignores Ostrander's unrebutted testimony[1] that no one at Frost instructed him to access Vue's platform or features on Frost's behalf, that he did not communicate with anyone at Frost about the Vue platform before or after logging into the Vue system, and that he never shared his account or login credentials with anyone outside East End Group.[2] (Pl.'s Br., SUMF ¶ 25.) Nor does Vue offer any evidence to contradict Ostrander's testimony that he did not take screenshots or data from Vue's system. (*Id.*) When presented with such uncontested testimony, no reasonable jury could conclude that Ostrander's access of the Vue system was at the direction of Frost or for an unauthorized purpose. Vue cannot demonstrate that Frost improperly interfered with the relationship between Vue and East End Group. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden*, 11 F.4th 12, 24–25 (1st Cir. 2021); *Daley*, 2023 WL 7135175, at *4.

Vue cannot show it suffered any damages resulting from Ostrander's access. Vue does not dispute that East End Group had a contractual right to terminate its relationship with Vue. (Pl.'s Br., SUMF ¶ 26.) Rather, Vue identifies its alleged damages as the cost of hiring cybersecurity counsel and suggests its business operations were disrupted, but these allegations are too vague and remote to be compensable. Hiring cybersecurity counsel was a voluntary decision, not a natural and inevitable consequence of any alleged conduct by Frost. And Vue fails to provide any evidentiary support for its assertion that "[a]s a direct result of Frost's actions," Vue put the "daily operations of [its] business on hold to deal with the consequences of unauthorized use of [its] system." (Defs.' Br. at 19.) Vue cannot create a genuine dispute of material fact with a bare statement unsupported by the record. *See Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 150 (1st Cir. 2000). There is thus no genuine issue of material fact, and the Court should grant summary judgment in favor of Frost on Count V of Defendants' Amended Counterclaim.

---

[1] Frost's principals confirmed Ostrander's testimony in their own depositions. (Pl.'s Br., Ex. 1, Kirsh Dep. 211:03–06, 211:24–212:20; Ex. 17, Frost 30(b)(6) Dep. 227:14–23, 228:18–25, 229:22–23.).

[2] No one at Frost accessed Vue's platform or features through Ostrander's login. (Pl.'s Br., Kirsh Decl. ¶ 11.)

**C.        Count VI fails for several reasons, including the lack of an underlying tort.**

As explained in Frost's opening brief (Pl.'s Br. at 24–25), "[f]or a civil conspiracy to exist, there must be an underlying tort which the alleged conspirators agreed to commit." *Melendez v. Univ. of N.H.*, No. 23-cv-00172-SM-TSM, 2024 WL 5408179, at *14 (D.N.H. Nov. 12, 2024) (citation omitted). Here, the alleged underlying tort claims are tortious interference with contractual relations as to the TAPCO agreement (Count II), with TAPCO customers (Count III), and with prospective business relations (Count IV). For the reasons set forth above and in Frost's opening brief, there is no genuine dispute of material fact that each counterclaim fails as a matter of law. Those torts cannot support civil conspiracy. And even if one of these underlying torts could survive summary judgment, Vue has failed to show a genuine dispute of material fact as to the elements of a civil conspiracy claim—including any evidence that Frost and TAPCO agreed to accomplish an unlawful act (or a lawful act by unlawful means) or that they engaged in unlawful overt acts in furtherance of an agreed objective. *Moore v. Mortg. Elec. Registration Sys.*, 848 F. Supp. 2d 107, 134 (D.N.H. 2012).

Vue's civil conspiracy discussion is limited to a single footnote incorporating by reference its arguments regarding the three underlying tortious interference claims and asserting that a genuine dispute of material fact also exists as to whether Frost and TAPCO were acting jointly to interfere with TAPCO's relationship with Vue. (Defs.' Br. at 12 n. 7.) Vue offers no evidence that Frost and TAPCO agreed to take unlawful action against Vue, much less an overt act in furtherance of such an agreement. *Moore*, 848 F. Supp. 2d at 134. Vue also references the Moore Litigation, and Frost's settlement agreement and Dealer Agreement with TAPCO. (Defs.' Br. at 3–5.) But Vue does not explain how these events prove civil conspiracy. A showing that alleged co-conspirators interacted with one another, or even that they carried out similar torts, is insufficient. *Lewis v. Abramson*, 673 F. Supp. 3d 72, 85 (D.N.H. 2023); *see* 15A C.J.S. Conspiracy § 12 (2023) ("Without a meeting of the minds, the independent acts of multiple wrongdoers do not amount to a conspiracy."). For all of these reasons, Frost is entitled to summary judgment on Vue's civil conspiracy counterclaim.

## CONCLUSION

For the reasons discussed above and in Frost's opening brief, the Court should grant this motion and enter summary judgment in Frost's favor on all of Defendants' counterclaims.

Dated: March 26, 2026

Respectfully submitted,

**FROST SOLUTIONS, LLC,**

By its attorneys,

/s/ *Laura L. Carroll*
Laura L. Carroll (NH Bar No. 17444)
ARENTFOX SCHIFF LLP
800 Boylston Street, 32nd Floor
Boston, MA 02199
Tel:    (617) 973-6100
Email: laura.carroll@afslaw.com

Todd A. Rowden (admitted *pro hac vice*)
James L. Oakley (admitted *pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Tel:    (312) 527-4000
Fax:    (312) 527-4011
Email: trowden@taftlaw.com
          joakley@taftlaw.com

Amir R. Tahmassebi (admitted *pro hac vice*)
KONICEK & DILLON, P.C.
70 West Madison Street, Suite 2060
Chicago, IL 60602
Tel:    (312) 328-9166
Fax:    (630) 262-9659
Email: amir@konicekdillonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically served a copy of this document on all counsel of record via the Court's CM/ECF system, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: March 26, 2026

/s/ *Laura L. Carroll*
Laura L. Carroll

11