**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

|  |  |
|---|---|
| FROST SOLUTIONS, LLC, | |
| Plaintiff, | |
| v. | Civ. Action No. 1:22-cv-00401-SE |
| PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**PROVISIONALLY FILED UNDER SEAL**

**PATRICK BAGLIEN'S AND CHRISTOPHER LAREAU'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR PARTIAL
<u>SUMMARY JUDGMENT ON COUNTS III AND VI.</u>**

## I.    <u>Introduction.</u>

Frost's Objection does not demonstrate that there is an issue of triable fact on any of the issues upon which this Motion depends.  Its assignability arguments rely heavily on inferential interpretations of non-applicable law, while minimizing what Indiana courts have to say on the issue. Frost's effort to paint the scope of the non-solicitation provision in the Lareau agreement as narrow in practice, despite the overbreadth of its text, is contrary to Indiana law, which refuses to enforce overbroad restrictive employee covenants.  Further, Frost cannot re-write the separation agreement through extrinsic evidence to hide from the incontrovertible fact that all Lareau got for signing the Agreement were wages and benefits already owed him.  Nor can Frost create a genuine issue of material fact by relying on a witness who disclaims the existence of Lareau's offer letter, which it is undisputed for purposes of this motion, was offered and accepted. And finally, Frost cannot create a genuine issue of material fact about the status of Frost Control's relationship with TAPCO by pointing to hearsay evidence which only suggests that Frost Solutions' principals, and not Frost Control, were attempting to secure TAPCO's business in 2022.

Plaintiff also contends that its allegations of nefarious conduct have been corroborated by a "substantial evidentiary record," and it should therefore be allowed to proceed to a jury.  Opp. at 1. The reality is different.  After years of litigation, Plaintiff has identified no evidence that Lareau or Baglien, when leaving Frost Control's employ, took with them, or let alone used, any confidential information or trade secret.[1]  Instead, the "substantial evidence" Plaintiff has adduced reveals fundamental problems with Plaintiff's case.  To name a few:

- It is not unlawful to preliminarily develop a competing product through an independent

---

[1] *See* Doc. No. 113-1 at p. 9 (pointing to downloads made while Lareau and Baglien were still working at Frost Control but providing no evidence of data being taken or used); Doc. No. 132 (citing to evidence explaining the business purpose for those downloads).

development firm by providing it with a list of high-level features. Doc No. 132 at 9.

- The identity of customers in a well-known and easily identifiable customer base is not confidential under common law or any relevant contract, especially when the vast majority of customers are <u>public entities subject to pubic disclosure laws</u>. Doc. No. 132 pp. 11-14 (citing Lareau Decl. at ¶¶ 8-13).

- Frost Control's affiliation with its former distributor, TAPCO, who Frost Control hired to sell its products on the public marketplace, is not confidential information. Doc. No. 132 at 9 (citing Baglien Decl. at ¶ 7).

- Defendants cannot have used Frost Control information when incontrovertible evidence shows that they obtained that information (such as the identity of customers and TAPCO) from sources other than Frost Control.  Doc.No. 132 at p. 10 (citing Everard testimony that TAPCO reached out to Vue Robotics); p. 11 (citing Memo. Exhibits 16-17 showing claimed confidential customer information came from TAPCO).

In any event, the actual hollowness of Frost Control's factual case is not at issue here; instead, it is the legal deficiencies that render Counts III and VI untenable.  The Court should, therefore, reject Frost's attempt to orient the issues of this Motion towards its allegations of wrongdoing instead of the actual subject matter—which is the legal viability of Counts III and VI, the counts based on Lareau's Separation Agreement.  Baglien's and Lareau's Summary Judgment Motion should be granted.

## II.    **Plaintiff's Assignment Arguments Are Unavailing.**

Plaintiff's arguments concerning assignability are unpersuasive and should be rejected.

