# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

FROST SOLUTIONS, LLC,

      Plaintiff,

      v.

PATRICK BAGLIEN, CHRISTOPHER
LAREAU, and VUE ROBOTICS, LLC,

      Defendants.

Case No. 1:22-cv-00401-SE

## REPLY IN SUPPORT OF PLAINTIFF'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 113)

Defendants Baglien and Lareau, for the most part, do not deny what they did. Before resigning from Frost, they downloaded thousands of records from Frost's confidential HubSpot database, including all of Frost's customer contacts, deals, and intelligence. Within months, Baglien and Lareau were soliciting Frost's customers and its most important distributor, TAPCO—using contact information that was included in those downloads—to steer their business away from Frost to Vue Robotics, the competing company they built while still on Frost's payroll.

What Defendants dispute is whether any of this was wrongful. Their Objection[1] offers a battery of legal theories (assignability, lack of consideration, unconscionability, overbreadth) in hopes that one of them will stick and excuse their misconduct. None does. Defendants' legal arguments misread Indiana law, ignore the plain text of the applicable Agreements, and in the case of the Baglien Agreement, contradict its express terms. As for breach, Defendants' only response is the naked, evidence-free assertion that the HubSpot downloads were for "legitimate Frost Control business purposes," which cannot defeat summary judgment.

---

[1]    Defendants' Memorandum of Law in Support. of Their Objection to Plaintiff's Motion for Partial Summary Judgment on Contract Issues ("Defs.' Br.") (ECF No. 131).

Frost's motion (ECF No. 113) seeks partial summary judgment on the validity and enforceability of the Lareau Agreement and the Baglien Agreement, the restrictive covenants therein, and the existence of Defendants' respective breaches. For the reasons discussed below and in Frost's opening brief ("Pl.'s Br.") (ECF No. 113-1), Frost's motion should be granted.

## ARGUMENT

**I.      Defendants' failure to respond to Frost's statements of undisputed material fact renders them admitted.**

Defendants did not directly respond to Frost's Local Rule 56.1(a) undisputed material facts. Instead, they presented their own list of material facts. (Defs.' Br., at 4–16.) LR 56.1(b) provides that "[a]ll properly supported material facts set forth in the moving party's factual statement may be deemed admitted for purposes of the motion unless properly opposed by the adverse party." Thus, to the extent that Defendants did not address material facts set forth in Frost's Statement of Material Facts, they are admitted. *Id.*

**II.     The Lareau Agreement is valid and enforceable.**

**A.      The Agreement as a whole is valid.**

To begin, Defendants' brief repeats their assignability argument. Frost has responded to that argument in prior briefing and incorporates it here.[2] In short, Defendants' assignability theory fundamentally misstates Indiana law, which bars enforcement of a non-compete only by a "stranger" to the original undertaking, and Frost is not one. The non-compete covenant expired before any meaningful change in Frost's corporate form, and the transition from Frost Control to Frost Solutions was a change in legal formality, not in the substance of the enterprise.

Similarly, Defendants' lack-of-consideration argument fails for the reasons explained in Pl.'s Opp. to Defs.' Mot. for Partial SJ., at 11–19. Lareau's belief that he was owed certain commissions

---

[2]    *See* Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment ("Pl.'s Opp. to Defs' Mot. for Partial SJ") (ECF No. 128), at 5–15; Defendants' Mem. of Law in Support of Their Motion for Partial Summary Judgment (ECF No. 116-1, at 11–19.)

and had accrued three weeks of vacation time finds no support in the record. The evidence shows that Frost and Lareau disputed what was owed upon his departure. *See id.* at 21. Resolving that dispute by paying Lareau almost $15,000 in addition to allowing him to use vacation time instead of immediately firing him provided adequate consideration. *See id.*; *Bauermeister v. Sullivan*, 87 Ind. App. 628 (Ind. Ct. App. 1928) (holding that even "an agreed consideration of $ 1, the receipt of which is acknowledged, is adequate").

