**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

|  |  |  |
|---|---|---|
| FROST SOLUTIONS, LLC, | ) ) ) | Civ. Action No. 1:22-CV-00401-SE |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORAL ARGUMENT REQUESTED** |
| PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC, | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' SURREPLY IN SUPPORT OF
THEIR OBJECTION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS**

## I.    Frost Cannot Escape Its Liability to Lareau.

Plaintiff, Frost Solutions, LLC ("Frost") places its own, self-serving gloss on the facts regarding Kirsh's contact with Vue's insurance carrier, asking this Court to make the factual finding that Kirsh was just "asking about coverage options."  Kirsh's own deposition testimony refutes that requested finding.  He admits he "went through the facts" of this litigation and that the January 5, 2022, letter was discussed.  If Kirsh was truly just probing for his own insurance needs, there would have been no need to go into any detail about this litigation and he should have worked with his insurance broker (or his own insurance company), rather than call Vouch—something that Frost ignores.  The most logical conclusion is that Kirsh interfered with Vue's insurance coverage in an attempt to gain leverage and cause distress to Vue's principals.[1] Frost's requested construction of the record is strained and inappropriate for summary judgment. *In re Loestrin 24 Fe Antitrust Litig.*, 433 F. Supp. 3d 274, 302 (D.R.I. 2019) (applying the standard to deny summary judgment due to contested facts).

Frost also contends that it cannot be liable to Lareau for the consequences of interfering with its insurance coverage because such interference resulted from violations of a court order. To the extent Frost argues that such matter should be decided pursuant to Fed. R. Civ. P. 37, Defendants note that they filed a motion under that Rule (Doc. 60), which remains pending. Moreover, Frost opposed Defendants' motion at the time citing the exact counterclaims on which Frost seeks summary judgment.  *See* Doc. 68.  Frost cannot have it both ways.  And, in fact, the impact on Lareau's mental health cannot be addressed via a contempt finding or imposition of a discovery sanction, as neither would be sufficient to compensate Lareau for the emotional

---

[1] A declaration from Defendants' insurance carrier would not change the fact that Kirsh admitted he discussed the litigation, including the January 5, 2022, letter, with Vouch and that such discussion *and that exact letter* triggered a coverage review.  Those facts are undisputed and require denial of Frost's motion for summary judgment.

distress Frost caused.  Frost cannot escape the natural consequences of conduct that foreseeably resulted in harm to Lareau.

Frost is incorrect when it suggests that a treating physician cannot testify as to causation without producing a full report like that of a retained expert.  *See Sheriff v. Four Cousins Burgers & Fries of NH, LLC*, No. 21-CV-571-PB, 2023 WL 6976489, at *4 (D.N.H. Oct. 23, 2023) (Plaintiff's treating physicians were allowed to testify without providing a separate report where the medical records include opinions by his treating medical providers relating his PTSD and associated symptoms to his encounter with the defendants' agents) (denying summary judgment).  Lareau's medical records establish a relationship between his symptoms and Kirsh's actions.  That is enough to establish a genuine dispute of material fact sufficient to deny Frost's motion for summary judgment.

**II.     Frost's Unlawful Interference with TAPCO and Vue's Customers.**

Frost also places its own gloss on the facts surrounding its unlawful interference with TAPCO and Vue's customers.  Frost first asks this Court to conclude that TAPCO had "legally enforceable" reasons for terminating its contract with Vue (reasons that were divorced from Frost's instructions to do so).  TAPCO offered two reasons: (1) a conflict of interest existed because Moore owned a small percentage of Vue; and (2) Vue violated an implied covenant of good faith and fair dealing.  As indicated in Defendants' Objection (Doc 127-1, pg. 3 (citing Moore's deposition testimony)), Frost knew of Moore's small investment in Vue and Moore had no involvement in setting the business terms between the two companies.  So, there was no contemporaneous revelation on which a termination could be based; the timing, the communications between TAPCO and Frost, and the settlement agreement itself make clear that TAPCO terminated because Frost required it.

Moreover, there is no clause in the contract between TAPCO and Vue that prohibited Moore's investment. Without such a prohibition in the contract, there was no "legally enforceable" implied covenant on which a termination could be based. *See Reetz v. Advocate Aurora Health, Inc.*, 983 N.W.2d 669, 685 (Wisc. App. Ct. 2022) ("The good faith and fair dealing obligations must relate to the performance of the contract.").[2] *See also Hobin v. Coldwell Banker Residential Affiliates, Inc.*, 144 N.H. 626 (2000) ("[I]mplied terms should never be read to vary express terms").

