**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

|  |  |  |
|---|---|---|
| FROST SOLUTIONS, LLC, | ) | Civ. Action No. 1:22-CV-00401-SE |
| Plaintiff, | ) | |
| v. | ) | **ORAL ARGUMENT REQUESTED** |
| PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC, | ) | |
| Defendants. | ) | |

**DEFENDANTS' SURREPLY IN SUPPORT OF ITS OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CONTRACT ISSUES**

1

## I.  <u>THE ENFORCEABILITY OF THE RESTRICTIVE COVENANTS.</u>

***The Non-Solicitation Covenant is Overbroad.***  Frost defends the non-solicitation covenant by arguing that it applies not to "prospective" business partners but to "then-existing" partners. *See* Reply at 4.  If Frost now contends that the non-solicitation provision applies to "existing" customers when Lareau was employed, the Agreement says no such thing, and under Indiana law courts will not write into a restrictive covenant what an employer later wishes it had written itself.  If Frost contends that the non-solicitation is reasonable because it restricts only "existing" business relationships at the time of "interference," then Frost misses the fundamental point.  The non-solicitation clause restricts Lareau, in the year following his resignation, from interfering with the relationship between Frost Control and *any* "employee, sales representative, distributor, agent, or consultant" doing business with Frost Control.  It therefore applies, on its face, to business partners that Lareau never worked with or learned information about, such as those who only began working with Frost Control *after* Lareau's resignation.  Because Frost has no legitimate interest in restricting contact with such entities, and because no blue penciling is viable, the covenant is unenforceable.[1]

***The Non-Competition Clause is Overbroad***.  The language of Lareau's non-compete covenant was adapted from the separation agreement for Frost Control's former CEO and founder, Bradley Tener.  Defendants' Objection, Doc. No. 131, ("Obj.") at Ex. 25 at § 12. The covenant is overbroad because developing and manufacturing road weather sensing products is unrelated to the sales services Lareau provided to Frost Control. *Clark's Sales & Serv. v. John D. Smith & Ferguson Enters.,* 4 N.E.3d 772, 782 (Ind. Ct. App. 2014) (finding restriction overbroad).  Frost contends that the restriction served Frost Control's legitimate interest in protecting customer feedback and

---

[1] *See e.g., Heraeus Med., LLC v. Zimmer, Inc.*, 135 N.E.3d 150, 152-53 (Ind. 2019) (non-solicit covering solicitation of all employees of business partner unreasonably overbroad); *Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208, 214-15 (Ind. Ct. App. 1982); *Sharvelle v. Magnante*, 836 N.E.2d 432, 440 (Ind. Ct. App. 2005).

intelligence, but it does not explain how that information—which is nontechnical in nature and derives from third parties—requires a restriction on Lareau working with any company that develops road weather technology.

***Frost Solutions Cannot Enforce Contracts That Were Never Assigned to It.***  As explained in previous briefs (Doc. No. 141 at 2-6), which Defendants incorporate here, Frost's arguments on assignability are flawed.  Indiana law has not recognized a flexible "stranger" exception to non-assignability, as Frost implies. Reply at 2.  Indiana has allowed assignment absent consent when the employee (1) continues working with the new employer *and* (2) the new employer was "materially identical" to the old employer.  *Norlund v. Faust,* 675 N.E.2d 1142, 1151-53 (Ind. Ct. App. 1997). Lareau did not continue working for Frost Solutions, so *Faust* is inapplicable. But even if the court were to conclude that satisfying the "materially identical" standard alone suffices, Frost Solutions still fails to satisfy that standard for the reasons stated. Doc. No. 141 at 4-5.

