**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

FROST SOLUTIONS, LLC,

        Plaintiff,

    v.

PATRICK BAGLIEN, CHRISTOPHER LAREAU,
and VUE ROBOTICS, LLC,

        Defendants.

Civ. Action No. 1:22-cv-00401-SE

# FILED PROVISIONALLY UNDER SEAL

### DEFENDANTS'/COUNTERCLAIM-PLAINTIFFS' MEMORANDUM OF LAW SUPPORTING THEIR MOTION TO AMEND COUNTERCLAIMS TO ADD SPECIFIC ALLEGATIONS ON COUNTS III AND IV

Defendants Patrick Baglien, Christopher Lareau, and Vue Robotics, LLC (together, "Defendants" or "Counterclaim-Plaintiffs") seek leave to amend Counts III and IV of their Counterclaims (Doc. 100) to provide specific factual allegations that were not available at the time of filing but were obtained through discovery. This amendment addresses the Court's conclusion in the Order issued March 30, 2026 (Doc. 145, pg. 18-20) dismissing those counts due to a lack of specificity. After Counterclaim-Plaintiffs filed their Amended Counterclaims, they propounded discovery to obtain information demonstrating the coordination between Plaintiff Frost Solutions, LLC ("Frost") and Traffic and Parking Control Co., Inc. ("TAPCO"). That discovery yielded documents, including their settlement agreement, which explicitly sets forth the plan to utilize Vue's confidential information to target specific existing and prospective customers. The settlement agreement includes a "hit-list" of specific targets and TAPCO's explicit promise to cause those Vue customers to cease doing business with Vue and commence doing business with Frost. The proposed Second Amended Counterclaims (**Ex. A**) utilizes the information recently obtained in discovery to identify the specific customers and prospective customers with which Frost interfered. Good cause exists and justice requires leave to amend.

### Frost Argued a Lack of Specificity When It Knew Its Documents Identified the Customers and Prospective Customers it Targeted

Counterclaim-Plaintiffs filed their Motion to Amend Counterclaims on February 5, 2025. Doc. 97. Frost subsequently moved to dismiss the amended counterclaims, arguing as to Counts III and IV that the amended counterclaims lacked specificity. Doc. 102, 102-1. Frost took Defendants to task for not identifying a single customer or prospective customer relationship that was harmed by Frost's subterfuge with TAPCO. Doc. 102-1, pg. 11.

At the time of the Amended Counterclaims, Counterclaim-Plaintiffs knew that Frost initiated a lawsuit against Cory Moore ("Moore"), another former Frost Control employee who

subsequently was employed by TAPCO, in the United States District Court for the Northern District of Illinois, *Frost Solutions, LLC v. Cory Moore*, 1:22-cv-06910 (the "Moore Action."). Counterclaim-Plaintiffs also knew that Frost added TAPCO as a defendant to the Moore Action and that the Moore Action was settled in late October or early November 2024 ("Frost/TAPCO Settlement").  Although the terms of the Frost/TAPCO Settlement were not available to Counterclaim-Plaintiffs at the time of the Amended Counterclaims, they suspected that the settlement caused TAPCO to terminate its contract with Vue.

In the months following the filing of Frost's Motion to Dismiss and while it was pending, Counterclaim-Plaintiffs pursued discovery of the coordination between Frost and TAPCO – information that was not produced and therefore was not available to Defendants in February 2025.  Specifically, Counterclaim-Plaintiffs learned that TAPCO and Frost began having conversations about settlement, including negotiating the terms of a future business relationship between Frost and TAPCO and TAPCO's cessation of its relationship with Vue, mere days after Frost added TAPCO to the Moore Litigation.  Counterclaim-Plaintiffs also learned that the Frost/TAPCO Settlement Agreement was signed on October 30, 2024—less than 30 days after Frost sued TAPCO.  **Ex. B**, Signed Frost/TAPCO Settlement Agreement (Frost_0310466).

