**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

FROST SOLUTIONS, LLC,

Plaintiff,

v.

PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC,

Defendants.

Case No. 1:22-cv-00401-SE

**PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION FOR LEAVE TO AMEND COUNTERCLAIMS**

Defendants' Motion for Leave to File a Second Amended Counterclaim (Doc. 148) should be denied. After nearly two years of litigation over their counterclaims, including one prior amendment, two rounds of motions to dismiss, and fully briefed summary judgment motions, Defendants now seek yet another bite at the apple. Their motion fails for multiple independent reasons.

First, the proposed amendment is futile because Defendants forfeited their counterclaims. When Frost filed its First Amended Complaint in November 2025, Defendants filed an answer that did not reassert or even reference any counterclaims. Having abandoned their counterclaims at the moment when reassertion was required, Defendants cannot now resurrect them via a belated motion for leave to amend.

Second, the proposed amendment would serve no useful purpose because the proposed amended counterclaims fail on the merits. The "new" factual allegations Defendants seek to add (relating to the Frost/TAPCO Settlement Agreement, Dealer Agreement, and six specific customers) are not new at all. They are the very same allegations, supported by the very same evidence, that Defendants presented in opposing Frost's fully briefed motion for summary judgment

on Defendants' First Amended Counterclaims. The Court need not permit Defendants to replead claims that are destined to fail on the undisputed evidentiary record.

Third, Defendants have not shown good cause for their extraordinary delay. Defendants received the documents they now characterize as "new information" no later than September 2025, over six months before filing this motion. They sat on that information through Frost's amendment of its complaint, through the close of fact discovery, and through the filing and full briefing of dispositive motions. Only after the Court granted in part Frost's motion to dismiss did Defendants finally seek leave to amend—a textbook "wait and see" approach that the First Circuit has squarely condemned.

Fourth, granting leave to amend at this late stage would severely prejudice Frost. Trial is two months away. Dispositive motions are fully briefed. If Defendants have their way, allowing amendment would reset the procedural posture of Defendants' counterclaims, necessitate new rounds of motion practice, and inevitably require continuance of the trial. This is precisely the outcome Defendants have separately sought and Frost has opposed. Frost has litigated this case since 2022 and is entitled to a timely resolution of its claims.

For these reasons, discussed more fully below, the Court should deny Defendants' motion for leave to amend.

## BACKGROUND

The procedural history here is straightforward and undisputed. On April 3, 2024, Defendants filed their initial Counterclaim (Doc. 72). On November 15, 2024, Frost refiled its motion to dismiss that Counterclaim (Doc. 92)[1]. On April 3, 2025, the Court granted Defendants'

---

1 Frost originally moved to dismiss on April 24, 2024. (Doc. 83). On May 24, 2024, the Court entered an order denying without prejudice all motions pending at the time, including Frost's original motion to dismiss, pending the outcome of mediation. Mediation was unsuccessful. (Doc. 90).

assented-to motion for leave to amend their Counterclaim (Doc. 97),[2] and Defendants filed their First Amended Counterclaim four days later. (Doc. 100.) Frost moved to dismiss again. (Doc. 102.)

On November 7, 2025, Frost filed its First Amended Complaint. (Doc. 108). On December 5, 2025, Defendants filed their Answer to Frost's First Amended Complaint without asserting (or reasserting) any counterclaims. (Doc. 110). On February 17, 2026, the Parties filed dispositive motions, including Frost's Motion for Summary Judgment on Defendants' Amended Counterclaim.[3] (Doc. 115.) That motion is now fully briefed.

On March 30, 2026, the Court granted in part and denied in part Frost's Motion to Dismiss and dismissed Counts III and IV of Defendants' First Amended Counterclaim. (Doc. 145.) Defendants now seek leave to amend these two counts. (Doc. 148.)

