**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| FROST SOLUTIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC, <br><br> Defendants. | Civ. Action No. 1:22-cv-00401-SE |

**DEFENDANTS' MEMORANDUM OF LAW SUPPORTING**
**THEIR MOTION TO EXCLUDE THE EXPERT**
**TESTIMONY OF KEVIN MCCARTHY**

Defendants, Patrick Baglien, Christoper Lareau, and Vue Robotics, LLC, respectfully

request that this Court exclude the testimony of Kevin McCarhty, an expert witness proffered by

Plaintiff.  In support thereof, Defendants state as follows:

**INTRODUCTION**

Plaintiff, Frost Solutions, LLC ("Frost") offers a purported expert to opine that Vue

Robotics, LLC ("Vue") developed its product on a "compressed timeline," "exceptionally fast,"

and at an "uncharacteristic pace."  Despite Vue's having produced scores of technical

information about the development of its product, Mr. McCarthy never transcends beyond these

vague descriptions; he never quantifies the alleged time or cost savings in any way whatsoever.

He never even recites the amount of time it took to develop the product or the amount of money

that was invested and certainly does not compare either of those data points to any other product

ever developed.  His "opinion" reduces to nothing more than his say-so and it is not

reproduceable, reliable or helpful.

1

Plaintiff's expert also claims to have compared Frost's product and Vue's product against other devices in the environmental sensing market.  He does not identify any other product, however, and his analysis is the proverbial black box.  He does not cite to any support for his work, so it is beyond comprehension.  In the end, allowing his opinion would be confusing to the jury, so it should be excluded.

**MR. MCCARTHY'S OPINIONS**

Mr. McCarthy was retained by Plaintiff's counsel to:

(1) "[C]onduct a comparative analysis of the products of Frost Solutions, LLC (and its predecessor, Frost Control Systems, Inc.) ("Frost"), particularly the AIMS 2.0 product, and Vue Robotics, LLC ("Vue"), particularly the ARC1 product, based on the design and development of the products, and to analyze each product against other devices in the environmental sensing market; and

(2) Evaluate "the development of Vue's product against the process and timeline that, in my experience, is typical of a new company developing and bringing a new product to the environmental sensing market."

McCarthy Report, pg. 1, attached as **Ex. A**.  Despite retiring six years ago, Mr. McCarthy claims he nevertheless still knows "what customers want in many sectors of environmental monitoring from hundreds of meetings with them over the years."  *Id*. at pg. 2.   He purportedly "compared the timeline and process of Vue's development to [his] knowledge and experience of the process of developing and marketing similar products when created from scratch."  *Id*. at 2-3.   He claims to have compared the subject products to those of "Davis Instruments, Campbell Scientific, Vaisala, AcuRite, Nielsen-Kellerman, AEM, Ambient, Scientific Sales, La Crosse, Hobo, Weather Hawk, Oregon Scientific, and Purple Air."  *Id*. at pg. 3.[1]  He did not identify in his report any documents on which he relied for information about these other manufacturers or their products, and despite requests for the production of all documents on which Mr. McCarthy relied

---

[1] Mr. McCarthy did not identify which models from these manufactures he considered or provide any information about those products.  Ex. A.

2

to develop his opinion, none were produced. Emails Dec. 5, 2025 and Dec. 11, 2025 (requesting production of all documents relied upon by experts and noting documents referenced by Mr. McCarthy in particular), **Ex. B**.

Mr. McCarthy first opines that Frost Solutions' AIMS 2.0 and Vue's ARC-1 are designed to serve the same functions and singular niche market of road weather systems. McCarthy Report at pg. 3. He concludes that Frost Solutions' and Vue's products "are not suitable for other environmental applications." *Id*. He created an illustrative chart (Exhibit 1 to McCarthy's Report) in which he purports to compare products across segments of the environmental sensor market. *Id*. As indicated above, neither McCarthy nor Frost Solutions produced any documents to support the illustrative chart and the chart itself cites no sources of information from which the information could be examined.

