**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| FROST SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PATRICK BAGLIEN, CHRISTOPHER LAREAU, and VUE ROBOTICS, LLC,<br><br>Defendants. | Case No. 1:22-cv-00401-SE |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO**
**EXCLUDE THE EXPERT TESTIMONY OF KEVIN MCCARTHY**

Defendant Baglien was employed with Frost Control, having full access to Frost Control's product documents for its road weather information systems, when he first sought a quote from a contract manufacturer for the development of a wireless camera and weather sensor for his "new company." Less than two weeks after Baglien resigned from Frost Control, Defendants Baglien and Lareau drafted a product requirement document for a weather sensor and machine vision camera to be the first device for their new company, Defendant Vue Robotics, LLC ("Vue"). One month later, they sent it to Paragon Innovations ("Paragon"), and Paragon completed the first prototype in less than one year. Plaintiff Frost Solutions, LLC ("Frost") hired Kevin McCarthy, an expert in research, development, design, and marketing in the environmental sensor industry, to assess the target market of Vue's ARC-1 device, analyze it against Frost's AIMS 2.0 device, and evaluate Vue's development process and timeline.

Defendants now move to exclude Mr. McCarthy's testimony in its entirety. Their motion misconstrues many of Mr. McCarthy's opinions, on which Defendants did not seek to depose him. Defendants further attempt to strictly apply *Daubert's* standards to Mr. McCarthy's opinions, despite well-established case law instructing courts to apply *Daubert* flexibly—particularly to technical (rather

than scientific) experts like Mr. McCarthy. The Court should deny their motion and permit the jury to hear Mr. McCarthy testify regarding Vue's products and development.

## BACKGROUND

### I. Factual background

Baglien and Lareau were Frost Control employees when Baglien began developing a competing device for their competing company. On August 23, 2021, Baglien sought a quote request from Glow Labs for help building a new product—a wireless camera and weather sensor—stating that he was "[a]bout to start a new company." Baglien and Lareau both downloaded vast amounts of Frost Control's customer intelligence and deal information from its secure system in the time between this email and their resignations. Lareau resigned from Frost Control on September 25, 2021, with Baglien following on October 6, 2021. By October 19, 2021, Baglien and Lareau were drafting a product requirements document for Vue - their new company (Answer (Doc. 110), ¶ 51.) They reached out to Paragon on November 23, 2021, and Paragon completed the prototype for Vue's ARC-1 device on October 6, 2022. (Tr. of Rule 30(b)(6) Dep. Paragon Innovations (A. Rich) ("Paragon Dep."), Doc. 154-5, 20:05–21:24; *see also* **Ex. 1** (Baglien's 3d Suppl. Resps. to Interrogs. at No. 6)).

Frost's Statement of Additional Material Facts included in its Opposition to Defendants' Motion for Partial Summary Judgment as to Plaintiff's Technology and Customer Information Trade Secret Claim (Counts I and II of the Amended Complaint) discusses, cites, and attaches the evidence relevant here. (Doc. 129-1 at 27–36; Exs. 17, 31–32, 35, 41.) Frost incorporates this evidence into this Opposition by reference.

### II. Kevin McCarthy's expert report

Considering that Defendants created a prototype of a road weather monitoring system just one year after Baglien and Lareau left Frost Control, and considering that their device began

competing directly with Frost's, Frost hired an expert to analyze the technology and development timeline. Mr. McCarthy is a technical expert with decades of specialized knowledge in the environmental sensor industry—specifically in product research, development, design, implementation, and marketing. (Expert Report of Kevin McCarthy ("Report"), Doc. 154-2, at 1.) He is the retired CEO of Davis Instruments, a well-known environmental sensing company, where he led all engineering projects, manufacturing operations, sales, and marketing. (*Id.*) He has met with hundreds of customers and suppliers, attended numerous trade shows, and hosted six international environmental sensing reseller summits. (Rebuttal Report of Kevin McCarthy ("Rebuttal Report"), Doc. 154-4, at 1–2.) He has extensive experience in competitive product evaluation, maintaining hundreds of competitor sensors on a testing platform for more than two decades and conducting rigorous comparative testing. (*Id.* at 2.) After Davis Instruments was sold to Advanced Environmental Monitoring ("AEM") in 2019, McCarthy consulted with multiple other AEM subsidiary companies in the environmental sensing market. (Report at 1–2.)