***The Timing of the Attempted Assignment is Not Relevant.***  Frost contends that the rule in Indiana prohibiting assignment of personal contracts absent consent does not apply "where the term of the non-compete expired" before assignment.  Opposition to Baglien and Lareau's Motion for

Summary Judgment ("Opp." at 5). At the outset, Frost's argument fails because when the

Separation Agreement was purportedly assigned, the terms of the Agreement's personal restrictive

covenants had not yet expired given the Agreement's one-year non-solicitation provision.

Regardless, Frost's argument is not supported by applicable law. Frost cites numerous cases

from other jurisdictions about principles relating to personal restrictive covenants, none of which

appear to even adopt the rule that it urges.[2] What Frost does not cite is <u>Indiana law</u>. And with good

reason; Indiana law is inapposite. Under Indiana law, the rule against assignment of personal

contract applies to "*claims* arising out of" such a contract, not just to claims seeking to enforce

contract performance.[3] And, while Frost correctly points out that contract claims under Indiana law

are generally assignable, it overlooks that Indiana courts have consistently explained that this general

rule does not apply to contract based claims that are personal in nature. *See e.g., Indianapolis-Marion*

*Cty. Pub. Library v. Charlier Clark & Linard, PC*, 929 N.E.2d 838, 847-48 (Ind. Ct. App. 2010) ("a

contract-based chose in action is considered assignable unless it is purely personal in nature")*; Essex*

*v. Ryan*, 446 N.E.2d 368, 374 & n.3 (Ind. Ct. App. 1983) (explaining that rights for damages under

contract are assignable like "virtually all contract rights" except for rights "involving personal trust

or confidence"). Because the restrictive covenants are personal in nature, Frost Control could not

assign any claims arising out of them without Lareau's consent.

**Frost Solutions "Stranger" Principle Has No Support in Law.** Relying on some Indiana

---

[2] For example, Frost relies heavily on *Smith, Bell & Hauck, Inc. v. Cullins, 183 A.2d 528 (Vt. 1962)*, a case that they concede concluded that the noncompete at issue was not assignable. Opp. at 7.

[3] *SDL Enters. v. DeReamer*, 683 N.E.2d 1347, 1349 (Ind. Ct. App. 1997) ("[C]laims *arising* out of personal service contracts are generally not assignable") (emphasis added); *Norlund v. Faust*, 675 N.E.2d 1142, 1151 (Ind. Ct. App. 1997) (same); *First Cmty. Bank & Tr. v. Kelley, Hardesty, Smith & Co.,* 663 N.E.2d 218, 223 (Ind. Ct. App. 1996) (making observation that accountant malpractice claim for damages resembled non-assignable personal contract but concluding it was assignable because it more closely resembled a tort given duties of accountants to those relying on their analysis).

law and cases from other jurisdictions, Frost Solutions seeks to craft a novel "stranger" rule, whereby third parties who share some commonalities with an assigning employer are exempt from the rule prohibiting the assignment of personal services contracts without the employees' consent. Opp. at 11-16.  The case law does not support that proposition.  Indeed, Frost relies on cases where the former employer and the new employer have been described as "materially identical" or "essentially the same" because the owners and managers from one business to the next remained unchanged. *Norlund v. Faust*, 675 N.E.2d 1142, 1147, 1151 (Ind. Ct. App. 1997) (former employer was a sole proprietor who, upon incorporating his business, was sole shareholder, officer, and director of new entity); *TSG Finishing LLC v. Bollinger*, 2016 NCBC 65 at ¶¶ 37-38 (N.C. Super. Ct. Aug. 26, 2016) (new employer was "essentially the same" as former employer because, following bankruptcy reorganization, new employer had same owners and officers).  These cases show, at most, that courts are hesitant to prohibit assignment of a personal contract where the former and new employer differ only in legal form. *See Faust*, 675 N.E. 2d at 1153 (describing Faust's incorporation as a "mere technicality.").[4]

For this reason, Frost's efforts to argue that it is no stranger to Lareau's Separation Agreement based on some attenuated and immaterial commonalities—like, we both worked with Notre Dame—do not create any genuine issue of fact.  *See* Opp. at 14-15.  No factfinder could conclude that Frost Control and Frost Solutions are "materially identical."  Frost Solutions' owners, Michael Bott and Michael Kirsh, had no previous experience with Frost Control. Reply Ex. A, Dep. Tr. Michael Bott ("Bott Dep.") at 15:3-12, 17:2-19, 19:15-20:16; Reply Ex. B, Dep. Tr. Michael Kirsh ("Kirsh Dep.") at 9:21-10:1.  Frost Solutions bought Frost Control's assets from a bank