Defendants' other challenges to the Lareau Agreement's validity also fail. As to procedural unconscionability, there is no evidence in the record that the "manner and process" in which the contract was agreed to was improper. *Missler v. State Farm Ins. Co.*, 41 N.E.3d 297, 303 (Ind. Ct. App. 2015). In fact, Frost has established that Lareau understood the terms of the restrictive covenants in the Lareau Agreement at the time he signed it. (*See* Pl.'s Br., SUMF ¶¶ 22–24.) Defendants argue that Frost CEO Victor Gill "manipulated the Separation Agreement so that it misleadingly suggested that Lareau was receiving a release from Frost Control when the release in the agreement was unilateral," (Defs.' Br. at 23), but do not substantiate this claim, nor do they contest that Lareau understood the restrictive covenants in the Agreement. Thus, the Agreement was not procedurally unconscionable.

Defendants' substantive unconscionability argument is essentially a repeat of their earlier argument regarding consideration, and is not supported by caselaw. Unconscionability is a high bar. *See Martin Rispens & Son v. Hall Farms*, 621 N.E.2d 1078, 1087 (Ind. 1993) (collecting cases where substantive unconscionability arguments were rejected). The Lareau Agreement resolved a dispute between Frost and Lareau regarding unpaid commissions and vacation time, and included restrictive covenants intended to guard against future disputes regarding disclosure of confidential information. (*See* Pl.'s Br., SUMF ¶¶ 19–25.) That is enough to defeat Defendants' argument.

**B.      The restrictive covenants are reasonable in scope.**

The non-compete covenant is reasonable because it is "necessary to protect [Frost], is not unreasonably restrictive of the employee, and is not against public policy." *Press-A-Dent, Inc. v. Weigl*, 849 N.E.2d 661, 669 (Ind. Ct. App. 2006) (citation omitted). Notably, Defendants say nothing about the short duration of the non-compete—only six months—which goes a long way toward establishing that the non-compete covenant is not unreasonably restrictive. *See Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 174 (Ind. Ct. App. 2008). Frost has a legitimate interest in protecting its confidential information, customer relationships, and goodwill. Defendants argue that Lareau did not have access to confidential information because he worked in sales, but they do not refute that Lareau had access to some technical information, because he was involved with relaying customer feedback to Frost's technical team.[3] (Pl.'s Br., SUMF ¶ 17.) More importantly, Lareau had access to Frost's extensive customer intelligence. (*Id.*, SUMF ¶¶ 2, 17.) Protecting confidential customer information is a legitimate interest to be protected by a restrictive covenant under Indiana law. *See Titus v. Rheitone, Inc.*, 758 N.E.2d 85, 93 (Ind. Ct. App. 2001).

Defendants argue the non-solicitation covenant is unenforceable and overbroad for extending to "seemingly harmless activity," and cite to cases involving non-solicitation covenants that apply to past and prospective customers. (Defs.' Br. at 16–18.) But the non-solicitation covenant here *does not* cover past or prospective business relationships, and Frost has never argued otherwise. Rather, the covenant applies to any then-existing "relationship between . . . any . . . employee, sales representative, distributor, agent or consultant and [Frost]." (Pl.'s Br., SUMF ¶ 24 (quoting Lareau Agreement § 11).) Defendants' argument is thus inapposite.

---

[3]    Lareau also attended product update meetings and was aware of the features and specifications of Frost's proprietary products. (*See* ECF 129-23, 129-24.)

The Court need not "blue pencil" the Lareau Agreement's restrictive covenants because the relevant provisions are not overbroad. Nevertheless, the Court could blue pencil any part of Lareau's restrictive covenants it deemed overbroad under Indiana law and the Agreement's plain language. Defendants cite to *Heraeus Med., LLC v. Zimmer, Inc.*, 135 N.E.3d 150 (Ind. 2019), where the Court found overbroad—and not subject to blue penciling—a non-solicitation covenant enforced by a major medical distributor to prevent an ex-employee from hiring any of the distributor's employees. The non-solicitation covenant at issue here applies to fewer entities and individuals, as Frost is a small company in a specialized industry, and further, the non-solicitation covenant excludes customers—the largest group of Frost contacts to whom it might otherwise apply. (*See* Pl.'s Br., SUMF ¶ 24 (quoting Lareau Agreement § 11).)[4]

Finally, Defendants resort to arguing hypotheticals, like what if the non-solicitation agreement were enforced to prevent Lareau from working with future Frost customers? (*See* Defs.' Br. at 17–18.) Defendants' conjecture finds no support in the Lareau Agreement's plain language. Starting a company to compete directly against Frost and soliciting Frost's major distributor is the exact conduct sought to be protected against by valid restrictive covenants—and the exact conduct Lareau engaged in. These established facts are what is at issue here.