Frost also argues that the "fact that some of Vue's customers did not renew their relationship does not evidence tortious interference." Doc. 140 at 7. This position is directly contrary to the one underpinning Frost's own trade secret claim. In any event, the communications demonstrate that Frost instructed TAPCO to affirmatively inform Vue's customers to cease doing business with Vue. Doc. 127-1, pg. 5-6. There is no need to guess, because Frost's own words confirm the improper interference and its intended effect. Doc. 127-19 (Ex. R). Frost cites to *Gould v. N. Hum. Servs.*, No. 2015-0698, 2016 WL 5831602, at *2 (N.H. Aug. 22, 2016) for the proposition that a third party's nonrenewal (as opposed to termination) of a contract can never be actionable. First, it should be noted that at least some of Vue's claim is based on the termination, as opposed to nonrenewal of contracts. Second, the court in *Gould* did not hold that nonrenewals could never support a claim for interference. Rather, the court concluded that the plaintiff did not support its claim on the facts of that case, so dismissal was appropriate. Here, Vue provides ample evidence of the interference and the harm that resulted from it.

Frost also argues that Defendants could have deposed TAPCO or obtained a signed

---

[2] The TAPCO and Vue Distributor Agreement chooses Wisconsin law to govern its interpretation.

3

declaration from TAPCO to support its claims relating to TAPCO; but that argument ignores the reality of the situation.  As explained in Section III below and in Defendants' Objection, regardless of TAPCO's testimony, the evidence in the record demonstrates a genuine dispute of material fact precluding summary judgment on Defendants' interference claims.  Notably, however, Defendants have worked diligently to try to schedule TAPCO's deposition prior to the end of this summary judgment briefing schedule, including in February 2026.  Despite TAPCO's contractual promise to cooperate with Frost in this litigation, TAPCO has repeatedly offered dates, committed to dates, and then cancelled those dates.  In fact, days prior to the filing of this surreply, TAPCO again cancelled its deposition that was scheduled for April 1, 2026.  It is now apparent, despite indications to the contrary, that TAPCO will need to be compelled to appear at a date of Defendants' choosing.

Finally, Frost puts its own gloss on the facts regarding Jason Ostrander's surreptitious entry into Vue's systems.  A jury could reject Ostrander's testimony and credit the documentary evidence and timeline to conclude that the access was for the benefit of his new employer, Frost, which was embroiled in this litigation to stifle a competitor.  *Casas Off. Machines, Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 684 (1st Cir. 1994) (reversing summary judgment where the court failed to appropriately apply the standard to fact asserted by the non-moving party).  Moreover, Frost glosses over the fact that Ostrander actively reported to Frost's principals about Vue's actions—one of which occurred mere days after starting at Frost.  Ostrander's self-serving deposition testimony (i.e., not to betray his current employer) does not compel an absence of dispute of material fact when the documentary evidence suggests otherwise.

### III.    The Record Demonstrates the Existence of a Conspiracy.

Frost also asks this Court to discount the evidence in the record of an active conspiracy

between Frost and TAPCO to undermine Vue.  The evidence consists of documents sent or received by Frost and one need not strain to interpret them to see the coordinated effort between Frost and TAPCO.  The *written* communications between Frost and TAPCO, followed by TAPCO's termination of its relationship with Vue, demonstrate the existence of a conspiracy. Civil conspiracy can be proven through circumstantial evidence of coordinated action, and the timing and sequence of events—including adding TAPCO to the *Moore* Litigation almost two years after it began, prompt settlement, and subsequent business arrangements between Frost and TAPCO—could lead a reasonable jury to infer an agreement to harm Vue's business interests. Courts routinely deny motions for summary judgment even without direct evidence of an explicit agreement, as conspiracies are rarely documented through explicit agreements.  *See*, *e.g.*, *Burbridge v. City of St. Louis, Missouri*, 430 F. Supp. 3d 595, 615 (E.D. Mo. 2019), *aff'd,* 2 F.4th 774 (8th Cir. 2021) ("[T]he elements of a conspiracy are rarely established through means other than circumstantial evidence, and summary judgment is only warranted when the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided.") (quotation omitted) (civil rights case).  Here, the record contains direct evidence of the conspiracy between TAPCO and Frost—they literally memorialized their concerted effort in writing.  Doc 127-1, pg. 4 (citing Exs. Q and R).

For all of the reasons herein, the Court should deny Frost's Motion for Summary Judgment on Defendants' Counterclaims.[3]

---

[3] Because Frost does not make any new arguments or caselaw as to its assertion that Defendants forfeited their counterclaims in its Reply, Defendants do not restate their arguments herein.

5

Respectfully submitted,

PATRICK BAGLIEN, CHRISTOPHER LAREAU
AND VUE ROBOTICS, LLC,

By their attorneys,

SHEEHAN PHINNEY BASS & GREEN, P.A.

Dated: March 31, 2026            */s/ James P. Harris*
                                 David W. McGrath (NH Bar No. 9347)
                                 James P. Harris (NH Bar No. 15336)
                                 Ryan P. Lirette (NH Bar No. 19561)
                                 Abbygale M. Dow (NH Bar No. 272938)
                                 1000 Elm Street, 17th Floor
                                 Manchester, NH 03101
                                 (603) 627-8255
                                 dmcgrath@sheehan.com
                                 jharris@sheehan.com
                                 rlirette@sheehan.com
                                 adow@sheehan.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically served copies of the foregoing on all counsel of record via the Court's CM/ECF system.

Dated: March 31, 2026                      */s/ James P. Harris*

6