***The Separation Agreement Fails for Want of Consideration***.  As explained in Defendant's previous briefing (Doc. No. 141 at 8-10), which Defendants incorporate, the Separation Agreement lacked sufficient consideration.  The record shows that the only consideration that Lareau received for the Separation Agreement was the ability to take vacation that was already accrued and commissions that he was already owed.  Doc. No. 132 at 4-5, 141 at 8-10. Frost nonetheless argues it is entitled to summary judgment because, it claims, a dispute existed with Lareau over his entitlement to commissions. But there is no documentary evidence of such a dispute, and Frost's contention is contradicted by the Frost Control Board's contemporaneous acknowledgement that Lareau was owed commissions.  *See* Obj. Ex. 2 at Gallagher_0001861.  Further, Gill's *post hoc* conclusory testimony is premised on the erroneous understanding that Lareau had no offer letter promising him commissions, an implausible assertion contradicted by the executed offer letter itself. Doc. no. 141 at 9-10. A party's "[p]erformance of a legal duty to a promisor which is neither

2

doubtful nor the subject of honest dispute is not consideration." Restatement (Second) of Contract at § 73. Frost's arguments at best present genuine issues of material fact for trial.[2]

***Baglien Termination Certificate.*** Frost points to no authority or language in the Baglien Agreement stating that the terms of the Termination Certificate will be binding on Baglien absent his execution of that document. Reply at 6-7.[3] Frost's remedy was to demand that Baglien execute the Termination Certificate, not to try to force unexecuted terms on him years later.

## II. <u>SUMMARY JUDGMENT ON CLAIMED BREACHES IS UNWARRANTED.</u>

***Issues of Material Fact Remain About Claimed Noncompete Breach.*** To establish breach of the noncompete, Plaintiff must show that, during the restricted period, Lareau served an enterprise "engaged in the manufacture or development of sensors and computer systems built for the analysis and/or reporting of road weather conditions." Separation Agreement at ¶ 10. Frost contends that it has submitted evidence showing that breaches occurred throughout the restricted period. Reply at 7-8. Not so. The only evidence of alleged development in Frost's brief is that Lareau and Baglien drafted a product requirements document in October of 2021, which Lareau sent to a third party a short time later. *See* Doc No. 113-1 at 23, SUMF ¶32. Given the Agreement's enforceability issues, the most that can be said for Frost's argument is that there are genuine issues of material fact that must go to a jury. Competent evidence contradicts Frost's factual assertions, including evidence showing that Vue neither did business nor existed in fall 2021, no product development occurred during that time, and that the so-called product requirements document was

---

[2] Frost does not dispute the Separation Agreement's explanation that the vacation Lareau used was "accrued," meaning it constituted already earned wages. *See Haxton v. McClure Oil Corp.*, 697 N.E.2d 1277, 1280-81 (Ind. Ct. App. 1998). Frost also argues, for the first time on reply, that not firing Lareau for the seven days following his signing of the agreement was the consideration. But the evidence comes nowhere close to suggesting that the seven days of continued employment was a specific negotiated promise, *see Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1131-32 (7th Cir. 1997) (applying Indiana law), or that he received anything to which he was not already entitled. Frost "allowed" Lareau to take the vacation time he had already earned. That's not valid consideration to support any agreement, let alone a restrictive covenant agreement.

[3] The Termination Certificate has not been breached because no confidential information was used. *Infra* at 4-5.

just a high level (and unsophisticated) list of features Defendants used to approach and hire a firm to independently develop the product, which they ultimately did in 2022. Doc. No. 132 at 8-10.[4]

***Issues of Material Fact Remain About Claimed Non-Solicitation Breach.*** Frost is not entitled to summary judgment on whether Lareau breached the non-solicitation covenant by seeking to do business with TAPCO. Even if the Court were to credit the hearsay testimony of Michael Bott about his conversations with TAPCO in the spring and summer of 2022, that testimony, *at most*, creates a material issue of disputed fact about whether there was any viable relationship between the then-defunct Frost Control and TAPCO with which to interfere. Doc. no. 141 at 10-11.

***Issues of Material Fact Remain About Claimed Confidentiality Breach.*** Frost contends that Lareau and Baglien breached their confidentiality obligations by contacting TAPCO and Frost Control customers, arguing that Baglien and Lareau must have learned of the customers and how to contact them through Frost Control's "confidential" information. In its Objection, Defendants demonstrated that, at best for Frost, there are factual disputes remaining regarding their alleged use of the information and its confidentiality. The Reply does nothing to undercut that analysis.