The Frost/TAPCO Settlement Agreement references and incorporates a separate Dealer Agreement between Frost and TAPCO.  *Id*. at ¶ 4; **Ex. C**, Dealer Agreement (Frost_0310501). In the Dealer Agreement, TAPCO agreed it would no longer market or sell Vue's products.  **Ex. C** at ¶ 2.2 (TAPCO agrees not to ██████████████████████████ Schedule 3.3 of the Dealer Agreement memorialized the plan to target Vue's customers and prospects. TAPCO committed to ████████████████████████████



███████████████████████████████████████████████████████

███████ *Id.* Schedule 3.3 further required TAPCO to:

████████████████████████████████████

██████████████████████████

██████████████████████████████████████

████████████████████████

*Id.* TAPCO also agreed not to ████████████████████████████████

████ *Id.* In other words, the Dealer Agreement sets forth the specific plan to interfere with

Vue's current and prospective relationships.

Schedule 4 of the Dealer Agreement contains a five-page chart of the specific Vue

customers that would be switched to Frost. That chart includes ████████████████████

████████████████████████████████████████████████████

████████████[1] *Id.* TAPCO and Frost therefore set out in chart form the "hit-list" of customers

that would be targeted. These specific contractual promises between TAPCO and Frost were not

known by Counterclaim-Plaintiffs when the First Amended Counterclaims were filed.

With the benefit of the materials received in discovery, Vue can trace at least six

customer non-renewals to Frost's unlawful interference:

- November 6, 2024 – In response to Vue's email to TAPCO customers about transitioning directly to Vue, Polk County emailed that it was going a different route. **Ex. D**, 11/6/24 Email (Vue0207957). Polk County ████████████████████████ ████████████████████████████████████████. **Ex. C.**

- November 12, 2024 – Vue received an email from Auglaize County that it "decided to use another company[.]" **Ex. E**, 11/12/24 Email (Vue0207952). Auglaize ████ ████████████████████████████████████████. **Ex. C.** Bott admitted that Auglaize ████████████████████████████

---

[1] Frost contends in this litigation that these same details in its customer database are trade secrets and confidential information worthy of protecting. Yet, it had no problem causing TAPCO to disclose that information and include it in a handy chart so that TAPCO and Frost could complete their campaign to force these customers to drop Vue.

Bott (9/22) Dep. 300-301.

- January 27, 2025 – Vue received an email from Portage that it did not intend to stay with Vue. **Ex. F**, 1/27/25 Email (Vue0207963). Portage ██████████████████ ████████████████████████████████████ **Ex. C**. On or before November 18, 2024, Kirsh spoke with Portage about moving to Frost. *See* **Ex. G**, 11/18/24 Email (Frost_0310480). Frost used Portage to solicit other Vue customers. *See* **Ex. H**, 12/20/24 Email (Vue0190487).

- May 6, 2025 – Vue received an email from Washington County with the subject, "Termination of Contract" and written in the body, "Just making sure TAPCO notified you." **Ex. I**, 5/6/25 Email (Vue0207954). The email attached a Notice of Termination, which referenced the fact that TAPCO was no longer a distribution partner of Vue. *Id.* Washington County ████████████████████████ ████████████████████████████████████. **Ex. C**. In April 2025 Washington County and Frost entered into a 3-year agreement through May 1, 2028. **Ex. J**, Washington-Frost Agreement (Vue0187496).

- August 6, 2025 – Vue received an email from Muskegon County stating that it was looking to cancel its contract with Vue in the next fiscal year. **Ex. K**, 8/6/24 Email (Vue0207961). ██████████████████████████ Muskegon ████████ ████████████████████████████████. **Ex. C**. On November 21, 2024, Kirsh reached out to Muskegon about Frost's "new partnership" with TAPCO. **Ex. L**, 11/21/24 Email (Vue0213351).

- September 24, 2025 – Vue received an email from Ottawa County stating that it was not going to renew its contract. **Ex. M**, 9/24/25 (Vue0207960). Ottawa ████████ ████████████████████████████████████████ ████████. **Ex. C**.