## LEGAL STANDARD

The original discovery plan approved by the Court on January 23, 2023, stated that "any party seeking to amend their pleadings must do so pursuant to Fed. R. Civ. P. 15(a)(2)." (Doc. 25.) Rule 15(a)(2) provides that a party may amend its pleading only with the opposing party's written consent or the Court's leave. Although leave should be given when justice so requires, there are limits to this rule. It "does not mean that a trial court must mindlessly grant every request for leave to amend." *Calderon-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 19 (1st Cir. 2013) (cleaned up). Moreover, the standard under Rule 15 is less lenient when the Court has entered a scheduling order under Rule 16(b). *See Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs*, 244 F.R.D. 115, 116 (D.N.H. 2007). "In that event, a motion to amend filed outside the parameters set by the scheduling order

---

[2] While Frost assented to Defendants amending their Counterclaim, Frost expressly reserved its rights as to the merits of those claims. (Doc. 97 at 2).

[3] Frost also filed a motion for partial summary judgment on Counts III and VI of its First Amended Complaint (Doc. 113), and Defendants filed two motions for summary judgment on Frost's First Amended Complaint (Docs. 116, 117).

will be granted only upon a showing of 'good cause.'" *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 86 (1st Cir. 2019) (cleaned up). "The 'good cause' standard focuses on both the conduct of the moving party and the prejudice, if any, to the nonmovant." *Id.* (citation omitted). As discussed below, Defendants' motion fails under either standard.

Leave to amend may be denied in certain circumstances, including undue delay, bad faith, futility, the absence of due diligence on the movant's part, and where the proposed amendment would serve no useful purpose. *Calderon-Serra*, 715 F.3d at 19; *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). Furthermore, a motion to amend pleadings "will be treated differently depending on its timing and the context in which it is filed." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 11-12 (1st Cir. 2004). Accordingly, "a request to amend—especially a belated request—requires the court to examine the totality of the circumstances and to exercise its informed discretion in constructing a balance of pertinent considerations." *Palmer*, 465 F.3d at 30–31.

## ARGUMENT

### I. Any amendment would be futile because Defendants forfeited their counterclaims when they did not reassert them in response to Frost's First Amended Complaint.

Where the proposed amendment would be "futil[e]" or "would serve no useful purpose," leave to amend may be denied. *Calderon-Serra*, 715 F.3d at 19 (citation omitted). Futility serves as a basis for denying a motion for leave to amend under both Rule 15(a)(2) and 16(b). *See Sig Sauer, Inc. v. Freed Designs, Inc.*, No. 14-cv-461-SM, 2017 WL 4119046, at *2 n.3 (D.N.H. Mar. 17, 2017) (collecting cases). Because Defendants' proposed amendments here would be futile, the Court should deny leave to amend.

In the opening and reply briefs in support of its motion for summary judgment on Defendants' counterclaims, Frost explained that Defendants failed to assert any counterclaims in their responsive pleading to Frost's First Amended Complaint and, as a result, Defendants forfeited

any counterclaims in this action. Frost incorporates these arguments by reference here. (*See* Doc. 115-1 at 17-18; Doc. 140 at 2-3.)

Where the moving party has forfeited the proposed amendment, denial on the basis of futility is appropriate. *See, e.g.*, *S. New Eng. Tel. Co. v. Glob. Naps, Inc.*, No. 04-CV-2075 (JCH), 2007 WL 9757857, at *2 (D. Conn. Dec. 28, 2007) (denying leave to amend where "[t]he court already determined that Global NAPs forfeited the administrative exhaustion defense, and therefore the addition of this defense to their answer would be futile"). The Court need go no further than this to deny Defendants' motion.

**II. The proposed amendment "would serve no useful purpose" and be futile because the proposed amended counterclaims fail on the merits.**

In any event, leave to amend should be denied because the proposed amended counterclaims fail on the merits for the reasons set forth in Frost's fully briefed motion for summary judgment on Defendants' counterclaims. The Court need not permit further amendment of claims that are destined to fail on the undisputed record.

Frost's Motion for Summary Judgment on Defendants' Amended Counterclaim (Doc. 115) is fully briefed. (*See* Doc. 115-1 (Frost's opening brief); Doc. 127-1 (Defendants' opposition); Doc. 140 (Frost's reply); Doc. 146 (Defendants' sur-reply).) In that motion, Frost demonstrated, based on a complete evidentiary record developed through years of discovery, including numerous depositions and the production of tens of thousands of documents, that no genuine dispute of material fact exists as to any of Defendants' counterclaims. Defendants' proposed Second Amended Counterclaim does not alter that conclusion for the simple reason that the factual allegations Defendants now seek to add are already before the Court in the summary judgment briefing. In other words, Defendants have already put their best foot forward on the merits of these claims—and that best foot falls short.