Mr. McCarthy next opines that Defendants used "insider knowledge" of the Frost Control product that saved Defendants "extensive time and money" that "allowed Vue to bring its product to market at an uncharacteristic pace." *Id*. at pg. 5.[2] For this, McCarthy leans only on his personal experience. He identifies the steps "typically involved" in the product development process in which he has participated. *Id*. He postulates that a hypothetical competitor that gains unspecified "insider knowledge" about another product's deficiencies benefits from a "product development shortcut." *Id*. According to Mr. McCarthy, a hypothetical competitor can use this knowledge to "bypass months or years of research and development and redesign their products to avoid expensively learned lessons." *Id*. He claims he reviewed "Vue's design documents and development communications and saw that Vue rapidly developed a road condition product without engaging in the type of foundational research and development [he] would expect from a

---

[2] McCarthy's evidence of use of "insider knowledge" is that Vue pursued a weatherproof enclosure and reliable cellular connectivity, even though those two features common to products in the broader environmental sensor market. *Id*. at 6. *See, e.g*., Viaesys Mini RWIS, https://viaesys.com/mini-rwis/ (last visited Apr. 20, 2026).

newly formed company." *Id*. at 6.

Nowhere in his report does Mr. McCarthy quantify in any respect or manner the amount of time or money saved by allegedly using "insider knowledge." He does not even lay out the timeline of Vue's actual product development. He does not compare Vue's development timeline to the timeline of any product ever developed anywhere by anyone. He does not even identify a range of time to develop a remote weather station against which Vue's development cycle could be evaluated. All he can muster are the vague characterizations, "extensive time" and "uncharacteristic pace." *Id*. at pg. 5.

Similarly, there is a complete dearth of analysis of the costs allegedly avoided. He does not even identify the costs incurred to develop the Vue product, even though Mr. McCarthy opines that significant money was saved because of a perceived "development shortcut." He does not compare the costs incurred by Vue against the costs he thinks would have been incurred but for the misuse of Frost Controls' "insider knowledge."

Mr. McCarthy received the expert report of Dr. Gavin Scott commissioned by Defendants, in which Dr. Scott criticized Mr. McCarthy for, among other things, failing to quantify his opinions as to time and cost savings. Despite the direct challenge, Mr. McCarthy did not cure those defects in his rebuttal report. *See* McCarthy Rebuttal, **Ex. C.** In his rebuttal, Mr. McCarthy reiterates his "central thesis," which is that "both Vue and Frost designed their products for the same narrow market sector with no credible use in any of the many other environmental sensing market sectors." *Id*. at pg. 1. He opines that Vue "achieved a compressed timeline," and benefitted from an "exceptionally fast" development timeline, again without quantifying the time or cost savings in any way whatsoever. *Id*. at pg. 1, 3. He outlines the development steps he claims are typical, without citing to any sources at all. *Id*. at pg. 4. His opinion relies upon the conclusion that some unspecific amount of "market research" was

4

required but avoided.  *Id*.  He makes vast and sweeping statements about unnamed "contract manufacturers" including positing that all contract manufacturers, in every circumstance, "require either extensive market research to understand customer requirements, or insider knowledge of what customers want and what existing products' deficiencies are."  *Id*. at pg. 5. He does not cite to any support for this assertion, and he does not address the testimony in this case from the contract manufacturer actually retained by Vue to design and develop the ARC-1, Paragon Innovations ("Paragon").[3]

Mr. McCarthy identifies in his rebuttal Frost Control's user interface and dashboard design as important to his opinion.  *Id.*  He believes that Baglien and Lareau knew the Frost Control's user interface and dashboard would someday include "system observations, reporting maps, weather forecast data and alerts."  *Id.*  He concludes that because the app Vue launched over a year later (which was designed from scratch by a third party, Object Spectrum) also displayed observations, maps, weather data and alerts, that Vue must have saved some unquantified amount of time and/or money because an immeasurable amount of "market research" should have been conducted to determine that users would want weather data and alerts in their app, even though such apps are common in the environmental sensor market.[4]