Mr. McCarthy analyzed the documents produced in this case, including Frost's and Vue's design and development communications and both companies' product specification documents and technical component diagrams. (*See* Report at 4–7.) He evaluated Vue's ARC-1 device against Frost's AIMS 2.0 device, and analyzed Vue's product development process and timeline against the processes and timelines he observed for various products across a multitude of companies over his career. (*Id.*; *see also* Rebuttal Report at 2–7.) He drew three main conclusions: (1) Frost's AIMS 2.0 product and Vue's ARC-1 product are designed to serve the same market and function; (2) Vue's product was designed to compete in the same market at the same price point as Frost's product; and (3) Vue's insider knowledge of the Frost product saved it significant time and money. Defendants did not depose Mr. McCarthy.

## LEGAL STANDARD

Federal Rule of Evidence 702 "has been interpreted liberally in favor of the admission of expert testimony." *Levin v. Dalva Bros., Inc.,* 459 F.3d 68, 78 (1st Cir. 2006). It assigns a "gatekeeping role for the judge" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). This inquiry is "case-specific" and "exactly what is involved in 'reliability' must be tied to the facts of a particular case." *Lawes v. CSA Architects & Eng'rs LLP*, 963 F.3d 72, 99 (1st Cir. 2020) (cleaned up). However, it is not the Court's role to weigh evidence, evaluate credibility, or choose between competing experts, nor is it the proponent's burden to prove the expert's assessment is correct. *See, e.g.*, *id.* at 98–99; *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 15 (1st Cir. 2011); *Doe v. Trs. of Dartmouth Coll.*, 699 F. Supp. 3d 171, 177–78 (D.N.H. 2023). "Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Accordingly, matters "affecting the weight and credibility" of expert testimony are not appropriate challenges, but rather are "question[s] to be resolved by the jury." *Lawes*, 963 F.3d at 102 (citation omitted). The proponent bears the burden of proving the admissibility of the expert opinions, but this "burden is not especially onerous, because 'Rule 702 has been interpreted liberally in favor of the admission of expert testimony.'" *Jenks v. N.H. Motor Speedway*, 2012 DNH 039, at *2 (D.N.H. Feb. 8, 2012), quoting *Levin*, 459 F.3d at 78. Rulings on *Daubert* motions are committed to the trial court's sound discretion. *Martinez v. United States*, 33 F.4th 20, 24 (1st Cir. 2022).

## ARGUMENT

### I. Courts evaluate technical experts, like Mr. McCarthy, with a flexible application of *Daubert*'s standards.

Mr. McCarthy's qualifications cannot be questioned. Defendants do not dispute them. His extensive industry experience qualifies him to offer opinions related to product comparisons, market

segmentation, and the development process for products in the environmental sensing industry. He is a technical expert, not a scientific one. This provides no basis to exclude his opinions under *Daubert*, however. "Rule 702 permits a wide range of testimony as long as the expert is qualified and the testimony is reliable and relevant." *U.S. Accu-Measurements, LLC v. Ruby Tuesday, Inc.*, No. CIV. 10-5011, 2013 WL 1792463, at *9 (D.N.J. Apr. 26, 2013). As discussed below, Mr. McCarthy's opinions satisfy both criteria.