---

[4] *Faust*, 675 N.E. 2d at 1153, however was a case primarily about the employee's acquiescence. ("If however, the employee is aware of the assignment and continues his employment knowingly, he may not thereafter successfully claim that he opposes said assignment. In the present case, there is evidence of record that R. Norlund had knowledge of the assignment between Faust Eye Center and Faust Eye Center, P.C.").

(Reply Ex. C, Asset Purchase Agreement between Frost Solutions and First Source Bank), after Frost Control's employees had left,[5] and after its Board of Directors ███████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████; ██████████████████████████████████████████████████ ███  And during due diligence, ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████); ██████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████ ████████████████████████████████████████ For purposes of their so called "stranger" exception to the clearly established non-assignability Indiana law, Frost has failed to demonstrate any material issue of fact on whether it is materially identical to Frost Solutions.



Because Frost did not get consent from Lareau to receive his Separation Agreement through assignment, it has no right to enforce the Separation Agreement's personal restrictive covenants.[6]

***Indiana's Assignment Rule Applies to Non-Solicitation Covenants.*** Plaintiff is incorrect

---

[5] Deposition of Ryan Kreager at 18:2-21:16, excerpts attached at Reply Ex.. F("essentially the entire staff, had—had quit on the same day"); Deposition of Michael Gallagher at 134-142, excerpts attached at Reply Ex. G (detailing multiple staff resignations in March of 2022)).

[6] Frost is not altogether wrong in introducing the concept of an employee's familiarity with his employer as potentially relevant to the assignability issue, but the analysis cuts the other way. When deciding whether to sign an agreement with restrictive covenants, it is understandable that an employee will size up the "personality" of that employer – assessing, for example, whether that employer is likely or unlikely to engage in "scorched earth" litigation as part of a misguided, but expensive and disruptive effort to enforce those covenants, even if based on unstable legal and factual ground. In making that assessment, he is not only determining the scope of the restrictions he may have to live with during the restricted period, but also who will be the enforcer of the rights. So, even if the scope of the restrictions may not always change as a result of assignment, the enforcer may, which can have a significantly different effect on the employee. Thus, an employee may view such an agreement differently if it has an assignment clause than if, as here, it does not. *See, Traffic Control Serv, v. United Rentals Northwest, Inc.*, 120 Nev. 168,174 (2004)(agreeing with those

that non-solicitation provisions are not personal service contracts under Indiana law.  As an initial matter, Frost is wrong that an agreement not to solicit certain customers is qualitatively different than a covenant not to compete.  Opp. at 17.  In both situations, an employee refrains from competing in deference to a specific employer, one who usually holds significant power over that employee.  And in both situations, an employee agrees for the employer's benefit to place significant restraints on the right to provide his or her personal services freely.

Indiana courts do not disagree with these concepts.  For example, in *Heraeus Med., LLC v. Zimmer, Inc.*, 135 N.E.3d 150, 153 (Ind. 2019), the Indiana Supreme Court treated the employee non-solicitation provision in that case as a "Noncompetition" provision and applied the same strict constructions afforded to noncompete covenants as disfavored restraints on trade.  Indiana courts have also assessed the assignability of non-solicitation provisions under the same assignability analysis set forth in *SDL Enterprises, Inc. v. DeReamer*, 683 N.E. 2d 1347, 1349-50 (Ind. Ct. App. 1997).  *See USI Ins. Servs. LLC v. Ryan, Civil Action No. 1:14-CV-151 JVB, 2015 U.S. Dist. LEXIS 181614, at *12 (N.D. Ind. May 21, 2015)* (analyzing employment agreement containing non-solicitation restriction, but no non-compete restriction, as a "non-competition agreement consistent with the assignability analysis in SDL Enters.).  In fact, *Norlund v. Faust*, 675 N.E.2d 1142, 1146-47, the case that Frost curiously cites approvingly on the assignability issues, involved a noncompetition provision that included both non-solicitation and noncompete covenants.  The unavoidable upshot of all these Indiana cases is that a non-solicitation covenant is personal in nature and not assignable absent an employee's consent.