## III.    The Baglien Agreement is valid and enforceable.

### A.    The non-solicitation covenants

Defendants argue that Frost did not plead breach of the Baglien Agreement's non-solicitation covenants, ignoring the applicable legal standard as well as the Amended Complaint's

---

[4]    It should be noted that Indiana law is more favorable to non-competes than some other states' law on this point, as some courts refuse to blue pencil overbroad restrictive covenants to make them enforceable. *See, e.g., Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.*, 968 F.2d 1463, 1469 (1st Cir. 1992) (describing different approaches courts take regarding overbroad restrictive covenants, including, at the strictest end, "the 'all or nothing' approach, which would void the restrictive covenant entirely if any part is unenforceable.") (citation omitted).

text. (*See* 1st Am. Compl., ECF No. 108.) Count IV, which pleads breach of the Baglien Agreement, *specifically alleges improper solicitation* of Frost's customers and other persons. (*Id.* ¶ 97.) It does not purport to limit the breach of contract claim in any way that would suggest the non-solicitation covenants are not included in the claim. The Amended Complaint placed Defendants on notice that Frost seeks damages for any and all provisions of that agreement, and specifically its non-solicitation provisions. *See Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("A short and plain statement [under Rule 8] needs only enough detail to provide a defendant with fair notice of what the claim is and the grounds upon which it rests." (cleaned up)).

Defendants also argue that the confidentiality covenants in both agreements are unenforceable because they "would prohibit Lareau and Baglien from using publicly available information and general skills knowledge acquired during employment with Frost Control." (Defs.' Br. at 24.) Defendants offer no legal or record citation for this proposition. First, the agreements are not overbroad such that they bar legitimate activity, and second, Defendants' argument does not square with their own misconduct, or the covenants' plain language. "General skills knowledge" is not what is at issue here. Rather, Defendants' massive downloads from Frost's HubSpot database of its confidential customer intelligence and immediate use of that data to start a business competing directly with Frost is at issue. (Pl.'s Br., SUMF ¶¶ 28–34.) This misconduct hits at the core of Frost's legitimate business interests. (*See id.*, SUMF ¶¶ 10–11, 21–22.)

## B.    Frost may enforce the Termination Certification's obligations.

Defendants argue that the Termination Certification attached as Exhibit B to the Baglien Agreement is not enforceable because he did not sign it. (Defs.' Br. at 24.) Defendants cite general principles of Indiana contract law and assert that the Baglien Agreement "makes it clear that in the event Baglien fails to deliver the Termination Certificate, the certificate is not deemed to be binding on him." (*Id.*) However, there is no such provision. What the Baglien Agreement actually makes

"clear" is that upon his separation from Frost, Baglien "shall sign and deliver the 'Termination Certification' . . . however, [his] failure to sign and deliver the Termination Certification shall in no way diminish [his] continuing obligations under [the Confidentiality Agreement]." (*Id.* at ¶ 6.) Baglien was thus *required* to sign the Termination Certification, the purpose of which was to ensure compliance with the other terms of the Agreement. Because Baglien signed the Agreement and agreed he would sign the Certification upon separation, he agreed to the terms of the Termination Certification at that time and can be held to those terms. There was a "meeting of the minds" that Baglien would comply with the terms set out in the Termination Certification upon his separation from Frost. *See Fiederlein v. Boutselis*, 952 N.E.2d 847, 856 (Ind. Ct. App. 2011).

Finally, by restating their assignability argument in the context of the Baglien Agreement, Defendants again ignore the Agreement's plain text. (*See* Defs.' Br. at 24.) Section 12(e) states: "This Agreement will be binding upon my . . . successors and assigns, and will be for the benefit of the Company, *its successors, and its assigns*." (Pl.'s Br., Ex. 9 (Baglien Agreement) (emphasis added).) The Termination Certification also specifically calls out the company's "subsidiaries, affiliates, successors or assigns." (*Id.*) Baglien thus unambiguously consented to assignment of the Baglien Agreement.