**Use of Information.** Frost repeatedly emphasizes downloads by Lareau and Baglien before they left Frost Control's employ, but they have provided no evidence that either Lareau or Baglien took that information with them. Baglien and Lareau, for their part, have both testified that they downloaded and used the CRM data for legitimate Frost Control business purposes. *See* Doc. No. 132 at 7 (citing pages of deposition testimony).[5]  Further, undisputed evidence demonstrates that Vue actually obtained the identity and contact information for virtually all customers that Frost claims as confidential, not from Frost but from TAPCO (Obj. Exs. 16 & 17), and that TAPCO, not

---

[4] For the first time, on reply, Frost argues that sending information to Sno Services, a third-party snow contractor, in March 2022 constituted a violation of the covenant not to compete. However, interacting with a third party does not constitute development, and the only documents provided to Sno Services was a version of the high level product requirements document. Doc. No. 113-23.

[5] Frost mistakenly claims in its Reply that this assertion is unsupported by evidence.

4

Vue, initiated contact between the parties (Doc No. 132 at 9-10 (citing Everard Dep. Tr. at 44)).

**Confidentiality.** Under the relevant agreements, Frost must show that the information it claims was used was not generally known or available.  Separation Agreement at § 9(e)(ii); Baglien Agreement at § 3(b).  Beyond that, Frost must also show that the information it claims is confidential cannot be easily obtained elsewhere and is not general skill or knowledge an employee is entitled to take upon departure.  *See e.g., Am. Shippers Supply Co. v. Campbell*, 456 N.E.2d 1040, 1043-44 (Ind. Ct. App. 1983). Frost's initial Motion made no effort to demonstrate that the information it claimed was confidential satisfied either standard.  Its Reply fares no better.

It is incontrovertible that the information about which Frost complains is all *available* to the public.  *See* Doc. No. 132 at 11-14, Lareau Declaration (Doc. No. 131-32) at ¶¶ 8-14 & Ex. A, Baglien Decl. (Doc. No. 131-34) at ¶ 7 (explaining that TAPCO relationship was "not confidential" because TAPCO sold Frost Control's product).  The language in the Agreements Frost Control prepared exempts from the definition of "confidential" information that which is generally "available."  Although they need do nothing more where Frost can point only to information that is generally *available*, Defendants have provided significant evidence (also cited above) that the information at issue is also easily obtainable and thus not protectable.  *Campbell*, 456 N.E.2d 1040 at 1043-44.[6]  Frost's argument about the efforts it took to compile the information—which concerns trade secret law and the entirety of its CRM data (not the information actually at issue) (*see* Reply at 8)—only at best presents an issue of disputed material fact precluding summary judgment.[7]

---

[6] Identifying customers and determining who to contact is also general skill and knowledge that Frost cannot protect. *See, e.g.,* Doc. No. 132. at 10-13, Obj. Ex. 19 at 1 (using census data to identify customers) & 10 (relying on "Association & Industry Events" as a "Customer Acquisition Strategy"); Obj. Ex. 18 at 3 (targeting municipalities based on population); Lareau Declaration (Doc. No. 131-32) at ¶¶ 8-14.

[7] Frost's Reply points out that the information in HubSpot supposedly contains "detailed" information beyond customer identity and contact information.  Reply at 9.  Frost cannot reframe its Motion.  Frost's Motion concerns only Frost's contention that Baglien and Lareau, through Frost Control information, identified and then contacted Frost Control customers and partners.  Doc. No. 113-1 at SUMF ¶¶ 36-40, pp. 23-25. The Motion contains no argument, let alone evidence, that Defendants used any of the supposedly "detailed" HubSpot information.

Respectfully submitted,

**PATRICK BAGLIEN, CHRISTOPHER LAREAU, AND VUE ROBOTICS, LLC,**

By their attorneys

Sheehan Phinney Bass & Green, P.A.

Dated:  April 1, 2026                    By: */s/ Ryan P. Lirette*
                                                    David W. McGrath (# 9347)
                                                    James P. Harris (# 15336)
                                                    Ryan Lirette (# 19561)
                                                    Abbygale M. Dow (# 272938)
                                                    1000 Elm Street, P.O. Box 3701
                                                    Manchester, NH 03105-3701
                                                    603-627-8255
                                                    dmcgrath@sheehan.com
                                                    jharris@sheehan.com
                                                    rlirette@sheehan.com
                                                    adow@sheehan.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this pleading was served on this date on all parties of record through the Court's electronic filing system.

*/s/ Ryan P. Lirette*
Ryan P. Lirette

6