Even though Frost knew that its settlement agreement with TAPCO included a specific list of units and customers that would be transferred from Vue to Frost and even though it knew of its own documents and communications with TAPCO, Frost feigned ignorance and argued in its motion to dismiss that Defendants failed to identify the specific customers and prospects with which Frost interfered.  Doc 102-1, pg. 11.  Perhaps Frost hoped no discovery would ensue, but it did.

One need not look further than Schedule 4 of the Dealer Agreement to know the customers and prospective customers (current customers up for renewal) that support Counterclaim-Plaintiffs' interference claims. Contrary to Frost's feigned ignorance, the evidence

5

developed in discovery demonstrates, and Bott admits, ███████████████

████████████████████. Deposition of Michael Bott (9/22) at 299, excerpts

attached at **Exhibit N**. As one example, on or before November 18, 2024, Kirsh spoke with

Portage, Michigan about transitioning to Frost. *See* **Ex. G**. Portage had ██████████

██████████████████████████ **Ex. C**. Frost solicited

Portage while it was still under contract and when Vue expected Portage to renew for a higher

amount. And, close in time to Frost's actions, Portage stopped using Vue. **Ex. F**. As further

example, on December 20, 2024, Frost sent an email to at least one customer about switching to

Frost "like Portage is doing." **Ex. H**.

The documents received in discovery also demonstrate that Vue's information was shared

as part of the scheme to induce customers and prospective customers to stop doing business with

Vue and start doing business with Frost. In this litigation, Frost contends that customer names,

contract amounts, contract start/end dates, and other similar information constitute protectable

confidential information. Frost acted inconsistently with that position in negotiating for

Schedule 4 to the Dealer Agreement and elsewhere, to obtain such information from TAPCO

about Vue's customers and prospective customers.

The Court eventually agreed with Frost's contention that Counts III and IV of the

Amended Counterclaims lacked specificity. Doc. 145, pg. 18-20. Now armed with the evidence

obtained in discovery, Counterclaim-Plaintiffs hereby move to file their Second Amended

Complaint, which is filed herewith (**Ex. A**). The Second Amended Complaint includes the

specific facts regarding the Frost/TAPCO Settlement, the hit-list of customers and prospective

customers that TAPCO and Frost targeted, the specific customers and prospective customers that

terminated their dealings with Vue (including the dates and communications evidencing the

interference), and the damages suffered by Vue.  Although Frost surely knew the contents of the Frost/TAPCO Settlement and the plan hatched in it, the Second Amended Complaint cures any purported lack of clarity.

**The Proposed Amendment is Consistent with Court Rules**

Although the deadline to amend pleadings has passed, the Court may modify the discovery schedule and allow Counterclaim-Plaintiffs to amend their Counterclaims "for good cause" under Fed. R. Civ. P. 16(b)(4).  Federal R. Civ. P. 15(a)(2) similarly allows a party to amend a pleading with the court's leave, which "[t]he court should freely give when justice so requires." *Sig Sauer, Inc. v. Freed Designs, Inc.*, No. 14-CV-461-SM, 2017 WL 4119046, at *2 (D.N.H. Mar. 17, 2017). "This good cause standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Id.* (citation omitted).  "[I]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment… – the leave sought should, as the rules require, be freely given." *Stevens v. Liberty Mut. Group, Inc.*, Case No. 11-218, 2012 WL 176487 (D.N.H. Jan. 20, 2012).

Courts recognize that a valid reason for a motion to amend includes the discovery of new information. *See Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 37 (1st Cir. 2022); *Keefe v. Ausman*, No. 90-cv-191-S, 1991 WL 534918, at *3 (D.N.H. Aug. 16, 1991) (granting motion to amend "to assert the updated facts concerning events which have transpired" since the original complaint); *Bobba v. Patel*, No. 3:19-30171-MGM, 2021 U.S. Dist. LEXIS 85953, at *7 (D. Mass. May 4, 2021) ("[I]t is not unusual for a party to add claims, particularly claims that are

related to those it has already asserted, based on information the party acquires in discovery.").