The Court dismissed Counts III and IV of Defendants' First Amended Counterclaim for lack of specificity. (*See* Doc. 145 at 18-20.) The proposed Second Amended Counterclaim purports to cure that deficiency by adding factual allegations relating to the Frost/TAPCO Settlement Agreement, the Dealer Agreement, Schedule 4's customer list, and six specific customers that allegedly terminated their relationships with Vue. But these are not new allegations. Defendants presented them to the Court in opposing Frost's motion for summary judgment.

Specifically, the proposed Second Amended Counterclaim alleges that Vue lost at least six customers as a result of Frost's alleged interference, and it provides the dates, contract values, and communications associated with each. (Doc. 148-2 at 31-36.) These are the same six customers, with the same dates, the same contract values, and the same exhibits, that Defendants presented in their summary judgment opposition. (*See* Doc. 127-1 at 5-8 (internal pagination) (detailing each customer).) The proposed amendment similarly includes allegations regarding the Frost/ TAPCO Dealer Agreement. (Doc. 148-2 at 32–33.) Defendants relied on these same provisions extensively in their summary judgment opposition. (*See* Doc. 127-1 at 4-6, 15-18 (internal pagination).)

In short, there is essentially complete overlap between the proposed new factual allegations and the evidentiary record already before the Court on summary judgment. Defendants have already had the opportunity to present these allegations in their most favorable light, supported by the evidence obtained in discovery. Frost has already demonstrated why they are insufficient as a matter of law and incorporates those arguments here. (*See* Doc. 115-1 at 23–28; Doc. 140 at 6–7.)

Because Frost is entitled to summary judgment on Counts III and IV regardless of the proposed amendment, allowing the proposed amendment would be futile and "would serve no useful purpose." *Calderon-Serra*, 715 F.3d at 19 (citation omitted); *see Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (affirming denial of leave to amend as futile where the defendant "would be entitled to summary judgment on the merits of the claim if the amendment were allowed"); *Wilson v.*

*Am. Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir. 1989). For example, in *Smith v. Chrysler Corp.*, plaintiff's motion for leave to amend was filed "not at the pleading stage, but at the summary judgment stage, which constitutes a very different procedural posture." 938 F. Supp. 1406, 1414 (S.D. Ind. 1996). "Faced with the affidavits and documentary evidence filed by the defendants in support of summary judgment," the court noted that it could not "assess the proposed amended complaint as if that evidence does not exist." *Id.* "Consequently, for purposes of determining the futility of the . . . proposed amended complaint," the court determined that it would consider all of the materials filed in support of the defendants' summary judgment motions. *Id.* The court denied leave to amend and granted summary judgment in favor of the defendant. *Id.* at 1418-19.

This Court should follow that procedure and deny leave to amend here. In the interest of judicial economy, the Court should grant Frost's motion for summary judgment on Defendants' Counterclaims as to Counts III and IV, and deny leave to amend for the same reasons.

## III. Defendants have not shown good cause for their undue delay and lack of diligence in seeking leave to amend.

A district court may deny leave to amend when the request is characterized by undue delay . . . or the absence of due diligence on the movant's part." *Caldero-Serra*, 715 F.3d at 19 (cleaned up). "[W]hen considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has at the very least the burden of showing some valid reason for his neglect and delay." *In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014) (cleaned up). Furthermore, "the longer a [party] delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Steir*, 383 F.3d at 12; *see also Calderon-Serra*, 715 F.3d at 20 (affirming denial of leave to amend based on undue delay where the movants had previously amended their pleadings and "the motion for permission to file a second amended complaint was not filed until nearly a year after the commencement of the action and many months after the fully briefed motions to dismiss

had been taken under advisement"). And "in assessing whether delay is undue, a court will take account of what the movant knew or should have known and what he did or should have done." *In re Lombardo*, 755 F.3d at 3-4 (cleaned up).