In his rebuttal report, Mr. McCarthy draws a comparison to Frost Solutions' complete redesign of the failed Frost Control product.[5]  Mr. McCarthy believes that Frost Solutions, which was led by two gentlemen with no prior experience in what Mr. McCarthy describes as a "niche" market, conducted adequate market research.  *Id*. at pg. 6-7.  He suggests every manufacturer

---

[3] The undisputed record is that Defendants contracted with Paragon, a firm with decades of prior experience, to design Vue's ARC-1 from scratch.  Baglien and Lareau provided Paragon with only an unsophisticated list of features and functionalities they desired, and Paragon (not Baglien or Lareau) chose the components for the device. Allan Rich Depo. at 17-18, 52-53, **Ex. D**.  With respect to the waterproof enclosure, Baglien and Lareau requested that Paragon locate an off-the-shelf solution, rather than engineer one.  *Id*. at 25-26.

[4] *See*, *e.g*., the Viaesys mini remote weather information system and its app.  https://viaesys.com/mini-rwis/ (last visited Apr. 20, 2026).

[5] This redesign, in which Frost Solutions hired third parties to assist, occurred well after Baglien and Lareau left Frost Control.

5

must undertake the same research and that it takes each of them the same amount of time, even though he never quantifies how long it takes. As with his other opinions, he does not quantify in any way how long Frost Solutions canvassed the market; he doesn't even provide a timeline of when that process started and ended. He makes no quantitative or qualitative comparison between the AIMS 2.0 rebuild and the ARC-1 development, even though information to do so is present in the record.

Mr. McCarthy's seven-page report and eight-page rebuttal are notable for what they omit entirely. There is no discussion of what information is generally known or readily ascertainable in the industry. He also does not address in any way whatsoever the fact that Vue hired an independent third party, Paragon, to develop the ARC-1 from scratch and another third party, Object Spectrum, to develop the user interface and app for Vue's users.

## ADMISSIBILITY STANDARD

Before the jury can consider expert testimony over the adverse party's objection, the trial judge, serving as "gatekeeper," must determine whether the testimony has a proper foundation pursuant to Fed. R. Evid. 702. *See, e.g., Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Frost Solutions bears the burden of establishing by a preponderance of the evidence that Mr. McCarthy's opinion is admissible under Fed. R. Evid. 702. *Pukt v. Nexgrill Indus.*, 2016 DNH 085 (citing *United States v. Tetioukhine*, 725 F.3d 1, 6 (1st Cir. 2013)); *Bartlett v. Mut. Pharm. Co.*, 2010 DNH 123, 742 F. Supp. 2d 182, 187 (quoting *Crowe v. Marchand*, 506 F.3d 13, 17 (1st Cir. 2007)); *see also West v. Bell Helicopter Textron, Inc.*, 2013 DNH 118, 967 F. Supp. 2d 479, 484. It cannot meet this burden.

Expert testimony will be deemed reliable only if: (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R.

6

Evid. 702; *Bourne v. Town of Madison*, 2007 DNH 65. The Supreme Court has recognized four indicia of reliability: (1) whether the expert's theory can or has been tested; (2) whether the theory has been the subject of peer review; (3) whether the theory has been generally accepted in the relevant scientific community or industry; and (4) with respect to a particular technique, whether and to what extent there is a known or potential rate of error, and whether there are standards controlling the operation of the technique. *Daubert, Inc.,* 509 U.S. at 592-94.

## MR. MCCARTHY'S OPINIONS ARE INADMISSIBLE

### A. *Mr. McCarthy's Opinions of Time and Costs Savings Should Be Excluded.*

Mr. McCarthy does not quantify in any way the time and money allegedly saved by Vue as a result of purportedly misusing Frost Controls' "insider knowledge." He does not even set forth the data on which he compared Vue's actual development timeline to the time it should have taken without the benefit of the unspecified "insider knowledge."[6] As to the cost savings, he does not identify the costs incurred by Vue and compare them against what it should have cost without the allegedly unfair advantage. His "measure" reduces to meaningless phrases such as "extensive time and money," "uncharacteristic pace," "compressed timeline," and "exceptionally fast." *See* Report at pg. 5; Rebuttal at pg. 1, 3. These vague monikers do not correspond to any methodology that is testable, so his opinion is unreliable and inadmissible. *Rodriguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59, 72 (1st Cir. 2024) (excluding an opinion that failed to identify a recognized standard against which the defendants' actions could be measured by the trier of fact).