Nevertheless, Defendants criticize Mr. McCarthy's Report for not being formatted like a peer-reviewed scientific paper and for lacking extensive academic citations. (Defs.' Mem. of Law in Supp. of Motion to Exclude the Expert Testimony of K. McCarthy ("Defs.' Br."), Doc. 154-1, at 2, 3, 7, 10, 12.) This criticism reflects a misunderstanding of the nature of technical expert testimony. Mr. McCarthy applied decades of hands-on experience in the exact industry at issue, where he led a major environmental sensing company, evaluated hundreds of competitor products, met with customers across market sectors, and brought numerous products to market. He provides expert analysis of commercial products and market positioning, typical product development processes, industry practices and norms, and competitive dynamics based on his career in the weather sensing industry. His opinions are grounded in industry expertise, not laboratory experiments requiring peer review or laboratory testing. Court have recognized that industry practices "are not like scientific hypotheses, which can be tested through trial and error, or logical arguments, which can be analyzed through probing their underlying premises." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 464 (S.D.N.Y. 2010). As a technical expert, Mr. McCarthy's opinions must be viewed through the lens of a product and market expert, not a scientist.

## II. The methodology Mr. McCarthy used to reach his opinions is reliable.

Mr. McCarthy's opinions are both reliable and relevant, and meet *Daubert*'s flexible standard. *Carballo Rodriguez v. Clark Equip. Co.*, 147 F. Supp. 2d 81, 83 n.1 (D.P.R. 2001) (recognizing that for

technical experts in particular, "the specific factors considered under the reliability prong are applied in a more flexible manner"). First Circuit precedent cautions against applying *Daubert* "with too much vigor" when excluding technical expert testimony. *Lawes*, 963 F.3d 99 (2020).

Courts recognize that the scientific method underlying *Daubert*'s application does not always apply cleanly to technical fields. *See United States v. Hines*, 55 F. Supp. 2d 62, 67 (D, Mass. 1999); *Am. Comput. Innovators, Inc. v. Elec. Data Sys. Corp.*, 74 F. Supp. 2d 64, 67–68 (D. Mass. 1999). This Court has acknowledged that "the *Daubert* factors may not perfectly fit every type of expert testimony, particularly technical testimony based primarily on the training and experience of the expert; thus, the court may look to other factors in determining whether a methodology is sufficiently reliable." *United States v. Aceituno*, 699 F. Supp. 3d 179, 185 (D.N.H. 2023) (cleaned up). The key issue for such testimony is "whether the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* at 184.

Mr. McCarthy and his opinions meet this standard. In reaching each of his opinions, Mr. McCarthy relied upon decades of practical experience in the environmental sensor industry. He reviewed voluminous documents produced in this litigation regarding the Frost and Vue products, filtered these documents through his intimate knowledge of the environmental sensor market, assessed cost structures from material lists and assembly drawings, determined sensor accuracy based on sensor type and integration, applied knowledge of customer requirements gained from hundreds of customer meetings, compared the products to other available products in the environmental sensing marketplace, and analyzed Vue's development timeline against typical development processes. (*See generally*, Report; Rebuttal Report.)

This methodology is appropriate and reliable for the technical opinions Mr. McCarthy offers. Mr. McCarthy's methodology reflects industry practice rather than academic research standards, and his opinions are based on the same type of competitive product analysis and market knowledge that

companies in the environmental sensing market use to make business decisions. This practical, industry-based methodology is reliable for technical expert testimony. *See Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*, 743 F. Supp. 3d 530, 541 (S.D.N.Y. 2024) ("Courts recognize that experts of all kinds tie observations to conclusions through the use of . . . general truths derived from specialized experience. . . . The proffered expert's methodology employed must be rooted in the experts' practical experience." (cleaned up)). Mr. McCarthy does not claim to have conducted a scientific study or novel research. Rather, he applied his extensive industry knowledge to analyze a commercial product and its market position. This application of specialized knowledge and experience is precisely what technical expert testimony entails and is valuable to a jury that likely has no knowledge or background in this industry or role.

**A. Mr. McCarthy's comparative product analysis, market segmentation analysis, and related opinions are reliable and relevant.**

Mr. McCarthy opines that the Frost product and the Vue product are designed to serve the same niche functions and markets, and compete at a similar price point. (Report at 3–4, 6–7.) An expert in the environmental sensing industry may reasonably rely on personal knowledge and experience with competitive products in forming opinions about market segmentation and product design. *Daubert*, 509 U.S. at 592 (noting that Rule 702 "assum[es] that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline"); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience").