## III.    The Non-solicitation Clause is Overbroad and Unsalvageable.

Plaintiff's arguments concerning the Separation Agreement's non-solicitation clause miss the

---

jurisdictions like Indiana holding that noncompetition covenants are personal in nature and, therefore, unassignable as a matter of law, absent the employee's express consent and recognizing that when an employee enters into a covenant not to compete with his employer, he may consider the character and "personality" of his employer to determine whether he is willing to be held to a contract that will restrain him from future competition).

mark.  Plaintiff suggests that the non-solicitation clause is not overbroad because, despite its text, the effect of the clause will be limited given the size of the relevant industry.  Opp. at 20.  This argument is unpersuasive for multiple reasons.  *First*, the non-solicitation clause is plainly overbroad on its face.  It applies to any "employee, sales representative, distributor, agent or consultant" of Frost Control during the year following Lareau's resignation.  Separation Agreement at § 11.  The provision is overbroad and unreasonable because it (a) purports to restrict Lareau from soliciting or interfering with essentially all of Frost Control's business associates for a yearlong period regardless of whether those business associates worked with Frost Control or Lareau during his employment or whether during his employment Lareau learned any confidential information about those restricted parties and (b) puts an unreasonable "notice" burden on Lareau to keep abreast of who Frost Control is working with for the year after his employment (i.e. the restricted period).[7]

*Second*, there is simply no support for the proposition that overbreadth concerns can be alleviated upon a showing that the restrictive covenant was less restrictive "in practice."  The opposite is true.  "Noncompetition agreements in employment contracts are in restraint of trade and disfavored by the law.'" *Heraeus Med., LLC v. Zimmer, Inc.*, 135 N.E.3d 150, 153 (Ind. 2019) (internal quotation marks omitted) (reviewing non-solicitation clause).  "These agreements are thus strictly construed against employers." *Id.*  Given this, it is not surprising that "Indiana law strongly discourages employers' attempts to draft unreasonably broad and oppressive covenants."  *Clark's Sales & Serv. v. John D. Smith & Ferguson Enters.*, 4 N.E.3d 772, 786 (Ind. Ct. App. 2014) (internal quotation marks omitted).

Thus, "Indiana courts will not hesitate to strike down any [] restrictive covenants which are

---

[7] *See Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208, 214-15 (Ind. Ct. App. 1982) (holding that non-solicitation covenant extending to past and prospective customers was too broad and vague); *Sharvelle v. Magnante*, 836 N.E.2d 432, 440 (Ind. Ct. App. 2005) (non-customer non-solicitation covenant overbroad for extending to past and future employees and other business partners).

7

the least bit overly broad with respect to the protectible interest at stake." *Buffkin v. Glacier Grp.,* 997 N.E.2d 1, 11 (Ind. Ct. App. 2013) (internal quotation marks omitted).  Nor will the Indiana courts simply rewrite the covenant, as "the courts need not do for the employer what it should have done in the first place—write a reasonable covenant." *Clark's Sales & Serv. v. John D. Smith & Ferguson Enters.,* 4 N.E.3d 772, 786 (Ind. Ct. App. 2014) (internal quotation marks omitted).  "The consequence to employers for drafting such overreaching contracts is that the covenant cannot be enforced at all." *Id.*  The reason for this position is practical—employers usually hold power "over their current and former employees in cases of covenants not to compete" and, as a practical matter, "such unreasonably broad contracts often have in terrorem effects on current and former employees." *Id.* (citing *Product Action Int'l, Inc. v. Mero*, 277 F. Supp. 2d 919, 931 (S.D. Ind. 2003)).