## IV.    Frost is entitled to summary judgment as to certain breaches of both agreements.

### A.    Lareau's non-compete covenant

There is no genuine dispute as to whether Lareau competed against Frost during the six-month term of his non-compete covenant following his resignation from Frost. Lareau agreed that he would "not, without the prior express written approval of [Frost], directly or indirectly serve as a founder, co-founder, executive officer, manager, consultant, or employee for any enterprise engaged in the manufacture or development of sensors and computer systems built for the analysis and/or reporting of road weather conditions." (Pl.'s Br., SUMF ¶ 23 (quoting Lareau Agreement § 10).) Defendants appear to argue that Vue was not "engaged in the . . . development of sensors and

computer systems built for the analysis and/or reporting of road weather conditions" in the six months following Lareau's departure from Frost. (*Id.*; Defs.' Br. at 25–27.) But that is exactly what they were doing. All during the term of Lareau's non-compete (October 8, 2021 to April 8, 2022): Baglien and Lareau drafted a product requirements document for Vue; Baglien and Lareau formed Vue as an entity; and Baglien emailed a former Frost customer with information about Vue's products. (Pl.'s Br., SUMF ¶¶ 32, 34, 36.) These were concrete steps. Defendants established the business enterprise, and began to compete against Frost. Baglien and Lareau also make the implausible argument that drafting a "product requirements" document is not considered product "development." *Id.* Their effort to distinguish their actions is unavailing; they were taking critical steps to develop a product to compete against Frost, during the term of Lareau's non-compete.[5]

### B.    Defendant's confidentiality covenants

Lareau and Baglien violated their confidentiality obligations by using confidential customer intelligence they downloaded from HubSpot to solicit Frost contacts and using Frost's technical information to develop Vue's product. (Pl.'s Br., SUMF ¶¶ 27–41.) Defendants' response is that "Baglien and Lareau have testified that any use of the Frost Control CRM Data was for legitimate Frost Control business purposes," but they cite no evidence or testimony for this point. ( Defs.' Br. at 27.) This is not adequate to show a "genuine dispute as to a[] material fact," Fed. R. Civ. P. 56, as to whether Baglien and Lareau used confidential Frost information—including the HubSpot customer information—in violation of the confidentiality obligations. Ultimately, Defendants can only rely on the unsupported assertion that they downloaded Frost's data, but never used it. Such an unsupported statement cannot defeat summary judgment.

---

[5]  It is true that an employee may "make arrangements to compete [during his employment] . . . except that he cannot properly use confidential information peculiar to his employer's business." *Potts v. Review Bd of Indiana Employment Sec. Div.*, 475 N.E.2d 708, 712 (Ind. Ct. App. 1985). This authority is not relevant here because: 1) it does not consider express non-compete agreements, 2) Lareau did more than "make arrangements"—he started a competing business, and 3) Lareau *did* use "confidential information peculiar to his employer's business." *Id.*

Defendants also argue that Frost's customer information is publicly available, so use of it cannot constitute a breach of Defendants' Agreements. Frost addresses this argument at length in its opposition to Defendants' motion for summary judgment on Frost's trade secrets claims. (Pl.'s Resp. to Defs.' Technology and Trade Secret MSJ (ECF No. 129), at 16–23.) To summarize, the detailed customer information in HubSpot was the product of extensive effort by Frost. Courts routinely find such information protectable under a confidentiality agreement. *See Hydraulic Exch. & Repair, Inc. v. KM Specialty Pumps, Inc.*, 690 N.E.2d 782, 786 (Ind. Ct. App. 1998) (holding, for purposes of trade secrets analysis, that compilation of customer information was confidential; "[the] effort of compiling . . . customer and pricing information is entitled to protection even if the customer names may generally be known") Defendants rely on *American Shippers Supply Co. v. Campbell*, but that case made clear that a customer list can "constitute [] confidential information subject to protection." 456 N.E.2d 1040, 1045 (Ind. Ct. App. 1983). Additionally, that case involved less detailed customer information than here. Unlike the detailed information about past deals with each customer at issue here (Pl.'s Br., SUMF ¶ 2), the Court in *American Shippers* considered company customer information that was limited—a client contact and little more. 456 N.E.2d at 1042. Additionally, the court noted that the industry in that case—shipping supplies—was generic and employees in the industry were not very specialized. *Id.* at 1044–45.