As described below, the new counterclaims are based on recent facts, so there has been no undue

delay, no unfair prejudice to Frost Solutions and good cause exists to allow Counterclaim-

Plaintiffs to amend at this time.[2]

In a similar vein, Fed. R. Civ. P. 15(d) permits "a party to serve a supplemental pleading

setting out any transaction, occurrence, or event that happened after the date of the pleading to be

supplemented." Much of the proposed Second Amended Counterclaim does just that – it updates

the pleading to conform to the evidence received in discovery. Rule 15(d) authorizes a district

court to permit service of a supplemental pleading "on just terms" *U.S. ex rel. Gadbois v.

PharMerica Corp.*, 809 F.3d 1, 7 (1st Cir. 2015). Courts traditionally allow supplementation

liberally. *Id*. Under the supplemental pleading rule, the proposed Second Amended

Counterclaim should be accepted so that the parties can litigate all matters between them in one

trial. *See Doe v. Comm'r, N.H. HHS*, 344 F.R.D. 57 (D.N.H. 2023).

Courts regularly grant motions to amend complaints and counterclaims after dismissing

them for lack of specificity, applying the liberal amendment standard established in *Foman v.

Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as

undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the

rules require, be 'freely given.'") (internal quotation marks omitted). If the proposed amendment

---

[2] It took many months to obtain the settlement agreement and related documents in discovery. Counterclaim-Plaintiffs sent a subpoena to TAPCO on February 14, 2025 and a set of Requests for Production of Documents to Frost on April 25, 2025 to obtain information about the Frost/TAPCO Settlement. Counterclaim-Plaintiffs did not receive the Frost/TAPCO Settlement Agreement and other documents until August 28, 2025, and even then, the Dealership Agreement was not produced. Counterclaim-Plaintiffs did not receive the Dealership Agreement until September 25, 2025.

could potentially cure the identified pleading deficiencies, the amendment should be permitted unless it is clearly futile. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The evidence recited above demonstrates that the proposed amendment is anything by futile.

Allowing the proposed amendment does not negatively impact the prosecution of the trial. Dismissing these two counts does not save on discovery efforts, for example, because the discovery has already been undertaken. The Court denied Frost's request to dismiss Count II of the Amended Counterclaim, which relates to the interference with the Vue and TAPCO contract, so trial will include evidence and testimony about TAPCO and the Frost/TAPCO Settlement. In that way, the additional facts regarding the customers that were forced to switch to Frost do not cause trial to divert to an unnecessary tangent. Nor have Counterclaim-Plaintiffs delayed. Promptly after filing their Amended Counterclaim, they pursued discovery to support it. And, Counterclaim-Plaintiffs file this motion within mere days of the Court's granting Frost's Motion to Dismiss. Based on the Frost/TAPCO Settlement text itself and the deliberate effort to interfere with Vue's relationships, the amendment is anything but futile. There is, therefore, no valid reason to deny Counterclaim-Plaintiffs' request to add specificity to their Counterclaims and address the issue the Court identified as lacking.

WHEREFORE, Defendants/Counterclaim-Plaintiffs respectfully request that the Court issue an order:

    A. Granting them leave to further amend their counterclaims and to file into the docket the proposed second amended counterclaim submitted with their Motion; and

    B. Granting such further and additional relief as the Court deems just and equitable.

Respectfully submitted,

**PATRICK BAGLIEN, CHRISTOPHER LAREAU, AND VUE ROBOTICS, LLC,**

By their attorneys

Sheehan Phinney Bass & Green, P.A.

Dated:  April 8, 2026                    By: */s/ James P. Harris*

David W. McGrath (# 9347)
James P. Harris (# 15336)
Ryan Lirette (# 19561)
Abbygale M. Dow (# 272938)
1000 Elm Street, P.O. Box 3701
Manchester, NH 03105-3701
603-627-8255; 603-627-8152
603-627-8125; 603-627-8390
dmcgrath@sheehan.com
jharris@sheehan.com
rlirette@sheehan.com
adow@sheehan.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically served copies of this document on all counsel of record via the Court's CM/ECF system, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: April 8, 2026                    */s/ James P. Harris*

James P. Harris

10