Defendants have failed to meet this burden. They had access to the claimed "new information" upon which they base their request to amend months ago. Defendants admit they "receive[d] the Frost/TAPCO Settlement and other documents [on] August 28, 2025," and "the Dealership Agreement [on] September 25, 2025." (Doc. 148-1 at 8 n.2.) And Vue received the "customer non-renewal" emails that Defendants seek to add to their proposed counterclaims by, at the latest, September 24, 2025. (*Id.* at 4-5.) That was six and a half months ago. Thus, the information was available months in advance of the February 2026 summary judgment deadline.

Defendants provide no justification for their over six-month delay in seeking to amend their counterclaims to add the settlement and customer non-renewal information. Now, their request comes as fact discovery is complete, expert discovery is almost complete, dispositive motions have been fully briefed, and trial begins in two months. It is far too late. *Johnson v. Cap. Offset Co., Inc.*, No. 11-cv-459-JD, 2013 WL 3785629, at *2 (D.N.H. July 17, 2013) (finding that where expert disclosure and dispositive motion deadlines had passed, and trial was five months away, the defendant had "waited too long to seek to amend").

That Defendants waited until after the Court ruled on Frost's motion to dismiss further shows the undue delay and lack of diligence that compel denying leave to amend. In *Kader v. Sarepta Therapeutics, Inc.*, the district court reasoned that "the timing of the filing of the motion to amend suggests that rather than moving promptly for leave to file a new complaint based on new information discovered in January 2016, the Plaintiffs instead waited for the Court's ruling on the Motion to Dismiss before seeking leave to amend." *Id.* (cleaned up). The district court concluded that this "amounted to 'wait and see' pleading, and thus undue delay." *Id.*

The First Circuit affirmed thus:

> Regardless of whether or not they intentionally sandbagged their claims, the fact remains that despite having three months to do so, the Plaintiffs did not move to amend until after the district court dismissed the FAC. And while the Plaintiffs characterize this period of time as "relatively short," we have previously upheld denials of leave to amend on undue delay grounds after a comparable amount of time. *See Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011) (affirming a finding of undue delay where the plaintiff moved to amend four months after filing his complaint); *Kay v. New Hampshire Democratic Party*, 821 F.2d 31, 34 (1st Cir. 1987) (per curiam) (finding a three-month delay to be a sufficient basis for denying leave to amend).
>
> We also reject the Plaintiffs' argument that moving to amend post-dismissal is desirable from the perspective of judicial economy. They press that "it would have been neither practical nor economical to move to amend the complaint each time new relevant information was released while dispositive motions were pending in this case ... especially in the context of [the] dynamic factual developments surrounding the [FDA approval] process." But the Plaintiffs "have it exactly backwards—their methodology would lead to delays, inefficiencies, and wasted work." *Advest, Inc.*, 512 F.3d at 57. Indeed, the resulting "unnecessary costs and inefficiencies on both the courts and party opponents" is precisely the reason why we refused to sanction a "wait and see" approach to pleading in *Advest*. *Id.* It may be so that the Plaintiffs did not move to amend at an earlier juncture because they believed that further information relevant to their claims may have been coming down the pike amid the FDA's consideration of the eteplirsen NDA. But that is not so much an argument against the district court's denial of their motion for leave to amend as it is a suggestion that the Plaintiffs perhaps jumped the gun in filing the FAC. Accordingly, we conclude that the district court did not abuse its discretion in denying leave to amend on undue delay grounds.

*Id.* at 61-62 (alterations in original). That reasoning applies here, where Defendants employed a "wait and see" approach for months after they received the documents they now claim to be new evidence. They waited until after the Court ruled on the motion to dismiss, after fact discovery closed, and after dispositive motions were filed. The Court should not excuse Defendants' sandbagging and should deny leave to amend.

Defendants attempt to misdirect by discussing Rule 15(d)'s "supplemental pleadings" rule, which provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Defendants distort this rule

by asserting that their proposed Second Amended Counterclaim "updates the pleading to conform to the evidence received in discovery." (Doc. 148-1 at 8.) But the Rule explicitly applies to an event or occurrence that "happened after the date of the pleading to be supplemented"—not information *discovered* after the date of the pleading. Fed. R. Civ. P. 15(d). The significant events at issue occurred on October 30, 2024—long before Defendants last sought leave to file their First Amended Counterclaims on February 5, 2025. Thus, Rule 15(d) is entirely inapposite.