Mr. McCarthy does not tether his opinion to any actual data – no dates or dollars – so Frost Solutions cannot carry its burden to show that his opinion is "based on sufficient facts or

---

[6] Defendants deny they misappropriated or used any confidential or trade secret information to develop their system or business.

data," is "the product of reliable principles and methods," or "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *Rodriguez*, 91 F.4th at 70; *St. Laurent v. Metso Minerals Indus.*, 2005 DNH 130 (opinion was excluded where expert's report lacked any stated principles or methodology).

Mr. McCarthy's opinion is quintessentially the type that is excluded because it "is connected to existing data only by the *ipse dixit* of the expert." *López-Ramírez v. Toledo-González*, 32 F.4th 87, 94 (1st Cir. 2022). Under the Supreme Court's decision in *General Electric Co. v. Joiner*, expert testimony may be excluded if there is "too great an analytical gap between the data and the opinion proffered," and courts must ensure that expert opinions are not "connected to existing data only by the ipse dixit of the expert." 522 U.S. 136, 146 (1997). Mr. McCarthy's conclusions that Vue saved "extensive time and money" and developed its product at an "uncharacteristic pace" are not adequately supported by the data he reviewed. He provides no analysis, no baseline development timelines for comparison, and no methodology for determining what constitutes a normal versus accelerated development pace in the environmental sensing industry. His opinions amount to unsupported assertions that fail the requirement of an adequate fit between the expert's methods and his conclusions. *See Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 31-32 (1st Cir. 2012) (watching for an expert's opinion that yielded results "that bear a dubious relationship to the questions on which he proposes to opine."). *Contrast with Collision Commc'ns, Inc. v. Nokia Sols. & Networks OY*, 691 F. Supp. 3d 360, 368 (D.N.H. 2023) (expert reviewed time records and records of each engineer's contributions to opine about efforts to integrate trade secret).

The case of *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2018 U.S. Dist. LEXIS 10823, at *10-12 (N.D. Cal. Jan. 18, 2018) is right on point. In that trade secret case, the plaintiff's expert observed that Waymo's testing parameters were the product of extensive data

analysis from test vehicles that had driven over a million miles in a two-year period. *Id*. at \*10. The expert concluded that the defendant could create a similar set of parameters only with the same years of testing on number of test miles, so he concluded that the misappropriation saved the defendants at least two-years of development time. *Id*. The expert in *Waymo* also observed that Waymo devoted at least a year ruling out a particular system and that defendants avoided the time associated with that trial-and-error by choosing an alternative method thereby saving at least a year of development time. *Id*. at \*10-11. Finally, Waymo's expert opined that defendants' acquisition of a third party that also misappropriated Waymo's trade secrets allowed the defendants to avoid the develop time of independently developing its own technology from the ground up, which he concludes saved two years and five months of time. *Id*. at \*11-12.[7] These are almost identical to the claims asserted by Frost Solutions and Mr. McCarthy in this case.

Uber, the defendant in *Waymo*, moved to exclude these opinions, referring to them as developed in a "black box." *Id*. at \*12. The court agreed and excluded the opinions. The court grounded the exclusion on the fact that the expert merely recited the amount of time it took Waymo to develop a technology and "then concluded with no discernible analysis or reasoning whatsoever that Uber saved at least that much time in its own development efforts." *Id*. As the court noted, the expert "made no attempt to explain why Waymo, Uber, and Tyto — three very different companies with different resources, personnel, and development plans — would necessarily take the same amount of time to develop the same technology." *Id*. The court also excluded the expert's opinions that did nothing more than espouse the expert's personal

---

[7] The expert in *Waymo* at least quantified the amount of time he believed was saved by the misappropriation of trade secrets, and his opinion was excluded. Mr. McCarthy does not even attempt to put a number of years or months to his opinions.