Here, Mr. McCarthy identified the companies whose products he considered in his comparative analysis and market assessment: Davis Instruments, Campbell Scientific, Vaisala, AcuRite, Nielsen-Kellerman, AEM, Ambient, Scientific Sales, La Crosse, Hobo, Weather Hawk, Oregon Scientific, and Purple Air. (Report at 3.) Mr. McCarthy named these companies to provide context for his opinions, but his opinions are also rooted in his personal knowledge and experience

with these companies and their products, gained through decades of hands-on evaluation and testing of environmental sensing products. At Davis Instruments, Mr. McCarthy invested heavily in competitive product evaluation, maintaining hundreds of competitor sensors on a specifically designed testing platform for more than two decades. (Rebuttal Report at 2.) He built or purchased sophisticated environmental testing equipment including rain simulators, wind tunnels, corrosion accelerators, and UV exposure accelerators. (*Id.*) He has extensive expertise conducting rigorous comparative testing to understand competitors' strengths and weaknesses. (*Id.*) This personal knowledge, acquired through systematic competitive analysis over many years, is the type of specialized knowledge that Rules 702 and 703 contemplate as a basis for expert opinions. *Bartlett v. Mut. Pharm. Co.*, 742 F. Supp. 2d 182, 195 (D.N.H. 2010) (denying motion to exclude testimony based on the expert's alleged lack of foundation because "the foundation for that testimony is his own experience" and "Rule 702 expressly contemplates that an expert may be qualified on the basis of experience, which may be the predominant, if not sole, basis for a great deal of reliable expert testimony" (cleaned up)).

Mr. McCarthy opines that Vue's ARC-1 product was designed to serve the same road weather assessment submarket of the environmental sensor sector and directly compete at the same price point as Frost's AIMS 2.0 device. (Report at 3–4, 6–7.) These opinions are based on Mr. McCarthy's factual observation and assessment of the products' sensor suites and design features, and his review of Vue's pricing communications. (*Id.*) Mr. McCarthy included exhibits to his Report and Rebuttal Report detailing the hardware elements of Frost's and Vue's products that he considered in his review and how each aligns with the expectations of the various environmental market sectors. (*See* Report Ex. 1; Rebuttal Report Ex 1.) For example, Mr. McCarthy's industry knowledge informs his evaluation that most markets other than the road weather sensing market require precise rain and wind sensors, which neither Frost's nor Vue's product has. (*Id.* at 3.)

Similarly, Mr. McCarthy analyzed what each device prioritizes—IR surface temperature sensors and downward-angled cameras, features consistent with the road weather sector specifically. (*Id.* at 3–4.) He reviewed Vue's product's components and pricing communications to ascertain the cost target Vue designed its system to meet, and those documents (produced by Vue and its collaborators) substantiate Mr. McCarthy's determination that Vue's product was developed to compete directly with Frost. (*Id.* at 6–7.) These, and Mr. McCarthy's other design and market-fit conclusions, are drawn from objective facts about the products' design, not assumptions about misappropriation.

Rule 703's source identification requirement is satisfied when an expert identifies the types of sources reasonably relied upon in the field; it does not require exhaustive documentation of every piece of data considered. *See* Fed. R. Evid. 703 ("those kinds of facts and data"). Notably, Mr. McCarthy does not assert that one particular published source establishes the market requirements. Rather, he opines based on his personal knowledge regarding what customers in each market sector require, gained through hundreds of customer meetings and industry experience. An expert with the same knowledge and experience could perform the same evaluation and reach the same conclusion. Thus, this is not a case of unidentified sources, and the *Lopez-Ramirez* case cited by Defendants is not on point. 32 F.4th 87 (1st Cir. 2022). In that case, the expert's opinion was excluded because he claimed to have relied on journal articles he failed to name or describe. *Id.* at 95. That expert's failure to disclose the information he relied upon is unrelated to Mr. McCarthy's opinions, which are based on industry knowledge and experience rather than any particular unspecified documentary source. Mr. McCarthy identified the hardware elements he considered, the environmental markets he considered, and the manufacturers whose products he considered, and his extensive hands-on experience with competitive product evaluation. (Report at 1–3, Ex. 1.) This is sufficient to satisfy the source identification requirement.