Frost's effort to minimize the practical effect of the overbroad non-solicitation clause is wrong on both the facts and the law.  In downplaying the effect of the non-solicitation covenant, Frost overlooks the significant *in terrorem* problem posed with these covenants.  And, more fundamentally, in arguing that the Separation Agreement's non-solicitation provision should be enforced because it was (purportedly) reasonable in practice, Frost ignores clear Indiana law rejecting that approach.  For these reasons, the Court should strike down the non-solicitation provision as overbroad as written and refuse to reform it, consistent with Indiana law.

## IV.    <u>There was no consideration supporting the Lareau Agreement.</u>

In support of its argument that there was consideration underlying the Separation Agreement, Frost makes two arguments.  First, it seeks to recharacterize the Separation Agreement as providing as a negotiated "separation package," despite the contradictory plain terms of the agreement.  Second, it seeks to create a factual issue about whether Frost was obligated to pay Lareau commissions. Opp. at 21.  Both arguments fail.

To begin with, the Separation Agreement plainly and unambiguously identifies the

consideration Lareau received not as severance or separation pay but as "accrued" vacation and "compensation for sales commissions." *See* Doc. No. 116-4, Separation Agreement at § 1. Compensation is "remuneration . . . received in return for services rendered," which "ordinarily . . . includes wages . . . [and] commissions." *Montalvo v. State ex rel. Zoeller*, 27 N.E.3d 795, 799 (Ind. Ct. App. 2015)( quoting Black's Law Dictionary (10th ed. 2014)).  The Separation Agreement contains no suggestion in its recitals that Lareau and Frost had any dispute over the commissions owed. Doc. No. 116-4, Separation Agreement at p. 1.  It further contains an integration clause, which provides that the Separation Agreement is the "final understanding" concerning Lareau's termination of employment and that it is "a complete and exclusive statement of the terms of their agreement." *Id.* at §20.  Thus, the Separation Agreement is clear and unambiguous that the benefit Lareau received was compensation for commissions.  Frost cannot on one hand claim that the Separation Agreement is a valid enforceable contract, and then on the other offer Gill's parol testimony to show that the consideration stated in the agreement was something different.[8]

In any event, even if the Court were to consider extrinsic evidence, Gill's testimony presents no genuine dispute of fact as it is directly contradicted by contemporaneous documents showing that Frost Control's Board of Directors rejected Gill's proposal for "severance payment" because it set a "precedent" and instead focused on "earned commissions."  *See* Mem. Ex. 1 at Gallagher_0001862  & Gallagher_0001861.  Documents also show that Baglien, as requested by the Board of Directors, confirmed that the commissions on Lareau's spreadsheet were, in fact, owed. *See* Lareau Aff. (submitted in support of Motion), Ex. 3 (Frost_002834)(providing spreadsheet of commissions owed); Reply Ex. H, Baglien, Sept. 21, 2021 email.

Frost's suggestion through Gill's testimony that Frost Control was not obligated to pay

---

[8] *See Ebersold v. Wise*, 412 N.E. 2d 802, 805 (Indian Ct App. 1980) (holding that parol evidence cannot be used to show "that the consideration [in a contract] was other than that expressed in the written instrument").

commissions also fails to create any genuine disputed issues of material fact.  Specifically, as Frost notes in its Opposition, Gill testified that "[t]here was no clear documentation that would have made the company absolutely responsible to pay a commission."  But that testimony does not create a *genuine* issue of material fact.  Gill's testimony that no "clear documentation" existed was based on his erroneous understanding that Lareau had no offer letter setting forth a commission structure. *See* Reply Ex. I, Gill Dep. Tr. 87:18-88:8 (explaining that "there was nothing that was like here is an offer letter, here is the commission structure, it's executed by an officer of the company and the employee").  The offer letter (which was Exhibit 1 to the Lareau Declaration (Doc. No. 116-23)) does exist, it sets forth a clear commission structure, and it is countersigned by Lareau and Baglien, who was an officer of the company.  *See* Lareau Declaration Filed with Summary Judgment ("Lareau Decl.") at ¶ 4; Lareau Decl. Ex. 1.  Indeed, Frost has not disputed that fact for summary judgment purposes.[9]  *See* Opp. at 2 (identifying section A describing Lareau's acceptance of offer letter as undisputed). There is no genuine issue of disputed fact remaining about the lack of consideration supporting the Separation Agreement.  Further, Gill's explanation as the chief executive officer of the employer that he was aware of no "clear documentation" regarding commissions only confirms that Frost Control had not formally changed the commission structure set forth in Lareau's offer letter, as the law would have required.[10]