## C.    Defendants' non-solicitation covenants

The Lareau Agreement prohibited Lareau from "interfer[ing] with the relationship between [Frost and] any . . . distributor." (Pl.'s Br., SUMF ¶ 24 (quoting Lareau Agreement § 11).) Defendants argue that Lareau's efforts to obtain TAPCO's business did not violate this covenant because Frost and Vue both had non-exclusive relationships with TAPCO. But the terms of Frost's contract with TAPCO, or Vue's contract with TAPCO, are irrelevant to Lareau's obligations to Frost in a separate contract. Those obligations are not contingent upon exclusivity provisions being

present in other contracts. And the interference at issue here was not theoretical—Lareau *did* interfere with Frost's relationship with TAPCO. In July and August of 2022, TAPCO representatives communicated with Frost about ending their business relationship with Frost and switching their business to Vue. (*Id.*, SUMF ¶¶ 40–42.) Lareau thus interfered with TAPCO's relationship with Frost in violation of his non-solicitation covenant.

Defendants also argue that TAPCO independently decided to stop doing business with Frost. Frost has addressed this argument in its Opposition to Defendants' Motion for Summary Judgment on the contract claims at issue in this case. (*See* Pl.'s Opp. to Defs' Mot. for Partial SJ.) As explained there, Defendants have not adduced sufficient evidence to support this argument. (*Id.* at 18–19.) The undisputed facts demonstrate that Defendants solicited TAPCO, which was a Frost distributor. (Pl.'s Br., SUMF ¶¶ 41–42.)

The Baglien Agreement's Termination Certification prohibited Baglien from using Frost's confidential information to:

> influence any of [Frost's] clients or customers from purchasing [Frost] products or services or to solicit or influence or attempt to influence any client, customer or other person . . . to direct any purchase of products and/or services to any person, firm, corporation, institution or other entity in competition with the business of [Frost].

(Pl.'s Br., Ex. 9 (Baglien Agreement, Ex. B).) There is no genuine dispute of material fact that Baglien did exactly what was prohibited by the Certification, *i.e.*, he used Frost's confidential customer information to urge Frost's customers to move their business from Frost to Vue. (*See* Pl.'s Br., SUMF ¶¶ 36, 39 (describing how Baglien emailed contacts at Frost customers about doing business with Vue, and "had worked with these individuals while at Frost and learned their contact information from the Frost HubSpot platform").)

## CONCLUSION

For the reasons discussed above and in Frost's opening brief, the motion for partial summary judgment should be granted.

Dated:  March 27, 2026                          Respectfully submitted,

                                                **FROST SOLUTIONS, LLC,**

                                                By its attorneys,

                                                /s/ *Laura L. Carroll*
                                                Laura L. Carroll (NH Bar No. 17444)
                                                ARENTFOX SCHIFF LLP
                                                800 Boylston Street, 32nd Floor
                                                Boston, MA 02199
                                                Tel:    (617) 973-6100
                                                Email:  laura.carroll@afslaw.com

                                                Todd A. Rowden (admitted *pro hac vice*)
                                                James L. Oakley (admitted *pro hac vice*)
                                                TAFT STETTINIUS & HOLLISTER LLP
                                                111 East Wacker Drive, Suite 2600
                                                Chicago, IL 60601
                                                Tel:    (312) 527-4000
                                                Fax:    (312) 527-4011
                                                Email:  trowden@taftlaw.com
                                                        joakley@taftlaw.com

                                                Amir R. Tahmassebi (admitted *pro hac vice*)
                                                KONICEK & DILLON, P.C.
                                                70 West Madison Street, Suite 2060
                                                Chicago, IL 60602
                                                Tel:    (312) 328-9166
                                                Fax:    (630) 262-9659
                                                Email:  amir@konicekdillonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically served a copy of this document on all counsel of record via the Court's CM/ECF system, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated:  March 27, 2026                          /s/ *Laura L. Carroll*
                                                Laura L. Carroll

11