In addition to Defendants having had ample time to seek to amend their counterclaims before now, they passed up the perfect opportunity to do so when Frost filed its First Amended Complaint on November 7, 2025—which was *after* Vue received the settlement agreement, dealership agreement, and "customer non-renewal" emails it now relies on in seeking leave to amend. Defendants instead filed their Answer to Frost's First Amended Complaint on December 5, 2025, without reasserting any counterclaims. This not only amounts to forfeiture, as discussed above, but also shows Defendants' lack of diligence, providing sufficient grounds for denying leave to amend.

**IV. Allowing the proposed amendment at this late date will severely prejudice Frost.**

Finally, granting Defendants leave to amend at this stage of the litigation will cause significant prejudice to Frost. *Miceli*, 914 F.3d at 86; *Nw. Bypass*, 244 F.R.D. at 117 ("Long ago, the Supreme Court pointed out that if there was 'undue prejudice to the opposing party,' a court could deny a motion to amend."); *see also Grant v. New Grp. Boston, Inc.*, 55 F.3d 1, 6 (1st Cir. 1995); *Zee-Bar, Inc. v. Kaplan*, 162 F.R.D. 422, 425, 427 (D.N.H. 1993).

Frost has invested considerable time and resources in this litigation to ensure it is prepared to move forward with trial during the June jury trial session. In furtherance of complying with its obligations and timely meeting all deadlines necessary for a June trial, Frost has paid certain additional fees and costs that cannot be recouped if trial is ultimately continued. Notably, both

parties filed multiple lengthy motions for summary judgment to comply with Local Rules regarding the submission of such motions in advance of the trial session. The Parties have already submitted approximately 65 pages on briefing summary judgment on Defendants' counterclaims. If Defendants are permitted to amend their counterclaims, they will then likely argue that the procedural posture of those claims is reset, necessitating a new round of motions to dismiss and summary judgment. Such supplemental motions would violate this Court's requirement that dispositive motions be filed no later than 120 days before trial, requiring the current trial session to be continued and prejudicing Frost.

Defendants know this. They have already moved to extend the trial date to late 2026 or early 2027, which Frost has opposed. (Doc. 112; Doc. 122.) To the extent the primary purpose of Defendants' motion for leave to amend is to manufacture further grounds to support its pending request to move back the trial date, the Court should discourage such improper maneuvering and deny the motion.

Frost is entitled to a timely adjudication of its claims. Its case has been pending since 2022. The Parties have agreed to extend the case schedule and move the trial date several times. During the pendency of this litigation, Frost has continued to suffer ongoing damages based on Defendants' wrongful conduct. As discussed in Frost's opposition to Defendants' motion to extend the trial date, a delay resulting in the trial date being moved (a near inevitability if the Court grants Defendants' last-minute motion for leave to amend) would extend the litigation into an additional "selling season" in the Parties' industry, thus inflicting additional harm on Frost and jeopardizing Frost's interest in obtaining a prompt resolution of this dispute. (Doc. 122 at 3.) Frost incorporates those arguments by reference here, as they further illustrate the prejudice Frost will suffer if Defendants' motion is granted.

## CONCLUSION

For the reasons discussed above, Defendants' motion for leave to amend their counterclaims should be denied.

Dated: April 22, 2026

Respectfully submitted,

**FROST SOLUTIONS, LLC,**

By its attorneys,

*/s/ Laura L. Carroll*
Laura L. Carroll (NH Bar No. 17444)
ARENTFOX SCHIFF LLP
800 Boylston Street, 32nd Floor
Boston, MA 02199
Tel: (617) 973-6100
Email: laura.carroll@afslaw.com

Todd A. Rowden (admitted *pro hac vice*)
James L. Oakley (admitted *pro hac vice*)
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Tel: (312) 527-4000
Fax: (312) 527-4011
Email: trowden@taftlaw.com
joakley@taftlaw.com

Amir R. Tahmassebi (admitted *pro hac vice*)
KONICEK & DILLON, P.C.
70 West Madison Street, Suite 2060
Chicago, IL 60602
Tel: (312) 328-9166
Fax: (630) 262-9659
Email: amir@konicekdillonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically served a copy of this document on all counsel of record via the Court's CM/ECF system, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: April 22, 2026

*/s/ Laura L. Carroll*
Laura L. Carroll