"expectations" regarding development time. *Id*. at *12-13.[8] McCarthy's opinions are inadmissible on exactly the same reasoning. He undertakes no analysis of the companies' respective resources, personnel, use of third-party developers, or other factors that influence the time to develop a product.

Mr. McCarthy's conclusions of "extensive time and money," "uncharacteristic pace," "compressed timeline," and "exceptionally fast" cannot be helpful for a jury. Helpfulness to a jury has been described as the "primary limitation on the scope of an expert's testimony." *Weigle v. Pifer*, Civil Action No. 2:14-cv-15087, 2015 U.S. Dist. LEXIS 56706, at *8 (S.D. W. Va. Apr. 30, 2015) (citing *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993)). Opinions that are not helpful are excluded. *Barry v. Medtronic, Inc.*, No. 1:14-cv-104, 2016 U.S. Dist. LEXIS 203343, at *8 (E.D. Tex. Sep. 20, 2016) (excluding an expert's "improperly speculative" opinion as not helpful to the jury). This is particularly true where, as in this case, there is no evidence the purported methodology has been peer reviewed, is accepted in the field, or has a discernible rate of error. *Contour Data Sols. LLC v. Gridforce Energy Mgmt. LLC*, No. 20-3241, 2024 U.S. Dist. LEXIS 151280, at *18 (E.D. Pa. Aug. 23, 2024). McCarthy's methodology is the proverbial black box, reducing to nothing more than "take my word for it."

Mr. McCarthy suffers from other deficiencies that render his opinion inadmissible. He never specifies the "insider knowledge" on which his opinion hinges, and he clearly considers all information observed by an employee to be of equal value. He does not account for what is general skill and knowledge – what is known by anyone working in the field. He does not separate from his opinion what is readily ascertainable. Rather, he assumes that every fact

---

[8] The court wrote, "Hesselink came closest to bridging the gap between his data and opinions in Paragraphs 455 and 456, where he injected conclusory assertions that the amount of time supposedly invested by Waymo in alleged trade secret numbers 25 and 111 comported with his expectations. Such bald assertions, however, constitute mere *ipse dixit* and fall well short of the reliability required by Federal Rule of Evidence 702." *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2018 U.S. Dist. LEXIS 10823, at *12-13 (N.D. Cal. Jan. 18, 2018).

learned is protectable, even rudimentary concepts such as the need to have a weatherproof enclosure and the need to utilize cellular technology to transmit data. His opinion therefore is not helpful to the jury because it does not track with the law applicable to the claims for which he is offered as an expert. *Adams v. New England Scaffolding, Inc.*, No. CV 13-12629-FDS, 2015 WL 9412518, at *6 (D. Mass. Dec. 22, 2015) ("Thus, one of the most important limitations on expert testimony concerning the law is that such testimony has to accurately state the law."). *Dice Commc'ns, LLC v. Zappolo*, 2023 U.S. Dist. Lexis 97938, *8 (D. Neb. Jun. 6, 2023) ("[O]rdinarily, an employer has no legitimate business interest in postemployment prevention of an employee's use of some general skill or training acquired while working for the employer, although such on-the-job acquisition of general knowledge, skill or facility may make the employee an effective competitor. . . .") (quotation omitted); Restatement (Third) of Unfair Competition § 42 cmt. d. (AM. LAW INST. 1995) (Information forming the "general skill, knowledge, training, and experience of an employee cannot be" a trade secret or subject to a contractual restrictive covenant.).