In any event, the issue of whether Mr. McCarthy's analysis lacks sufficient detail goes to the weight of Mr. McCarthy's testimony, not its admissibility. Thus, the appropriate remedy for any perceived gaps in Mr. McCarthy's explanation of his opinions is cross-examination, not exclusion. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir. 1988) ("On cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility"). Defendants failed to take advantage of their opportunity to question Mr. McCarthy about his opinions at a deposition during expert discovery, which could have clarified many of their false assumptions and misunderstandings about his testimony. Defendants will have an opportunity to cross-examine Mr. McCarthy at trial about his product comparison, market analysis, and pricing knowledge.

**B. Mr. McCarthy's opinions related to Vue's time to market are reliable and relevant.**

Mr. McCarthy also opines that Vue's insider knowledge of the Frost product saved it extensive time and money, allowing it to bring the ARC-1 device to market at an unusually fast pace. (Report at 5–6.) Defendants argue these opinions should be excluded because he used qualitative characterizations rather than precise quantification. (Defs.' Br. at 7–8.) But neither Rule 702 nor *Daubert* mandate that expert opinions be expressed in precise numerical terms. When an expert offers a qualitative analysis based on industry knowledge and experience, qualitative characterizations are appropriate and admissible. *See Am. Empire Surplus Lines Ins. Co.*, 743 F. Supp. 3d at 541; *Counts v. Gen. Motors, LLC*, 606 F. Supp. 3d 547, 571 (E.D. Mich. 2022) ("testimony is not excludable as unreliable or speculative or otherwise simply because it is qualitative instead of quantitative"); *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 646–47 (S.D.N.Y. 2016) (noting that technical or other specialized knowledge may be relevant and reliable and therefore admissible under *Daubert* "even if the field of knowledge . . . does not readily lend itself to a formal or quantitative methodology" (cleaned up)). When evaluating the opinions of a

technical expert like Mr. McCarthy, the standard is "whether the expert employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Aceituno*, 699 F. Supp. 3d at 184 (cleaned up).

Mr. McCarthy's methodology is straightforward: he compared Vue's actual process (by examining the documents produced and deposition testimony) to the many product development processes he facilitated or evaluated during his career. (Report at 5–6; Rebuttal Report at 3–7.) Mr. McCarthy explains that bringing environmental sensing products to market typically requires market discovery, requirements definition, design and prototype iteration, and manufacturing and launch phases. (Rebuttal Report at 3–5.) Each phase generates extensive documentation. (*Id.*) He also identified the factual basis for his opinion: the absence of market research documentation in Vue's production. (*Id.*) Mr. McCarthy reviewed Vue's document production and found no evidence of the typical market research, requirements definition, prototype iteration, and customer validation phases that normally precede manufacturing engagement. (*Id.* at 4.) The absence of documentary evidence is itself probative evidence supporting Mr. McCarthy's qualitative opinion. Finally, he explained the reasonable inference he draws from these observations: Defendants used insider knowledge of Frost's product to create their own, shortcutting the development process. (Report at 5–6; Rebuttal Report at 5–8.) This analysis does not require "quantification."

Mr. McCarthy's opinion is fundamentally different than that of the expert in *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939, 2018 WL 11697303 (N.D. Cal. Jan. 18, 2018), cited by Defendants. There, the expert made specific quantitative claims about time savings but provided no analysis of why different companies with different resources and personnel would necessarily take the same amount of time to develop the same technology. *Id.* at *1–2. The court excluded the opinions because the expert merely recited the amount of time it took one company to develop technology and concluded with no discernible analysis that another company saved at least that much time. *Id.*

Unlike the expert in *Waymo*, Mr. McCarthy does not claim that Vue necessarily saved a specific number of months or dollars. Rather, he opines that Vue's development process lacked the documented phases typical of legitimate product development in the industry. Mr. McCarthy's opinion is also not based on an assumption that different companies would take the same amount of time. He makes the more basic point that legitimate companies must perform *some* market research and analysis, while Vue's development process lacks evidence of *any*.