## V.    There Was No Breach of the Non-Solicitation Provision.

Baglien and Lareau are entitled to summary judgment on the portions of Count III and VI relating to the non-solicitation provision.  That provision prohibits him from interfering with Frost

---

[9] And, contemporaneous evidence shows, beyond dispute, that Gill and the entire board were provided with Lareau's offer letter at the time and that the Board considered it binding.  See Reply Ex. J (Baglien circulating letter to Board).

[10] *IBM Corp. v. Khoury*, 170 N.H. 492, 507 (2017) ("RSA 275:49 requires employers to notify all employees at the time of hiring of the rate of pay, as well as of any changes to the rate of pay prior to the time of such changes.").

Control's relationship with distributors like TAPCO. *See* Separation Agreement at § 11. As explained in Defendant's Memorandum, there is no genuine issue of disputed fact concerning the state of the relationship between Frost Control and TAPCO as of the date that negotiations between Vue and TAPCO began. TAPCO had stopped doing business with Frost Control because it had "disappeared" on them, Frost Control then informed TAPCO it was liquidating, and TAPCO began a process of seeking out new partners to work within the space. *See* Mem. Ex. 7, Everard Dep. at 32:4-33:21. Therefore, Vue seeking to obtain TAPCO's business did not interfere with Frost Control's relationship with TAPCO.

And Michael Bott's testimony about the relationship "in Spring and Summer 2022" (Opp. at 18) does not provide any competent evidence disputing those facts. First, it is rank hearsay, repeating what some unspecified TAPCO people said about the "relationship." *See* Opp. at 18-19. But beyond that, it does not speak to the status of the relationship between *Frost Control* and TAPCO, which is what the restriction concerns. Bott was a prospective buyer of Frost Control's assets seeking to secure a relationship for the new entity that would become Frost Solutions. *See* Mem. Ex. 7, Everard Dep. at 32:17-33:21 (describing TAPCO's communications as being with "new Frost"); Reply Ex. C, Asset Purchase Agreement (dated Aug. 9, 2022). Lareau and Vue's efforts to compete with that burgeoning company—after Frost Control had disappeared and been fired by TAPCO—does not violate the restrictive covenant because at the time there was certainly no viable relationship between TAPCO and Frost Control with which to interfere[11]

## **CONCLUSION**

For the foregoing reasons, Lareau's and Baglien's Motion for Summary Judgment should be granted.

---

[11] Frost points out that the Everard deposition was taken in its lawsuit against Cory Moore and TAPCO. But that does limit Defendants' use of that testimony in this action. *See* Fed. R. Evidence 804(b)(1); *Pemberton v. City of N.Y.*, 2023 U.S. Dist. LEXIS 204977, at *4-5 (S.D.N.Y. Nov. 11, 2023).

Respectfully submitted,

PATRICK BAGLIEN AND
CHRISTOPHER LAREAU

By their attorneys,

SHEEHAN PHINNEY BASS & GREEN, P.A.

Dated: March 26, 2026

*/s/ Ryan P. Lirette*_____
David W. McGrath (NH Bar No. 9347)
James P. Harris (NH Bar No. 15336)
Ryan P. Lirette (NH Bar No. 19561)
Abbygale M. Dow (NH Bar No. 272938)
1000 Elm Street, 17th Floor
Manchester, NH 03101
(603) 627-8152
dmcgrath@sheehan.com
jharris@sheehan.com
rlirette@sheehan.com
adow@sheehan.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically served copies of the foregoing on all counsel of record via the Court's CM/ECF system.

Dated:  March 26, 2026

*/s/ Ryan P. Lirette*_____
Ryan P. Lirette

12