McCarthy never addresses the independent development of the ARC-1, which provides a complete defense to trade secret misappropriation claims, an omission so fundamental that it undermines the foundation for Mr. McCarthy's expert testimony. Under established First Circuit precedent, a trade secret "affords no rights against the independent development of the same technology or knowledge by others." *CVD, Inc. v. Raytheon Co*., 769 F.2d 842, 850 (1st Cir. 1985). Baglien and Lareau, and perhaps more importantly, Paragon and Object Spectrum, possessed general skills and knowledge in environmental sensing technology that they were entitled to use in developing competing products. Mr. McCarthy's analysis fails to account for this fundamental limitation on trade secret protection and improperly assumes that any similarities between products or development approaches necessarily indicate misappropriation

11

rather than independent development using publicly available information and general industry knowledge.

For all of these reasons, Mr. McCarthy's opinion that Defendants saved time or money as a result of allegedly misappropriating Frost Solutions' trade secrets should be excluded.

### B. Mr. McCarthy's Opinions Comparing the Subject Products to the Environmental Sensor Market and Defining the "Niche" Should be Excluded.

Mr. McCarthy opines that Frost's and Vue's products are useful only to the narrow road sensor segment and are not useful to the broader environmental sensor market. He does not cite any sources or documents for his analysis of the products of several other manufacturers and sellers of environmental sensor systems. His chart, Exhibit 1 to the Rebuttal Report, does not identify from where he obtained the information on all of the companies' products. Defendants' counsel requested the production of all documents considered by Mr. McCarthy in developing his opinions and Frost Solutions never produced any. **Ex. B**. Without the identification of the sources for the data he used, Defendants (and the Court) lack any ability to test the assertions made.

Courts exclude expert opinions that are unsupported, such as Mr. McCarthy's. In *López-Ramírez v. Toledo-González*, 32 F.4th 87 (1st Cir. 2022), for example, the First Circuit affirmed the exclusion of an expert's opinion where the expert claimed to have relied on journal articles that he failed to name or describe their content. The district court found this to be "simply too great an analytical gap between the content of the report and the opinion proffered," so it excluded the opinion. *Id*. at 95. *See also Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F.3d 252, 260 (1st Cir. 1997) (affirming the exclusion of an opinion where the expert purportedly determined a specific dollar amount of indebtedness from unspecified documents). In *M & D Cycles, Inc. v. Am. Honda Motor Co.*, No. 22-CV-171-SM-AJ, 2023 WL 7182107, at *5 (D.N.H.

Sept. 29, 2023), this Court excluded an expert who opined about fair market value without any supporting documentation. *Id*. ("Moreover, there is no evidence in the record of comparable sales of any of these items in any market. Aside from referencing his own knowledge, experience, and research in general terms, Mr. Gill identifies no methodology to support his opinions on the fair market value of Plaintiffs' items, and such testimony cannot be fairly challenged through cross examination."). The same logic warrants excluding McCarthy's opinions.

Expert disclosures, like many aspects of discovery, implicate due process concerns. Defendants are entitled to a fulsome understanding of the opinions that will be presented in this case and Mr. McCarthy fails to identify the support for his opinion about the contours of the market. That is why "to ensure reliability and intellectual rigor, experts must be able to produce a written report or testimony supported by an accepted methodology that is based on substantial scientific, technical, or other specialized knowledge." *Soto-González v. DRS' Ctr. Hosp.*, No. 20-cv-0431(GMM), 2024 U.S. Dist. LEXIS 34463, at *13 (D.P.R. Feb. 23, 2024) (quoting *Figueroa v. Simplicity Plan de Puerto Rico*, 267 F.Supp.2d 161, 164 (D.P.R. 2003)). *See also Davis v. Cisneros*, No. 1:21-CV-565-RP, 2024 U.S. Dist. LEXIS 143552, at *32 (W.D. Tex. Aug. 12, 2024) (excluding an expert for failing to specify the sources of his analysis and because his methodology lacked reliability). Mr. McCarthy's first and third opinions, including his chart (Exhibit 1 to his Rebuttal) should therefore be excluded.