Mr. McCarthy's observation that Vue's document production lacks evidence of typical market research phases is not *ipse dixit*; it is a factual observation based on his review of the produced documents and his knowledge of what legitimate product development generates. Mr. McCarthy provides an extensive factual basis for his opinions beyond his mere "say-so": his review of Vue's product requirements documents, design documents, mechanical assembly drawings, electronic design documents, assembly instructions, development communications between Baglien, Lareau, and Paragon, Frost's internal documents and product requirements, and deposition testimony of Baglien and Lareau. (Report at 4–7.) He explains that legitimate market research generates meeting notes, customer feedback forms, competitive analysis reports, trade show observations, focus group results, and iterative design changes. (Rebuttal Report at 4.) He found no such documentation in Vue's production. (*Id.*) This absence is itself evidence supporting his opinion about Vue's compressed timeline.

Further, in the documents that *were* present, Mr. McCarthy points out that Baglien and Lareau frequently discussed shortcomings of the Frost product and expressed intent to ensure Vue's product did not have similar problems. (Report at 6.) He observes that many of Defendants' design specifications can be linked to internal product discussions at Frost that Baglien and Lareau participated in before they resigned. (*Id.*) He notes that Vue's user interface and dashboard specifications closely track work developed at Frost while Baglien and Lareau were employed there,

including system observations, reporting maps, weather forecast data, and alerts. (Rebuttal Report at 5.) Thus, his opinions cannot be dismissed as unsupported speculation. The connection between his data and his opinions is clear and well-explained. His extensive document review, filtered through his decades of industry experience, provides a substantial factual basis for his opinions.

**C. Mr. McCarthy's opinions do not ignore Vue's independent development defense—they speak directly to it.**

Mr. McCarthy's opinion that Vue's development timeline was exceptionally fast and that Vue's insider knowledge of Frost's product saved Vue time and money does not improperly assume misappropriation rather than independent development. Defendants' argument mischaracterizes Mr. McCarthy's opinions. (Defs.' Br. at 11–12.) In fact, in his evaluation of the development of Vue's ARC-1 device, Mr. McCarthy explicitly looked for evidence that would support a finding that Defendants underwent a legitimate process to develop the technology themselves. There was none.

Defendants' reference to Paragon (the product developer)'s involvement and testimony changes nothing. (Defs.' Br. at 5, 11–12.) Mr. McCarthy's Rebuttal Report explains that contract manufacturers can move quickly, but only after receiving detailed specifications. (Rebuttal Report at 5.) Mr. McCarthy points out that contract manufacturers may select components, but they do not make strategic product design decisions. (*Id.*) There must therefore be a point in the process where the principal conducts market research to understand customer requirements or uses insider knowledge of what customers want and what existing products' deficiencies are to draft the product specifications for the contract manufacturer. (*Id.*) Thus, the critical question remains: how did Baglien and Lareau know what specifications to provide to Paragon in such a compressed timeline?

Whether the development timeline and related facts ultimately prove misappropriation is a question for the jury. Mr. McCarthy's role is to clarify the key issues and provide expert context about typical development processes that will assist the jury in evaluating the evidence. His opinions are admissible for this purpose.

**III. Mr. McCarthy's opinions are helpful to the jury and not subject to exclusion under Rule 403.**

Mr. McCarthy's opinions have substantial probative value, pose minimal risk of unfair prejudice or confusion, and use appropriate qualitative characterizations. He is the only expert disclosed in this case who can competently and objectively compare Vue's product to Frost's and testify regarding the development and market position of environmental sensors.