### C. *Mr. McCarthy's Opinion Would Confuse and Mislead the Jury*

Mr. McCarthy's vague and unsupported testimony should be excluded under Federal Rule of Evidence 403 because its minimal probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. His use of conclusory terms like "extensive time and money," "uncharacteristic pace," and "exceptionally fast" without

quantification or supporting methodology creates a substantial risk that the jury will be misled by authoritative-sounding but ultimately meaningless conclusions. The testimony's lack of concrete data or reliable methodology means any probative value is minimal, while the risk of prejudice is substantial because the jury may give undue weight to Mr. McCarthy's conclusions based on his expert designation. *U.S. v. Montas*, 41 F.3d 775 (1st Cir. 1994) ("Even if admissible under Rule 702, expert testimony still may be excluded under Fed. R. Evid. 403 if its probative value is substantially outweighed by the risk of unfair prejudice it creates."); *U.S. v. Giambro*, 544 F.3d 26 (1st Cir. 2008) (The expert's statistical analysis was characterized as methodologically unreliable—based on "purely anecdotal and without scientific basis" data—and his conclusions were "an unfounded extrapolation from the underlying data.").

Moreover, even if Frost could prove its case, no jury could fashion an award based on Mr. McCarthy's vague opinions.  Frost is not entitled to a perpetual ban on entry into the market. Defendants are entitled to independently develop a system on their own and enter the market at some point.  If Frost could prove its case, the remedy would have to be grounded in the difference between when Vue actually competed and when it should have entered the market but for the misappropriation.  No juror could determine the number of days on which a remedy could be based because he/she could not compare Vue's actual market entry to a "characteristic" or "unexceptionally fast" timeline.  Because his opinions are not helpful to the jury, they are inadmissible.  Fed. R. Evid. 702 (a) (requiring that an expert's knowledge will be helpful to the jury); *Constructora Mi Casita v. Nibco, Inc.*, 448 F. Supp. 3d 965 (N.D. Ind. 2020) (excluding an expert's opinion on construction costs that was unhelpful); *Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-cv-08787-TSH, 2024 LX 137788 (N.D. Cal. Oct. 8, 2024) (excluding an expert who opined only that a trade secret was worth "over \$100 million").

14

**CONCLUSION**

Frost has failed to meet its burden under Fed. R. Evid. 702 to establish by a preponderance of the evidence that McCarthy's testimony is reliable, as required by established First Circuit precedent. The proponent of expert testimony bears the burden of demonstrating that the expert's methodology is scientifically sound and methodologically reliable. McCarthy's failure to provide any quantitative analysis, baseline comparisons, or testable methodology fails this reliability standard. Courts must assess whether expert conclusions have been "arrived at in a scientifically sound and methodologically reliable fashion," and McCarthy's approach falls short of this requirement. His reliance on subjective characterizations like "extensive" and "uncharacteristic" without any objective measures or industry standards violates the fundamental requirement that expert testimony be based on reliable principles and methods. Frost's inability to identify the specific data sources, methodological framework, or peer-reviewed standards underlying McCarthy's analysis demonstrates their failure to satisfy the preponderance standard for expert testimony reliability.

WHEREFORE, Defendants respectfully that this honorable Court:

A. Issue an order precluding Kevin McCarthy from testifying at trial; and

B. Grant such additional and further relief as the Court deems necessary and proper.

Respectfully submitted,

PATRICK BAGLIEN, CHRISTOPHER LAREAU
AND VUE ROBOTICS, LLC,

By their attorneys,

SHEEHAN PHINNEY BASS & GREEN, P.A.

Dated: April 24, 2026                    */s/ James P. Harris*
                                         David W. McGrath (NH Bar No. 9347)
                                         James P. Harris (NH Bar No. 15336)
                                         Ryan P. Lirette (NH Bar No. 19561)
                                         Abbygale M. Dow (NH Bar No. 272938)
                                         1000 Elm Street, 17th Floor
                                         Manchester, NH 03101
                                         (603) 627-8255
                                         dmcgrath@sheehan.com
                                         jharris@sheehan.com
                                         rlirette@sheehan.com
                                         adow@sheehan.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically served copies of the foregoing on all counsel of record via the Court's CM/ECF system.

Dated:  April 24, 2026                    */s/ James P. Harris*

16