Mr. McCarthy's opinions are instrumental to a jury's ability to understand key issues in the case: (1) he can explain the design features, pricing, and sensor requirements that distinguish different market sectors, helping the jury understand whether the Vue product was designed to compete with Frost in same market; and (2) he can explain the typical development timeline in the industry and the key documents, evidence, and events that characterize legitimate product development, helping the jury assess Vue's independent development defense and contextualizing the speed with which Vue brought its product to market. The jury will not have the specialized knowledge to understand product development, market position, and market segmentation in the environmental sensor industry. Mr. McCarthy's expertise provides this necessary context.

Further, Mr. McCarthy's qualitative opinions are appropriate here and will not confuse the jury. His opinions are not meant to offer a precise quantitative opinion about the amount of time or money saved. (Report at 5; Rebuttal Report at 3–4.) He is not Frost's damages expert. Rather, he offers a qualitative opinion about whether Vue's development timeline was typical or exceptional. And the use of these words is not confusing, as Defendants suggest. (Defs.' Br. at 13–14.) The jury can understand that such references convey that Vue's development process was faster than the typical development process for a new environmental sensing product. Considering Mr. McCarthy's testimony, the jury can then decide whether Vue's compressed timeline, combined with other evidence, suggests use of insider knowledge. Mr. McCarthy's Rebuttal Report provides additional context by explaining that he found no documentary evidence of the typical market research,

requirements definition, prototype iteration, and customer validation phases. This explanation will help the jury understand the basis for Mr. McCarthy's testimony.

Moreover, Mr. McCarthy's qualitative testimony is more appropriate than precise quantification would be, given the nature of his analysis. Mr. McCarthy cannot quantify exactly how much time Vue should have spent on market research because the amount of time varies depending on numerous factors. What Mr. McCarthy can do—and what he has done—is observe that Vue's production lacks evidence of the typical phases of design and production and offer the opinion that this absence suggests a compressed timeline inconsistent with independent development.

Defendants fail to meet the high burden to show the probative value of Mr. McCarthy's opinions is substantially outweighed by danger of unfair prejudice, confusion, or misleading the jury. His opinions are directly relevant to whether Baglien and Lareau misappropriated Frost's trade secrets, and the jury will benefit from Mr. McCarthy's explanation of Vue's compressed product development timeline. And Mr. McCarthy's opinions are straightforward: the Frost and Vue products are designed for the same market, Vue's development timeline was exceptionally fast and lacked evidence of the typical market research and development, and Vue's product specifications suggest use of insider knowledge of Frost's product. The jury will be able to understand Mr. McCarthy's opinions and evaluate their persuasiveness.

Defendants will have full opportunity to cross-examine Mr. McCarthy and present contrary expert testimony. Any perceived risk of misleading the jury can be addressed through cross-examination and contrary expert testimony, not exclusion.

## CONCLUSION

For the reasons discussed above, the Court should deny Defendants' motion to exclude Mr. McCarthy's testimony.

Dated: May 8, 2026

Respectfully submitted,

**FROST SOLUTIONS, LLC,**

By its attorneys,

*/s/ Laura L. Carroll*
Laura L. Carroll (NH Bar No. 17444)
ARENTFOX SCHIFF LLP
800 Boylston Street, 32nd Floor
Boston, MA 02199
Tel: (617) 973-6100
Fax: (617) 367-2315
Email: laura.carroll@afslaw.com

Todd A. Rowden (admitted *pro hac vice*)
James L. Oakley (admitted *pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Tel: (312) 527-4000
Fax: (312) 527-4011
Email: trowden@taftlaw.com
joakley@taftlaw.com

Amir R. Tahmassebi (admitted *pro hac vice*)
KONICEK & DILLON, P.C.
70 West Madison Street, Suite 2060
Chicago, IL 60602
Tel: (312) 328-9166
Fax: (630) 262-9659
Email: amir@konicekdillonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically served a copy of this document on all counsel of record via the Court's CM/ECF system, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: May 8, 2026

*/s/ Laura L. Carroll*
Laura L. Carroll